POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Lead Plaintiff Movant Daniel*
*Warren and Proposed Lead Counsel for the*
*Class*

(*additional counsel on signature page*)

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., CONSTANCE H. LAU, SCOTT W. H. SEU, GREGORY C. HAZELTON, and PAUL K. ITO,<br><br>Defendants. | Case No.: 3:23-cv-04332-JSC<br><br>REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL<br><br>CLASS ACTION<br><br>Judge:  Hon. Jacqueline Scott Corley<br>Courtroom:  8 – 19th Floor |

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT ....................................................................................1

II.     ARGUMENT............................................................................................................3

        A.      Tran Is Not Entitled to the PSLRA's "Most Adequate Plaintiff"
            Presumption ...........................................................................................3

            1.      Tran Lacks the Largest Financial Interest in this Litigation..........3

            2.      Tran Cannot Represent the Claims of All Class Members............6

        B.      There Is No Basis to Appoint the Retirement System as Lead Plaintiff....8

        C.      The Co-Lead Stipulation Has No Bearing on Warren's Adequacy.........10

III.    CONCLUSION........................................................................................................12

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Erickson v. Snap, Inc.*,
   No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635 (C.D. Cal. Sept. 18,
   2017) ...................................................................................................................................... 8

*Faris v. Longtop Financial Technologies Ltd.*,
   2011 U.S. Dist. LEXIS 112970 (S.D.N.Y. Oct. 4, 2011) ......................................................... 8

*Hessefort v. Super Micro Comput., Inc.*,
   317 F. Supp. 3d 1056 (N.D. Cal. 2018) ................................................................................... 9

*In re Cendant Corp. Litig.*,
   264 F.3d 201 (3d Cir. 2001)................................................................................................... 10

*In re Facebook, Inc. Sec. Litig.*,
   No. 5:18-cv-01725-EJD, ECF 56 (N.D. Cal. Aug. 3, 2018).................................................. 11

*In re Sonthalia*,
   No. 22-70044, 2022 WL 3445815 (9th Cir. Aug. 17, 2022) .................................................... 3

*In re Valence Tech. Sec. Litig.*,
   1996 WL 119468 (N.D. Cal. Mar. 14, 1996)............................................................................ 8

*Lewis v. CytoDyn, Inc.*,
   No. C21-5190 BHS, 2021 WL 3709291 (W.D. Wash. Aug. 19, 2021) ................................... 3

*Ludlow v. BP P.L.C.*,
   800 F.3D 674 (5th Cir. 2015)............................................................................................... 6, 7

*Peters v. Twist Bioscience Corp.*,
   No. 5:22-CV-08168-EJD, 2023 WL 4849431 (N.D. Cal. July 28, 2023) ............................... 3

*Reiger v. Altris Software, Inc.*,
   98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705 (S.D. Cal. Sept. 11, 1998)................. 10, 11

*Richardson v. TVIA, Inc.*,
   No. C06-06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) ................................. 10

*Rolex Employees Ret. Trust v. Mentor Graphics Corp.*,
   136 F.R.D. 658 (D. Or. 1991) ................................................................................................. 8

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ................................................................................................... 9

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................................. 1, 9

Private Securities Litigation Reform Act of 1995 ........................................................... 1, 2, 9, 11

**Rules**

Fed. R. Civ. P. 23.................................................................................................................*passim*

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

Movant Warren[1] respectfully submits this reply memorandum of points and authorities in further support of his motion for appointment as Lead Plaintiff and approval of his selection of Pomerantz as Lead Counsel (Dkt. No. 38); and in response to the competing motions of (i) Tran (Dkt. No. 13), (ii) the Retirement System (Dkt. No. 21), and (iii) Williams (Dkt. No. 32).

## I.    PRELIMINARY STATEMENT

The PSLRA requires a court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class" *and* who satisfies the adequacy and typicality requirements of Rule 23. 15 U.S.C. § 78u-4(a)(3)(B)(iii). This presumption can only be rebutted by proof that the movant with the largest financial interest is atypical or inadequate. *Id.* § 78u-4(a)(3)(B)(iii)(II).

Here, as discussed at length in Warren's opposition brief (*see generally* Dkt. No. 51), Warren is the only movant who satisfies the PSLRA's "most adequate plaintiff" criteria. First, having incurred a loss of $240,675 in connection with his Class Period purchases of Hawaiian Electric securities as a result of the Defendants' alleged fraud, Warren possesses the largest financial interest in this litigation by a significant margin. Second, Warren has robustly demonstrated his adequacy and typicality under Rule 23.

None of the competing movants can satisfy the PSLRA's "most adequate plaintiff" criteria, nor has any competing movant rebutted the presumption in favor of Warren's appointment. Although only competing movant, Tran, claims to have incurred a larger investment loss than Warren, Tran has significantly overstated his financial interest in this litigation by including losses that were not caused by the Defendants' malfeasance and thus not recoverable

---

[1] All capitalized terms herein are defined in Warren's moving or opposition briefs, unless otherwise indicated. *See* Dkt. Nos. 38, 51.

1

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

under the loss-causation principles articulated in *Dura* and its progeny. Appropriately calculated, Tran's losses are merely a fraction of Warren's. Moreover, Tran is inadequate and atypical under Rule 23 because the timing of his purchases of Hawaiian Electric stock, all of which occurred after wildfires erupted on Maui, differentiates him from other Class members who purchased their shares prior to the wildfires—a fact that Tran has ***conceded*** in his opposition brief—and makes him unsuited to represent their interests in this litigation. Moreover, the fact that Tran sold 96% of his Hawaiian Electric shares just one day after he purchased them even further differentiates him from other Class members threatens to make his unique trading pattern, rather than the Class's fraud claims, the focus of this litigation. The Retirement System, for its part, claims to be entitled to appointment as Lead Plaintiff simply by virtue of being an institutional investor, but there is no basis in either the PSLRA or federal jurisprudence for the Retirement System's argument. Finally, a third competing movant, Williams, argues that Warren, Tran and the Retirement System (collectively, the "Stipulating Movants") are all inadequate because their entry into a Stipulation to serve as Co-Lead Plaintiff (the "Co-Lead Stipulation") (Dkt. No. 44), which the Court declined to endorse (Dkt. No. 48), purportedly reflects disqualifying lawyer-driven machinations. Williams grossly mischaracterizes the Co-Lead Stipulation, which was simply a good-faith effort by the Stipulating Movants to resolve the issue of Class leadership without further motion practice and certainly provides no basis to disqualify Warren from appointment.

Accordingly, for the reasons set forth below, Warren respectfully requests that the Court issue an Order granting his motion in full and denying the competing motions.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

## II.   ARGUMENT

### A.   Tran Is Not Entitled to the PSLRA's "Most Adequate Plaintiff" Presumption

#### 1.   Tran Lacks the Largest Financial Interest in this Litigation

As set forth at length in Warren's opposition brief (Dkt. No. 51), Tran can only lay claim to the "largest financial interest" criterion by improperly including in his financial interest calculations losses that were not proximately caused by the Defendants' alleged fraud and thus not recoverable under the loss-causation principles of *Dura*. *See generally id.* at 6-10. Properly calculated—*i.e.*, by considering only Tran's investment losses that were proximately caused by the Defendants' alleged fraud—Tran's loss is only $34,089, significantly less than Warren's loss of $240,675. In response, Tran incorrectly asserts that courts should not apply *Dura* principles at the lead plaintiff appointment stage and stands by his inflated loss figure. *See generally* Dkt. No. 54.

Tran is incorrect. Courts generally do apply *Dura* principles in assessing the financial interests of lead plaintiff applicants. *In re Sonthalia*, No. 22-70044, 2022 WL 3445815, at *1 (9th Cir. Aug. 17, 2022) (noting that under *Dura*, courts must ensure that the defendant's misrepresentation 'proximately caused the plaintiff's economic loss.'") (quoting *Dura*, 544 U.S. at 345-46); *Peters v. Twist Bioscience Corp.*, No. 5:22-CV-08168-EJD, 2023 WL 4849431, at *4 (N.D. Cal. July 28, 2023) (same); *Lewis v. CytoDyn, Inc.*, No. C21-5190 BHS, 2021 WL 3709291, at *5 (W.D. Wash. Aug. 19, 2021) (applying *Dura*, "[a] court should therefore only consider those losses that will 'actually be recoverable in the class action.'") (quoting *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 617 (S.D.N.Y. 2015)).

The Southern District of New York's recent decision in *In re Canopy Growth Corporation Sec. Litig.*, 1:23-cv-04302 (S.D.N.Y.) (submitted herewith as Exhibit A to the accompanying

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

Reply Declaration of Jennifer Pafiti ("Pafiti Reply Decl.")), is instructive.  There, the court considered competing motions respectively filed by two movants, Thinh Nguyen ("Nguyen") and Chen Li ("Li").  Although Nguyen claimed a larger investment loss than Li by a measure of several hundred thousand dollars, the court ultimately found that the majority of Nguyen's investment losses were incurred prior to the disclosure of the defendants' alleged fraud.  Applying *Dura* loss-causation principles, the court excluded all non-recoverable losses from Nguyen's financial interest measure:

> As Nguyen's filings reveal, almost all of the diminution in the market value of his Canopy shares occurred prior to the first date when any plaintiff alleges that Canopy Growth's alleged misconduct was disclosed, even in part. Nguyen owned Canopy stock for a long period before any partial disclosure of the fraud, during which Canopy's share price plummeted considerably. And because that drop preceded any corrective disclosure, it must, on the pleadings, be taken to reflect factors independent of any revelation of the fraud.

> \* \* \* \* \*

> Thus, from an investment perspective, Nguyen fared worse than Li, as a result of the precipitous drop in Canopy's stock price after his purchases. But from the perspective of this litigation, Li fared worse than Nguyen.  ***A shareholder can recover only what he lost as a result of disclosure of the false statement.*** . . .

> ***Li thus has by far the greater stake in this litigation, in which only the movants' post-disclosure losses may be recovered.***  Put differently, Nguyen's pre-disclosure loss (approximately $850,357), which accounts for the vast majority of his overall investment loss ($1,037,560), must be put aside as predating the first disclosure.

Pafiti Reply Decl. Ex. A at 15-18 (emphases added).  The court thus found that Li, not Nguyen, had the largest financial interest in the relief sought by the class, on the basis that Li "demonstrably lost more due to the alleged fraud, and thus has more to gain from this lawsuit." *Id.* at 19.

Tran claims that "[c]ourts typically do not adhere strictly to *Dura* at the lead plaintiff stage because doing so requires the court to prematurely delve into a merits analysis where expert

4

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

opinion is needed", arguing that because the Complaint in this Action alleges more than one corrective disclosure, the relevant "fraud premium"—*i.e.*, the amount by which the Company's share price was artificially inflated by Defendants' false and misleading statements—must have varied. Dkt. No. 54 at 3-4. Yet no merits analysis requiring expert opinion is necessary here. Contrary to Tran's suggestion, the issue is not how to assess the appropriate measure of fraud premium at this stage. Rather, the issue is simply whether the investment losses that Tran incurred on August 14, 2023, when Hawaiian Electric's stock price fell by $10.94 per share, were proximately caused by the Defendants' alleged fraud *at all*—and they demonstrably were *not*. As discussed at length in Warren's opposition brief, Tran purchased Hawaiian Electric stock only *after* reports of Hawaiian Electric's role in the Maui wildfires had reached the market. Accordingly, Warren's investment losses attributable to the stock drop that followed that initial disclosure plainly were *not* caused by the alleged fraud, because the truth of the inadequacy of the Company's safety procedures was by then known to Tran and the rest of the investing public— meaning that Tran *cannot* have been deceived by the Defendants' alleged misstatements with respect to the Company's safety practices at that point in time. The correct measure of fraud premium is irrelevant because Tran cannot claim *any* recoverable losses caused by revelation of the Company's defective safety practices because ***the truth about the Company's safety practices was public knowledge when Tran purchased his shares***. Tran himself does not dispute the timing of his purchases, and this ends the inquiry. Although Tran attempts to characterize Morningstar's downgrade of Hawaiian Electric's price target after market hours on August 14, 2023 and S&P's downgrade of Hawaiian Electric's credit rating on the morning of August 15, 2023 as additional corrective disclosures that proximately caused his losses (*see* Dkt. No. 50 at 5-6), these downgrades merely encapsulated prior fire-related disclosures from the preceding

5

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

weekend and did not reveal any new information to the market such that Tran can claim to have been defrauded. Under the loss-causation principles articulated by *Dura*, then, Warren's financial interest in this litigation is limited to the losses incurred in connection with the later stock drop on August 15, 2023—in which the extent of the financial and legal challenges that the Company faced in connection with the fire was revealed—which losses amount to only $34,089.

### 2.    Tran Cannot Represent the Claims of All Class Members

Separate and apart from his lacking the largest financial interest in this litigation, Tran is further ineligible for appointment as Lead Plaintiff because, as he has acknowledged, the timing of Tran's purchases differentiates him from many of the Class members in this Action, thereby making him inadequate and atypical as a Class representative under Rule 23. Tran's own opposition brief acknowledges the distinction between investors who purchased before the Maui wildfires and those, like Tran, who "purchased . . . shares after the fires erupted." Dkt. No. 50 at 8. Tran analogized this distinction to that at issue in *Ludlow v. BP P.L.C.*, 800 F.3D 674 (5th Cir. 2015), a case involving losses incurred by BP P.L.C. investor following the 2010 Deepwater Horizon oil spill:

> In *Ludlow*, the plaintiffs attempted to certify two classes, one consisting of investors who purchased "pre-spill" and one consisting of investors who purchased "post-spill." The alleged misrepresentations for the "pre-spill" class focused on the efficacy of the defendants' safety procedures, similar to the "pre-fire" allegations against Hawaiian Electric. The "pre-spill" misrepresentations relied on a "materialization of the risk" theory of damages which created too many individualized questions of fact and, consequently, precluded the plaintiffs from demonstrating "predominance" under Rule 23(b) at class certification. Thus, assuming the matter at hand would present similar issues, it would be illogical and detrimental to the class to disqualify Mr. Tran from serving as the lead plaintiff based solely upon the timing of his purchases. ***The strongest claims in this action are likely those belonging to investors who purchased after the fires erupted (like Mr. Tran)***.

Dkt. No. 50 at 8-9 (internal citations omitted and emphasis added).

6

By distinguishing between pre-fire and post-fire Hawaiian Electric investors, asserting that post-fire purchasers "likely" have the "strongest claims", and analogizing to a case in which plaintiffs sought to certify two distinct classes based on the timing of investors' purchases, Tran has taken a position that precludes him from serving as sole Lead Plaintiff in this Action. Tran acknowledges that he purchased all of "his shares after the fires erupted", which places him squarely—and *solely*—in the post-fire investor class. Tran has likewise taken the position that this case, like *Ludlow*, involves distinct theories of fraud, involving "the efficacy of the defendants' safety procedures" for the pre-fire class and a "materialization of the risk" for the post-fire class. Having articulated these distinctions, Tran plainly cannot claim to be typical, within the meaning of Rule 23, of a pre-fire class. This lack of typicality likewise renders Tran inadequate under Rule 23 to represent the pre-fire class's interests, as he plainly lacks an incentive to vigorously pursue losses incurred by a class of which he does not qualify as a member. Compounding this inadequacy is the fact that Tran has already expressed the view that "[t]he strongest claims in this action are likely those" of the post-fire investor Class, which further calls into question his readiness to pursue the claims of all Class members with equal vigor.

Further disqualifying Tran from consideration is his highly unusual trading activity, which entailed purchasing 109,493 shares of Hawaiian Electric stock on August 14, 2023, and then immediately unloading 105,053, or *96%* of them, on the following day. Tran's unusual trading pattern makes him, at best, suited to represent only a very narrow class of investors similarly situated—*i.e.*, those who purchased their shares during the single trading day that elapsed between the two alleged corrective disclosures and thus only could have incurred recoverable losses in connection with the second. Moreover, if appointed Lead Plaintiff, Tran will foreseeably be required to spend ample time and resources litigating questions unique to his own unusual trading

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

activity, thereby hindering his ability to vigorously prosecute the Class's fraud claims. *See*, *e.g.*, *Faris v. Longtop Financial Technologies Ltd.*, 2011 U.S. Dist. LEXIS 112970, at *8 (S.D.N.Y. Oct. 4, 2011) (denying motion where movants "invested in Longtop securities notwithstanding notice of defendants' misstatements and omissions"; *Erickson v. Snap, Inc.*, No. 2:17-cv-03679-SVW-AGR, 2017 WL 11592635, at *3-4 (C.D. Cal. Sept. 18, 2017) (ruling that a large purchase of shares after corrective disclosures could render a plaintiff atypical, and refusing to appoint plaintiff as lead who purchased 60% of his stock following partial disclosures even though the plaintiff nominally had the largest loss); *In re Valence Tech. Sec. Litig.*, 1996 WL 119468, *5 (N.D. Cal. Mar. 14, 1996) (denying class certification for failure to satisfy typicality because proposed class representative increased his holdings in defendant's stock after a partial disclosure); *Rolex Employees Ret. Trust v. Mentor Graphics Corp.*, 136 F.R.D. 658, 664 (D. Or. 1991) (denying class certification where plaintiff purchased stock after learning of the alleged misrepresentations).

By contrast, Warren purchased his shares prior to, and held through, both corrective disclosures, meaning he is incentivized to pursue recovery on behalf of ***all*** Class members and recover all potential class-wide damages. Also, unlike Tran, there is nothing about Warren's trading patterns that threatens to become the focus of this litigation. Accordingly, if the Court chooses to appoint Tran to a leadership role, it should also appoint Warren to serve as a Co-Lead Plaintiff alongside Tran, thereby ensuring that the interests of all Class members are represented by a movant unencumbered by unique defenses.

### B.    There Is No Basis to Appoint the Retirement System as Lead Plaintiff

As anticipated (*see* Dkt. No. 51 at 5, 15-16), the Retirement System argues that its status as an institutional investor entitles its motion to preferential treatment—*i.e.*, that the Court should

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS
LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

appoint the Retirement System as Lead Plaintiff instead of Warren, who the Retirement System concedes has suffered a greater loss (*see* Dkt. No. 49 at 4), simply because the Retirement System is an institutional investor and Warren is not.  Although the PSLRA does not even mention, let alone privilege, institutional investors, the Retirement System attempts to shoehorn its argument into the statutory framework by arguing that the Retirement System—again, simply because it is an institution with prior litigation experience—"is the only movant before the Court that has made the requisite showing of adequacy."  Dkt. No. 49 at 4.

The Retirement System's argument fails because it is wholly inconsistent with the lead plaintiff appointment process set forth in the PSLRA.  Pursuant to the statute, a court first determines which Lead Plaintiff candidate has the "largest financial interest" in the litigation.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(bb).  Here, Warren possesses the largest financial interest, and the Retirement System has not argued otherwise.  *See* Dkt. No. 49 at 4.  After identifying the movant with the largest financial interest, a court then assesses whether that movant satisfies the adequacy and typicality requirements of Rule 23.  15 U.S.C. § 78u–4(a)(3)(B)(iii)(I)(cc).  At the lead plaintiff appointment stage of the litigation, this inquiry is *prima facie*.  *See*, *e.g.*, *Hessefort v. Super Micro Comput., Inc.*, 317 F. Supp. 3d 1056, 1060-61 (N.D. Cal. 2018).  Here, Warren has demonstrated that he has no conflicts of interest with other Class members and is prepared to vigorously prosecute this litigation on their behalf, thereby making the requisite showing of adequacy.  *See*, *e.g.*, *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Warren has also demonstrated that his claims in this litigation arise from the same course of conduct as the other Class members, thereby making the requisite typicality showing.  *See*, *e.g.*, *Richardson v. TVIA, Inc.*, No. C06-06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007).  Possessing the largest financial interest and having satisfied Rule 23's requirements, Warren is thus entitled to

the statutory "most adequate plaintiff" presumption—that is, he is the presumptive Lead Plaintiff of this Action.  Crucially, "once the presumption is triggered, the question *is not* whether another movant might do a better job of protecting the interests of the class than the presumptive lead plaintiff; instead, the question is whether anyone can prove that the presumptive lead plaintiff will not do a fair and adequate job."  *In re Cendant Corp. Litig.*, 264 F.3d 201, 268 (3d Cir. 2001) (emphasis in original).

The Retirement System's argument turns this standard on its head.  In urging the Court to appointed it as Lead Plaintiff rather than Warren, the Retirement System has not even tried to prove that Warren, as the presumptive Lead Plaintiff, will not fairly and adequately represent the Class.  Rather, it simply urges the Court to appoint it as Lead Plaintiff instead because, as an institutional investor, it will supposedly do a "better job" than Warren.  This is unequivocally at odds with the PSLRA's instructions and federal securities jurisprudence.  *See*, *e.g.*, *Reiger v. Altris Software, Inc.*, 98-cv-0528 (JFS), 1998 U.S. Dist. LEXIS 14705, at \*14 (S.D. Cal. Sept. 11, 1998) ("If Congress had intended to restrict the application of the rebuttable presumption to institutional investors, it could have stated such in the statute.").

### C.     The Co-Lead Stipulation Has No Bearing on Warren's Adequacy

Finally, competing movant Williams, after initially stating his non-opposition to the competing motions (Dkt. No. 43), now argues that Warren is inadequate because he was a party to the Co-Lead Stipulation.  *See generally* Dkt. No. 52.  Williams willfully mischaracterizes the Co-Lead Stipulation as a "self-interest[ed]" and "lawyer-driven" machination that somehow "violate[d] the spirit of the "PSLRA" and constitutes grounds to disqualify all three Stipulating Movants.  *See id.* at 1.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

Williams's hyperbole notwithstanding, there was nothing improper or contrary to the PSLRA about the Stipulating Movants' entry into the Co-Lead Stipulation, and certainly nothing that would disqualify all of the Stipulating Movants from appointment as Lead Plaintiff. As set forth in the Co-Lead Stipulation, Lead Plaintiff movants in PSLRA actions frequently find "a protracted dispute concerning lead plaintiff appointment . . . not [to be] in the best interests of the class and that jointly prosecuting [the] litigation would be appropriate and assist with the speedy commencement of [the] litigation." *See*, *e.g.*, *In re Facebook, Inc. Sec. Litig.*, No. 5:18-cv-01725-EJD, ECF 56 at 2-3 (N.D. Cal. Aug. 3, 2018) (approving stipulation of lead plaintiff movants). The Co-Lead Stipulation was nothing more than a good-faith effort to this effect on the part of the Stipulating Movants. The Court's Order denying the Co-Lead Stipulation simply stated that there was not a basis to grant it in this Action. *See* Dkt. No. 48 at 3 (finding that lead plaintiff motion practice in this Action "has not yet risen to level of a 'protracted dispute'—instead, it is proceeding exactly as the PSLRA contemplates."). The Court has not so much as suggested that entry into the Co-Lead Stipulation raises concerns about the Stipulating Movants' adequacy, and its Order in fact encouraged the competing applicants to continue to pursue their individual motions. *See id.* at 4 (setting briefing schedule for responses and replies to competing motions). Moreover, contrary to Williams's insinuation, there are no undisclosed arrangements between Warren and either of the other two Stipulating Movants (or their respective counsel). If appointed Lead Plaintiff, Warren will only include additional plaintiffs on an Amended Complaint or assign work to law firms other than Pomerantz, his proposed Lead Counsel, with the Court's express permission. Williams's effort to recast the Co-Lead Stipulation as grounds for disqualification is unavailing.

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC

## III.    CONCLUSION

For the foregoing reasons, and for the reasons set forth in his moving and opposition briefs (Dkt. Nos. 38, 51), Warren respectfully requests that the Court issue an Order: (1) appointing Warren as Lead Plaintiff for the Class; and (2) approving his selection of Pomerantz as Lead Counsel for the Class.

Dated:  November 30, 2023                Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Lead Plaintiff Movant Daniel Warren and Proposed Lead Counsel for the Class*

12

PROOF OF SERVICE

I hereby certify that on November 30, 2023, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

/s/ Jennifer Pafiti
Jennifer Pafiti

MEMORANDUM OF LAW IN FURTHER SUPPORT OF MOTION OF DANIEL WARREN FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL - 3:23-cv-04332-JSC