UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL,<br><br>                    Plaintiff,<br><br>       v.<br><br>HAWAIIAN ELECTRIC INDUSTRIES, INC., et al.,<br><br>                    Defendants. | Case No. 3:23-cv-04332-JSC<br><br>**ORDER APPOINTING LEAD PLAINTIFF AND LEAD COUNSEL**<br><br>Re: Dkt. Nos. 13, 16, 21, 32, 38, 53 |

Bhapinderpal S. Bhangal brings this Private Securities Litigation Reform Act ("PSLRA") securities class action on behalf of himself and a group of similarly situated individuals who purchased Hawaiian Electric securities between February 28, 2019 and August 16, 2023. (Dkt. No. 1.)[1] Now pending before the Court are various parties' motions to be appointed lead plaintiff. The Court GRANTS Daniel Warren's motion to be lead plaintiff and appoints Pomerantz LLP as lead counsel. (Dkt. No. 38). The Court DENIES the motions to be lead plaintiff of Phu Tran (Dkt. No. 13), Melvin Wong (Dkt. No. 16), the City of Pontiac Reestablished General Employees' Retirement System ("Pontiac Retirement System") (Dkt. No. 21), and Mark Williams (Dkt. No. 32). After consideration of the motions, Warren has demonstrated he is the movant with the largest financial interest in the litigation who has also made a *prima facie* showing that he is an adequate class representative.

**PROCEDURAL BACKGROUND**

Bhapinderpal S. Bhangal filed this securities class action in August 2023 alleging two claims under Sections 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. § 78j(b), and

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

Rule 10b-5. (Dkt. No. 1 at 26-31.) Pomerantz Law Firm published notice of the action on August 24, 2023. (Dkt. No. 6-1 at 2.)

Tran moved to be appointed lead plaintiff and for appointment of the firm Levi & Korsinsky, LLP as lead counsel. (Dkt. No. 13.) The same day, the Pontiac Retirement System moved to be appointed lead plaintiff and for appointment of the firm Robbins Geller Rudman & Dowd LLP as lead counsel (Dkt. No. 21), Williams moved to be appointed lead plaintiff and for the appointment of the firm Faruqi & Faruqi, LLP as lead counsel (Dkt. No. 32), and Warren moved to be appointed lead plaintiff and for appointment of the firm Pomerantz LLP as lead counsel (Dkt. No. 38).[2] Two weeks later, Williams then filed a non-opposition to the other motions for appointment as lead plaintiff, explaining he did not have the largest financial interest among the movements but that he was "willing and able" to assume the role of lead plaintiff "should the Court determine that any of the other movements with larger financial interests are incapable and/or inadequate to serve as Lead Plaintiff." (Dkt. No. 43 at 2.) The same day, Tran, the Pontiac Retirement System, and Warren together moved to serve jointly as lead plaintiff and for their selection of law firms to serve jointly as lead counsel. (Dkt. No. 44.) Defendants submitted a response and limited objection to the Plaintiffs' stipulation. (Dkt. No. 46.)

The Court denied the proposed stipulation for Tran, the Retirement System, and Warren to serve jointly as lead plaintiff, and invited parties to file responses to one another's motions to be lead plaintiff. (Dkt. No. 48.) The Pontiac Retirement System (Dkt. No. 49), Tran (Dkt. No. 50) and Warren (Dkt. No. 51) all submitted responses asking to be named lead plaintiff. Williams also submitted a response, revoking his previous non-opposition, and again asking to be named lead plaintiff. (Dkt. No. 52.)[3]

//

---

[2] On the same day, two other Plaintiffs moved for appointment as lead plaintiff: Melvin Wong (Dkt. No. 16) and Douglas A. Keehn. (Dkt. No. 28.) Both have since noticed non-opposition to other Plaintiffs' appointment as lead plaintiff because each recognized other Plaintiffs had larger financial interests in the litigation. (Dkt. Nos. 41 (Melvin Wong's non-opposition), 44 (Douglas A. Keehn's withdrawal of motion for appointment of lead plaintiff).

[3] Warren also filed an administrative motion requesting the Court enter an order permitting him to file a redacted version of the engagement agreement between Williams and his counsel, the Faruqi Firm. (Dkt. No. 53.) The Court GRANTS the motion.

## DISCUSSION

Under the PSLRA, the Court must appoint "as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members." 15 U.S.C.A. § 78u-4(a)(3)(B)(i). The PSLRA creates "a presumption that the most adequate plaintiff" is the individual who (1) "has either filed the complaint or made a motion in response to a notice"; (2) "has the largest financial interest in the relief sought by the class"; and (3) "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *Id.* § 78u-4(a)(3)(B)(iii)(I). This presumption "may be rebutted only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff—" (1) "will not fairly and adequately protect the interests of the class; or" (2) "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *Id.* § 78u-4(a)(3)(B)(iii)(II).

All four Plaintiffs "made a motion in response to a notice," thereby satisfying the first requirement of the presumption. 15 U.S.C.A. § 78u-4(a)(3)(B)(i). The PSLRA requires motions by proposed lead plaintiffs to be filed within 60 days of the publication of notice of the action. *See* 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Each Plaintiff's motion to be appointed as lead plaintiff and to have their choice of counsel appointed as lead counsel was timely. (Dkt. Nos. 13, 21, 32, 38.)

The second required element to be the presumptive lead plaintiff is to be the plaintiff "who has the greatest financial stake in the outcome of the case." *In re Cavanaugh*, 306 F.3d 726, 729 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(a)(3)(B)(i)). Based on the party submissions, Tran alleges the greatest financial stake in this case—he alleges a loss of $564,463.13. (Dkt. No. 13-3 at 2.) In comparison, Warren alleges he purchased 15,495 shares of Hawaiian Electric stock during the Class Period, and incurred losses of approximately $240,675 (Dkt. No. 38-3 at 2), Williams alleges he purchased 20,000 shares of Hawaiian Electric stock during the Class Period and incurred losses of approximately $115,158 (Dkt. No. 33-3 at 2), and the Pontiac Retirement System alleges it purchased 6,420 shares of Hawaiian Electric stock during the Class Period and incurred losses of approximately $106,116.79 (Dkt. No. 22 -2 at 2).

The final requirement to be the presumptive lead plaintiff is to "otherwise satisfy[y] the

3

requirements of Rule 23 of the Federal Rules of Civil Procedure," meaning the Plaintiff must "ma[ke] a prima facie showing of adequacy and typicality." *In re Mersho*, 6 F.4th 891, 896 (9th Cir. 2021). "Courts determine whether a plaintiff will adequately represent a class by answering two questions: (1) do the movant and its 'counsel have any conflicts of interest with other class members' and (2) will the movant and its 'counsel prosecute the action vigorously on behalf of the class?'" *Id.* at 899-900 (quoting *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011)). "At this step, the process is not adversarial, so the Rule 23 determination should be based on only the movant's pleadings and declarations." *Id.* at 899. Tran's "pleading and declarations" establish Tran "has no conflicts with other Class Members" and that he and his counsel would vigorously prosecute the action. (Dkt. Nos. 50 at 11, 13-5.) So, Tran has met the adequacy requirement of Rule 23.

However, Tran fails the "typicality" requirement of Rule 23. Tran alleges his purchases occurred on August 14, 2023, and he sold the stock at a loss on August 15, 2023. (Dkt. No. 13-2 at 3.) According to the complaint, news outlets were reporting Hawaiian Electronic lacked the proper policies and procedures to mitigate fires on August 12, 2023—two days before Tran bought any Hawaiian Electric stock. (*Id.* ¶ 4.) And the Lahaina fire began on August 8, 2023, before he bought. (*Id.* ¶ 3.) Tran's purchasing decisions and timeline indicate his losses may have been caused by something other than Defendants' false or misleading statements or omissions. In addition, Tran did not submit a declaration to explain his purchase history, or otherwise establish why he satisfies the class representative requirements.

Tran argues his claims are "typical" of the class because "like other Class members, he acquired Hawaiian Electric securities squarely during the Class Period at prices artificially inflated by Defendants' misrepresentations and/or omissions that form the basis for the action." (Dkt. No. 50 at 9.) However, Tran admits "these purchases came after a partial corrective disclosure on August 12, 2023." (*Id.*) Tran argues "Hawaiian Electric continued to publicly defend its responses to the fires, and in turn, continued to mislead investors" from August 12 until August 14. (*Id.*) Then, the morning of August 15, S&P Global downgraded Hawaiian Electric and its subsidiaries to "BB-," and later on August 15, Tran sold the "lion's share of his Hawaiian Electric

4

Stock." (Dkt. Nos. 50-5, 50 at 10.) However, in the press release provided by Tran, S&P Global indicated the reason it was downgrading Hawaiian Electric was because "[t]he severity of these wildfires demonstrate higher wildfire risk for the company than previously contemplated." (*Id.* at 4.) The information S&P relied on in downgrading Hawaiian Electric—the extent and severity of the wildfires—was information available to Tran on August 14, the day he purchased the Hawaiian Electric stock. Further, Tran cites to a Morningstar article published "after market hours on August 14, 2023" which "announc[ed] its decision to lower Hawaiian Electric's price target." (*Id.*) However, that article acknowledges "numerous press reports over the weekend that suggest Hawaiian Electric's equipment may have been responsible for the recent Lahaina fire in the utility's territory." (Dkt. No. 50-6.) The Morningstar article was published on Monday, August 14—meaning it relied on press reports from the "weekend" of August 12 and 13—press reports that would have been available to Tran at the time he purchased stock on August 14. So, Tran has failed to demonstrate his claims are typical of the class.

Further, even if Tran was presumptively the most adequate lead plaintiff, that presumption would "be rebutted" due to "proof" Tran "is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)–(bb)). First, as discussed above, Tran purchased all his shares of Hawaiian Electric stock after a partial disclosure. *GAMCO Invs., Inc. v. Vivendi, S.A.*, 917 F. Supp. 2d 246, 261 (S.D.N.Y. 2013) ("[P]ost-disclosure purchases can defeat the typicality requirement for class certification when plaintiffs made a disproportionately large percentage of their purchases post-disclosure." (cleaned up)); *Erickson v. Snap, Inc.*, No. 2:17-CV-03679-SVW-AGR, 2017 WL 11592635, at *3 (C.D. Cal. Sept. 18, 2017) (finding a plaintiff atypical, and therefore denying the plaintiff's motion to be lead counsel, because the plaintiff's "transaction pattern presents a unique issue" since the plaintiff's "post-disclosure purchases more than double[d] his holdings" in defendant). Second, Tran purchased a high volume of shares and then sold almost all of them one day later, which suggests his trading may have been based on strategies other than relying on the truth of Defendants' statements. *Rodriguez v. DraftKings Inc.*, No. 21 CIV. 5739 (PAE), 2021 WL 5282006, at *11 (S.D.N.Y. Nov. 12, 2021) (declining to appoint an individual as lead plaintiff

because of his "unique trading patterns" including "short-selling and day trading"); *Eichenholtz v. Verifone Holdings, Inc.*, No. C07-06140MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (explaining a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility" and a day-trader "may be subject to a unique defense regarding its reliance upon publicly available information."). As a result, Tran will be subject to the unique defense that he did not actually rely on Defendants' misleading statements, but rather other strategic reasons for buying and selling Hawaiian Electric stock.

Since Tran, as "the movant with the largest losses does not satisfy the Rule 23 requirements," the Court "must then look to the movant with the next largest losses and repeat the inquiry." *In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021). So, the Court appoints Warren as class representative and Pomerantz LLP as lead counsel. After Tran, Warren has the largest financial interest in the litigation. Warren has also met his burden of setting forth a prima facie case that he can satisfy the class representative requirements of Rule 23. Warren meets the adequacy and typicality requirements because, like the rest of the proposed class, he purchased shares in Hawaiian Electric during the class period and suffered damages because of Defendants' false or misleading statements or omissions. (Dkt. No. 38 at 13.)  There is no indication of any conflict between Warren and other class members. Finally, Warren has submitted a declaration attesting to his adequacy as class representative (Dkt. No. 38-6), and Pomerantz has submitted evidence it is able to vigorously prosecute this case. (Dkt. No. 38-7.)

The Pontiac Retirement System contends it should be appointed as lead plaintiff because it "is the only institutional investor before the Court and the only movant with an actual track record of successfully prosecuting securities class action cases." (Dkt. No. 49 at 2.) While Pontiac Retirement System points to the legislative history of the PSLRA as evidence Congress intended to "increase[e] the role of institutional investors" in securities class actions (Dkt. No. 40 (quoting S. Rep. No. 104-98, at 11 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 690)), the text of the PSLRA does not indicate courts should show any special solicitude for institutional investors in the lead-plaintiff selection process, and the Court will not rewrite the statute to do so. *See Bostock*

6

*v. Clayton Cnty., Georgia*, 140 S. Ct. 1731, 1749 (2020) ("This Court has explained many times over many years that, when the meaning of the statute's terms is plain, our job is at an end. The people are entitled to rely on the law as written, without fearing that courts might disregard its plain terms based on some extratextual consideration."). The Pontiac Retirement System does not point to any reasons Warren is inadequate to represent the class, rather, the Pontiac Retirement System suggests it is more qualified because of its "proven ability to prosecute the action vigorously on behalf of the class." (Dkt. No. 55 at 2.) The Pontiac Retirement System's previous successful litigation efforts do not rebut Warren's presumptive status as most adequate lead plaintiff and are not proof of Warren's inadequacy or any unique defenses that will apply to Warren. So, Pontiac Retirement System's motion to be appointed as lead plaintiff is denied.

Finally, Williams argues all "other movants have demonstrated they are incapable and/or inadequate to serve as lead plaintiff" because the stipulation of the three other movants demonstrates they "sought to skirt established protocols in this Circuit and the PSLRA to apparently permit their counsel to elevate their own self-interests above the interests of absent class members by cutting a deal with a cherry-picked group of movants." (Dkt. No. 52 at 6-7.) However, plaintiffs moving together to be appointed lead plaintiff as a group is not disqualifying under the PSLRA. *See In re Mersho*, 6 F.4th 891, 899 (9th Cir. 2021) (explaining the PSLRA "expressly allows a 'group of persons' to move for appointment."). Williams asserts Warren is not adequate to serve as lead plaintiff because he has "participated in an improper lawyer-driven contrivance with no evidence that that has been disentangled." (Dkt. No. 52.) However, since Warren has met all the requirements to be presumptively lead plaintiff under the PSLRA, it is not up to Warren to provide evidence to rebut Williams' claims, rather, it is up to Williams, and other Plaintiffs seeking to disqualify Warren from appointment, to provide "proof" Warren cannot adequately represent the class. 15 U.S.C.A. § 78u-4(a)(3)(B)(iii)(II). Williams provides no such proof.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Daniel Warren's motion to be lead plaintiff in this action. and any subsequently filed or transferred actions that are consolidated with this

7

action, pursuant to 15 U.S.C. §78u-4(a)(3)(B).

The Court appoints Pomerantz LLP as lead counsel. Lead counsel shall have the following responsibilities and duties on behalf of lead plaintiff and the putative class:

(a) preparing and filing all pleadings;

(b) briefing and arguing any and all motions;

(c) conducting any and all discovery proceedings including depositions;

(d) settlement negotiations;

(e) pretrial discovery proceedings and the preparation for trial and the trial of this matter; and

(f) the supervision of all other matters concerning the prosecution or resolution of the consolidated action.

The Court DENIES the motions to be lead plaintiff filed by Pontiac Retirement System, Phu Tran, and Mark Williams.

All securities class actions on behalf of purchasers of Hawaiian Electric securities subsequently filed in, or transferred to, this District shall be consolidated into this action. This Order shall apply to every such action, absent an order of the Court. A party objecting to such consolidation, or to any other provisions of this Order, must file an application for relief from this Order within 10 days after the action is consolidated into this action. This Order is entered without prejudice to the rights of any party to apply for severance of any claim or action.

Pursuant to the Court's Order dated October 5, 2023 (Dkt. No. 11), the Parties will meet and confer and submit a proposed schedule for the filing of an amended complaint and a briefing schedule on Defendants' anticipated motion to dismiss within thirty (30) calendar days following entry of this Order.

**IT IS SO ORDERED.**

This Order disposes of Dkt. Nos: 13, 16, 21, 32, 38, 53.

Dated: December 7, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge