MARK R.S. FOSTER (SBN 223682)
mark.foster@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

*Attorneys for Defendants Hawaiian Electric
Industries, Inc., Constance H. Lau, Scott W. H. Seu,
Gregory C. Hazelton, and Paul K. Ito*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HAWAI'IAN ELECTRIC INDUSTRIES, INC., CONSTANCE H. LAU, SCOTT W. H. SEU, GREGORY C. HAZELTON, and PAUL K. ITO, <br><br> Defendants. | **CLASS ACTION** <br><br> Case No.: 3:23-cv-04332-JSC <br><br> Date:   September 26, 2024 <br> Time:   10:00 a.m. <br> Hon.   Jacqueline Scott Corley <br> Courtroom: 8—19th Floor <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE AMENDED COMPLAINT** |

# **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ......................................................................................................... ii

I.    Preliminary Statement ........................................................................................ 1

II.   Defendants Cannot Be Liable for Statements Made by HEI's Subsidiaries .............. 2

III.  Plaintiffs Fail to Plead a Materially False or Misleading Statement ........................ 3

    A.    HECO's Public Disclosures Defeat Plaintiffs' Claims ................................... 3

    B.    Plaintiffs Fail to Plead That Any Statement Was False or Misleading
        When Made .................................................................................................. 4

        1.    Plaintiffs Fail to Plead that HEI's Opinions About Its
            Subsidiaries' Responses to Environmental Conditions Were False
            or Misleading ................................................................................. 4

        2.    Plaintiffs Fail to Plead that HECO Had a Policy Against
            Vegetation Control .......................................................................... 5

        3.    Plaintiffs Fail to Plead that HEI's Statements About Working
            with the Community to Control Wildfire Risk Were False or
            Misleading ...................................................................................... 7

        4.    Plaintiffs Fail to Plead that HEI's and HECO's Statements About
            Upgrading Electrical Infrastructure Were False or Misleading .......... 8

        5.    Plaintiffs Fail to Plead that Maui Electric's Statement About Pole
            Replacements on Lahainaluna Road in 2019 Was False or
            Misleading ...................................................................................... 9

        6.    Plaintiffs Fail to Plead that HECO's Statements About Its
            Compliance With Safety Standards Were False or Misleading ........ 10

        7.    Plaintiffs Fail to Plead that HEI's Safety Statements Are
            Actionable ..................................................................................... 11

        8.    Plaintiffs Fail to Plead that HEI Misrepresented its ERM Program . 12

IV.   Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter ............ 12

    A.    Plaintiffs' Allegations for Each Individual Defendant Are Insufficient........ 12

        1.    Plaintiffs Fail to Plead Defendants' Involvement in HECO's
            Statements ..................................................................................... 12

        2.    Plaintiffs Fail to Plead That Any Individual Defendant Knew
            Information Contradicting Any Challenged Statement .................... 12

    B.    Viewed Holistically, Plaintiffs' Allegations Do Not Show Scienter ............ 15

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT        CASE No.: 3:23-cv-04332-JSC

## TABLE OF AUTHORITIES

### CASES

**Page(s)**

In re Amgen Inc. Securities Litigation,
  No. CV 07–2536 PSG (PLAx),
  2014 WL 12585809 (C.D. Cal. Aug. 4, 2014)........................................................................... 14

Barnes v. Edison International,
  No. CV 18-09690 CBM,
  2021 WL 2325060 (C.D. Cal. Apr. 27, 2021),
  aff'd, No. 21-55589, 2022 WL 822191 (9th Cir. Mar. 18, 2022).............................................. 9

Berson v. Applied Signal Technology, Inc.,
  527 F.3d 982 (9th Cir. 2008) ................................................................................................... 14

Brody v. Transitional Hospitals Corp.,
  280 F.3d 997 (9th Cir. 2002) ..................................................................................................... 5

City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.,
  856 F.3d 605 (9th Cir. 2017) ..................................................................................................... 4

City of Roseville Employees' Retirement System v. Energy Solutions, Inc.,
  814 F. Supp. 2d 395 (S.D.N.Y. 2011)........................................................................................ 3

Delaware County Employees Retirement System v. Cabot Oil & Gas Corp.,
  620 F. Supp. 3d 603 (S.D. Tex. 2022) ..................................................................................... 14

Flynn v. Exelon Corp.,
  No. 19 C 8209,
  2021 WL 1561712 (N.D. Ill. Apr. 21, 2021) ............................................................................ 3

Hadley v. Kellogg Sales Co.,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .................................................................................. 12

Halliburton Co. v. Erica P. John Fund, Inc.,
  573 U.S. 258 (2014)................................................................................................................. 10

Retail Wholesale & Department Store Union Local 338 Ret. Fund v. Hewlett-Packard Co.,
  845 F.3d 1268 (9th Cir. 2017) ................................................................................................. 11

Ikeda v. Baidu, Inc.,
  No. 20-CV-02768-LHK,
  2021 WL 1299046 (N.D. Cal. Apr. 7, 2021) ........................................................................ 1, 4

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT        CASE No.: 3:23-cv-04332-JSC

Jackson v. Fischer,
    931 F. Supp. 2d 1049 (N.D. Cal. 2013) ................................................................ 12

Janus Capital Group, Inc. v. First Derivative Traders,
    564 U.S. 135 (2011) .......................................................................................... 1, 2, 3

Khoja v. Orexigen Therapeutics, Inc.,
    899 F.3d 988 (9th Cir. 2018) ............................................................................... 10

Knox v. Yingli Green Energy Holding Co.,
    Nos. 2:15-cv-04003-ODW(MRWx), 2:15-cv-04600-ODW (MRWx),
    2016 WL 6609210 (C.D. Cal. May 10, 2016) ..................................................... 8

In re MannKind Securities Actions,
    835 F. Supp. 2d 797 (C.D. Cal. 2011) ................................................................ 14

McIntire v. China MediaExpress Holdings, Inc.,
    927 F. Supp. 2d 105 (S.D.N.Y. 2013) .................................................................. 3

Nguyen v. Endologix, Inc.,
    962 F.3d 405 (9th Cir. 2020) ................................................................... 2, 14, 15

Nursing Home Pension Fund, Local 144 v. Oracle Corp.,
    380 F.3d 1226 (9th Cir. 2004) ............................................................................ 13

Omnicare, Inc. v. Laborers District Council Construction Industry Pension Fund,
    575 U.S. 175 (2015) ............................................................................................... 5

Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc.,
    No. 22-cv-03023-TLT,
    2023 WL 4418886 (N.D. Cal. May 24, 2023) ..................................................... 8

Plumley v. Sempra Energy,
    No. 3:16-cv-00512-BEN-AGS,
    2017 WL 2712297 (S.D. Cal. June 20, 2017),
    aff'd, 847 F. App'x 426 (9th Cir. 2021) ...................................................... 9, 10, 11

Plumley v. Sempra Energy,
    847 F. App'x 426 (9th Cir. 2021) ....................................................................... 14

Police Retirement System of Street Louis v. Intuitive Surgical, Inc.,
    759 F.3d 1051 (9th Cir. 2014) .................................................................. 2, 12, 13, 14

Prodanova v. H.C. Wainwright & Co., LLC,
    993 F.3d 1097 (9th Cir. 2021) .......................................................................... 2, 15

iii

Roberti v. OSI Systems, Inc.,
   No. CV 13–9174–MWF (VBKx),
   2015 WL 1985562 (C.D. Cal. Feb. 27, 2015)................................................................ 13

Ronconi v. Larkin,
   253 F.3d 423 (9th Cir. 2001), abrogated on other grounds by
   Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308 (2007) ........................................... 8

Schneider v. California Department of Corrections,
   151 F.3d 1194 (9th Cir. 1998) ....................................................................................... 4

In re Sorrento Therapeutics, Inc. Securities Litigation,
   97 F.4th 634 (9th Cir. 2024) .......................................................................................... 1

South Ferry LP #2 v. Killinger,
   687 F. Supp. 2d 1248 (W.D. Wash. 2009)...................................................................... 15

Swartz v. KPMG LLP,
   476 F.3d 756 (9th Cir. 2007) ........................................................................................ 12

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
   551 U.S. 308 (2007).............................................................................................. 2, 15

In re Tibco Software, Inc. Securities Litigation,
   No. C 05-2146 SBA,
   2006 WL 1469654 (N.D. Cal. May 25, 2006) ................................................................ *passim*

In re Volkswagen "Clean Diesel" Marketing, Sales Practices, & Products Liability Litigation,
   No. 2672 CRB (JSC), 2017 WL 66281 (N.D. Cal. Jan. 4, 2017) ............................................. 3

In re Volkswagen AG Securities Litigation,
   661 F. Supp. 3d 494  (E.D. Va. 2023) ............................................................................. 3

Xu v. ChinaCache International Holdings Ltd.,
   No. CV15-07952-CAS (RAOx),
   2017 WL 114401 (C.D. Cal. Jan. 9, 2017) ...................................................................... 11

In re Zillow Group, Inc. Securities Litigation,
   No. C17-1387-JCC,
   2019 WL 1755293 (W.D. Wash. Apr. 19, 2019)................................................................. 15

Zucco Partners, LLC v. Digimarc Corp.,
   552 F.3d 981 (9th Cir. 2009) ..................................................................................... 6, 14

**REGULATIONS**

17 C.F.R. § 240.3b-7..................................................................................................... 3

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT        CASE No.: 3:23-cv-04332-JSC

**I.    Preliminary Statement**[1]

Rather than meaningfully address the dispositive bases on which Defendants moved to dismiss, Plaintiffs' Opposition instead (1) recycles the AC's deficient and conclusory allegations; and (2) repeatedly attempts to alter the language of the actual challenged statements to pervert their meaning to suit Plaintiffs' flawed theories, all while (3) simultaneously ignoring the full context of Defendants' actual disclosures. These shopworn tactics reflect Plaintiffs' ill-conceived effort to seize upon the stock drops that followed the horrible tragedy in Lahaina to manufacture a securities fraud claim by hindsight. Unsurprisingly, therefore, the Opposition's arguments fail for multiple reasons:

*First*, Plaintiffs do not dispute that 11 challenged statements were issued by and attributed to HEI's subsidiaries. Yet Plaintiffs argue that HEI should nevertheless be legally responsible for these statements because it has an ordinary parent-subsidiary relationship with those subsidiaries. Janus Capital Group, Inc. v. First Derivative Traders, 564 U.S. 135, 142 (2011), squarely rejects this argument.

*Second*, Plaintiffs' claims are premised on the theory that HEI misled investors about the risk that its subsidiaries' electrical infrastructure could spark a wildfire. But HEI's subsidiaries repeatedly and publicly disclosed that exact risk. Plaintiffs cannot maintain a claim based on the false premise that wildfire risk was concealed. Ikeda v. Baidu, Inc., 2021 WL 1299046, at *11 (N.D. Cal. Apr. 7, 2021).

*Third*, none of the 25 challenged statements are false or misleading when considered "in context" and given a "fair reading." In re Sorrento Therapeutics, Inc. Sec. Litig., 97 F.4th 634, 641 (9th Cir. 2024). Unable to show the falsity of any statement, the Opposition repeatedly mischaracterizes the statements and HEI's policies so Plaintiffs can attack a straw man. Consider two examples:

| **Plaintiffs' Characterizations** | **What the Statements Actually Say** |
|---|---|
| "HEI informed investors that it had successfully replaced uninsulated (traditional) power lines with insulated wires." (Opp. 7.) | "We have also replaced traditional power lines with insulated conductor systems to improve reliability and resilience *in targeted areas prone to vegetation-related outages*." (AC ¶ 74.) |
| HEI's "express internal policy, written in its Wildfire Mitigation Plan, was certainly not to 'regularly trim the [grass and brush] vegetation around its equipment,' and indeed not to take any action with respect to 'nonnative fire-prone grasses and shrubs.'" (Opp. 14.) | HECO's "vegetation management programs involve trimming, removing, and herbicide spraying of vegetation on prescribed cycles and is limited to the boundaries of the right-of-way and roadsides . . . . [I]t is not recommended that vegetation management plans *be adjusted* in the wildfire areas. *Further trimming* of the already |

---

[1] Capitalized terms have the same meaning as in HEI's Motion to Dismiss (ECF 81, "Motion" or "Mot."). "Opposition" or "Opp." refers to Plaintiffs' Opposition to HEI's Motion to Dismiss. (ECF 84.) Unless noted, all emphasis is added, and all original citations, brackets and internal quotation marks are omitted.

1

| | low-lying vegetation will not likely produce any appreciable results in the potential wildfire areas." (Ex. 1 at 36.) |
|---|---|

Plaintiffs cannot manufacture falsity by distorting the actual statements made. See In re Tibco Software, Inc. Sec. Litig., 2006 WL 1469654, at *24 (N.D. Cal. May 25, 2006).

*Fourth*, Plaintiffs fail to raise a "compelling" inference of scienter. Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 314 (2007). The Opposition does not dispute that Plaintiffs have not alleged any stock sales or motive for the alleged fraud. This severely undermines any inference of scienter under Ninth Circuit authority. See, e.g., Prodanova v. H.C. Wainwright & Co., LLC, 993 F.3d 1097, 1108 (9th Cir. 2021). Instead, Plaintiffs ask this Court to infer that each Defendant knowingly deceived investors in light of their "access to" contradictory information, and the significance of HECO to HEI's operations. Plaintiffs' arguments amount to nothing more than a theory that the Individual Defendants must have known important information about HECO's business given their positions, and that such information must have been contradictory. Settled law requires far more. Completely missing are particularized facts showing that any Defendant knew any statement was false or misleading when made, as the law requires. Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1062 (9th Cir. 2014). Where, as here, there is no motive or "basis in logic or common experience" to infer a knowing fraud, dismissal is warranted. Nguyen v. Endologix, Inc., 962 F.3d 405, 408 (9th Cir. 2020).

## II.     Defendants Cannot Be Liable for Statements Made by HEI's Subsidiaries

Of the 25 challenged statements, Plaintiffs do not dispute that 11 were attributed to HECO or Maui Electric—and not HEI. (AC ¶¶ 160, 162, 164, 170, 182, 192, 194, 196, 198, 204, 206.) The Opposition does not point to a single allegation showing that, despite these attributions, HEI had "ultimate authority over the statement[s], including [their] content and whether and how to communicate [them]." Janus, 564 U.S. at 142. Accordingly, under Janus, Plaintiffs' claims based on statements made in HECO's and Maui Electric's blog posts, YouTube videos, press releases, and Sustainability Reports must be dismissed. (Mot. 6-8.) Plaintiffs' contrary arguments lack merit.

*First*, Plaintiffs argue that HECO's statements should be imputed to HEI because HEI "owns HECO," derives most "of its revenues from HECO," files consolidated financial statements with the SEC that reflect HECO's operations, and shares HECO's address. (Opp. 18.) But, at best, these

2

circumstances suggest that HEI and HECO have an ordinary parent-subsidiary relationship. That is not enough under Janus, which rejected an argument that a parent should be considered the maker of an affiliate's statements as an "invitation to disregard the corporate form," where, as here, plaintiff did not dispute "that the corporate formalities were observed." 564 U.S. at 145-46. Plaintiffs fail to show that HEI had ultimate authority over the challenged statements HECO and Maui Electric made. See McIntire v. China MediaExpress Holdings, Inc., 927 F. Supp. 2d 105, 137-38 (S.D.N.Y. 2013) ("Plaintiffs fail to allege that [parent] had ultimate authority *over the [report] or the alleged misstatements contained therein*"); In re Volkswagen AG Sec. Litig., 661 F. Supp. 3d 494, 522 (E.D. Va. 2023) (similar).

Two of Plaintiffs' cases (Opp. 19) involved specific allegations that the parent dictated the content of its subsidiary's statements, and thus highlight what the AC lacks. See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig., 2017 WL 66281, at *18 (N.D. Cal. Jan. 4, 2017) (parent "developed, reviewed, and approved the marketing and advertising campaigns" at issue); City of Roseville Emps.' Ret. Sys. v. Energy Solutions, Inc., 814 F. Supp. 2d 395, 418 (S.D.N.Y. 2011) (parent "had control over the content of the message, the underlying subject matter of the message, and the ultimate decision of whether to communicate the message"). In Flynn v. Exelon Corp., 2021 WL 1561712, at *6 (N.D. Ill. Apr. 21, 2021), the alleged misstatements were attributed to both the parent and the subsidiary, meaning both companies "made" the statements under Janus, unlike here.

*Second*, Plaintiffs argue that HECO's and Maui Electric's statements should be imputed to HEI because HECO's CEO (Shelee Kimura) is "deemed to be [an] executive officer[] of HEI under SEC Rule 3b-7." (Opp. 19.) But that rule just means that Kimura performs a "policy making function[]" for some aspect of HEI's business, 17 C.F.R. § 240.3b-7; not that HEI has "ultimate authority" over any statements made by Kimura, let alone any other HECO employee. Janus, 564 U.S. at 142. Plaintiffs cannot cite a single case where a court found that Rule 3b-7 operates as an exception to Janus. Plaintiffs do not even allege Kimura's role in making nine of the statements attributed to HECO or Maui Electric. Plaintiffs' arguments thus fail to avoid dismissal under Janus.

**III.    Plaintiffs Fail to Plead a Materially False or Misleading Statement**

**A.    HECO's Public Disclosures Defeat Plaintiffs' Claims**

Plaintiffs do not dispute that HECO repeatedly warned in regulatory filings that: (i) thousands

3

of its utility poles were outdated and could pose a "serious public hazard" if they "failed"; (ii) the "risk" of "a utility system causing a wildfire ignition" was "significant"; (iii) Maui presented "unique wildfire risks . . . due in part to the existence of an invasive grass species prone to drying out"; (iv) "West Maui," and "Lahaina" in particular, was a "wildfire priority area[]"; and (v) the Hawai'i Public Utilities Commission needed to authorize additional funding to control these risks. (Mot. at 9; Exs. 2 at 22, 26, 55, 108; 27 at 22.) Since HECO's public "filings contain abundant and specific disclosures regarding" the risk that HECO's utility infrastructure could spark a wildfire, Plaintiffs cannot state a claim based on the premise that such risk was hidden. See Ikeda, 2021 WL 1299046, at *11 (ignored by Plaintiffs).

**B.    Plaintiffs Fail to Plead That Any Statement Was False or Misleading When Made**

**1.    Plaintiffs Fail to Plead that HEI's Opinions About Its Subsidiaries' Responses to Environmental Conditions Were False or Misleading**

Plaintiffs do not dispute that the statements in HEI's 2018-2021 annual reports that HEI "believe[d]" that "each [of its] subsidiary[ies] has appropriately responded to environmental conditions requiring action," are opinions. (Exs. 3 at 8-9; 4 at 8-9; 5 at 11; 6 at 13.) Plaintiffs argue these opinions were misleading because they "omitted" that HEI's subsidiaries "had not" "install[ed] insulated" wiring, "replac[ed] aging poles" or "clear[ed] fire-prone grasses." (Opp. 9.) Plaintiffs' argument lacks merit.

*First*, Plaintiffs did not allege their omissions theory in their complaint. The AC alleges that HEI's opinions were affirmative misrepresentations because HEI supposedly "knew of" unaddressed "environmental conditions" that "required action," and thus lied when it said that its subsidiaries had responded "appropriately" to environmental conditions. (AC ¶¶ 159, 175, 185.) It does not allege that HEI omitted information necessary to prevent the statements from misleading investors. This Court should reject the Opposition's omissions theory because it is not pled. See Schneider v. Cal. Dep't of Corr., 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (court cannot look to unpled theories in opposition brief).

*Second*, Plaintiffs do not support their unpled omissions theory in any event. To plead such a claim, "the plaintiff must allege facts going to the basis for the issuer's opinion whose omission makes the opinion . . . misleading to a reasonable person reading the statement fairly and in context." City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc., 856 F.3d 605, 616 (9th Cir. 2017). Put differently, the plaintiff "must allege facts showing that the company knew undisclosed information that seriously undermined the basis for its opinion." Ikeda, 2021 WL 1299046, at *9.

4

Here, Plaintiffs do not even try to show that HEI knew facts suggesting its subsidiaries' wildfire mitigation efforts were not "appropriate[]" at the time the statements were made. Although Plaintiffs attempt to rely on the Wildfire Mitigation Plan (Opp. 9), it states that HECO: (i) *did* use drone surveys to identify problematic "vegetation in potential wildfire areas"; (ii) engages with government, community, landowner, and wildfire control groups to develop strategies to mitigate wildfire risk; and (iii) regularly conducts "vegetation management programs" that "involve trimming, removing, and herbicide spraying of vegetation on prescribed cycles." (Ex. 1 at 3, 36, 72-75.) Nothing in the Plan undermines HEI's opinion that its subsidiaries appropriately responded to environmental conditions.

*Third*, HEI's opinions did not say anything about installing insulated wire, replacing aging utility poles, or clearing grasses near poles, and therefore could not have "affirmatively" misled investors about the extent to which HEI's subsidiaries were taking those steps. Section 10(b) prohibits only statements that are "misleading or untrue, not simply" statements that are "incomplete." Brody v. Transitional Hosps. Corp., 280 F.3d 997, 1006 (9th Cir. 2002). A statement does not mislead investors about a subject when it "neither state[s] nor implie[s] anything regarding" that subject. Id. Here, HEI's opinions neither stated nor implied anything regarding the extent to which HECO was installing insulated wire, replacing aging utility poles, or trimming invasive grasses. The statements said only that HEI's subsidiaries were "appropriately" responding to "environmental conditions requiring action."

Plaintiffs cannot read into those statements everything that they think HEI should have said in hindsight. Yet that is what the Opposition does, repeatedly insisting that "reasonable investors" would have understood HEI's opinions as promising that all of HECO's utility poles were up-to-date and used insulated wiring, and that HECO had eliminated all grass growing near those poles. But Plaintiffs plead nothing beyond their own say-so, which is not enough: "reasonable investors understand that opinions sometimes rest on a weighing of competing facts." Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund, 575 U.S. 175, 189–90 (2015).

**2.      Plaintiffs Fail to Plead that HECO Had a Policy Against Vegetation Control**

Plaintiffs argue that five statements (AC ¶¶ 160, 180, 186, 194, 206) in YouTube videos and ESG Reports about HECO's vegetation management practices were misleading because, according to Plaintiffs, HECO actually had a policy against trimming grasses around utility poles. (Opp. 14-16.)

5

Plaintiffs' arguments are unsupported and lack merit.

*First*, Plaintiffs attempt to rewrite HECO's Wildfire Mitigation Plan to support their claims. As Plaintiffs acknowledge, the Plan states that HECO regularly conducts "vegetation management programs" that "involve trimming, removing, and herbicide spraying of vegetation on prescribed cycles," but did not see value in "*[f]urther* trimming of already low-lying vegetation" because doing so "will not likely produce any appreciable results in potential wildfire areas." (Ex. 1 at 3, 36, 72-75.) Plaintiffs argue that this means HECO had a blanket policy against "trimming . . . low-lying vegetation." (Opp. 15.) But that is not what the Plan says. HECO's policy was that "*[f]urther* trimming"—beyond the "trimming, removing, and herbicide spraying" HECO was already doing "on prescribed cycles"— would "not likely produce any appreciable results." (Ex. 1 at 36.) Plaintiffs cannot rewrite the Plan to manufacture a policy that HECO never adopted. Tibco, 2006 WL 1469654, at *24 (dismissing claims based on plaintiffs' "gross[] mischaracterize[ation]" of purported misstatements).

*Second*, Plaintiffs point to allegations from FE2, a low-level pole maintenance worker, and FE3, a HECO "environmental specialist," as support for their claim that HECO had a policy against trimming grasses near utility poles. (Opp. 14-15.) But Plaintiffs do not plead details showing why these workers would know all of HECO's vegetation management policies for various geographies, as Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 995-96 (9th Cir. 2009), requires. (Mot. 13-14.)

Plaintiffs assert that they met their burden to establish their witnesses' credibility by pleading their "job titles, dates of employment, to whom they reported, and their duties." (Opp. 15.) But that is not the test under Zucco for the reliability of confidential witnesses. Rather, Plaintiffs must describe their witnesses "with sufficient particularity to establish their reliability and personal knowledge," Zucco, 552 F.3d at 995, not just plead a few facts about the witnesses' work history. Plaintiffs do not even try to explain how their threadbare, conclusory allegations show that the FEs would be in a position to know whether HECO had a policy in all regions against trimming grasses near utility poles, and therefore fail to substantiate their confidential witnesses' reliability. See id. at 996 (rejecting allegations where plaintiff failed to plead that CWs "were in a position to" know "the information alleged," even though plaintiff pled CWs' "job titles and employment information with ample detail").

Moreover, on their face, the witnesses' allegations are not inconsistent with the Plan, and thus

6

do not support Plaintiffs claims. FE2 states that his manager told him not to cut the grass around an *unidentified number of unspecified poles in unspecified places between 2016 and 2017* (AC ¶ 95)—not that HECO had a general policy against cutting the grass around utility poles on prescribed cycles years later. FE3 states that HECO "neglected keeping invasive grasses under control due to cost" (AC ¶ 96), but he does not explain what he means or allege facts showing that HECO was generally against grass cutting, rather than prioritizing cutting on prescribed cycles in the way most likely to be effective, as detailed in the Plan. (Mot. 13-14.) Even crediting the FE allegations, then, does not substantiate Plaintiffs' speculation that HECO had a policy against cutting the grass near HECO's utility poles.

*Third*, Plaintiffs argue that the 2020 ESG Report's statement that HECO was "developing work plans based on" a third-party consultant's recommendations (AC ¶ 180) misled investors into thinking HECO was cutting all of the grass growing near its utility poles. (Opp. 15-16.) But the ESG Report did not say that HECO would take any particular actions or accept particular recommendations, and certainly did not represent that HECO would eliminate all grass growing near power lines. Again, Plaintiffs cannot rewrite the report to make a statement misleading. Tibco, 2006 WL 1469654, at *24.

### 3. Plaintiffs Fail to Plead that HEI's Statements About Working with the Community to Control Wildfire Risk Were False or Misleading

In its 2021 and 2022 ESG Reports, HEI stated that it had "joined with community members and wildfire collaborators to help prevent and mitigate wildfires in known hot spots," and that HEI "support[s] the Hawai'i Wildfire Management Organization" (HWMO), a group that "works with communities across the state on wildfire planning, prevention, and mitigation activities." (AC ¶¶ 190, 200.) Plaintiffs plead nothing to suggest that HEI did not actually join with community leaders to try to prevent wildfires, and thus fail to plead that these statements were false. (Mot. 14.)

Plaintiffs argue that these statements were false because they implied that HEI would follow vegetation management recommendations the HWMO published in a 2019 report, when, Plaintiffs claim, HEI actually had a policy against managing vegetation.[2] (Opp. 16.) But HEI's ESG reports did not mention the HWMO's 2019 report, must less state or imply that HEI intended to follow that particular report's recommendations, or commit to any specific wildfire mitigation measures. HEI said

---

[2] In reality, Plaintiffs fail to plead that HECO or HEI actually had any policy against cutting grasses near utility poles (Mot. 11-12; supra, § III.B.2), which is an independent reason why Plaintiffs' argument fails.

7

only that it "works with communities" on wildfire prevention and that it "supports" the HWMO—facts Plaintiffs do not contest. (AC ¶¶ 190, 200.) Plaintiffs have not alleged facts showing how that was false.

Plaintiffs note the ESG Reports' statement that "the expansion of nonnative fire-prone grasses and shrubs has led to an increase in wildfires," and argue that this statement would have led investors to believe that HECO was cutting all grasses near utility poles when it said that it was working "with community members and wildfire collaborators to help prevent and mitigate wildfires." (Opp. 16.) That is just another example of Plaintiffs imagining statements not made. The ESG Reports never discuss what HECO was or was not doing about grasses growing near utility poles. Again, Plaintiffs cannot rewrite the ESG Reports to manufacture false statements. Tibco, 2006 WL 1469654, at *24.

### 4. Plaintiffs Fail to Plead that HEI's and HECO's Statements About Upgrading Electrical Infrastructure Were False or Misleading

The Opposition fails to show that HECO's statements about infrastructure maintenance were misleading when made. *First*, Plaintiffs argue the statement in HEI's 2022 ESG Report that it has "replaced traditional power lines with insulated conductor systems . . . in targeted areas prone to vegetation-related outages" (AC ¶ 188) was false because some power lines in West Maui did not have insulated wire when the Wildfire broke out. (Opp. 7-9.) But Plaintiffs fail to plead that HEI believed that West Maui was "prone to vegetation-related outages," much less that it was one of the "targeted areas." The ESG Report also did not say that HECO had installed insulated wiring specifically in West Maui. Plaintiffs thus fail to plead facts "inconsistent with the statements" in the ESG Report, as required to plead falsity. Ronconi v. Larkin, 253 F.3d 423, 434 (9th Cir. 2001).

Moreover, Plaintiffs rely entirely on an Associated Press article, and statements by a former Massachusetts professor quoted in that article, to substantiate their claim that there were a significant number of uninsulated power lines in West Maui in 2023. (Opp. 8-9; AC ¶¶ 75-76.) A plaintiff can rely on allegations drawn from news articles only if, among other things, "Plaintiffs' counsel conducted its own independent investigation which corroborates the information in the article." Knox v. Yingli Green Energy Holding Co., 2016 WL 6609210, at *9 (C.D. Cal. May 10, 2016). That was not done here. See id. (rejecting allegations lifted wholesale from article); Plumbers & Pipefitters Local Union #295 Pension Fund v. CareDx, Inc., 2023 WL 4418886, at *4 (N.D. Cal. May 24, 2023) (similar).

*Second*, Plaintiffs argue that the same statement is false because HECO expressed a blanket

8

policy against installing insulated wiring in the Plan. (Opp. 7-9.) But the Plan says no such thing. Instead, the Plan states that there are not tall trees whose branches could fall and sever electrical wires growing near most utility poles, and thus installing insulated wiring on those poles would not be useful or cost-effective. (Ex. 1 at 39.) When there are tall trees growing near utility poles, the Plan states that insulated wires "should be considered." (Id.) That policy is consistent with HEI's statement that HECO installed insulated wiring "in targeted areas prone to vegetation-related outages"—i.e., places with tall trees growing near utility poles. Plaintiffs do not show that this statement was misleading.

*Third*, Plaintiffs argue that investors would have understood the statements in HEI's 2020, 2021, and 2022 ESG Reports that HECO "continually maintain[s] and upgrade[s] [its] transmission and distribution system" as a guarantee that all or most of HECO's electrical infrastructure was modern at the time those reports were issued. (Opp. 10-11.) But saying that HECO provides "continual[] maint[enance] and upgrade[s]" to its infrastructure is not a promise that all necessary upgrades were done. Once again, Plaintiffs cannot rewrite HEI's statements. See Tibco, 2006 WL 1469654, at *24.

As the AC acknowledges, HECO "repeatedly told regulators that *the majority* of its poles were built to a 1960s standard" and needed upgrades (AC ¶ 86; Ex. 27 at 22 (emphasis in original).) In light of these disclosures, investors would not have understood the ESG Reports as stating that all of HECO's infrastructure had been modernized. Plumley and Barnes dismissed securities fraud claims where, as here, utilities disclosed the relevant risks. See Plumley v. Sempra Energy, 2017 WL 2712297, at *7 (S.D. Cal. June 20, 2017) (statements not misleading where allegedly omitted information was disclosed to regulator); Barnes v. Edison Int'l, 2021 WL 2325060, at *10 (C.D. Cal. Apr. 27, 2021) (similar).

### 5. Plaintiffs Fail to Plead that Maui Electric's Statement About Pole Replacements on Lahainaluna Road in 2019 Was False or Misleading

On December 19, 2019, Maui Electric issued a press release stating that it would be "installing insulated power lines along Lahainaluna Road in West Maui" over the first five weeks of 2020. (AC ¶ 164.) Plaintiffs fail to plead any facts showing that Maui Electric did not install insulated power lines along Lahainaluna Road during the five-week period referenced in the press release. (Mot. 17.)

The Opposition points to uncorroborated allegations from news articles that reported that "downed power lines in Maui" on the day of the fire "were not insulated because of the way they sparked," and then speculates that Maui Electric must not have installed any insulated wiring on the

9

power lines along Lahainaluna Road. (Opp. 8-9.) Plaintiffs do not plead facts showing that the power lines they claim sparked the Wildfire were the same power lines that Maui Electric referenced in its press release. So even if the Wildfire was caused by uninsulated power lines—a conclusion no investigator or government agency has reached—Plaintiffs have not shown that it was caused by power lines Maui Electric claimed would be insulated. See Plumley, 2017 WL 2712297, at *7 (rejecting allegations that utility caused a gas leak without facts and when "investigation" was still "ongoing").

### 6.    Plaintiffs Fail to Plead that HECO's Statements About Its Compliance With Safety Standards Were False or Misleading

Plaintiffs also challenge: (i) statements in HECO's 2021 and 2022 Sustainability Reports that it had replaced a total of 730 utility poles on Maui and two other islands to "maintain strength and safety standards based on inspections and testing" (AC ¶¶ 192, 204); and (ii) statements in a November 23, 2022 YouTube video and a March 1, 2023 blog post that HECO's poles "follow standards set by the National Electric Safety Code." (Id. ¶¶ 196-198.) HECO neither stated nor implied that *all* of its utility poles were up to modern NESC standards. (Mot. 17-18.) HECO disclosed in its public regulatory filings that thousands of its utility poles were outdated, and its poles could pose a "serious public hazard" if they "failed." (Ex. 27 at 22.) Indeed, Plaintiffs' *own complaint* pleads that HECO "*repeatedly* told regulators that *the majority* of its poles were built to a 1960s standard that did not account for hurricane-strength winds." (AC ¶ 86 (second emphasis in original).)

Plaintiffs argue that it is "implausibl[e]" that investors knew what HECO disclosed in its regulatory filings. (Opp. 13.) But courts repeatedly hold that investors are presumed to know what a utility company discloses in its regulatory filings. See Plumley, 2017 WL 2712297, at *7 (utility's statements not misleading for omitting information disclosed to regulator); (Mot. 15-16). Moreover, to plead reliance, Plaintiffs allege that the market was aware of all publicly available information about HEI and its subsidiaries, which was incorporated into HEI's stock price. (AC ¶ 228); see Halliburton Co. v. Erica P. John Fund, Inc., 573 U.S. 258, 268 (2014) (explaining "fraud on the market" theory of reliance). Plaintiffs cannot plead that the market was aware of all public information about HEI and its subsidiaries, while simultaneously arguing that it was unaware of HECO's public regulatory filings.[3]

---

[3] The court in Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 1014 (9th Cir. 2018) (Opp. 12-13), held that a separate public report did not allow investors to learn the truth hidden by alleged
*(cont'd)*

10

Plaintiffs also guess that investors would have understood HECO's statements in the November 2022 YouTube video and March 2023 blog post that its poles follow NESC standards as a guarantee that all poles had been upgraded by those dates. (Opp. 13.) But as late as April 2023—after both the YouTube video and blog post—HECO disclosed in a Sustainability Report that it was still replacing hundreds of utility poles per year. (AC ¶ 204.) Investors would have taken the fact that HECO was replacing hundreds of poles per year as an indication that more poles needed replacing, particularly in light of HECO's "repeated[]" disclosures that "the majority" of its poles needed replacing. (Id. ¶ 86 (emphasis omitted)); see Xu v. ChinaCache Int'l Holdings Ltd., 2017 WL 114401, at *6 (C.D. Cal. Jan. 9, 2017) (statements that "contemplate[d] an ongoing effort" did not suggest that effort was complete).

### 7.    Plaintiffs Fail to Plead that HEI's Safety Statements Are Actionable

HEI's 2019 ESG Report and 2020 Form 10-K annual report stated that: (i) "Safety is our number one priority at Hawaiian Electric" (AC ¶ 172); and (ii) HEI "is committed to maintaining a strong safety culture." (Id. ¶ 176.) These statements are "inherently aspirational," are not "capable of objective verification," and are thus inactionable. Retail Wholesale & Dep't Store Union Local 338 Ret. Fund v. Hewlett-Packard Co., 845 F.3d 1268, 1275-76 (9th Cir. 2017).

Plaintiffs argue that the safety statements "were objectively false" because HECO did not preemptively turn off electrical circuits during high winds, and occasionally reduced spending on certain wildfire mitigation efforts to counter cost overruns in other areas of its budget. (Opp. 17-18.) Plaintiffs claim that these actions show that HEI prioritized other values more highly than safety. But Plaintiffs' examples only underscore why HEI's safety statements are inactionable. HEI stated that safety was its "number one priority" and that it was "committed to maintaining a strong safety culture"—not that it would disregard all other values and priorities. Plaintiffs do not contest that HEI's subsidiaries undertook wildfire prevention efforts including (i) replacing outdated utility poles; (ii) trimming trees and grasses near electrical infrastructure; and (iii) seeking a rate increase so it could do even more mitigation work, among other things. (Mot. 3-5, 18.) There is no way to determine whether, taking all of HEI's various business activities together, safety was objectively HEI's "number one priority." The safety statements are accordingly inactionable. See, e.g., Plumley, 2017 WL 2712297, at *7 ("statements regarding

---

misstatements because the report itself was inaccurate and misleading. Here, by contrast, Plaintiffs do not allege any inaccuracies in HECO's "repeated[]" disclosures that its poles were outdated. (AC ¶ 86.)

11

[utility's] commitment to or prioritization of safety" were inactionable).

### 8.     Plaintiffs Fail to Plead that HEI Misrepresented its ERM Program

Defendants argued that HEI's statement that its board of directors' enterprise risk management programs "are designed to address all material risks and opportunities" (AC ¶ 168) was not false or misleading because: (1) Plaintiffs plead nothing to suggest that HEI's ERM program was not, in fact, designed to address environmental risks; and (2) the statement is too vague to be actionable. (Mot. 19-20.) Plaintiffs failed to respond to these arguments, thereby conceding that the statement is not actionable. See, e.g., Hadley v. Kellogg Sales Co., 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017).

## IV.     Plaintiffs Fail to Plead Facts Giving Rise to a Strong Inference of Scienter

### A.     Plaintiffs' Allegations for Each Individual Defendant Are Insufficient

Plaintiffs do not dispute that they must identify each Individual Defendant's role in the purported fraud, see Swartz v. KPMG LLP, 476 F.3d 756, 764-65 (9th Cir. 2007), and plead facts creating a "strong inference" that they acted with scienter. Intuitive, 759 F.3d at 1058. The AC does neither.

### 1.     Plaintiffs Fail to Plead Defendants' Involvement in HECO's Statements

As the Motion explains (at 21), Plaintiffs fail to plead how any of the Individual Defendants—each of whom are directors or officers of *HEI*—had any role in the 11 challenged statements made in HECO's and Maui Electric's blog posts, YouTube videos, Sustainability Reports, or press releases. (AC ¶¶ 160, 162, 164, 170, 182, 192, 194, 196, 198, 204, 206.) Plaintiffs therefore fail to plead any inference of scienter with respect to those statements. See Jackson v. Fischer, 931 F. Supp. 2d 1049, 1058 (N.D. Cal. 2013) (no scienter where plaintiff failed to explain how defendants were involved with statements). The Opposition ignores this argument, thus conceding it. See Hadley, 243 F. Supp. 3d at 1100.

Similarly, even if statements made by HECO's CEO Kimura could be imputed to HEI (to be clear, they cannot), Plaintiffs fail to plead any facts about her state of mind, much less that she caused HECO or Maui Electric to issue statements she knew were lies. See Jackson, 931 F. Supp. 2d at 1058.

### 2.     Plaintiffs Fail to Plead That Any Individual Defendant Knew Information Contradicting Any Challenged Statement

Plaintiffs argue that the Individual Defendants must have known the 25 statements challenged in the AC were false through information they purportedly learned by virtue of their senior positions. To sufficiently allege this theory, Plaintiffs must plead facts showing that the Individual Defendants had

12

"actual access to . . . information" contradicting the statements. <u>Intuitive</u>, 759 F.3d at 1062. The AC does not make this showing, and the Opposition's contrary arguments lack merit.

*First*, Plaintiffs argue that the Individual Defendants were familiar with HECO's Wildfire Mitigation Plan, which Plaintiffs (falsely) claim contradicts a number of statements about HECO's wildfire mitigation efforts. (Opp. 20-22.) But Plaintiffs do not plead "specific admissions" or "witness accounts" establishing that the Individual Defendants drafted, reviewed, or approved the Plan. <u>Intuitive</u>, 759 F.3d at 1062. Moreover, the Plan was an internal working document that was developed over a four-year period and was not "finalized" until 2023. (AC ¶¶ 66-67.) Plaintiffs do not plead what the Plan said at any given point in time, or that the Individual Defendants knew its contents before it was done. Plaintiffs therefore fail to plead that the Plan ever gave any Individual Defendant information that contradicted any of the challenged statements at the time they were made. (Mot. 22 (collecting cases).)

Nothing in Plaintiffs' grab bag of allegations (Opp. 21) shows otherwise. Plaintiffs point to Congressional testimony from HECO's CEO and allegations about Resiliency Working Groups HECO formed to discuss wildfire mitigation as evidence that HECO decided not to preemptively deenergize at-risk power lines during storms as far back as 2019. But HECO's CEO testified that HECO "started developing a wildfire mitigation plan" in "2019," and did not say when HECO "concluded that wildfire risk in Hawaii did not justify . . . preemptive shutoffs." (AC ¶ 210.) Plaintiffs allege that HECO's Resiliency Working Groups "concluded without a definitive answer" as to "whether HECO's power lines should be de-energized proactively," and thus contradict the Opposition.[4] (<u>Id.</u> ¶ 54.) None of Plaintiffs' allegations supports the notion that HECO decided not to preemptively deenergize power lines in 2019, much less that the Individual Defendants knew about such a policy.[5]

Plaintiffs also argue that Kimura's use of "first personal plural pronouns" in her post-Wildfire Congressional testimony is evidence that the Individual Defendants knew the Plan. (AC ¶ 210.) There

---

[4] Plaintiffs also point to statements in HEI's ESG Reports to argue that Ms. Lau and Mr. Seu were familiar with HECO's Plan. (Opp. 20.) But those reports merely reference "the utility's own wildfire mitigation plans" (AC ¶ 190)—they do not say that Ms. Lau or Mr. Seu were familiar with any of the specific policies or language in HECO's formal Wildfire Mitigation Plan that was finalized in 2023.

[5] Since none of Plaintiffs' allegations show that Defendant knew or discussed information contradicting the challenged statements, Plaintiffs' cases (Opp. 21-22) are inapposite. <u>See, e.g.</u>, <u>Nursing Home Pension Fund, Local 144 v. Oracle Corp.</u>, 380 F.3d 1226, 1231 (9th Cir. 2004) (finding scienter based on "hard numbers" and "specific allegations" that defendants had data contradicting their statements); <u>Roberti v. OSI Sys., Inc.</u>, 2015 WL 1985562, at *12 (C.D. Cal. Feb. 27, 2015) (individual defendants plausibly knew product testing was going poorly when they discussed details of testing in public statements).

13

is no factual allegation that her use of "we" referred to the Individual Defendants.

*Second*, Plaintiffs argue that the Individual Defendants must have learned every detail of HECO's wildfire mitigation efforts—and thus learned the falsity of the 25 challenged statements—through presentations to HEI's board of directors "on areas of significant risk" to HEI. (Opp. 23.) But as the Motion explains (at 22-23), in an argument Plaintiffs ignore, Plaintiffs fail to plead any "details about these reports," such as what was said, when they occurred, or who heard them. Without the "details about these reports," there is no factual basis to infer that the Individual Defendants knew information contradicting the challenged statements. Nguyen, 962 F.3d at 417.

*Third*, Plaintiffs argue that the Individual Defendants simply must have known every aspect of HECO's wildfire mitigation efforts, and must have known that the 25 challenged statements were inconsistent with those efforts, because 91% of HEI's revenues are derived from HECO's operations. (Opp. 24.) But to rely on this "core operations" theory, Plaintiffs must plead particularized facts showing that "***the information misrepresented*** [was] readily apparent" to management because it concerned "prominent facts" that were "obvious from the operations of the company." Zucco, 552 F.3d at 1000-01. It is not enough to observe that HECO as a whole is important to HEI, without showing that HEI's management necessarily would have known both the details of HECO's on-the-ground policies concerning trimming grass and trees, replacing outdated utility poles, and installing insulated electrical cables, and that those policies contradicted Defendants' public statements. In this exact context, the Ninth Circuit affirmed rejection of the core-operations inference in a case involving a utility's safety efforts. See Plumley v. Sempra Energy, 847 F. App'x 426, 430 (9th Cir. 2021). As there, Plaintiffs here plead no reason to believe this is the "rare circumstance in which it would be absurd to suggest" that the Individual Defendants knew that HECO's statements were not true. See Intuitive, 759 F.3d at 1063.[6]

---

[6] Plaintiffs' cases (Opp. 22, 24) each involved allegations that executives were intimately involved in the details of a business segment, which supported an inference that they must have known about major problems in that segment. See Berson v. Applied Signal Tech., Inc., 527 F.3d 982, 988-89 (9th Cir. 2008) (executives must have known about order cancellations that caused a 25% decline in company revenue); In re Amgen Inc. Sec. Litig., 2014 WL 12585809, at *12 (C.D. Cal. Aug. 4, 2014) (inferring that executives in charge of clinical trials knew about problematic clinical data); Del. Cnty. Emps. Ret. Sys. v. Cabot Oil & Gas Corp., 620 F. Supp. 3d 603, 630 (S.D. Tex. 2022) (inferring defendants knew about compliance issues when company received hundreds of complaints and was criminally charged over that conduct); In re MannKind Sec. Actions, 835 F. Supp. 2d 797, 815 (C.D. Cal. 2011) (inferring management knew about FDA criticisms related to approval of company's only product). By contrast, Plaintiffs have not alleged that any of the Individual Defendants were intimately involved in HECO's wildfire mitigation efforts.

14

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE AMENDED COMPLAINT          CASE No.: 3:23-cv-04332-JSC

*Finally*, Plaintiffs argue that if nothing else, the Individual Defendants acted with scienter by "falsely implying they had knowledge of" HECO's "Plan and of [HECO's] policies and actions regarding wildfire mitigation," when they purportedly lacked such knowledge. (Opp. 22-23.) But Plaintiffs do not plead or point to a single statement by any Defendant stating or implying their familiarity with the Plan.[7] Conclusory arguments cannot mask Plaintiffs' failure to plead facts supporting their scienter theories.

## B.   Viewed Holistically, Plaintiffs' Allegations Do Not Show Scienter

Viewed holistically, Plaintiffs' fraud theory "does not make a whole lot of sense," Nguyen, 962 F.3d at 415, and thus fails to establish an inference of scienter that is "cogent and at least as compelling as any opposing inference." Tellabs, 551 U.S. at 324. Plaintiffs do not allege that the Individual Defendants had any motive to commit fraud, or did anything to capitalize on the purported fraud, such as selling stock at allegedly inflated prices. While Plaintiffs argue that HEI wanted to conceal the risk of a wildfire from the public, they do not even try to explain why, if that was HEI's goal, it permitted HECO to tell the public and Hawai'i regulators that it needed a rate increase to combat wildfire risk, among other things. The only cogent and compelling inference from these facts is that the tragic Lahaina Wildfire happened despite HECO's best efforts to prevent it and without Defendants trying to hide that risk from the communities HEI, HECO, and Maui Electric serve. (Mot. 24-25.)

Unable to plead a coherent fraud theory, Plaintiffs observe that motive is not an element of securities fraud. (Opp. 25.) But the Ninth Circuit is clear that the "lack of a plausible motive . . . makes it much less likely that a plaintiff can show a strong inference of scienter." Prodanova, 993 F.3d at 1108. "Only where a complaint otherwise asserts compelling and particularized facts showing fraudulent intent or deliberate recklessness will [courts] overlook the failure to allege a plausible motive." Id. The AC lacks such compelling and particularized facts, and should thus be dismissed with prejudice.

DATED: August 22, 2024                    SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                                          By:    */s/Mark R.S. Foster*
                                                 MARK R.S. FOSTER
                                                 *Attorneys for Defendants*

---

[7] The lack of any such statements distinguishes this case from Plaintiffs' cases (Opp. 22). See S. Ferry LP #2 v. Killinger, 687 F. Supp. 2d 1248, 1258 (W.D. Wash. 2009) (inferring scienter when defendant "spoke with personal knowledge when providing false or misleading assurances regarding [company]'s systems challenges"); In re Zillow Grp., Inc. Sec. Litig., 2019 WL 1755293, at *20 (W.D. Wash. Apr. 19, 2019) (inferring scienter based on fact that Individual Defendants "made numerous statements displaying their familiarity" with business program at issue on investor calls and in interviews).

15