MARK R.S. FOSTER (SBN 223682)
mark.foster@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
525 University Avenue
Palo Alto, California 94301
Telephone: (650) 470-4500
Facsimile:  (650) 470-4570

PETER B. MORRISON (SBN 230148)
peter.morrison@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
2000 Avenue of the Stars, Suite 200N
Los Angeles, California 90067
Telephone: (213) 687-5000
Facsimile: (213) 687-5600

*Attorneys for Defendants Hawaiian Electric
Industries, Inc., Constance H. Lau, Scott W. H. Seu,
Gregory C. Hazelton, and Paul K. Ito*

*[Additional counsel listed on signature page]*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

_____

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> HAWAIIAN ELECTRIC INDUSTRIES, INC., HAWAIIAN ELECTRIC COMPANY, INC., CONSTANCE H. LAU, SCOTT W. H. SEU, GREGORY C. HAZELTON, PAUL K. ITO, and SHELEE KIMURA, <br><br> Defendants. | **CLASS ACTION** <br><br> Case No.: 3:23-cv-04332-JSC <br><br> Date:          June 26, 2025 <br> Time:          10:00 a.m. <br> Hon.           Jacqueline Scott Corley <br> Courtroom:   8—19th Floor <br><br> **DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS THE SECOND AMENDED COMPLAINT** |

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES.................................................................................................iii

    I.    Preliminary Statement......................................................................................1

    II.   Plaintiffs Abandon 18 of the 25 Challenged Statements.............................................2

    III.  Plaintiffs Fail to Plead a Materially False or Misleading Statement .......................3

        A.    HEI's Statements About Vegetation Management Were Not False or
             Misleading.......................................................................................................3

        B.    HEI's Statements About Pole Maintenance Were Not False or
             Misleading.......................................................................................................6

        C.    HEI's Statements About Insulating Power Lines Were Not False or
             Misleading.......................................................................................................7

        D.    HEI's Statements on its Oversight of Subsidiaries Are Not Actionable........9

    IV.  Plaintiffs Fail to Plead That Any Defendant Acted With Scienter..........................10

        A.    Plaintiffs Fail to Plead That Defendants Knew HEI's Statements Were
             False ...............................................................................................................10

             1.    The May 2020 Audit Report Does Not Contradict HEI's
                  Statements....................................................................................11

             2.    The Wildfire Mitigation Plan is Consistent with the Challenged
                  Statements....................................................................................13

        B.    Viewed Holistically, the Allegations Do Not Support A Strong Scienter
             Inference .......................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

## **CASES**

*Arpin v. Santa Clara Valley Transportation Agency*,
  261 F.3d 912 (9th Cir. 2001)...................................................................................6

*In re CCIV/Lucid Motors Securities Litigation*,
  110 F.4th 1181 (9th Cir. 2024)............................................................................1, 3

*In re Cisco Systems Inc. Securities Litigation*,
  2013 WL 1402788 (N.D. Cal. Mar. 29, 2013)......................................................10

*City of Dearborn Heights Act 345 Police & Fire Retirement System v. Align Technology, Inc.*,
  856 F.3d 605 (9th Cir. 2017)............................................................................9, 10

*Garcia v. J2 Global, Inc.*,
  2021 WL 1558331 (C.D. Cal. Mar. 5, 2021).........................................................13

*Gompper v. VISX, Inc.*,
  298 F.3d 893 (9th Cir. 2002)................................................................................12

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) ..................................................................3

*Hampton v. Aqua Metals, Inc.*,
  2020 WL 6710096 (N.D. Cal. Nov. 16, 2020) ........................................................6

*Hatamian v. Advanced Micro Devices, Inc.*,
  87 F. Supp. 3d 1149 (N.D. Cal. 2015) ....................................................................4

*Hershewe v. JOYY Inc.*,
  2022 WL 1123208 (C.D. Cal. Mar. 9, 2022),
  *aff'd*, 2023 WL 3316328 (9th Cir. May 9, 2023).....................................................3

*Howard v. Everex Systems Inc.*,
  228 F.3d 1057 (9th Cir. 2000)..............................................................................15

*In re Iasia Works, Inc., Securities Litigation*,
  2002 WL 1034041 (N.D. Cal. May 15, 2002)..........................................................9

*Jackson County Employees' Retirement System v. Ghosn*,
  510 F. Supp. 3d 583 (M.D. Tenn. 2020).................................................................10

*Janus Capital Group, Inc. v. First Derivative Traders*,
  564 U.S. 135 (2011)....................................................................................1, 3, 10

*Longo v. OSI Systems, Inc.*,
  2021 WL 1232678 (C.D. Cal. Mar. 31, 2021).......................................................15

iii

*Nguyen v. Endologix, Inc.*,
 962 F.3d 405 (9th Cir. 2020)................................................................................2, 15

*In re NVIDIA Corp. Securities Litigation*,
 768 F.3d 1046 (9th Cir. 2014).....................................................................................8

*Paciga v. Invuity, Inc.*,
 2020 WL 13179747 (N.D. Cal. Nov. 24, 2020) ........................................................14

*Plumley v. Sempra Energy*,
 2017 WL 2712297 (S.D. Cal. June 20, 2017),
 *aff'd*, 847 F. App'x 426 (9th Cir. 2021)......................................................................13

*Police Retirement System of St. Louis v. Intuitive Surgical, Inc.*,
 759 F.3d 1051 (9th Cir. 2014)..............................................................................2, 11

*Prodanova v. H.C. Wainwright & Co.*,
 993 F.3d 1097 (9th Cir. 2021)......................................................................................2

*Reese v. Malone*,
 747 F.3d 557 (9th Cir. 2014).....................................................................................15

*In re Rigel Pharmaceuticals, Inc. Securities Litigation*,
 697 F.3d 869 (9th Cir. 2012).....................................................................................13

*Ronconi v. Larkin*,
 253 F.3d 423 (9th Cir. 2001), *abrogated on other grounds by*
 *Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 37-49 (2001) .......................5, 6, 9, 12, 13, 14

*Rubke v. Capitol Bancorp Ltd.*,
 551 F.3d 1156 (9th Cir. 2009).....................................................................................6

*In re Sorrento Therapeutics, Inc. Securities Litigation*,
 97 F.4th 634 (9th Cir. 2024) .......................................................................................1

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
 551 U.S. 308 (2007)...............................................................................................2, 11

*In re Tibco Software, Inc. Securities Litigation*,
 2006 WL 1469654 (N.D. Cal. May 25, 2006).............................................................4

*Webb v. Solarcity Corp.*,
 884 F.3d 844 (9th Cir. 2018).....................................................................................15

*Xu v. ChinaCache International Holdings Ltd.*,
 2017 WL 114401 (C.D. Cal. Jan. 9, 2017)..................................................................7

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009).......................................................................................8

iv

## I.    Preliminary Statement[1]

Plaintiffs' Opposition ("Opp.") proclaims that the SAC "concretely address[es]" the "concerns" that led the Court to dismiss Plaintiffs' prior complaint. (Opp. 1.) In reality, the Opposition does more to confirm that this case should be dismissed than to rescue Plaintiffs' deficient pleading. Plaintiffs recycle arguments the Court previously rejected, and continue to distort both the challenged statements and the contents of a 2020 PUC Audit Report and the Wildfire Mitigation Plan in an effort to manufacture a fraud theory. For three core reasons, the Court should dismiss the case with prejudice.

***First***, Plaintiffs abandon 18 of the 25 challenged statements in this case. (Opp. 1, n.1.) Plaintiffs do not contest that *Janus Cap. Grp, Inc. v. First Derivative Traders*, 564 U.S. 135, 141-43 (2011), precludes them from suing HEI and its officers for 11 statements made by HEI's ***subsidiaries*** as opposed to HEI. (Mot. 6-7.) Plaintiffs further do not dispute that *In re CCIV/Lucid Motors Sec. Litig.*, 110 F.4th 1181, 1185 (9th Cir. 2024), forecloses them from suing HECO and its CEO, Ms. Kimura, because Plaintiffs do not—and cannot—allege that they purchased any HECO stock. (Mot. 7.) Plaintiffs make no arguments that the statements concerning acting on advice of wildfire community organizations (four statements), prioritizing safety (two statements), and HEI's enterprise risk management program (one statement) were false or misleading, or made with scienter. (Mot. 10-11, 17-18, 20-21.)

***Second***, Plaintiffs fail to plead that any of the remaining seven statements (or any of the other 18 statements for that matter) are false or misleading when given a "fair reading." *In re Sorrento Therapeutics, Inc. Sec. Litig.*, 97 F.4th 634, 641 (9th Cir. 2024). Unable to meaningfully address the Court's prior reasoning, Plaintiffs repeatedly and deceptively use ellipses in their quotation of the challenged statements to rewrite them to make them fit into Plaintiffs' flawed theory. For example, HEI's ESG Reports state that the Company "regularly trim[s] the vegetation around our equipment" to prevent "***tree branches*** or other vegetation ***falling onto*** power lines," clearly referring to concern about vegetation above the power lines falling down. (¶¶ 222, 232.) Plaintiffs, however, do not include the portion of the statement referring to "tree branches" "falling" to try to alter the meaning of the actual sentence to then argue that the statements, as doctored, promised that the Company trimmed the "***grasses***

---

[1] Capitalized terms have the same meaning as in Defendants' Motion to Dismiss (ECF 106, "Motion" or "Mot."). Unless noted, all emphasis is added, and all original citations, brackets and internal quotation marks are omitted from quoted material. All references to ¶ are to the SAC's paragraphs.

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT    CASE No.: 3:23-cv-04332-JSC

*and shrubs* in the immediate vicinity of its poles" as opposed to just "tree branches" in danger of "falling." (Opp. 6.) But the challenged statement does not say anything about trimming grasses and shrubs "around" the "bottom" of poles. (*Compare* Opp. 3, 6, 8-9, *with* ¶¶ 222, 232.) Similarly, Plaintiffs attempt to demonstrate the falsity of statements in the ESG Reports about the insulation of wires to improve reliability in "targeted areas *prone to vegetation-related outages*" (¶ 232) by reference to a subsidiary's press release describing the installation of insulated wires "*designed* to withstand high winds or . . . falling branches from large trees." (Opp. 13-14.) That clause does not show that the Company had identified Lahainaluna Road as an area prone to vegetation-related outages. (*Compare id. with* ¶ 232.) In any case, the SAC cites a report showing there was insulated wiring on the road. Plaintiffs' distortions of the statements do not mask the lack of particularized facts showing falsity.

*Finally*, Plaintiffs again fail to plead a compelling inference of scienter. *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 314 (2007). As before, Plaintiffs do not argue that Defendants sold any stock or otherwise had motive for the alleged fraud, beyond a one-sentence claim that Defendants wanted to avoid unspecific "backlash." (Opp. 25.) This failure severely undermines any scienter theory. *See Prodanova v. H.C. Wainwright & Co.*, 993 F.3d 1097, 1108 (9th Cir. 2021). Likewise, Plaintiffs continue to fail to explain why Defendants participated in a purported fraud scheme supposedly perpetuated by *multiple successive* CEOs and CFOs at *different companies* over the course of four years. This failure too "tips the scale in favor of Defendants on scienter." Order at *16.

Plaintiffs' apparent scienter theory asks the Court to infer that the Individual Defendants, without any apparent motive, decided to deceive investors about HECO's infrastructure management policies even though, as Plaintiffs admit, such policies were disclosed in HECO's public regulatory filings, including a 2020 PUC Audit Report. Indeed, that report shows that HECO *was* trimming vegetation and replacing poles. Nothing in that report shows that any Defendant knew any statement was false or misleading when made, as the law requires. *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1061 (9th Cir. 2014). Because there is no "basis in logic or common experience" to infer a knowing fraud, dismissal is warranted. *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 408 (9th Cir. 2020).

## II.    Plaintiffs Abandon 18 of the 25 Challenged Statements

To start, Plaintiffs abandon 18 of the 25 statements challenged in the SAC. Where, as here,

2

"plaintiffs fail to provide a defense for a claim in opposition, the claim is deemed waived." *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1100 (N.D. Cal. 2017); *Hershewe v. JOYY Inc.*, 2022 WL 1123208, at *4 (C.D. Cal. Mar. 9, 2022) (dismissing two claims in 10b-5 case because "Plaintiffs discuss neither in their opposition" and thus "have conceded both claims").

The Motion explained that, under *Janus*, HEI and its officers cannot be liable for 11 statements made by HEI's subsidiaries. (Mot. 6-7; Order at *7). Plaintiffs do not respond. The Motion also explained that under *Lucid*, 110 F.4th at 1185, Plaintiffs lack standing to assert claims for those 11 statements against HECO and Ms. Kimura because they do not (and cannot) allege the purchase or sale of HECO stock during the proposed class period, and the statements were also the kind of consumer-facing communications that are not actionable by investors. (Mot. 7-8.) Plaintiffs do not respond to these arguments, either. Thus, the Court can summarily dismiss Plaintiffs' claims against HECO and Ms. Kimura, and need not consider the statements made by HEI's subsidiaries that are targeted in ¶¶ 204, 206, 208, 214, 226, 236, 238, 240, 242, 248, and 250 of the SAC.

The Motion further argued that seven statements concerning compliance with utility pole standards, acting on advice of community organizations, prioritizing safety, and HEI's enterprise risk management program were not false or misleading, or made with scienter. (Mot. 13-15, 17-18, 20-21.) Plaintiffs do not respond to these arguments. Thus, the Court should also dismiss the statements targeted in ¶¶ 212, 216, 220, 224, 230, 234, and 244 of the SAC for all the reasons stated in Defendants' Motion and in light of Plaintiffs' waiver. *Hershewe*, 2022 WL 1123208, at *4.

As a result, only seven statements remain at issue: the statements in ¶¶ 202, 210, 218, 222, 228, 232, and 246 of the SAC (all from HEI's 2020-22 ESG Reports and 2018-2021 10-Ks). Plaintiffs do not show falsity or scienter for any of these (or the others).

**III.    Plaintiffs Fail to Plead a Materially False or Misleading Statement**

Plaintiffs assert that Defendants made materially false or misleading statements concerning four categories of statements (a) trimming vegetation, (b) utility pole maintenance, (c) installing insulated wiring, and (d) responses by HEI's subsidiaries to environmental challenges. (Opp. 1 n.1, 6-19.)

**A.    HEI's Statements About Vegetation Management Were Not False or Misleading**

The Opposition repeatedly argues that HEI made a false statement when it said that "[w]e

3

regularly trim the vegetation around our equipment . . ." (Opp. 6, 9) (ellipsis in original) because, according to Plaintiffs, Defendants did not trim "low-lying" vegetation or grasses "below" the poles or "around" their base. (Opp. 3, 7, 8.) But Plaintiffs' Opposition manufactures this supposedly false statement through its deceptive use of ellipses. The actual HEI statement without the ellipses addressed regular trimming "around our equipment, *as many power outages during high winds and storms are due to tree branches or other vegetation falling onto power lines*." (*Compare id. with* SAC ¶¶ 222, 232; *see also* ¶ 246.) The actual and full HEI statement said *nothing* about trimming "low-lying" vegetation or grasses "below" the poles. Rather, the statement is clearly about trimming vegetation above poles and wires so that "tree branches" do not "fall[]" during winds and storms. Consequently, when the actual statement is considered, Plaintiffs fail to plead that the challenged statements are false. HECO's Plan, which Plaintiffs incorporated by reference into the SAC as reflecting HEI's "true" policies, states that HECO's vegetation management "is limited to the boundaries of the right-of-way and roadsides" "to maintain[] and improve[] system reliability performance *for overhead systems*" and reduce "vegetation-related outages." (Ex. 1, at 36.) The Plan is consistent with the challenged statements. All of the arguments Plaintiffs offer in response lack merit.

*First*, Plaintiffs similarly argue that the statements in HEI's ESG Reports were outright false, or at best half true, because HECO admitted in response to information requests from the PUC that HECO "generally does not clear any vegetation that does not encroach upon the overhead conductors, such as shrubs and grasses." (¶ 127; Opp. 6.) But HECO's statement to the PUC that it only trims "overhead" vegetation is entirely consistent with HEI's ESG Reports, which state that the Company "regularly trim[s] … vegetation" like "tree branches" that could "fall[] onto power lines." (SAC ¶¶ 222, 232.) Plaintiffs cannot rewrite HEI's statements as a promise that HECO was trimming grasses, when the statements only discuss trimming trees, to create a contradiction where none exists. *See* Order at *10-11; *see also In re Tibco Software, Inc. Sec. Litig.*, 2006 WL 1469654, at *24 (N.D. Cal. May 25, 2006) (dismissing claims based on plaintiffs' "gross[] mischaracteriz[ation]" of alleged misstatements).[2]

---

[2] Plaintiffs' case, *Hatamian v. Advanced Micro Devices, Inc.* 87 F. Supp. 3d 1149, 1158-59 (N.D. Cal. 2015) (Opp. 9), is distinguishable. There, the court found that the defendant made a misstatement when it said a product was on track to launch, but omitted that due to supply constraints, the product would only be available to certain customers. *Id.* Here, HEI never represented that HECO was trimming grasses. So it was not "half-true" to represent (accurately) that HECO was trimming trees.

4

*Second*, Plaintiffs argue that HEI's ESG Reports were false because public reports concluded that the Lahaina Wildfire was caused by electrical wires contacting overgrown grasses. (Opp. 6-7.) Again, however, HEI's statements did not say that HECO trimmed grasses near its utility poles; only that it trimmed vegetation that could fall onto overhead conductors. (¶¶ 222, 232, 246.) Thus, the existence of dried grass near the bottom of some poles is not inconsistent with HEI's statements.

*Third*, Plaintiffs point to hearsay allegations from confidential witnesses, who purportedly worked in low-level maintenance roles for HECO, that one supervisor (many levels removed from Defendants) told them not to cut low-lying vegetation near poles. (Opp. 7-8.) Plaintiffs claim this is evidence that HECO did not trim vegetation. (*Id.* 8-9.) But Plaintiffs do not even plead HECO *could* cut low-lying vegetation near its poles on land it does not own. Regardless, not trimming vegetation near the bottom of poles is completely *consistent* with HECO's Wildfire Mitigation Plan, which explained HECO trims vegetation encroaching on wires from overhead, as the Court already held. Order at *10.

Such practices are also consistent with the ESG Reports, which, consistent with the Plan, state that HECO trims vegetation that could fall onto power lines. The confidential witness statements thus do not support Plaintiffs' theory of falsity. *See Ronconi v. Larkin*, 253 F.3d 423, 434 (9th Cir. 2001) (finding no falsity where circumstances "not inconsistent with the statements").

*Fourth*, Plaintiffs argue that Defendants waived the right to argue that the ESG Reports' statements that the Company "regularly trim[s] the vegetation around our equipment" are not false or misleading because Defendants did not specifically quote those statements in their moving brief. (Opp. 8.) Not so. As Plaintiffs acknowledge, Defendants devoted a section of their moving brief to arguing that "Plaintiffs Fail to Plead that HEI's and HECO's Statements About Vegetation Management Were False or Misleading." (*Id.*; Mot. 15-17.) That section quoted several specific statements about vegetation management, but further noted that Plaintiffs' complaint "also reference[d] several similar statements about vegetation management, without making clear whether Plaintiffs are also challenging those statements." (Mot. 15.) Instead of attempting to parse out what Plaintiffs believed was false about each challenged sentence, Defendants addressed Plaintiffs' theories of falsity by category.[3] That approach is

---

[3] Since the full statements quoted in paragraphs 222 and 232 of the SAC primarily relate to Plaintiffs' allegations regarding wire insulation and utility pole maintenance, Defendants addressed them specifically in those sections of their moving brief. (Mot. 8-9, 11-12.) Also, Defendants repeatedly made clear they were contesting all 25 challenged statements. (Mot. 1, 8-21.)

well-accepted in securities cases, and does not waive the right to challenge particular statements. *See Hampton v. Aqua Metals, Inc.*, 2020 WL 6710096, at *1 n.2 (N.D. Cal. Nov. 16, 2020) ("[C]hoice to address the statements by category does not concede the merits of any of Plaintiffs' allegations.").[4]

**B.      HEI's Statements About Pole Maintenance Were Not False or Misleading**

The Opposition argues that HEI made false statements when it said "[w]e continually maintain and upgrade our transmission and distribution system," "regularly inspect our poles, lines, and other equipment," and "work to replace and upgrade aging and faulty equipment before failures happen." (¶¶ 222, 232, *see also* ¶ 246.) Plaintiffs argue those statements are false because some of HECO's poles on Maui needed replacement and the statements implied none of the poles were in need of repair or replacement. (Opp. 10-13.) Last time, this Court held that these statements were not shown to be false or misleading because they "contain[] no benchmarks, no spending commitment, and no deadline for completing the upgrade." Order at *10. The SAC fails to address this core deficiency. (Mot. 11-13.)

*First*, Plaintiffs point to allegations from three confidential witnesses' statements that some of HECO's poles on Maui were in poor condition and needed to be replaced. (Opp. 10-12.) But none of the confidential witness allegations address this Court's previous ruling that the challenged statements are not promises that all of HECO's pole were in top condition. Order at *10; (Mot. 11-13.) Pleading that some poles were degraded does not show that HECO did not continually inspect and maintain the *more than 50,000 poles* in its vast infrastructure. (Mot. 13); *Ronconi*, 253 F.3d at 434.

*Second*, Plaintiffs claim that, by using the terms "continually" and "maintain," the statements implied that no poles were "in need of replacement." (Opp. 12-13.) Plaintiffs claim that the statements were "half-truths," since some poles needed replacement. (Opp. 13.) But the Court has already rejected these arguments, reasoning that "Defendants' statements about 'continually maintaining'" HECO's pole infrastructure "contain[] no benchmarks, no spending commitment, and no deadline for completing the upgrade." Order at *10. The SAC fails to cure that defect.

No investor could have read the statements as a promise that none of HECO's poles needed maintenance or replacement—much less in light of "information already in the public domain." *Rubke*

---

[4] *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001) (Opp. 8) held that the plaintiff waived the right to challenge the district court's dismissal of four claims at summary judgment because the plaintiff did not challenge those dismissals on appeal. It is not relevant here.

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT      CASE No.: 3:23-cv-04332-JSC

*v. Capitol Bancorp Ltd.*, 551 F.3d 1156, 1162-63 (9th Cir. 2009). For example, in public regulatory filings, HECO disclosed that many of its 50,000+ poles were beyond their expected lives, could pose a "serious public hazard," and needed to be replaced. (Mot. 14; Ex. 27, at 22, 30-31.) HECO also disclosed that it was *replacing* hundreds of poles each year. (¶ 248.) Those statements implied more poles needed replacing. (Mot. 13-14); *see Xu v. ChinaCache Int'l Holdings Ltd.*, 2017 WL 114401, at *6 (C.D. Cal. Jan. 9, 2017). The Opposition ignores these disclosures and Defendants' on-point case law. (Mot. 14.)

### C.     HEI's Statements About Insulating Power Lines Were Not False or Misleading

Plaintiffs argue that HEI made a false statement when it said "[w]e have also replaced traditional power lines with insulated conductor systems to improve reliability and resilience in targeted areas prone to *vegetation-related outages*." (¶ 232; *see also* ¶¶ 222, 246.) Plaintiffs argue that was false because Defendants identified Lahaina (and Lahainaluna Road specifically) as targeted areas prone to vegetation-related outages, and some wires in those areas lacked insulation. (Opp. 13-17.) But the challenged statements did not promise the Company had replaced all of its wiring in targeted areas with insulated conductors, and Plaintiffs plead nothing to suggest that the Company had not installed insulated wiring in "targeted areas prone to vegetation-related outages." (Mot. 8-9.) Thus, Plaintiffs fail to support both parts of their claim—that Lahaina was an area prone to vegetation-related outages, or that wiring there was not insulated. Each failing is fatal.

*First*, Plaintiffs fail to plead that Lahaina was a targeted area prone to vegetation-related outages. Plaintiffs point to a December 2019 Maui Electric press release,[5] which predates the challenged statements, and provides that Maui Electric was installing insulated wiring on a portion of Lahainaluna Road in part "to withstand . . . falling branches from large trees along Lahainaluna Road," to suggest that HEI thought Lahainaluna Road was prone to vegetation-related outages. (Opp. 13-14.) Yet that argument overlooks that Plaintiffs themselves allege that "Lahainaluna Road only has about three trees" (¶ 96), undermining any notion that the "*area*" was prone to vegetation-related outages. Plaintiffs further fail to plead any facts showing that *Maui Electric's* decision to install insulated wiring on one half-mile stretch of road meant that *HEI* had identified Lahainaluna Road, much less all of Lahaina, as "prone to

---

[5] Although the SAC alleges that this press release was independently false, it is not actionable for several reasons, including that it was issued by Maui Electric, not any of the Defendants. (Mot. 6-8.) Plaintiffs waived any contention that the press release is independently actionable. *Supra*, § II. Instead, they now attempt to use the press release as evidence that the statements in HEI's ESG Reports were false.

vegetation-related outages." (¶¶ 232, 246.) Plaintiffs' argument hangs on one selectively read clause of a subsidiary's press release, not the particularized facts of falsity that the PSLRA demands.

Unable to show that Lahaina was a targeted area prone to vegetation-related outages, Plaintiffs go broader, arguing that ***all of Maui*** was a targeted area because HECO stated in November 2019 that it had launched an initiative regarding installing "insulated conductors on Maui and O'ahu to stop lines from slapping and sparking in areas prone to high winds." (¶ 82.) But "there are over 20,000 utility poles on Maui alone," and the Court already rejected Plaintiffs' contention that the ESG reports promised that all wires were insulated. Order at *9. Claiming without support that all of Maui was prone to falling trees does not "identify the *targeted* areas prone to vegetation-related outages," as required. *Id.*

Moreover, this press release does not say that HECO considered all of Maui prone to vegetation-related outages; rather, it says that insulated conductors were being considered for some parts of Maui "prone to high winds." (*Id.*) Thus, it does not support Plaintiffs' contention that all of Maui was prone to vegetation-related outages. It shows multiple use cases for installing insulated conductors.

***Second***, even if, for argument's sake, the Court were to consider Lahainaluna Road—or portions of it—such a targeted area, Plaintiffs fail to plead that Maui Electric did not install insulated conductors along that road, much less along the portion where it said it would.[6] As Plaintiffs acknowledge, a Maui Fire Department report found insulated conductor wire near the point where the fire originated. (Opp. 16; Ex. 31 at 47, 49.) Because Plaintiffs incorporate that report by reference into their complaint, its contents are presumed to be true for purposes of evaluating Defendants' Motion. *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1058 n.10 (9th Cir. 2014). Plaintiffs thus cannot use confidential witness allegations to contradict the report's findings. *See Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 999-1000 (9th Cir. 2009) (rejecting CW allegations "contradicted" by other allegations and documents discussed in the complaint). And without such allegations, Plaintiffs lack any factual basis for their claim that the wires along Lahainaluna Road were uninsulated. (Mot. 10-11.)

---

[6] As explained in the Motion, Maui Electric's press release stated only that 15 spans would be insulated along Lahainaluna Road between its intersections with Mill Street and Kalena Street, more than half a mile from where the Wildfire started. Ex. 18; (Mot. 10.) The Opposition argues, based on a Google Maps printout (ECF 111-1), that the press release should be interpreted as an indication that Maui Electric would insulate *all* the wires along Lahainaluna Road and only closed this stretch because it had houses on both sides (Opp. 15). A "street view" of the Google Maps link provided by Plaintiffs (ECF 111 ¶ 3) confirms that there are in fact approximately 15 spans between Mill and Kalena Streets, which is what Maui Electric said it would insulate. Plaintiffs' own exhibit confirms there was no broader representation.

8

While Plaintiffs claim that the Report shows evidence that other wires along Lahainaluna Road were not insulated, the Report does not say that and Plaintiffs do not direct the Court to any language in the Report that supposedly supports their position. (Opp. 16.) Regardless, because Plaintiffs' own incorporated documents show that wiring along Lahainaluna Road *was*, in fact, insulated, Plaintiffs cannot use the wires along Lahainaluna Road to allege that HEI did not install insulated wire in targeted areas prone to vegetation-related outages, even assuming Lahainaluna Road was such a targeted area. *See In re Iasia Works, Inc., Sec. Litig.*, 2002 WL 1034041, at \*10 (N.D. Cal. May 15, 2002) (dismissing claim "contradicted" by incorporated documents). All of Plaintiffs' other arguments about pictures of the scene, AP articles, and quotes from an "expert" within those articles are the same arguments that Plaintiffs previously made and that the Court has already rejected. (*Compare* Opp. 14 *with* ECF 81 at 7-8, and ECF 87 at 8.)

In any case, the ESG Reports did not promise that HEI was replacing all power lines in all targeted areas. (Mot. 10.) Thus, even if Lahaina was an area identified as prone to vegetation-related outages, the presence of some uninsulated wiring in Lahaina would not render HEI's statements false because Plaintiffs acknowledge that Maui Electric did install some insulated wiring in Lahaina, as it said it would. (Opp. 16). *See Ronconi*, 253 F.3d at 434 (rejecting fraud claims based on facts that were "not inconsistent with the statements").

**D.    HEI's Statements on its Oversight of Subsidiaries Are Not Actionable**

Plaintiffs also argue that HEI made false opinion statements in its FY 2018-2021 annual reports, which each say that HEI "believe[d]" that, "[e]xcept as otherwise disclosed" in the reports, "each subsidiary has appropriately responded to environmental conditions requiring action." (Exs. 3 at 8-9, 5 at 11, 6 at 13.) Plaintiffs argue these opinions were false because Defendants knew contrary information that undermined their beliefs at the time. (Opp. 17-19.) To plead that an opinion is materially misleading, a plaintiff must allege that the speaker did not believe the opinion, and that the opinion was objectively untrue. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615-17 (9th Cir. 2017). To plead that an opinion is misleading by omission, "the plaintiff must allege facts showing that the company knew undisclosed information that seriously undermined the basis for its opinion." Order at \*14. The SAC falls well short. (Mot. 18-20.)

On objective falsity, Plaintiffs' Opposition fails to develop any substantive response to the arguments made in Defendants' Motion. Instead, Plaintiffs cross-reference the other falsity sections of their complaint and argue that because they have purportedly pled the falsity of statements in HEI's ESG Reports, they have necessarily pled that the opinions in HEI's annual reports were false as well. (Opp. 17-18.) But as described above, Plaintiffs fail to plead the falsity of HEI's ESG Reports. *Supra*, § III.A-C. Thus, Plaintiffs' arguments fail for the same reasons their other falsity arguments fail.

As for subjective falsity, Plaintiffs fail to plead any facts suggesting that the statements' makers did not believe these opinion statements when they were issued, or knew that HEI's subsidiaries were not appropriately responding to urgent environmental issues. This, too, is fatal. *See Dearborn*, 856 F.3d at 615-17 (affirming dismissal where plaintiffs failed to show defendant disbelieved stated opinions).

**IV.      Plaintiffs Fail to Plead That Any Defendant Acted With Scienter**

Plaintiffs' Opposition also fails to rescue Plaintiffs' defective scienter allegations. As a threshold matter, the Court does not need to assess scienter with respect to the 18 statements that the Opposition abandoned. (¶¶ 204, 206, 208, 212, 214, 216, 220, 224, 226, 230, 234, 236, 238, 240, 242, 244, 248, 250); s*ee In re Cisco Sys. Inc. Sec. Litig.*, 2013 WL 1402788, at *7 (N.D. Cal. Mar. 29, 2013) ("Where plaintiffs fail to plead falsity, *a fortiori* they have not established that defendants knew those statements were false."). Similarly, because Plaintiffs do not contest that they lack standing to sue Ms. Kimura (who did not even become CEO of HECO until 2022), the Court need not analyze allegations about Ms. Kimura's state of mind, which cannot be imputed to HEI in any case, as this Court held that "Plaintiffs also provide no legal support for their assertion that the mental state of a subsidiary's CEO can be imputed to a parent company." Order at *16.[7] In all events, Plaintiffs fail to show that any Defendant acted with scienter as to any statement.

**A.      Plaintiffs Fail to Plead That Defendants Knew HEI's Statements Were False**

To plead scienter, Plaintiffs must plead facts showing that the Individual Defendants had "actual access to . . . information" contradicting their statements. *Intuitive*, 759 F.3d at 1062. Plaintiffs argue that the Individual Defendants learned information contradicting HEI's ESG and 10-K Reports from a

---

[7] Plaintiffs' recycled case is inapposite because it concerns whether a company's CEO and Chairman made the alleged misstatements under *Janus*; not whether the defendant acted with scienter. *Jackson Cnty. Emps.' Ret. Sys. v. Ghosn*, 510 F. Supp. 3d 583, 614-15 (M.D. Tenn. 2020).

10

May 2020 PUC Audit Report ("Audit Report"), and HECO's Wildfire Mitigation Plan. (Opp. 20-23.) Both contentions lack merit.

Plaintiffs not only fail to plead facts showing Defendants were aware of facts contradicting the challenged public statements, they also fail to show that Defendants would have read and interpreted the allegedly contradictory information in the same way that Plaintiffs do now—in a contorted, decontextualized way, and with the benefit of hindsight. Nothing Plaintiffs allege gives rise to an inference that Defendants reviewed the Audit Report and Wildfire Mitigation Plan and understood the contents to be contradictory to their public statements. Nothing alleged shows that they had an "intent to deceive, manipulate, or defraud." *Tellabs*, 551 U.S. at 319.

### 1. The May 2020 Audit Report Does Not Contradict HEI's Statements

Plaintiffs first claim that the Audit Report gave the Individual Defendants information contradicting HEI's statements that the Company was "regularly trim[ming] the vegetation around [its] equipment" and "continually maintain[ing]" or "regularly inspect[ing]" its poles. (Opp. 20-22; ¶¶ 61-66, 255-58.) Plaintiffs' arguments fail to show the Report contained any contrary information.[8]

*Vegetation Management.* Plaintiffs point to statements in the Audit Report that HECO's methods for tracking the progress of its vegetation management programs were resulting in HECO "not completing vegetation management work" and "vegetation interference with overhead lines." (Opp. 20.) Plaintiffs argue that these statements would have alerted the Individual Defendants that the statements in HEI's ESG Reports that the Company "regularly trim[s] the vegetation around our equipment" to prevent "tree branches or other vegetation falling onto power lines" were false. (*Id.*) But that argument is wrong on multiple levels.

To start, the Audit Report acknowledged that HECO *was* engaging in vegetation management programs. (Ex. 30, at 92.) It just noted that the work was not always being tracked efficiently, and gave recommendations for operational improvements. (*Id.* at 96-97.) Thus, the Audit Report would not have alerted the Individual Defendants that HECO was not regularly trimming the vegetation around its equipment, because the Report said just the opposite. *Ronconi*, 253 F.3d at 432 (finding no scienter

---

[8] Again, Plaintiffs distort the challenged statements. HEI did not state that it was "continually maintaining 'its poles.'" (Opp. 1, 4, 11, 12, 20, 21, 22.) It stated that it "continually maintain[s] and upgrade[s] [its] transmission and distribution system" (¶¶ 7, 97)—not a guarantee for all 50,000+ poles.

11

because allegations did not show "contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made").

Moreover, Plaintiffs' theory is that the vegetation-related statements in HEI's ESG Reports were false because the statements purportedly conveyed that HECO was trimming grasses near utility poles, when in fact it was only trimming vegetation that could fall or grow into overhead wires. *Supra*, § III.A. Nothing in the Audit Report discusses invasive grasses, much less notifies the reader that HECO's purported failure to trim those grasses was inconsistent with HEI's public statements. Accordingly, the Audit Report does not support Plaintiffs' scienter theory. *See Gompper v. VISX, Inc.*, 298 F.3d 893, 895-96 (9th Cir. 2002) (rejecting allegations that "defendants were unquestionably aware" of information because that failed "to demonstrate . . . knowledge that the [statements] were therefore invalid").

Further, to the extent the Audit Report criticized HECO's tracking methodology for its use of funds towards these efforts, the Report also praised HECO for taking its recommendations seriously. (Ex. 30, at 12-13.) Indeed, the Report found that in "an extremely positive development . . . the Company has already been proactive in taking actions to implement many of the recommended changes," including establishing new leaders, offices, organizations, and strategies to ensure better vegetation management operations. (*Id.* at 12-13, 96.) The Report commended HECO for being "serious about delivering performance improvements" and taking "prompt" actions to address its recommendations. (*Id.* at 13.) These statements would have given Defendants the impression that any operational problems identified in the Report were being sufficiently addressed. The Report lends no support to Plaintiffs' theory that Defendants knowingly misled investors about HECO's vegetation management programs.

*Pole Replacements.* Plaintiffs argue that statements in the Audit Report indicate that HECO was inadequately tracking its pole replacement efforts and would have informed Defendants that HEI's statements that HECO was "continually maintain[ing]" and "regularly inspect[ing]" its poles were false. (Opp. 20.) But the Audit Report acknowledged that HECO *was* maintaining and inspecting its poles. (Ex. 30, at 92.) The Report simply gave recommendations to better track these efforts. (*Id.* at 96-97.) That there was room for improvement does not show the work was not being done. And the Report actually praised HECO for taking aggressive steps to implement those recommendations, including the recommendation to fix the pole maintenance tracking issue. (*Id.* at 12-13, 96.) Accordingly, nothing in

12

the Report would apprise Defendants that HECO was not "continually maintain[ing]" and "regularly inspect[ing]" its poles. (¶¶ 222, 232); *Ronconi*, 253 F.3d at 432.

Plaintiffs also contend that the Court should ignore the fact that the Audit Report was publicly filed on the PUC's docket in evaluating their scienter allegations, arguing that the Report's public availability is only relevant to falsity. (Opp. 21-22.) But Plaintiffs' argument misses the point. Investors are presumed to know the information disclosed in a utility's public regulatory filings. *See Plumley v. Sempra Energy*, 2017 WL 2712297, at *6, 8 (S.D. Cal. June 20, 2017). The fact that the Audit Report was publicly available undermines any argument that the Individual Defendants were trying to hide HECO operational challenges because that is the very information that investors already knew or could know through that report. *In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 885 (9th Cir. 2012) (holding that scienter inference is undercut where information was "voluntarily publicly disclosed"); *Garcia v. J2 Glob., Inc.*, 2021 WL 1558331, at *20 (C.D. Cal. Mar. 5, 2021) ("The fact that Defendants disclosed the adverse information publicly negates an inference of scienter."). The Report undercuts Plaintiffs' scienter theories.

**2. The Wildfire Mitigation Plan is Consistent with the Challenged Statements**

Plaintiffs next claim that HECO's Wildfire Mitigation Plan apprised the Individual Defendants that HEI's statements about trimming vegetation and insulated wiring were false. (Opp. 22-23.) Plaintiffs claim that the Individual Defendants would have known HEI was falsely representing that HECO was trimming vegetation and insulating wires because the Plan was inconsistent with the challenged statements. (*Id.*) The Court previously rejected this argument because nothing in the Plan was inconsistent with HEI's statements. Order at *15. Plaintiffs do not cure this defect.

*First*, Plaintiffs argue that the Plan would have apprised the Individual Defendants that HECO was not removing all of the grass growing near its utility poles. (Opp. 22-23.) But the statements Plaintiffs challenge state that HECO "regularly trim[s] the vegetation around [its] equipment" to prevent "tree branches or other vegetation falling onto power lines." (¶¶ 222, 232; *see also* ¶ 246.) The Plan's recommendation that HECO not engage in "[f]urther trimming of already low-lying vegetation" (Ex. 1, at 36) is not inconsistent with HEI's statements that the Company was regularly trimming "tree branches or other vegetation" that could "fall[] onto power lines." Accordingly, the Plan would not have apprised

13

the Individual Defendants that the vegetation management statements in HEI's ESG Reports were inconsistent in any way with HECO's actual vegetation management policies. *Ronconi*, 253 F.3d at 432.

*Second*, Plaintiffs argue that the Plan would apprise the Individual Defendants that HECO was not installing insulated wiring in targeted areas prone to vegetation-related outages. (Opp. 22-23.) The Plan states that "if there are wildfire areas with tall trees adjacent to the line right-of-way," insulated wiring "should be considered." (Ex. 1, at 39.) Plaintiffs argue that the Plan's use of the word "considered" confirms that HEI had not installed insulated wiring in any areas with tall trees. (Opp. 23.) But nothing in the Plan's direction to "consider[]" installing insulated wiring in "*wildfire areas* with tall trees" (Ex. 1, at 39) states or implies that the Company had not installed insulated wiring in "areas prone to vegetation-related outages," as HEI's ESG Reports said. (¶¶ 222, 232, 246) The Plan merely suggested that HECO consider expanding insulated wiring from places prone to vegetation-related outages to wildfire zones. Accordingly, nothing in the Plan would notify the Individual Defendants that HEI's ESG Reports were inconsistent with HECO's insulated wiring policies. *Ronconi*, 253 F.3d at 432.

**B.      Viewed Holistically, the Allegations Do Not Support A Strong Scienter Inference**

Unable to point to facts that individually create a strong inference of scienter for any Defendant (let alone all of them), Plaintiffs argue that their allegations support an inference of scienter when considered holistically. (Opp. 25.) Plaintiffs claim HECO's wildfire mitigation efforts are a core operation of HEI, the Individual Defendants were highly focused on wildfire mitigation, and HEI had motive to commit the fraud to reduce costs and avoid backlash. (*Id.*) Plaintiffs' arguments mostly recycle contentions the Court has already rejected, and thus fail to rescue the SAC's deficient scienter theories.

*First*, Plaintiffs argue that because "91% of HEI's revenues came from HECO's operation in the power industry," HEI's leadership must have known every detail of HECO's vegetation management and equipment maintenance policies, and must have further known that those policies were inconsistent with HEI's ESG Reports. (Opp. 25.) But as the Court previously explained, the "statements here, which appeared in 70-plus page ESG Reports, were not so fundamental to HEI's business the Court can infer HEI as a corporate entity had scienter." Order at *17. Plaintiffs offer no reason to revisit that conclusion beyond mostly recycling the same points and authorities they unsuccessfully raised last time. (*Compare* ECF 84 and ECF 87 *with* Opp. 25.) The Court need not and should not revisit its conclusion. *See Paciga*

14

*v. Invuity, Inc.*, 2020 WL 13179747, at *1 (N.D. Cal. Nov. 24, 2020).[9]

***Second***, Plaintiffs argue that the Court can infer that the Individual Defendants acted with scienter because HEI made statements about "wildfire risk mitigation," including the opinion statements in HEI's 10-Ks, about the subsidiaries' efforts to address environmental risks. (Opp. 23-25.) But the Court previously rejected this argument too, reasoning that Plaintiffs failed to plead facts or statements showing "HEI's top officers' involvement in HECO's wildfire mitigation efforts." Order at *15. And Plaintiffs fail to plead Defendants knew contrary information that would undermine their beliefs when they issued any of the challenged opinion statements. *Supra*, § III.D.[10] Plaintiffs offer nothing new.

***Third***, Plaintiffs argue in one sentence that "Defendants had a motive to hide their cutting corners on wildfire mitigation in order to reduce costs without backlash." (Opp. 25.) But reducing operational costs is a generic motive shared by all corporations and executives, and is thus insufficient to support a cogent and compelling inference of scienter. *See Webb v. Solarcity Corp.*, 884 F.3d 844, 856 (9th Cir. 2018). Further, Plaintiffs' posited motive makes no sense. HEI incurred tremendous backlash after the Lahaina Wildfire. Plaintiffs' theory that HEI lied about HECO's purported failures to manage wildfire risk to avoid a backlash, while knowing that backlash would eventually ensue in the event of a devastating wildfire, is exactly the kind of nonsensical theory the Ninth Circuit has warned courts against accepting. *See Nguyen*, 962 F.3d at 415 (rejecting plaintiff's theory that defendants knowingly lied about issue that would eventually come to light and have "inevitable fallout").

Thus, despite multiple complaints and rounds of briefing, Plaintiffs still have not been able to plead a strong inference of scienter. The most likely inference on these facts remains that "while HECO's efforts to mitigate wildfire risk proved insufficient, there was no attempt by Individual Defendants to misrepresent HECO's efforts." Order at *16. The Court should dismiss the SAC with prejudice.

---

[9] Plaintiffs now cite an additional (but not new) case that is equally inapposite. *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at *9 (C.D. Cal. Mar. 31, 2021) (turnkey executives involved with turnkey business must have known about large customer contract issues that impacted 49%-58% of company's revenues).

[10] Again, Plaintiffs offer no reason to revisit the Court's conclusion from last time on this subject beyond mostly recycling the same points and authorities they unsuccessfully raised last time. (*Compare* ECF 84 and ECF 87 *with* Opp. 24.) Plaintiffs now cite two additional (but not new cases) that are equally inapposite. *Reese v. Malone*, 747 F.3d 557, 581 (9th Cir. 2014) (defendants "had been aware of corrosive conditions for over a decade, and yet chose not to address them"); *Howard v. Everex Sys. Inc.*, 228 F.3d 1057, 1064 (9th Cir. 2000) (defendant knew contrary information from plan that company was facing a "possible financial crisis" due to a "lack of vertical accountability amongst staff and no internal audits").

DEFENDANTS' REPLY ISO MOTION TO DISMISS THE SECOND AMENDED COMPLAINT   CASE No.: 3:23-cv-04332-JSC

DATED: May 30, 2025

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP


By: */s/ Mark R.S. Foster*
        Mark R.S. Foster
        525 University Avenue,
        Palo Alto, California 94301
        Telephone: (650) 470-4500
        Facsimile: (650) 470-4570

        Peter B. Morrison
        Raza Rasheed
        2000 Avenue of the Stars
        Los Angeles, California 90067
        Telephone: (213) 687-5000
        Facsimile: (213) 687-5600

        *Attorneys for Defendants Hawaiian Electric*
        *Industries, Inc., Constance H. Lau, Scott W. H.*
        *Seu, Gregory C. Hazelton and Paul K. Ito*


ALLEN OVERY SHEARMAN STERLING US LLP


By: */s/ Daniel H.R. Laguardia*
        Daniel H.R. Laguardia (SBN 314654)
        140 New Montgomery Street
        San Francisco, CA 94105

        Adam S. Hakki (pro hac vice)
        599 Lexington Avenue
        New York, New York 10022
        Telephone: (212) 848-4000

        *Attorneys for Defendants Hawaiian Electric*
        *Company, Inc. and Shelee M. T. Kimura*

## FILER'S ATTESTATION

Pursuant to Civil Local Rule 5-1(i)(3), the filer attests that all signatories concur in the filing of this brief.

DATED: May 30, 2025      BY: *Mark R.S. Foster*

1