# Exhibit 2

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, Individually and on Behalf of All Others Similarly Situated, | CASE NO. 3:23-cv-04332-JSC |
| Plaintiff, | |
| v. | |
| HAWAIIAN ELECTRIC INDUSTRIES, INC., HAWAIIAN ELECTRIC COMPANY, INC., CONSTANCE H. LAU, SCOTT W. H. SEU, GREGORY C. HAZELTON, PAUL K. ITO, and SHELEE KIMURA, | |
| Defendants. | |

**DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION**

I, LANCE CAVALLO, declare and state as follows:

1.     I am a Vice President at Verita Global ("Verita"), located at 1 McInnis Parkway, Suite 250, San Rafael, California 94903.  I make this declaration based on personal knowledge, and if called to testify I could and would do so competently.

2.     At the request of Lead Counsel, Pomerantz LLP, I am providing this declaration to give the Court and the parties to the above-captioned action further information about the procedures and methods that will be used to provide notice of the proposed Settlement to the investors who make up the Class, and the administration of the claims process.

3.     Verita has been retained by Lead Counsel, subject to Court approval, to provide notice and claims administration services in the above-captioned action.  The Class consists of all Persons who purchased or otherwise acquired Hawaiian Electric Industries, Inc. ("HEI" or the

1

"Company") common stock between February 28, 2019 and September 4, 2023, inclusive, and are not otherwise excluded from the Class.

4. As background, Verita has implemented successful claims administration programs in more than a thousand securities class actions during our more than four decades as an administrator. Our experience includes many of the largest and most complex settlement administrations of both private litigation matters and of actions brought by government securities regulators. More information on Verita's experience can be found on its website at www.VeritaGlobal.com.

5. The proposed notice plan in this matter uses procedures that have been designed to provide extremely effective direct mail notification to every investor who is a member of the Class and who can be identified with reasonable effort. In addition, direct email notification will be provided to hundreds of financial institutions that regularly monitor proposed securities class action settlements. By themselves, the proposed direct mail and email notification will reach an extremely high percentage of the Class. All persons and entities identified as potential Settlement Class Members will be sent the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release form ("Claim Form," together with the Notice, the "Notice Packet"), which will include instructions for claim submission, objecting to any aspect of the Settlement, and requesting exclusion from the Class. The proposed notice plan also calls for publication once in GlobeNewswire. Details of the complete proposed notice plan are outlined below.

6. If Verita is appointed by the Court as Claims Administrator, and subject to the Court's approval of the notice plan set forth in the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice ("Notice Order"), Verita will initially send a copy of the

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

Notice Packet by First-Class Mail (or email, to the extent email addresses are provided) to all persons and entities identified as potential Settlement Class Members by HEI's stock transfer agent. The stock transfer agent will only have the contact information for the small number of investors that hold their securities in their own names. These investors typically make up a very small percentage of a class, as the vast majority of investors hold their securities through a broker, bank, or other financial institution, and do so in what is known colloquially as "street name." Under the system of street name ownership, institutions act as the record holders for investors who are the beneficial owners of the securities. In Verita's experience, shareholders who hold their securities in their own name, and are therefore known to the stock transfer agent, typically make up less than 5% of a class in a typical securities settlement.

7.      In order to obtain the contact information for investors that hold their securities in street name, Verita and other administrators use a procedure designed to obtain that information from the brokers, banks, and other institutions (the "Nominee Holders") that actually hold the securities for the benefit of their clients. In the more than 40 years that Verita has been notifying class members of actions involving publicly-traded securities, Verita has found the majority of potential class members hold their securities in street name and are reached through the Nominee Holders.

8.      For this matter, Verita will send the Notice Packet and appropriate cover letter to each entity included on a proprietary list of approximately 255 Nominee Holders. This list also includes a group of firms and institutions who have requested notification on every case involving publicly-traded securities and is contained in a database created, maintained, and updated as necessary by Verita. In Verita's experience, the institutions included in this database represent a significant majority of the beneficial holders of the securities in most settlements involving publicly-traded companies.

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

9.      Verita will also send the Notice Packet and appropriate cover letter to each financial institution registered with the U.S. Securities and Exchange Commission ("SEC") as a potential Nominee Holder.  There are approximately 4,415 institutions on that list, which changes from time to time and is, therefore, periodically updated.  The cover letter accompanying the Notice Packet will notify the Nominee Holders of the pendency of this action as a class action and of the proposed Settlement and inform them of their obligation to either provide to Verita the names and addresses (and email addresses where available) of their clients who may be Settlement Class Members or request copies of the Notice Packet to provide directly to their customers and clients.

10.      Verita has long-standing relationships with all of the primary Nominee Holders, and they are accustomed to providing us with information regarding their clients from their records and obtaining reimbursement for doing so.  Verita will provide several supplemental notification letters to any Nominee Holder who does not respond to the initial request for potential Settlement Class Member contact information.

11.      Verita will promptly send the Notice Packet to all potential Settlement Class Members identified by Nominee Holders.  Verita will also send copies of the Summary Notice directly to Nominee Holders who indicate that they will directly forward the documents to their customers and clients who may be Settlement Class Members.

12.      All name and address (and email address) data obtained by Verita will be reviewed to identify and eliminate exact duplicates and incomplete data prior to mailing.  Physical addresses will be checked against the United States Postal Service's National Change of Address database to identify address changes and obtain current mailing addresses where available.  Any Notice Packets that are returned as undeliverable mail will be reviewed to determine if an alternative or updated address is available from the Postal Service, and will be re-mailed to the updated or alternative address.  In cases where no address is available from the Postal Service, Verita will

4

attempt to obtain updated or alternative address information from private databases, and will re-mail the Notice Packet if such information is available.

13.     Verita will supplement the direct mailing program described above by publishing the Summary Notice once in *GlobeNewswire*.  News outlets often use posted notices as the basis for their own stories about litigation settlements involving publicly-traded companies, thereby creating added awareness of the proposed Settlement among investors.

14.     Verita will also cause the Notice Packet to be published by the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS").  LENS enables participating banks and brokers to review the documents and directly contact the Claims Administrator to obtain copies of the Notice Packet for their clients who may be Settlement Class Members.

15.     The Notice Packet will also be provided electronically to approximately 325 institutions that monitor securities class actions for their investor clients and regularly act on their behalf in these matters.

16.     Throughout the notification and claims processing period, Verita will maintain a toll-free number to accommodate potential Settlement Class Members' inquiries.

17.     Verita will also establish and maintain a settlement-specific website where key documents will be posted, including the Stipulation of Settlement, the Notice and Claim Form, the executed Notice Order, and any other documents that the parties or the Court require to be posted. The website will also provide summary information regarding the case and Settlement and highlight important dates, including the date of the Settlement approval hearing and any changed deadlines.  All posted documents will be available for downloading from the website.

18.     Based on our experience, we estimate that the proposed notice program will provide notice to more than 95% of the investors that are potential Settlement Class Members.  Because the Notice directs the cooperation of Nominee Holders and provides for the reimbursement of their

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

costs of doing so, we have experienced and continue to anticipate a high level of compliance from those institutions, many of which have developed regular systems for providing the required information.

19.    The procedures proposed here have proven extremely effective at compiling a very comprehensive list of potential class members and providing notice to those potential class members in thousands of securities class action matters prior to this case.  Substantially similar notice plans have been approved by numerous courts as being the best notice practicable under the circumstances.  Verita will, of course, provide a reporting declaration outlining the results of the implemented notice plan and the number of hard copy notices that are ultimately delivered and will do so prior to, or in conjunction with, Lead Plaintiff's request that the Settlement be finally approved.

20.    Because of the street name system under which most securities are held, even defendant HEI does not know the identity of the vast majority of its shareholders, and it is usually not possible to meaningfully project the total number of class members prior to implementing the notice plan.  However, by taking certain information regarding the number of outstanding HEI common shares during the proposed class period and comparing that to similar information collected in other cases Verita has administered, we estimate that we will send approximately 50,000 Notice Packets to potential Settlement Class Members and other Nominees.

21.    Because this matter involves the purchase and sale of securities, which is protected and private financial information held by a large number of different brokerages, custodians, and other financial institutions, a claims process is necessary to gather the required information regarding each claimant's purchases, acquisitions, sales, and holdings of HEI common stock during the periods relevant to the proposed Plan of Allocation.  This transaction information will

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

then be used to evaluate the eligibility of each claim to receive any distribution from the Settlement.

22.     There are three typical ways that a claim may be submitted to Verita in securities settlements such as this: a claimant may submit a Claim Form and supporting documents by mail, a claimant may submit a Claim Form and supporting documents via an interactive service provided on the Settlement website, or a financial institution or other third party who has the authority to do so may file claims on behalf of its clients in electronic spreadsheet format.  In our experience, the vast majority of claims, typically at least 80%, are filed by institutions or third-party services which submit claims on behalf of their clients who may be class members, removing the burden from those claimants to file on their own behalf.

23.     A claim may be determined ineligible for recovery for various reasons related to the overall completeness of the claim and the claimant or transaction information as presented. For example, where the Claim Form did not include any purchases or acquisitions of HEI common stock during the relevant period, where calculation of the claim under the Plan of Allocation did not result in a recognized loss, or where the beneficial owner as presented was determined to be insufficient or otherwise ineligible, the claim will be deemed ineligible for recovery and claimants are so advised.

24.     In addition to making these determinations, Verita also reviews claims for deficiencies related to specific missing or incorrect information which may be resolved with further information; for example, where a claim is missing supporting documentation, lacking a signature, appears to be missing information regarding transactions or holdings, or presents transaction information which does not match the known history of the stock.  If those deficiencies can be corrected by an analyst on review, some of these claims may result in a different loss determination and move into eligible status.  Furthermore, Verita will typically waive deficiencies

7

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

deemed to be insignificant, which may include, but is not limited to, deficiencies which impact only the portion of the claim which calculates no recognized loss, and partially or undocumented claims, partial or missing signatures, and other immaterial deficiencies where the loss of the claim falls below certain recognized loss amount thresholds.

25.    Deficiencies will be addressed during the normal course of the administration and claimants with deficient Claim Forms will be provided an opportunity to cure these deficiencies prior to distribution of the Settlement proceeds.  In addition, rejected claimants will be notified of the rejection of their claim and will be provided an opportunity to furnish additional information which may validate the claim or request more information about the reason the claim is rejected prior to distribution of the Settlement proceeds.  Claimants who furnish additional information which remains insufficient or who request further review by the Claims Administrator of their rejected claim and who remain dissatisfied with the determination made by the Claims Administrator will also be given instructions for further appealing adverse determinations to the Court to obtain a final determination for the claim.

26.    Based on our experience with securities settlements of similar size and involving companies with similar market capitalizations and numbers of shareholders, we estimate that we may receive approximately 10,000 claims and would estimate administering the notice, claims processing, and settlement distribution aspects of this proposed Settlement will generate professional services fees and expenses of approximately $260,000.  The estimate includes expenses related to printing and mailing the Notice Packet.  This estimate also includes the expenses of the Nominee Holders incurred in complying with the request for client information or disseminating the Summary Notice to clients as allowed by law.  As part of the outreach process described in paragraphs 6-13, Nominee Holders will be advised that they may seek reimbursement of their reasonable expenses actually incurred in gathering and forwarding the names and addresses

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

of beneficial owners to the Claims Administrator, or forwarding the Notice Packet to beneficial owners via that process or through email, up to a maximum of $0.05 per record, plus actual cost of postage (if applicable), by providing the Claims Administrator with proper documentation supporting the expenses for which reimbursement is sought.  In our experience, the notice process and claims process outlined above are consistent with those undertaken in other securities settlements of similar size and complexity, and are extremely effective in administering settlements of securities class actions.

27.    The estimate above is based on those assumptions, as well as certain other projections based on our experience. The actual fees and costs required to complete the administration may be higher or lower, depending on how many Class Members are identified, how many claims are filed, how many claims are valid, and how many claims require additional communication with the filer.

28.    Verita maintains a robust and comprehensive security program designed to ensure the protection and secure handling of client data.  Verita acts as a data processer and will receive class member data through secure means, such as secure FTP.  All data provided to Verita will be used for purposes of the Settlement as directed by the Stipulation of Settlement and the parties and will be used solely for settlement implementation and no other purpose.

29.    Verita's Information Security Policy Framework is aligned to ISO/IEC 27002:2013 which is reviewed on an annual basis and communicated to all employees through a comprehensive training program.

30.    Verita maintains a number of corporate governance policies that reflect the manner in which it does business, including an employee Code of Conduct that outlines the professional, responsible, and ethical guidelines that govern employee conduct.  These policies are available on our website.

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

31.    Verita's professional indemnity insurance covers any claim which arises out of any wrongful professional act subject to terms and conditions of the policy with a policy limit of not less than $10 million. Verita's comprehensive crime and electronic & computer crime insurance covers loss sustained as a result of infidelity of employees, loss on premises, in transit, forgery or alteration and other fraudulent activities subject to terms and conditions of the policy. The policy also covers electronic and computer crimes. The policy limit is not less than $10 million.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed this 23rd day of December, 2025, at Wantagh, New York.

_Lance Cavallo_
LANCE CAVALLO

DECLARATION OF LANCE CAVALLO REGARDING NOTICE AND ADMINISTRATION
(CASE NO. 3:23-cv-04332-JSC)

# Settlement Administration Services Resume



## Introduction

With Verita you receive unparalleled legal administrative services, delivered with a combination of unrivaled industry-leading expertise, personable & professional client service, and innovative technology solutions. We deliver a cost-effective strategy for every settlement, big or small, and bring it to life with a scalable service infrastructure and secure data management.

Together, that means unmatched support for your critical business processes and transactions.

## Our Credentials

Verita has earned both national and international industry awards and recognition for our services, leadership, progressive business model, and growth. The Verita team brings extensive experience to your business, having administered over 10,000 matters and distributed more than $2 billion (USD) annually for the last 10 years.

Looking further back, our highly experienced team has decades of unrivaled experience managing some of the most complex engagements in history.

### $2 billion (USD)

Distributed annually for the last 10 years

### 10,000+

Matters administered across multiple industries and at various scales

## Our Approach

Verita's team knows the intricacies of settlement administration inside and out — and can help you build a clear, effective plan for every situation. That starts at the onset of each engagement when we develop an efficient, cost-effective strategy based on the terms of your settlement.

Our domestic infrastructure — one of the largest in the industry — includes a scalable call center capable of handling hundreds of thousands of calls per year, as well as the production capacity to produce and mail millions of documents annually. Our scalable administration services allow our experts to effectively serve the needs of both counsel and class members, ensuring comprehensive support throughout every aspect of the settlement process.

# Data Security & Insurance

Trustworthy data security is crucial to maintaining your clients' confidence and delivering reliable, frictionless results. To that end, Verita maintains a comprehensive security program designed to ensure the protection and secure handling of client data. Verita's information security framework is aligned to ISO 27001 and ISO 27002, and is kept up-to-date with annual reviews

**That includes policies governing:**

- › Data Security
- › Asset Management
- › Access Control
- › Cryptography
- › Physical and Environmental
- › Operations Security

- › Vulnerability Management
- › System Development & Maintenance
- › Vendor Management
- › Incident Management
- › Business Continuity
- › Compliance

To ensure industry-leading security standards across your team, all Verita employees undergo a comprehensive and continuous training and awareness program.

Verita is prepared for engagements across practically any sector and offers GDPR, CCPA, and HIPAA compliant solutions to meet the needs of any administration. To further reduce risk, we limit the collection of Personally Identifiable Information, taking only the minimal data points necessary for our services. For additional peace of mind, Verita possesses all relevant insurance, including professional indemnity insurance, general liability, property, comprehensive crime, electronic and computer crime, and cyber liability insurance.

# Verita Personnel

Every engagement is assigned a team of experienced consultants, specialists, and technology experts. They serve as knowledgeable, accessible partners you can depend on for the duration of your engagement — and have earned their reputation for careful analysis, procedural integrity, and consistently exceeding clients' expectations.

Regardless of who is assigned to your team, our dedicated personnel have decades of experience both within Vertia and throughout the legal industry. Vertia's professionals are trained both formally and in practice, carrying trusted credentials for their areas of expertise. This includes undergraduate and master's business degrees, information technology certifications, and law degrees, as well as licenses and certificates in relevant disciplines.

Verita's main offices are in El Segundo, CA; San Rafael, CA; and London, ON; with a robust presence across North America and globally.


veritaglobal.com

## Settlement Value

| | |
|---|---|
| In re Volkswagen "Clean Diesel" Marketing, Sales Practices, and Products Liability Litig. | $1,690,000,000 |
| Ageas SA/NV v. Vereniging van Effectenbezitters (aka Fortis) | $1,573,000,000 |
| Steinhoff International Holdings N.V | $941,000,000 |
| Ramah Navajo Chapter v. Jewell | $940,000,000 |
| Federal Trade Commission v. The Western Union Co. | $586,000,000 |
| Vaccarino v. Midland National Life Ins. Co. | $555,000,000 |
| In re Facebook Biometric Info. Privacy Litig. | $550,000,000 |
| Safeco Insurance Company of America v. American International | $450,000,000 |
| Johnson v. Caremark Rx, LLC | $310,000,000 |
| In re Activision Blizzard, Inc. Stockholder Litig. | $275,000,000 |
| N.J. Carpenters Health Fund v. Royal Bank of Scotland Group, PLLC | $275,000,000 |
| Dial Corp. v. News Corp. | $244,000,000 |
| In re Medical Capital Securities Litig. | $219,000,000 |
| In re NCAA Athletic Grant-In-Aid CAP Antitrust Litig. | $209,000,000 |
| Gutierrez v. Wells Fargo Bank, N.A. | $203,000,000 |
| Rimler v. Postmates Inc. | $179,000,000 |
| In the Matter of BlueCrest Capotal Management Ltd. | $170,000,000 |
| Bell v. Farmers Insurances Exchange | $170,000,000 |
| In re Diamond Foods, Inc. Securities Litig. | $167,000,000 |
| In re JPMorgan Chase Co. Securities Litig. | $150,000,000 |
| Haddock v. Nationwide Life Insurance Co. | $140,000,000 |
| In re Freeport-McMoran Copper & Gold Inc. Derivative Litig. | $138,000,000 |
| Bank of America NA v. El Paso Natural Gas Co. | $115,000,000 |
| In re Anthem, Inc. Data Breach Litig. | $115,000,000 |
| In re Medical Capital Securities Litig. | $114,000,000 |
| Drywall Acoustic Lathing and Insulation Local 675 Pension Fund v. SNC-Lavalin Group Inc. | $110,000,000 |
| In re Automotive Parts Antitrust Litig. | $103,000,000 |
| In re Rural Metro Corp. Stockholders Litig. | $98,000,000 |
| Marcu v. J.C. Penney Co., Inc. | $97,000,000 |
| Various state and territorial courts v. U.S. Tobacco Co. | $96,000,000 |
| Oubre v. Louisiana Citizens Fair Fund | $93,000,000 |
| Ardon v. City of Los Angeles | $92,000,000 |
| Nishimura v. Gentry Homes, Ltd. | $90,000,000 |
| In re Potash Antitrust Litig. (No. II) | $90,000,000 |
| Ormond v. Anthem, Inc. | $90,000,000 |
| In re Dynamic Random Access Memory (DRAM) Antitrust Litig. | $88,000,000 |
| In re Morning Song Bird Food Litig. | $85,000,000 |
| Ideal v. Burlington Resources Oil & Gas Co. LP | $85,000,000 |
| Willoughby v. DT Credit Corp. (Drivetime) | $78,000,000 |
| Bake v. Saint-Gobain Performance Plastics Corp. | $62,000,000 |


veritaglobal.com

# Class Size

| | |
|---|---|
| Edwards v. National Milk Producers Federation | 90,000,000 |
| In re Anthem, Inc. Data Breach Litig. | **80,000,000** |
| In re Carrier IQ, Inc. Consumer Privacy Litig. | **47,000,000** |
| The Home Depot, Inc. Customer Data Security Breach Litig. | **40,000,000** |
| In re Midland Credit Mgmt., Inc. TCPA Litig. | **30,000,000** |
| Golden v. ContextLogic Inc., d/b/a Wish.com | **29,000,000** |
| Cassese v. Washington Mutual, Inc. | **23,000,000** |
| In re Wawa, Inc. Data Security Litig. | **22,000,000** |
| Rael v. The Children's Place, Inc. | **22,000,000** |
| In re Optical Disk Drive Antitrust Litig. | **20,000,000** |
| In re UltraMist Sunscreen Litig. | **20,000,000** |
| Torres v. Wendy's International, LLC | **18,000,000** |
| In re Lithium Ion Batteries Antitrust Litig. | **16,000,000** |
| In re Facebook Biometric Info. Privacy Litig. | **15,000,000** |
| Gordon v. Verizon Communications, Inc. | **15,000,000** |
| In re Experian Data Breach Litig. | **15,000,000** |
| Opperman v. Kong Technologies, Inc. | **13,000,000** |
| Lerma v Schiff Nutrition International, Inc. | **12,000,000** |
| Kolinek v. Walgreen Co. | **10,000,000** |
| Dunstan v. comScore, Inc. | **10,000,000** |
| Consumer Financial Protection Bureau v. Sprint Corporation | **9,000,000** |
| Steinfeld v. Discover Financial Services | **9,000,000** |
| Cohen v. FedEx Office and Print Services, Inc. | **9,000,000** |
| Elvey v. TD Ameritrade, Inc. | **9,000,000** |
| In re Monitronics Int'nl, Inc. TCPA Litig. | **8,000,000** |
| In re Portfolio Recovery Associates TCPA Litig. | **7,000,000** |
| Morrow v. Ascena Retail Group, Inc. | **7,000,000** |
| Shames v. Hertz Corp. | **7,000,000** |
| Roberts v. Electrolux Home Products, Inc. | **6,000,000** |
| Chambers v. Whirlpool Corp. | **6,000,000** |
| Martin v. Safeway Inc. | **6,000,000** |
| Morales v. Conopco Inc. dba Unilever | **5,000,000** |