# Exhibit 2

**POMERANTZ LLP**
Jeremy A. Lieberman
Austin P. Van
600 Third Avenue, 20th Floor
New York, NY 10016
Telephone: (212) 661-1100
jalieberman@pomlaw.com
avan@pomlaw.com

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Lead Counsel for Lead Plaintiffs*

*Additional Counsel on Signature Page*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, Individually and on Behalf of All Others Similarly Situated, | CASE NO.  3:23-cv-04332-JSC |
| Plaintiff, | **DECLARATION OF AUSTIN P. VAN IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT** |
| v. | |
| HAWAIIAN ELECTRIC INDUSTRIES, INC., HAWAIIAN ELECTRIC COMPANY, INC., CONSTANCE H. LAU, SCOTT W. H. SEU, GREGORY C. HAZELTON, PAUL K. ITO, and SHELEE KIMURA, | **CLASS ACTION** |
| Defendants. | Hearing Date:  February 26, 2026<br>Time:  10:00AM<br>Judge:  Hon. Jacqueline Scott Corley<br>Courtroom:  8—19th Floor |

I, Austin P. Van, declare:

1.    I am a Partner in the firm of Pomerantz LLP, Lead Counsel in the above-captioned Action.  I am admitted to practice in and before the courts of the State of New York, the Southern District of New York, Eastern District of New York, District of New Jersey, Northern District of Illinois, Southern District of Texas, the First, Second, Seventh and Ninth Circuit Courts of Appeals and the United States Supreme Court, and I have been admitted pro hac vice in this matter.  I have personal knowledge of the matters stated in this declaration and if called as a witness, could and would testify competently about them.

2.    I respectfully submit this supplemental Declaration in support of Plaintiffs' Motion for Preliminary Approval of the proposed Class Action Settlement reached in this Action, and specifically to address issues raised in the Court's January 26, 2026 request for supplemental briefing and related material (ECF No. 120).

**A.    History and Negotiation of the Settlement**

3.    This is a federal securities class action brought against Hawaiian Electric Industries, Inc. ("HEI") and its subsidiary, Hawaiian Electric Company, Inc. ("HECO"), an electric utility supplying service to Hawaii residents which accounted for approximately 91% of HEI's revenues, and certain of HEI/HECO's officers and directors. ¶¶ 2, 28-35.[1]  Plaintiffs allege that Defendants violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act") and U.S. Securities and Exchange Commission ("SEC") Rule 10b-5, by making materially false and misleading statements about Defendants' efforts to mitigate wildfire risk, including replacement of uninsulated power lines, utility pole maintenance, and trimming of vegetation.  Plaintiffs allege that those misrepresentations concealed the true, unmitigated risk of wildfires, and that when that risk ultimately materialized in the August 8, 2023 Lahaina Wildfire, investors suffered losses.  The operative Second Amended Complaint alleges these claims on behalf of investors who purchased or otherwise acquired HEI securities during the Class Period of February 28, 2019 and September 4,

---

[1] Unless otherwise indicated, references to "¶__" are to paragraphs of Plaintiffs' Second Amended Complaint for Violations of the Federal Securities Laws ("Second Amended Complaint") (ECF No. 93), and capitalized terms shall have the meaning ascribed to them in the Stipulation of Settlement filed with the Court on January 5, 2026 ("Stipulation") (ECF No. 119-1).

2023, inclusive, and were damaged thereby.

4.    On August 24, 2023, Plaintiff Bhapinderpal S. Bhanga commenced this Action in the U.S. District Court for the Northern District of California.  ECF No. 1.  On December 7, 2023, this Court appointed Daniel Warren as Lead Plaintiff, and Pomerantz LLP as Lead Counsel.  ECF No. 58.  On March 8, 2024, Plaintiffs filed an Amended Complaint for Violations of the Federal Securities Laws ("Amended Complaint") (ECF No. 70) alleging that Defendants violated Sections 10(b) and 20(a) of the Exchange Act and SEC Rule 10b-5 by making materially false and misleading statements concerning their efforts to mitigate wildfire risk and by causing investors losses when that risk materialized in the August 8, 2023 Lahaina Wildfire.

5.    On May 7, 2024, Defendants moved to dismiss the Amended Complaint.  ECF No. 81.  On July 8, 2024, Plaintiffs opposed Defendants' motion to dismiss (ECF No. 84), and Defendants filed their reply on August 22, 2024.  ECF No. 87.  On September 9, 2026, the Court held a hearing on the motion to dismiss.  ECF No. 89.  On October 15, 2024, the Court granted the motion to dismiss with leave to amend.  ECF No. 92.

6.    On November 12, 2024, after extensive further investigation, Plaintiffs filed their Second Amended Complaint.  ECF No. 93.  The Second Amended Complaint added new allegations based on, *inter alia*, the findings of an October 1, 2024 Origin and Cause Report issued by the County of Maui Department of Fire and Public Safety ("MFD") about the Lahaina Wildfire ("Maui Fire Department Report" or "MFD Report"); a September 19, 2024 report issued by the U.S. Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives, National Response Team ("ATF"), on the Lahaina Wildfire ("ATF Report"); and the investigatory files of the Hawaii Public Utilities Commission ("PUC"), including the Management Audit of the Hawaiian Electric Company (HECO) Final Report dated May 12, 2020 ("Audit Report"), commissioned by the PUC and filed on May 13, 2020, which related in part to certain of Defendants' maintenance practices for wildfire mitigation.

7.    After Plaintiffs filed the Second Amended Complaint, on November 21, 2024, the Court granted the Parties' stipulation to defer Defendants' response to the Second Amended Complaint due to the Parties' agreement to conduct a mediation before David R. Murphy, Esq., of

DECLARATION OF AUSTIN P. VAN (CASE NO.  3:23-cv-04332-JSC)

Philips ADR Enterprises, a highly experienced mediator in the area of securities class actions and complex litigation (the "Mediator"). ECF No. 97. On January 22, 2025, the Parties participated in an all-day mediation session presided over by the Mediator. In advance of the mediation, the Parties submitted and exchanged detailed mediation statements and exhibits. That mediation was not successful in resolving this matter. ECF No. 103.

8. On March 18, 2025, Defendants moved to dismiss the Second Amended Complaint (ECF No. 106), which Plaintiffs opposed on May 2, 2025 (ECF No. 110). On May 30, 2025, Defendants filed their reply. ECF No. 112.

9. While the fully-briefed motion to dismiss was pending, on June 20, 2025, the Parties filed a Joint Stipulation requesting the Court adjourn the hearing on Defendants' motion to dismiss because the Parties had agreed to conduct a second mediation before the Mediator. On July 14, 2025, the Parties participated in a second full-day mediation, but again did not resolve the matter. However, the Parties continued ongoing negotiations, with the assistance of the Mediator, and agreed to participate in a third mediation on August 15, 2025. ECF No. 115. During this third full-day mediation, the matter still was not resolved, but the Parties continued ongoing negotiations. Ultimately, following a "Mediator's proposal," the Parties reached an agreement in principle to settle and release all claims asserted against Defendants in the Action in exchange for an all-cash payment of $47,750,000 for the benefit of the Settlement Class, subject to the execution of a settlement stipulation and related papers and Court approval. The Settlement also included the release of all claims that Defendants could assert against Plaintiffs and other Settlement Class Members. The agreement-in-principle was memorialized in a Term Sheet that was negotiated at length and ultimately executed by the Parties on November 5, 2025. On November 7, 2025, the Parties filed a Joint Notice of Pending Settlement informing the Court that a settlement had been reached. ECF No. 116.

**B.    Risks of Continued Litigation and Reasonableness of Settlement Amount**

10. While Plaintiffs believe their case is strong, the "risk, expense, complexity, and likely duration of further litigation" here were substantial. As a threshold matter, securities fraud cases are inherently complex and frequently take an exceptionally long time to litigate. Indeed,

even a trial may not mark an end to the proceedings, since such cases often involve significant post-trial motions and appeals.  This case faced the same inherent complexities and obstacles.

11.    In addition, in this case, despite their belief in the strength of their claims, Plaintiffs faced numerous significant specific litigation risks.  For instance, Defendants had already prevailed on their initial motion to dismiss, and while Plaintiffs were granted leave to amend their complaint and filed a Second Amended Complaint, in the completed briefing of that motion, Defendants strenuously argued that the amendments did not alter the fact that the complaint still failed to state claims against defendant HEI (the parent) based on applicable caselaw, including *Janus Cap. Grp., Inc. v. First Derivative Traders*, 564 U.S. 135 (2011); failed to allege actionable misstatements by HECO because Plaintiffs lacked standing to sue a non-public subsidiary (HECO) which did not issue its own securities; failed to adequately plead the scienter of any of the Individual Defendants; failed to allege any actionable misstatements or omissions; failed to allege that Defendants did not take all reasonable precautions to prevent wildfires (claiming Defendants, ostensibly, had undertaken extensive trimming of vegetation, and maintenance and replacement of utility poles and power lines); failed to allege that any investigatory body had concluded that Defendants were legally responsible for anything leading up to or during the Lahaina Wildfire; and argued that the Lahaina Wildfire was simply the result of a tragic, cataclysmic weather event and unforeseeable chain reactions, which they could not control and could not reasonably be charged with preventing—and was not a legitimate basis for a securities fraud claim.

12.    Even if Plaintiffs prevailed on the pending motion to dismiss, Plaintiffs would face an uphill battle securing discovery, including documents and deposition testimony in a matter that is already over two years old, with maintenance records and activities that were much more dated and located across a parent and subsidiary, and various third parties in Hawaii, including public utility regulators.  Moreover, to the extent that this discovery implicated regulatory records and testimony, including that of the various investigatory bodies and the PUC, Plaintiffs could expect significant motion practice concerning objections to such discovery efforts.

13.    Defendants would also contest Plaintiffs' motion for class certification.  Defendants would likely mount several challenges based on Plaintiffs' adequacy and typicality, and even if

Plaintiffs prevailed on the class certification motion, Defendants could seek to overturn the decision via a Rule 23(f) petition.

14. Following discovery, Plaintiffs would assuredly face a motion for summary judgment by Defendants. Here again, Plaintiffs would face substantial risks that Defendants would prevail on their arguments as to the adequacy of the factual record to support Plaintiffs' claims on summary judgment, particularly as to falsity, scienter, and loss causation.

15. If Plaintiffs did prevail on summary judgment, they would face additional substantial risks at trial. For example, Defendants would argue, and a jury might be swayed by the notion, that the Lahaina Wildfire was simply a tragic circumstance beyond Defendants' control, that Defendants did all they reasonably could have done to maintain their equipment and trim vegetation, and that their "best efforts" could not be transformed into liability for securities fraud. Defendants would also appeal to the jury that they certainly did not "intend" for the fire to happen (which harmed their own equipment and reputation, in addition to the tragic loss of life), and therefore, they could not be found to have acted with "scienter"—particularly where no clear motive such as massive insider selling was alleged. Relatedly, Defendants would argue to the jury that they did not cause Plaintiffs' investment losses—rather, it was at best an act of nature outside their control that caused this tragedy, and that *by association* HEI's stock price declined (including due to the shock of the Lahaina Wildfire, the costs of defending lawsuits, replacing equipment, public perception, etc.). Moreover, Defendants would likely argue that none of the alleged corrective disclosures revealed that any of their prior statements about their wildfire mitigation efforts were false or misleading. All of these arguments pose risks of defeating Plaintiffs' claims. Further, Plaintiffs face the risks posed by the numerous pretrial and *in limine* motions that Defendants would surely bring, each of which could undermine or end their case.

16. Even if Plaintiffs prevailed on liability at trial, Defendants would also challenge Plaintiffs' claimed damages. Indeed, Defendants already had challenged Plaintiffs' damage estimates. Defendants would be expected to proffer at trial their expert's detailed damage analysis, claiming that Plaintiffs suffered zero or negligible damages, even assuming liability. As is well-recognized, who would win such a "battle-of-the-experts" is notoriously difficult to predict.

DECLARATION OF AUSTIN P. VAN (CASE NO. 3:23-cv-04332-JSC)

17.     Finally, even if Plaintiffs were to prevail at trial, they face the risk of a reversal on appeal, and the prospects of litigating the case post-trial on appeal for years, which might lead to a smaller recovery or no recovery at all.

18.     As described more fully below, Plaintiffs' damages expert estimates that aggregate maximum recoverable damages in this Action are approximately $1.7 billion.  Therefore, the $47,750,000 Settlement provides a recovery of approximately 2.8% of estimated damages.  The amount of the proposed Settlement is well within the range of reasonableness, and substantially exceeds the median settlement amount in securities class actions settling in 2024.  *See* Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review, at 27 (Fig. 24) (NERA Jan. 22, 2025) ("NERA Report") attached as **Exhibit A** (median recovery in securities class actions in 2024 was approximately 1.2% of estimated damages).  This result is also more than double the 1.3% median settlement value for settlements where losses were in comparable damage estimate category ($1 billion-$4.999 billion).  *See* NERA Report, at 26 (Fig. 23).

19.     Given the many significant risks faced by Plaintiffs, and the expense and duration of further litigation, Plaintiffs' Counsel believe that the proposed Settlement for $47,750,000 in cash, at this stage, is eminently fair, reasonable and adequate, and merits preliminary approval.

**C.     Retention of Verita Global and Proposed Notice Program**

20.     In connection with the motion for preliminary approval of the Settlement, Plaintiffs' Counsel request that the Court approve their choice of Verita Global ("Verita"), an independent settlement and claims administrator with extensive experience handling the administration of securities class actions, to serve as the Claims Administrator and provide notice and claims administration services in this Action, under the supervision of Lead Counsel.  These services will include disseminating notice of the Settlement to potential Settlement Class Members, maintaining the Settlement Website, receiving requests for exclusion from the Settlement Class, receiving and processing of Claim Forms, calculating payment amounts for eligible Claimants under the Court-approved Plan of Allocation, distributing payments to eligible Claimants, and responding to Settlement Class Member inquiries. The claims administration process for distribution of the

Settlement Amount will proceed in the manner typical in securities class action settlements.

21.    Attached as Exhibit B to the Declaration of Austin P. Van in Support of Plaintiffs' Motion for Preliminary Approval of Class Action Settlement, filed January 5, 2026 (ECF 119-2) is the Declaration of Lance Cavallo Regarding Notice and Administration, on behalf of Verita, which includes further details pertaining to Verita's experience and the proposed Notice program ("Cavallo Decl."). As described in that declaration, Verita "has implemented successful claims administration programs in more than a thousand securities class actions during [] more than four decades as an administrator," including "many of the largest and most complex settlement administrations of both private litigation matters and of actions brought by government securities regulators." Cavallo Decl. ¶ 4; *see also* Ex. 1 thereto.

22.    Plaintiffs' Counsel selected Verita following a competitive bidding process. Plaintiffs' Counsel sent requests for proposal ("RFPs") for notice and claims administration services in this matter to three experienced claims administration firms with which Plaintiffs' Counsel had prior satisfactory class notice and claims administration experiences. All three claims administration firms submitted comparable proposed costs, so Plaintiffs' Counsel selected Verita because Verita was, in Counsel's view, the most experienced and reliable of the firms. Verita currently estimates that its fees and expenses related to the Notice Plan and subsequent distribution process, including the anticipated Class Distribution Order, will be $260,000, to be paid from the Settlement Fund. This estimate is based on the costs of all activities to be undertaken while serving as the Claims Administrator, including those to be undertaken if the Settlement receives final approval. Cavallo Decl. ¶26. In Verita's and Plaintiffs' Counsel's experience, these estimated fees and expenses are reasonable in relation to the $47.75 million Settlement Fund. *Id.* Based on prior experience, Plaintiffs' Counsel believe Verita possesses the requisite experience and capacity to perform its duties reliably and competently. Accordingly, Lead Counsel has selected Verita to serve as Claims Administrator for this engagement, subject to the Court's approval.

**D.    Notice Program**

23.    Pursuant to the Stipulation, within ten (10) business days after entry of the Preliminary Approval Order, Defendant HEI or its counsel shall provide, or cause to be provided,

to the Claims Administrator in electronic format, such as an Excel spreadsheet, its reasonably available transfer records and lists (consisting of names and addresses) of the owners/holders of record of HEI securities during the Class Period. Stipulation, ¶ 18.

24. Thereafter, the proposed Notice plan uses procedures that have been designed to provide extremely effective direct mail notification to every investor who is a member of the Settlement Class and who can be identified with reasonable effort. In addition, direct email notification will be provided to hundreds of financial institutions that regularly monitor proposed securities class action settlements. By themselves, the proposed direct mail and email notification will reach an extremely high percentage of the Settlement Class. All persons and entities identified as potential Settlement Class Members will be sent the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Fairness Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses ("Notice") and Proof of Claim and Release form ("Claim Form," together with the Notice, the "Notice Packet"), which will include instructions for claim submission, objecting to any aspect of the Settlement, and requesting exclusion from the Settlement Class. The proposed Notice plan also calls for publication once in *GlobeNewswire*. Details of the complete proposed Notice plan are outlined in the Cavallo Decl., ¶¶ 6-20. Details of the claims administration process that will be utilized in this Action are outlined in the Cavallo Decl. ¶¶ 21-30. As part of the Notice and claims administration process, Verita will also maintain a settlement website where key documents and information pertaining to the settlement will be posted, including the Stipulation of Settlement, the Notice and Claim Form, the executed Preliminary Approval Order, and other filings and orders relevant to the motion for preliminary and final approval of the proposed Settlement and for attorneys' fees and costs. *See id.* ¶ 17.

**E.     Plan of Allocation, Calculation of Recognized Losses and Taxes**

25. In connection with the Settlement, Lead Counsel retained Stanford Consulting Group, Inc. to prepare the Settlement Class damages analyses and to work on the Plan of Allocation.

26. Attached as Exhibit 1 to Plaintiffs' Supplemental Brief in Further Support of Unopposed Preliminary Approval of Proposed Class Action Settlement is the Declaration of Zachary Nye, Ph.D., of Stanford Consulting Group, Inc. ("Nye Declaration") The Nye Declaration

explains the calculation(s) of recognized losses and the damages estimate in this Action. As set forth in the Nye Declaration, aggregate class-wide damages were estimated using the proportional "80/20 Multi-Trader Model", which is a version of the General Grading Model that is typically used in securities litigation cases. Nye Declaration at ¶ 11. Applying this methodology, approximately 83.2 million shares were affected, resulting in total damages of 1.716 billion. Nye Declaration at ¶12.

27. The Net Settlement Fund, which is distributed to Authorized Claimants according to the Plan of Allocation that was developed by Dr. Nye in conjunction with Plaintiffs' counsel, consists of the Settlement Fund less: (i) Notice and Administration Costs; (ii) Taxes; (iii) any Litigation Expenses awarded by the Court [including any requests for compensatory awards to Plaintiffs]; and (iv) any attorneys' fees awarded by the Court. ECF No. 119-1 at ¶ 8. Notice and Administration Costs are costs, fees, and expenses that are incurred by the Claims Administrator and/or Plaintiffs' Counsel in conjunction with providing notice to the Settlement Class and administering the Settlement, including but not limited to the claims process, as well as the costs, fees and expenses incurred in connection with the Escrow Account. *Id*. at ¶ 1(cc).

28. Taxes are required to be filed for the Settlement Fund, which is a Qualified Settlement Fund ("QSF") under Treasury regulation, and payment of the taxes on interest income earned shall be paid from the Settlement Fund. ECF No. 119-1 at ¶ 10. The Claims Administrator provided Plaintiffs' counsel with additional details about taxes owed. The QSF files an annual asset based Form 1120-SF federal income tax return, and the state income tax return is based on California court jurisdiction. The QSF is taxed on any interest income earned, minus any applicable deductions for administration fees, and calculated using the published tax rates for the application tax year and forms. Quarterly estimated tax liabilities are reviewed in April, June, September, and December of each calendar year, with any amounts owed due on the 15th of each respective month. The annual federal and state returns should be prepared by April 15th of each calendar year the QSF is open and holding assets, regardless of tax liability. Any remaining tax due with the filing of the return is paid by April 15th.

DECLARATION OF AUSTIN P. VAN (CASE NO.  3:23-cv-04332-JSC)

29.    Plaintiffs' Counsel will apply to the Court for a collective award of attorneys' fees to be paid from the Settlement Fund, which will include interest accrued from the time of the creation of the Settlement Fund.  ECF No. 119-1 at ¶14.  Plaintiffs' Counsel will also apply to the Court for reimbursement of litigation expenses with interest, which will include a request for reimbursement of Plaintiffs' costs and expenses (including lost wages incurred in prosecuting the Action) directly related to their representation of the Class, to be paid from the Settlement Fund. *Id.*

30.    The plan of allocation treats all Settlement Members equitably based on the timing of the purchases, acquisitions, and sales of their HEI securities.  As set forth in the Notice, it is estimated that the average recovery per affected share is approximately $0.57, before deduction of any taxes, Court-approved attorneys' fees, litigation expenses, and compensatory awards for Plaintiffs' representation of the Class, and $0.20 per share is attributed to those fees, expenses, and awards.  Nye Declaration at ¶ 13; ECF No. 119-1 at ¶¶ 3, 5.  The plan of allocation is substantively similar to other plans that have been approved in securities class actions.

**F.    Standing and Experience of Counsel**

31.    Plaintiffs' motion for preliminary approval also seeks preliminary approval of Lead Counsel as Class Counsel, for purposes of effectuating the Settlement.  Attached as **Exhibit B** to this declaration is a true and correct copy of the firm resume of Pomerantz LLP.  As reflected in its resume, Pomerantz LLP is highly experienced in the field of securities class action litigation. The firm has obtained numerous significant settlements in federal courts around the country and currently serves as lead counsel in numerous matters.

32.    Pomerantz, founded in 1936, is the oldest law firm in the world dedicated to representing defrauded investors.  Pomerantz has recovered billions of dollars on behalf of such investors, with many settlements breaking previously-held records. Pomerantz has been recognized as a top-tier firm by industry publications such as *The Legal 500*, *Benchmark Litigation*, and *Chambers USA*, among others. In 2020, Pomerantz was named the Plaintiff Firm of the Year by *Benchmark Litigation* and honored with *European Pensions'* inaugural Thought Leadership Award. Courts across the country have noted the quality of Pomerantz's legal work, and Pomerantz

attorneys regularly receive praise from their peers. The 2024 *Benchmark Litigation* guide describes Pomerantz's "prodigious capacity for cases and its tenacity to keep pursuing them" as well as the Firm's work on litigation "with more meaningful angles."

33.    Pomerantz has obtained numerous significant settlements. For example, in 2018, Pomerantz, as sole Lead Counsel for the class, achieved a total $3 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its auditors. *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018). In 2024, Pomerantz secured a $97 million settlement in *Roofers Pension Fund v. Joseph C. Papa, et. al.*, Case No. 1:16-CV-02805 (RMB) (LDW) (D.N.J). Pomerantz also secured a $225 million class recovery in *In re Comverse Technology, Inc. Sec. Litig.*, No. 06-CV-1825 (E.D.N.Y.); a $135 million class recovery in which Pomerantz was Co-Lead Counsel in *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017); and a $110 million class recovery in which Pomerantz was Lead Counsel in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), among others.

34.    Additional Plaintiffs' Counsel, Levi & Korsinsky, LLP ("Levi & Korsinsky"), is also among the most experienced and successful securities class action law firms in the country, as reflected in its Firm Resume (attached hereto as **Exhibit C**). Over the last few years, Levi & Korsinsky has been lead or co-lead counsel in more than 50 securities class actions that have resulted in over $300 million in recoveries for investors. Since 2020, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. Levi & Korsinsky was also ranked as one of the Top 5 Securities Firms for the period from 2018 to 2020 in *Lex Machina*'s Securities Litigation Report. Recent class recoveries include an $80 million recovery (as Co-Lead Counsel with Pomerantz LLP) in *In re Grab Holdings Limited Securities Litigation*, No. 1:22-cv-02189-JLR (S.D.N.Y.); a $47.5 million recovery in *In re QuantumScape Securities Class Action*, No. 3:21-cv-00058-WHO (N.D. Cal.); a $40 million recovery in *In re U.S. Steel Consolidated Cases*, No. 2:17- 579-CB (W.D. Pa.); a $24.6 million recovery in *Kohl v. Loma Negra Industrial Argentina Sociedad Argentina*, Index, No. 653114/2018 (Sup. Ct., N.Y. Cty.); and a $23 million recovery in *Lokman v. Azure Power Global Limited, et al.*, No. 1:22-cv-07432-GHW (S.D.N.Y.). Other notable recoveries include a

$79 million recovery in *E-Trade Financial Corp. Sec. Litig.*, No. 07-cv-8538 (S.D.N.Y), and a $522 million recovery for shareholders in *In re Google Inc. Class C Shareholder Litigation*, C.A. No. 7469-CS (Del. Ch.).

35.    Since the inception of this Action, Lead Counsel, with the assistance of Levi & Korsinsky, has vigorously prosecuted this Action for the benefit of Lead Plaintiff and the Settlement Class, including (i) conducting a thorough investigation relating to the claims, defenses, and underlying events and transactions that are the subject of the Action; (ii) briefing and arguing Defendants' omnibus motion to dismiss the Amended Complaint; (iii) drafting two detailed amended complaints; (iv) briefing Defendants' omnibus motion to dismiss the Second Amended Complaint; (iv) reviewing and analyzing HEI's public filings, the above-mentioned PUC Audit Report, other PUC filings, Defendants' Wildfire Mitigation Plan, the MFD Report, the ATF Report, and other investigatory and court and publicly available materials (including transcripts of public hearings) concerning the Lahaina Wildfire, its causes, and Defendants' wildfire mitigation and maintenance policies, procedures and activities, as well as the reports of securities and financial analysts about HEI, and other commentary and analysis concerning HEI/HECO and the industry in which they operate—as well as the applicable law governing the claims and potential defenses. Plaintiffs' Counsel also consulted with experts on damages and causation, among other issues, participated in three full-day mediation sessions, including preparation of extensive briefing therefor, and engaged in complex negotiations before the Mediator, as well as numerous follow-up negotiations, and ultimately achieved the proposed Settlement, for which they negotiated a Term Sheet and the Stipulation with its accompanying exhibits.

36.    Plaintiffs and Plaintiffs' Counsel were thus well-informed about the strengths and weaknesses of the Action, and so were well equipped to assess the terms of the Settlement, the risks associated with continued litigation, and ultimately, the Settlement's fairness, reasonableness, and adequacy.

***

I declare under the penalty of perjury under the laws of the State of California and the United

States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 12th of February 2026, in New York, New York.

POMERANTZ LLP

By /s/ *Austin P. Van*_____
Austin P. Van

DECLARATION OF AUSTIN P. VAN (CASE NO.  3:23-cv-04332-JSC)

**CERTIFICATE OF SERVICE**

I hereby certify that on February 12, 2026, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the Court's CM/ECF System.

By: /s/ Austin P. Van_____
Austin P. Van

DECLARATION OF AUSTIN P. VAN (CASE NO.  3:23-cv-04332-JSC)

# Exhibit A

⊓ NERA

# RECENT TRENDS IN SECURITIES CLASS ACTION LITIGATION: 2024 FULL-YEAR REVIEW

Edward Flores and Svetlana Starykh[1]

Filings Flat Relative to 2023, Standard Filings Increase for Second Straight Year

Resolutions Rise, Led by Increase in Dismissals

22 January 2025

# FOREWORD

I am excited to share NERA's "Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review" with you. This year's edition builds on work carried out over more than three decades by many of NERA's securities and finance experts. Although space does not permit us to present all the analyses the authors have undertaken while working on this year's edition or to provide details on the statistical analysis of settlement amounts and attorneys' fee percentages, we hope you will contact us if you want to learn more about our research or our consulting and testifying experience in securities litigations. On behalf of NERA's securities and finance experts, I thank you for taking the time to review this year's report and hope you find it informative.

DAVID TABAK, PhD
Senior Managing Director



# INTRODUCTION

There were 229 new federal securities class action suits filed in 2024, equaling the total number of filings seen in 2023. Standard cases, containing alleged violations of Rule 10b-5, Section 11, and/or Section 12, grew for a second consecutive year with 214 cases filed in 2024, an increase of 20% relative to 2022. Filings against companies in the technology and healthcare sectors combined accounted for more than half of all filings, and the Second and Ninth Circuits accounted for 61% of filings. Among filings of standard cases, 41% had an allegation related to missed earnings guidance while only 8% had an allegation related to merger-integration issues. There were 36 standard filings against foreign companies, of which 33% had an allegation related to regulatory issues.

Suits with AI-related claims more than doubled relative to 2023, with 13 such suits filed in 2024. Nineteen cases with COVID-related claims were filed in 2024, a 46% increase from 2023. On the other hand, crypto- and SPAC-related filings continue to decline, with only eight and nine suits filed in each category, respectively.

There were 217 cases resolved in 2024, consisting of 124 dismissals and 93 settlements, ending a six-year decline in resolutions seen from 2017 to 2023. The 17% increase in resolutions was mostly driven by an increase in the number of dismissed cases with Rule 10b-5, Section 11, and/ or Section 12 claims. For cases filed in 2024, 7% have been dismissed and 93% remain pending.

Aggregate settlements totaled $3.8 billion in 2024, with the top 10 settlements accounting for approximately 60% of this amount. Aggregate plaintiffs' attorneys' fees and expenses totaled $1.1 billion, accounting for 27.3% of the 2024 aggregate settlement value. The average settlement value declined by 7% to $43 million in 2024, and the median settlement value slightly declined by 2% to $14 million. Overall, the distribution of settlement values for 2024 was largely similar to that of 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN FILINGS

Across full-year 2024, 229 new federal securities class action cases were filed in the United States, the same number as were filed in 2023 (see Figure 1).[2] Standard cases, which contain alleged violations of Rule 10b-5, Section 11, and/or Section 12, increased for a second straight year, with 214 new filings, and accounted for over 93% of all filings in 2024.[3] Of these, filings with Rule 10b-5-only claims continue to make up the majority of standard cases with 198, an increase of 8% relative to 2023 and 46% since 2022, marking a 10-year high. On the other hand, there were only 16 standard cases with Section 11 and/or Section 12 claims (with or without an accompanying Rule 10b-5 claim), a 62% decline relative to 2022 and the lowest level of such filings over the past decade. This trend mirrors the slowdown in US IPO activity in recent years, which has seen the number of initial public offerings decline from a high of 1,035 in 2021 to at most 225 per year over 2022–2024.[4] Cases involving merger objections and crypto unregistered securities continue to decline, with only five suits filed in each category.[5] See Figure 2.

**Figure 1.** Federal Filings and Number of Companies Listed in the United States
January 1996–December 2024



Note: Listed companies include those listed on the NYSE and Nasdaq. Listings data are from World Federation of Exchanges (WFE). The 2024 listings data are as of November 2024.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 2. **Federal Filings by Type**
January 2015–December 2024



Filings with Rule 10b-5-only claims continue to make up the majority of standard cases with 198, an increase of 8% relative to 2023 and 46% since 2022, marking a 10-year high.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Excluding merger-objection and crypto unregistered securities cases, the electronic technology and technology services sector and the healthcare technology and services sector together comprised 56% of new filings in 2024, up from 41% in 2023. The percentage of suits in the finance sector declined by nearly half to 10%, partially due to a decline in filings against banking institutions. Elsewhere, the consumer durables and non-durables sector accounted for 8% of filings, roughly in line with recent years. See Figure 3.

Figure 3. **Percentage of Federal Filings by Sector and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2020–December 2024



Note: This analysis is based on the FactSet Research Systems, Inc. economic sector classification. Some of the FactSet economic sectors are combined for presentation.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

The Second and Ninth Circuits continue to be the jurisdictions in which the majority of cases are filed, together accounting for 134 of the 219 non-merger objection, non-crypto unregistered securities filings in 2024. The Ninth Circuit saw 72 new filings, 11% more than in 2023 and marking a second consecutive year that filings have increased, and the Second Circuit witnessed 62 new filings, eight more than in 2023. After hitting a five-year high of 35 filings in 2023, filings in the Third Circuit declined by nearly half in 2024, with only 18 suits filed. Elsewhere, the First, Fourth, and Fifth Circuits each saw at least 10 suits filed, marking a five-year high in their respective circuits. See Figure 4.

Figure 4. **Federal Filings by Circuit and Year**
Excludes Merger Objections and Crypto Unregistered Securities
January 2020–December 2024



Excluding merger objections and crypto unregistered securities cases, the Second and Ninth Circuits accounted for 61% of filings.

Among filings of standard cases, 41% included an allegation related to missed earnings guidance and 32% included an allegation related to misled future performance.[6] On the other hand, the percentage of standard cases containing an allegation related to accounting issues declined by over one-third to 13%. The percentage of standard cases containing an allegation related to merger-integration issues continued to decline by over one-quarter to 8%, partially driven by a decline in SPAC-related filings. See Figure 5.

Figure 5. **Allegations in Federal Filings**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2020–December 2024



The percentage of standard cases containing an allegation related to accounting issues declined by over one-third.

# FILINGS AGAINST FOREIGN COMPANIES

While the percentage of foreign companies listed on US stock exchanges has steadily increased over the past 10 years, there has been a notable decline in the percentage of federal filings against foreign companies since 2020.[7] In 2024, 25.9% of US listings were represented by foreign companies, a 10-year high, though only 16.8% of filings of standard cases were against foreign companies, a 10-year low. See Figure 6.

Figure 6. **Foreign Companies: Share of Federal Filings and Share of Companies Listed on US Exchanges**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2015–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

Over the past four years, the share of US filings against foreign companies has sharply decreased.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

There were 36 standard suits filed against foreign companies in 2024, a 5% decline from 2023, when 38 such suits were filed. The number of filings against companies based in Europe has steadily grown over the past three years, going from nine cases in 2021 to 17 cases in 2024. On the other hand, suits against companies based in China or Hong Kong declined from 24 in 2021 to four in 2024—an 83% decrease over the same three-year period. Elsewhere, there were six suits filed against companies based in Canada, four suits against companies in Israel, and one suit against a company in Australia. See Figure 7.

Figure 7. **Federal Filings Against Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, or Section 12 by Region
January 2015–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

Among standard filings against foreign companies, 39% included an allegation related to missed earnings guidance, and 8% included an allegation related to merger-integration issues, roughly in line with the analogous rates for standard filings against US companies. Allegations related to regulatory issues were twice as common among foreign companies, however, with 33% of standard filings against foreign companies having this allegation, compared with 16% for standard filings against US companies. See Figure 8.

Figure 8. **Allegations in Federal Filings by US and Foreign Companies**
Shareholder Class Actions with Alleged Violations of Rule 10b-5, Section 11, and/or Section 12
January 2024–December 2024



Note: Country of foreign issuer is determined based on location of principal executive offices.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# EVENT-DRIVEN AND OTHER SPECIAL CASES

In this section, we summarize trends in filings in potential development areas we have identified for securities class actions over the past five years (see Figures 9 and 10).

Figure 9. **Number of Crypto Federal Filings**
January 2016–December 2024



## Crypto Cases

Crypto-related filings, comprising cases involving unregistered securities and shareholder suits involving companies operating in or adjacent to the cryptocurrency industry, reached a peak in 2022 but have declined substantially since then. While 2022 saw 29 crypto-related filings, there were only 17 such filings in 2023 and eight in 2024. Of the eight filings in 2024, five suits included allegations the cryptocurrencies or nonfungible tokens (NFTs) at issue constituted sales of unregistered securities.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

## COVID-19

While it has been approximately five years since the start of the COVID-19 pandemic, suits with COVID-19-related claims continue to be filed. There were 19 such suits in 2024, a 46% increase relative to the 13 filings seen in 2023.

## Artificial Intelligence

As interest in artificial intelligence (AI) has increased in recent years, securities class action suits with AI-related allegations have been filed in greater frequency. In 2024, there were 13 AI-related filings in which companies are alleged to have overstated the use or effectiveness of AI in their businesses, more than double the number of filings seen in 2023. Seven were filed in the second half of 2024, including suits against Oddity Tech Ltd., Super Micro Computer, Inc., and Gitlab Inc.

## SPAC

Filings related to special purpose acquisition companies (SPACs) have continued to decline since their peak in 2021, when 36 securities class action suits were filed. There were only nine SPAC-related filings in 2024. This trend is consistent with the decline in SPAC IPOs in recent years, which saw a high of 613 in 2021 but dropped to only 57 in 2024.[8]

## Environment

There were five environment-related securities class action suits filed in 2024, a 38% decline from the eight cases seen in 2023. Four of these cases were filed in the first half of 2024 against Cummins Inc., SSR Mining Inc., GrafTech International Ltd., and AXT, Inc.[9] In the second half of 2024, a suit was filed against RELX Plc over greenwashing allegations.[10]

## Cybersecurity and Customer Privacy Breach

From 2020 to 2022, there were at least four securities class action suits filed each year related to cybersecurity and/or customer privacy breach. In 2023 and 2024, there were two such filings each year. Suits in 2024 included a filing against PDD Holdings Inc. over allegations its applications installed malware on users' phones and against CrowdStrike Holdings, Inc. in connection with the worldwide IT outages caused by a faulty software update in July 2024.[11]

## Bribery/Kickbacks

Between 2020 and 2022, there were 12 cases filed related to allegations of bribery or kickbacks. While there were no bribery/kickback-related cases filed in 2023, there were two such cases filed in 2024.

## Money Laundering

While 2022 and 2023 saw only one suit filed with claims related to money laundering, there were two such suits filed in 2024. These suits involved TD Bank in connection with issues involving its anti-money laundering program and Customers Bancorp, Inc. over inadequate anti-money laundering practices.

## Banking Turmoil

Between March and May 2023, there was a string of bank collapses and failures, which led to 11 securities class action suits filed against banking institutions in 2023. There have been no filings associated with banking turmoil since then; as a result, this development area is no longer presented in Figure 10.

Figure 10. **Event-Driven and Other Special Cases by Filing Year**
January 2020–December 2024



Number of Federal Filings

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# TRENDS IN RESOLUTIONS

From 2017 to 2023, there was a decline in the number of resolved federal securities class action cases. This six-year decline ended in 2024, which saw the number of resolutions increase by 17% from 186 in 2023 to 217 in 2024. Of these resolved cases, 93 were settlements and 124 were dismissals.[12] Although the number of settlements increased by only 3% in 2024, the number of dismissals increased by 29% from 96 in 2023, largely driven by a rise in dismissals involving standard cases. Standard cases accounted for more than 90% of resolutions, comprising 197 of 217 resolved cases. See Figure 11.

Figure 11. **Number of Resolved Cases: Dismissed or Settled**
January 2015–December 2024



Excluding suits involving merger objections and crypto unregistered securities, historically, a minority of all dismissed cases are voluntarily dismissed by plaintiffs, though the percentage of voluntary dismissals has varied over time. For instance, while 35% of dismissed cases were voluntarily dismissed in 2021, this percentage has declined in subsequent years to 24% in 2024. See Figure 12.

Figure 12. **Type of Dismissal as Percentage of Dismissed Cases by Resolution Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



Note: Court dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Since 2015, more filed cases have been dismissed than settled, with approximately 29% of filings remaining pending. This is consistent with historical trends, which indicate dismissals tend to occur earlier in the litigation cycle and settlements occur later. For cases filed in 2024, 7% have been dismissed and 93% remain pending as of 31 December 2024. See Figure 13.

Figure 13. **Status of Cases as Percentage of Federal Filings by Filing Year**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



Note: Dismissals may include dismissals without prejudice and dismissals under appeal. Component values may not add to 100% due to rounding.

Since 2015, more filed cases have been dismissed than settled, with approximately 29% of filings remaining pending.

For cases dismissed between 2015 and 2021, the median time from the filing of the first complaint to resolution was relatively stable at around 1.4 years. Since 2021, the median time to dismissal has steadily increased, reaching a 10-year high of 2.0 years in 2024. For cases settled between 2015 and 2021, the median time from filing of the first complaint to resolution was relatively stable at around 3.0 years. While the median time to settlement notably increased to 3.9 years in 2023, it declined to 3.2 years in 2024. See Figure 14.

Figure 14.  **Median Time from First Complaint Filing to Resolution**
Excludes Merger Objections, Crypto Unregistered Securities, and Verdicts
January 2015–December 2024



# ANALYSIS OF MOTIONS

NERA's federal securities class action database tracks filing and resolution activity as well as decisions on motions to dismiss, motions for class certification, and the status of any motion as of the resolution date. For this analysis, we include securities class actions that were filed and resolved over the past 10 years in which purchasers of common stock are part of the class and in which a violation of Rule 10b-5, Section 11, and/or Section 12 is alleged.

## Motion to Dismiss

A motion to dismiss was filed in 96% of the securities class action suits filed and resolved. Of these, a decision was reached in 74% of these cases, while 19% were voluntarily dismissed by plaintiffs, 7% settled before a court decision was reached, and 1% were withdrawn by defendants. Among the cases in which a decision was reached, 61% of motions were granted (with or without prejudice) while 39% were denied either in part or in full. See Figure 15.

Figure 15. **Filing and Resolutions of Motions to Dismiss**
Cases Filed and Resolved January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

## Motion for Class Certification

A motion for class certification was filed in only 17% of the securities class action suits filed and resolved, as most cases are either dismissed or settled before the class certification stage is reached. A decision was reached in 61% of the cases in which a motion for class certification was filed, while nearly all remaining 39% of cases were resolved with a settlement. Among the cases in which a decision was reached, the motion for class certification was granted (with or without prejudice) in 83% of cases and denied (with or without prejudice) in 11% of cases. See Figure 16.

**Figure 16.** Filing and Resolutions of Motions for Class Certification
Cases Filed and Resolved January 2015–December 2024



Approximately 62% of decisions on motions for class certification occur within three years of the filing of the first complaint, with 94% of decisions occurring within five years (see Figure 17). The median time is about 2.7 years.

Figure 17. **Time from First Complaint Filing to Class Certification Decision**
Cases Filed and Resolved January 2015–December 2024



The median time (for decisions on motions for class certification) is about 2.7 years.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN SETTLEMENT VALUES[13]

In 2024, aggregate settlements totaled $3.8 billion, nearly matching the inflation-adjusted total of $4.0 billion from 2023 (see Figure 18). After excluding cases involving merger objections, crypto unregistered securities, or settlements of $0 to the class, around 42% of settlements had a recovery of less than $10 million, another 40% had a settlement between $10 million and $49.9 million, and 18% settled for $50 million or more, largely mirroring the distribution of settlement values from 2023 (see Figure 19). The average settlement value was $43 million, a roughly 7% decline relative to the 2023 inflation-adjusted average settlement value of $46 million (see Figure 20).[14]

Figure 18. **Aggregate Settlement Value**
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Figure 19.  **Distribution of Settlement Values**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2020–December 2024



Figure 20.  **Average Settlement Value**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2015–December 2024



21

While 2023 saw a $1 billion settlement by Wells Fargo & Company,[15] there were no settlements of $1 billion or higher in 2024, and the average settlement value excluding such cases was also $43 million (see Figure 21). The median settlement value was $14.0 million, roughly in line with the inflation-adjusted median settlement values in 2022 and 2023 (see Figure 22).

Figure 21. **Average Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

Figure 22.  **Median Settlement Value**
Excludes Settlements of $1 Billion or Higher, Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class
January 2015–December 2024



The median settlement value was $14.0 million, roughly in line with the inflation-adjusted median settlement values in 2022 and 2023.

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TOP SETTLEMENTS

The 10 largest settlements in 2024 ranged from $85 million to $490 million and collectively accounted for 60% of the $3.8 billion aggregate settlement amount. There were four settlements of at least $200 million, which include suits against Uber Technologies, Inc. ($200 million) over alleged misrepresentations in connection with its initial public offering,[16] Alphabet Inc. ($350 million) in a case involving a data privacy breach,[17] Under Armour, Inc. ($434 million) over claims the company hid declining demand of its products,[18] and Apple Inc. ($490 million) in a matter over alleged misrepresentations involving iPhone sales in China.[19] The Third and Ninth Circuits each accounted for four suits in the top 10 largest settlements. See Table 1.

Table 1.  **Top 10 2024 Securities Class Action Settlements**

| Rank | Defendant | Filing Date | Settlement Date | Total Settlement Value ($Million) | Plaintiffs' Attorneys' Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|
| 1 | Apple Inc. | 16 Apr 2019 | 17 Sep 2024 | $490.0 | $110.5 | 9th | Electronic Technology |
| 2 | Under Armour, Inc. | 10 Feb 2017 | 7 Nov 2024 | $434.0 | $116.3 | 4th | Consumer Non-Durables |
| 3 | Alphabet, Inc. | 11 Oct 2018 | 24 Sep 2024 | $350.0 | $68.0 | 9th | Technology Services |
| 4 | Uber Technologies, Inc. | 4 Oct 2019 | 5 Dec 2024 | $200.0 | $61.2 | 9th | Transportation |
| 5 | Rite Aid Corporation | 2 Nov 2018 | 7 Feb 2024 | $192.5 | $59.2 | 3rd | Retail Trade |
| 6 | TuSimple Holdings, Inc. | 31 Aug 2022 | 2 Dec 2024 | $189.0 | $47.6 | 9th | Consumer Durables |
| 7 | Envision Healthcare Corporation | 4 Aug 2017 | 21 Mar 2024 | $177.5 | $54.8 | 6th | Health Services |
| 8 | Pattern Energy Group Inc. | 25 Feb 2020 | 3 May 2024 | $100.0 | $29.8 | 3rd | Utilities |
| 9 | Perrigo Company plc | 18 May 2016 | 5 Sep 2024 | $97.0 | $22.5 | 3rd | Health Technology |
| 10 | Becton, Dickinson and Company | 27 Feb 2020 | 22 Apr 2024 | $85.0 | $22.1 | 3rd | Health Technology |
| | **Total** | | | **$2,315.0** | **$592.0** | | |

ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

Table 2 lists the 10 largest federal securities class action settlements through 31 December 2024. Since the Valeant Pharmaceuticals partial settlement of $1.2 billion in 2020, this list has remained unchanged, with settlements ranging from $1.1 to $7.2 billion.

Table 2.  **Top 10 Federal Securities Class Action Settlements (As of 31 December 2024)**

| Rank | Defendant | Filing Date | Settlement Year(s) | Total Settlement Value ($Million) | Financial Institutions Value ($Million) | Accounting Firms Value ($Million) | Plaintiffs' Attorney's Fees and Expenses Value ($Million) | Circuit | Economic Sector |
|---|---|---|---|---|---|---|---|---|---|
| 1 | ENRON Corp. | 22 Oct 2001 | 2003–2010 | $7,242 | $6,903 | $73 | $798 | 5th | Industrial Services |
| 2 | WorldCom, Inc. | 30 Apr 2002 | 2004–2005 | $6,196 | $6,004 | $103 | $530 | 2nd | Communications |
| 3 | Cendant Corp. | 16 Apr 1998 | 2000 | $3,692 | $342 | $467 | $324 | 3rd | Finance |
| 4 | Tyco International, Ltd. | 23 Aug 2002 | 2007 | $3,200 | No codefendant | $225 | $493 | 1st | Producer Manufacturing |
| 5 | Petroleo Brasileiro S.A.-Petrobras | 8 Dec 2014 | 2018 | $3,000 | $0 | $50 | $205 | 2nd | Energy Minerals |
| 6 | AOL Time Warner Inc. | 18 July 2002 | 2006 | $2,650 | No codefendant | $100 | $151 | 2nd | Consumer Services |
| 7 | Bank of America Corp. | 21 Jan 2009 | 2013 | $2,425 | No codefendant | No codefendant | $177 | 2nd | Finance |
| 8 | Household International, Inc. | 19 Aug 2002 | 2006–2016 | $1,577 | Dismissed | Dismissed | $427 | 7th | Finance |
| 9 | Valeant Pharmaceuticals International, Inc.* | 22 Oct 2015 | 2020 | $1,210 | $0 | $0 | $160 | 3rd | Health Technology |
| 10 | Nortel Networks | 2 Mar 2001 | 2006 | $1,143 | No codefendant | $0 | $94 | 2nd | Electronic Technology |
|  | Total |  |  | $32,334 | $13,249 | $1,017 | $3,358 |  |  |

* Denotes a partial settlement, which is included here due to its sizeable amount. Note that this case is not included in any of our resolution or settlement statistics.

# NERA-DEFINED INVESTOR LOSSES

To estimate the potential aggregate loss to investors as a result of investing in the defendant's stock during the alleged class period, NERA has developed a proprietary variable, NERA-Defined Investor Losses, using publicly available data. The NERA-Defined Investor Loss measure is constructed assuming investors had invested in stocks during the class period whose performance was comparable to that of the S&P 500 Index. Over the years, NERA has reviewed and examined more than 2,000 settlements and found, of the variables analyzed, this proprietary variable to be the most powerful predictor of settlement amount.[20]

A statistical review reveals that although settlement values and NERA-Defined Investor Losses are highly correlated, the relationship is not linear. The ratio is higher for cases with lower NERA-Defined Investor Losses than for cases with higher Investor Losses. For instance, in cases with less than $20 million in Investor Losses, the median settlement value comprises 24% of Investor Losses, while for cases with $100 million or more in Investor Losses, the median settlement value is at or under 3.0% of Investor Losses. See Figure 23.

Figure 23.  **Median Settlement Value as a Percentage of NERA-Defined Investor Losses**
By Level of Investor Losses
Cases Settled January 2015–December 2024



Since 2015, annual median Investor Losses have ranged from a low of $358 million to a high of $1.76 billion. For cases settled in 2024, the median Investor Losses were $1.76 billion, the highest recorded value over the past 10 years. The median ratio of settlement amount to Investor Losses was 1.2% in 2024, a notable decline from the 1.8% median ratio seen over 2021–2023. See Figure 24.

Figure 24.  Median NERA-Defined Investor Losses and Median Ratio of Settlement to Investor Losses by Settlement Year
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

NERA has identified the following key factors as driving settlement amounts:

- NERA-Defined Investor Losses;

- The market capitalization of the issuer immediately after the end of the class period;

- The types of securities (in addition to common stock) alleged to have been affected by the fraud;

- Variables that serve as a proxy for the merit of plaintiffs' allegations (e.g., whether the company has already been sanctioned by a government or regulatory agency or paid a fine in connection with the allegations);

- The stage of litigation at the time of settlement; and

- Whether an institution or public pension fund is named lead plaintiff (see Figure 25).

Among cases settled between January 2012 and December 2024, these factors in NERA's statistical model can explain more than 70% of the variation observed in actual settlements.

Figure 25. **Predicted vs. Actual Settlements**
Investor Losses Using S&P 500 Index
Cases Settled January 2012–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

# TRENDS IN PLAINTIFFS' ATTORNEYS' FEES AND EXPENSES

In the past decade, annual aggregate plaintiffs' attorneys' fees and expenses have ranged from a low of $504 million to a high of $1.6 billion. In 2024, aggregate plaintiffs' attorneys' fees and expenses totaled $1.06 billion, nearly $90 million more compared with the $974 million seen in 2023 (see Figure 26). Plaintiffs' attorneys' fees and expenses comprised approximately 27.3% of the $3.8 billion aggregate settlement amount.

Figure 26.  **Aggregate Plaintiffs' Attorneys' Fees and Expenses by Settlement Size**
January 2015–December 2024



ECONOMICS. EXPERTS. EXPERIENCE.  |  www.nera.com

For cases that have settled since the passage of the Private Securities Litigation Reform Act (PSLRA) in 1995, plaintiffs' attorneys' fees and expenses as a percentage of the settlement amount generally decline as the settlement size increases. For instance, for cases settled between 2015 and 2024, the median percentage of fees and expenses ranged from 36.0% in settlements of $5 million or lower to 18.6% in settlements of $1 billion or higher.

Over the 2015–2024 period, median percentage of attorneys' fees have increased for settlements under $5 million, settlements between $100 and $500 million, and settlements over $1 billion, relative to the 1996–2014 period. This increase is more pronounced for settlements of $1 billion or higher, although this category has only five settlements in the post-2014 period (see Figure 27).

Figure 27.  **Median of Plaintiffs' Attorneys' Fees and Expenses by Size of Settlement**
Excludes Merger Objections, Crypto Unregistered Securities, and Settlements for $0 to the Class



Note: Component values may not add to total value due to rounding.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

# CONCLUSION

Filings of federal securities class actions remained flat in 2024, with 229 suits filed. Of these, there were 198 suits with Rule 10b-5-only claims, a 10-year high, while there were only 16 suits with Section 11 and/or Section 12 claims, a 10-year low. After a dip in 2023, the percentage of filings against companies in the technology and healthcare sectors increased to 30% and 26%, respectively. The percentage of filings against foreign companies continues to decline, with only 16.8% targeting foreign companies. While suits with AI-related allegations doubled in 2024 to 13 filings, there were no suits related to banking turmoil, a category that saw 11 filings in 2023.

The number of resolved cases increased by nearly 17% from 186 in 2023 to 217 in 2024, ending a six-year decline in resolutions dating back to 2017. This increase in resolutions, consisting of 93 settlements and 124 dismissals, was mostly driven by an increase in the number of dismissed cases. For dismissed cases, the median time to dismissal increased from 1.4 years in 2021 to 2.0 years in 2024, while the percentage of voluntary dismissals declined from 35% to 24% over that same period. For settled cases in 2024, the average and median settlement values were $43 million and $14 million, respectively, a slight decline over their 2023 inflation-adjusted values.



# NOTES

1   This edition of NERA's report on "Recent Trends in Securities Class Action Litigation" expands on previous work by our colleagues Lucy P. Allen, Dr. Vinita Juneja, Dr. Denise Neumann Martin, Dr. Jordan Milev, Robert Patton, Dr. Stephanie Plancich, Janeen McIntosh, and others. The authors thank Dr. David Tabak and Benjamin Seggerson for helpful comments on this edition. We thank Vlad Lee, Daniel Klotz, and other researchers from NERA's securities and finance capability for their valuable assistance. These individuals receive credit for improving this report; any errors and omissions are those of the authors. NERA's proprietary securities class action database and all analyses reflected in this report are limited to US federal case filings and resolutions.

2   NERA tracks securities class actions that have been filed in US federal courts. Most of these cases allege violations of federal securities laws; others allege violations of common law, including breach of fiduciary duty, as with some merger-objection cases; still others are filed in federal court under foreign or state law. If multiple actions are filed against the same defendant, are related to the same allegations, and are in the same circuit, we treat them as a single filing. The first two actions filed in different circuits are treated as separate filings. If cases filed in different circuits are consolidated, we revise our count to reflect the consolidation. Therefore, case counts for a particular year may change over time. Different assumptions for consolidating filings would probably lead to counts that are similar but may, in certain circumstances, lead observers to draw a different conclusion about short-term trends in filings. Data for this report were collected from multiple sources, including Institutional Shareholder Services, Dow Jones Factiva, Bloomberg Finance, FactSet Research Systems, Nasdaq, Intercontinental Exchange, US Securities and Exchange Commission (SEC) filings, complaints, case dockets, and public press reports. IPO laddering cases are presented only in Figure 1.

3   Federal securities class actions that allege violations of Rule 10b-5, Section 11, and/or Section 12 have historically dominated federal securities class action dockets and have often been referred to as "standard" cases. In the analyses of this report, standard cases involve registered securities and do not include cases involving crypto unregistered securities, which are considered a separate category.

4   IPO figures taken from Stock Analysis, accessed 13 January 2025, available at https://stockanalysis.com/ipos/statistics/.

5   In this study, crypto cases consist of two mutually exclusive subgroups: (1) crypto shareholder class actions, which include a class of investors in common stock, American depositary receipts/American depositary shares (ADR/ADS), and/or other registered securities, along with crypto- or digital-currency-related allegations; and (2) crypto unregistered securities class actions, which do not have class investors in any registered securities that are traded on major exchanges (New York Stock Exchange, Nasdaq). We include crypto shareholder class actions in all our analyses that include standard cases. Crypto unregistered securities class actions are excluded from some analyses, which is noted in the titles of our figures.

6   Most securities class action complaints include multiple allegations. For this analysis, all allegations from the complaint are included and thus the total number of allegations exceeds the total number of filings.

7   Here, a company is considered a foreign company based on the location of its principal executive office.

8   SPAC IPO figures taken from SPAC Data, accessed 13 January 2025, available at https://www.spacdata.com.

9   See Figure 8 of NERA's 2024 midyear report "Recent Trends in Securities Class Action Litigation: 2024 H1 Update," 6 August 2024, available at https://www.nera.com/insights/publications/2024/recent-trends-in-securities-class-action-litigation--2024-h1-upd.html.

10  Sarah Jarvis, "RELX Hit with Proposed Greenwashing Class Action," *Law360.com*, 7 August 2024, available at https://www.law360.com/articles/1867368/.

11  Jordan Robertson and Evan Gorelick, "CrowdStrike and the Global IT Outage, Explained," *Bloomberg*, 19 July 2024, available at https://www.bloomberg.com/news/articles/2024-07-19/crowdstrike-microsoft-it-outage-what-caused-it-what-comes-next.

12  Here "dismissed" is used as shorthand for all class actions resolved without settlement; it includes cases in which a motion to dismiss was granted (and not appealed or appealed unsuccessfully), voluntary dismissals, cases terminated by a successful motion for summary judgment, and an ultimately unsuccessful motion for class certification.

13  For our settlement analyses, NERA includes settlements that have had the first settlement-approval hearing. We do not include partial settlements or tentative settlements that have been announced by plaintiffs and/or defendants. As a result, although we include the 2020 Valeant Pharmaceuticals partial settlement in Table 2 due to its size, this case is not included in any of our resolution, settlement, or attorney fee statistics.

ECONOMICS. EXPERTS. EXPERIENCE. | www.nera.com

## NOTES

[14] While annual average settlement values can be a helpful statistic, these values may be affected by one or a few very high settlement amounts. Unlike averages, the median settlement value is unaffected by these very high outlier settlement amounts. To understand what more typical cases look like, we analyze the average and median settlement values for cases with a settlement amount under $1 billion, thus excluding these outlier settlement amounts. For the analysis of settlement values, we limit our data to non-merger objection and non-crypto unregistered securities cases with settlements of more than $0 to the class.

[15] Jon Hill and Jessica Corso, "Wells Fargo Inks $1B Deal to End Investors' Compliance Suit," *Law360.com*, 16 May 2023, available at https://www.law360.com/articles/1677976/.

[16] Bonnie Eslinger, "Uber Investors' Attys Awarded $58M In $200M IPO Suit Deal," *Law360.com*, 4 December 2024, available at https://www.law360.com/articles/2269355.

[17] Bonnie Eslinger, "Google Investors' Attys Snag $66.5M In $350M Privacy Deal," *Law360.com*, dated 30 September 2024, available at https://www.law360.com/articles/1884117.

[18] Hailey Konnath, "Under Armour to Pay $434M to End Securities Fraud Claims," *Law360.com*, dated 21 June 2024, available at https://www.law360.com/articles/1850514.

[19] Dorothy Atkins, "Apple's $490M Deal Over China Sales OK'ed, Attys Get $110M," *Law360.com*, 19 September 2024, available at https://www.law360.com/articles/1880634.

[20] NERA-Defined Investor Losses is only calculable for cases involving allegations of damages to common stock based on one or more corrective disclosures moving the stock price to its alleged true value. As a result, we have not calculated this metric for cases such as merger objections.

## RELATED EXPERTS



**Edward Flores, MA**
Director
New York City: +1 212 345 2955
edward.flores@nera.com



**Svetlana Starykh, MA**
Associate Director,
Securities Class Actions Database
New York City: +1 914 563 6761
svetlana.starykh@nera.com



SUBSCRIBE

To receive publications, news, and insights from NERA, please visit
**www.nera.com/subscribe**.

*The opinions expressed herein do not necessarily represent the views of NERA or any other NERA consultant.*

## ABOUT NERA

Since 1961, NERA has provided unparalleled guidance on the most important market, legal, and regulatory questions of the day. Our work has shaped industries and policy around the world. Our field-leading experts and deep experience allow us to provide rigorous analysis, reliable expert testimony, and data-powered policy recommendations for the world's leading law firms and corporations as well as regulators and governments. Our experience, integrity, and economic ingenuity mean you can depend on us in the face of your biggest economic and financial challenges.



www.nera.com

© Copyright 2025
National Economic Research Associates, Inc.
All rights reserved. Printed in the USA.

# Exhibit B



**History**  Pomerantz LLP is one of the most respected law firms in the United States dedicated to representing investors. The Firm was founded in 1936 by the late Abraham L. Pomerantz, widely regarded as a legal pioneer and "dean" of the plaintiffs' securities bar, who helped secure the right of investors to bring class and derivative actions.

**Leadership**  Today, led by Managing Partner Jeremy A. Lieberman, the Firm maintains the commitments to excellence and integrity passed down by Abe Pomerantz.

**Results**  Pomerantz achieved a historic $3 billion settlement for defrauded investors in 2018 as well as precedent-setting legal rulings, in *In re Petrobras Securities Litigation*. Pomerantz consistently shapes the law, winning landmark decisions that expand and protect investor rights and initiating historic corporate governance reforms.

**Global Expertise**  Beyond its three American offices, the Firm has offices in Paris, London, and Tel Aviv. Pomerantz also partners with an extensive network of prominent law firms across the globe to assist clients, wherever they are situated, in recovering monies lost due to corporate misconduct and securities fraud. Our team of attorneys is collectively fluent in English, Arabic, Cantonese, Mandarin, French, Hebrew, Italian, Portuguese, Romanian, Russian, Spanish, and Ukrainian.

**Practice**  Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring service. The Firm represents some of the largest and most influential pension funds, asset managers and institutional investors around the globe, monitoring assets of over $9.4 trillion and growing. Pomerantz's practice includes corporate governance, antitrust, and strategic consumer litigation.

**Recognition**  Pomerantz has been recognized as a top tier firm by *The Legal 500*, *Benchmark Litigation*, and *Chambers USA*, among others. In 2020, Pomerantz was named the Plaintiff Firm of the Year by *Benchmark Litigation* and honored with *European Pensions'* inaugural Thought Leadership Award. Courts across the country have noted the quality of our legal work, and Pomerantz attorneys regularly receive praise from their peers. The 2024 *Benchmark Litigation* guide describes Pomerantz's "prodigious capacity for cases and its tenacity to keep pursuing them" as well as the Firm's work on litigation "with more meaningful angles." The Firm's attorneys have been recognized by major industry publications, including *The National Law Journal*, *The New York Law Journal*, *Law360*, and *Lawdragon*. Among the prestigious honors received by Pomerantz attorneys are the *Benchmark Litigation* Plaintiff Litigator of the Year Award (Jeremy Lieberman, 2019; Emma Gilmore 2024), *New York Law Journal* Innovation Award (Jennifer Pafiti, 2023), and *Law360* Titan of the Plaintiffs Bar (Murielle Steven Walsh, 2024).

Pomerantz is headquartered in New York City, with offices in
Chicago, Los Angeles, London, Paris, and Tel Aviv.

# Securities Litigation

## Significant Landmarks

### *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)

On January 3, 2018, in a significant victory for investors, Pomerantz, as sole Lead Counsel for the class, along with Lead Plaintiff Universities Superannuation Scheme Limited ("USS"), achieved a historic $2.95 billion settlement with Petróleo Brasileiro S.A. ("Petrobras") and its related entity, Petrobras International Finance Company, as well as certain of Petrobras' former executives and directors. On February 2, 2018, Pomerantz and USS reached a $50 million settlement with Petrobras' auditors, PricewaterhouseCoopers Auditores Independentes, bringing the total recovery for Petrobras investors to $3 billion.

This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

The class action, brought on behalf of all purchasers of common and preferred American Depositary Shares ("ADSs") on the New York Stock Exchange, as well as purchasers of certain Petrobras debt, principally alleged that Petrobras and its senior executives engaged in a multi-year, multi-billion-dollar money-laundering and bribery scheme, which was concealed from investors.

In addition to the multi-billion-dollar recovery for defrauded investors, Pomerantz secured precedent-setting decisions when the Second Circuit Court of Appeals squarely rejected defendants' invitation to adopt the heightened ascertainability requirement promulgated by the Third Circuit, which would have required plaintiffs to demonstrate that determining membership in a class is "administratively feasible." The Second Circuit's rejection of this standard is not only a victory for bondholders in securities class actions, but also for plaintiffs in consumer fraud class actions and other class actions where documentation regarding Class membership is not readily attainable. The Second Circuit also refused to adopt a requirement, urged by defendants, that all securities class action plaintiffs seeking class certification prove through direct evidence (i.e., an event study) that the prices of the relevant securities moved in a particular direction in response to new information.

### *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)

In August 2019, Pomerantz, as Lead Counsel, achieved final approval of a $110 million settlement for the Class in this high-profile securities class action. Plaintiffs alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In addition to creating precedent-setting case law in successfully defending the various motions to dismiss the *Fiat Chrysler* litigation, Pomerantz also significantly advanced investors' ability to obtain critically important discovery from regulators that are often at the center of securities actions. During the litigation, Pomerantz sought the deposition of a former employee of the National Highway Traffic Safety Administration ("NHTSA"). The United States Department of Transportation ("USDOT"), like most federal agencies, has enacted a set of regulations—known as "Touhy regulations"—governing when its employees may be called by private parties to testify in court. On their face, USDOT's regulations apply to both "current" and "former" employees. In response to Pomerantz's request to depose a former employee of NHSTA that interacted with Fiat Chrysler, NHTSA denied the request, citing the Touhy regulation. Despite the widespread application, and assumed appropriateness, of applying these regulations to former employees throughout the case law, Pomerantz filed an action against USDOT and NHTSA, arguing that the statute pursuant to which the Touhy regulations were enacted speaks only of "employees," which should be interpreted to apply only to current employees. The court granted summary judgment in favor of Pomerantz's clients, holding that "USDOT's Touhy regulations are unlawful to the extent that they apply to former employees." This victory will greatly shift the discovery tools available, so that investor plaintiffs in securities class actions against highly regulated entities (for example, companies subject to FDA regulations) will now be able to depose former employees of the regulators that interacted with the defendants during the class period to get critical testimony concerning the company's violations and misdeeds.

### *Karimi v. Deutsche Bank AG,* 1:22-cv-02854 (S.D.N.Y.)

On September 27, 2022, Pomerantz reached a $26.25 million settlement on behalf of defrauded investors in a securities class action against Deutsche Bank AG. The settlement represents over 49% of estimated recoverable damages, far in excess of the 1.8% median recovery in similar cases.

The complaint alleges that Deutsche Bank failed to properly adhere to its own Know Your Customer ("KYC") policies when dealing with customers it considered high-risk, such as accused sex offender Jeffrey Epstein, Russian oligarchs and politically exposed persons ("PEPs") reportedly engaged in criminal activities. The Bank repeatedly assured investors that it had "developed effective procedures for assessing clients and processes for accepting new clients in order to facilitate comprehensive compliance" with these policies. In reality, however, during the Class Period, defendants repeatedly exempted high net-worth individuals and PEPs from any meaningful due diligence, further enabling their crimes through the use of the Bank's facilities.

For example, in 2013, Deutsche Bank took on Jeffrey Epstein as a client, despite his previous convictions for and new allegations of child sex trafficking and abuse. Because Epstein was regarded as a "high-risk" customer, he should have been subject to the strict due diligence required by the Bank's KYC program; however, he was instead classified as an "Honorary PEP," and his activities within the Bank were allowed to continue, largely due to the business he could generate for the Bank. Prior to his onboarding as a client, "40 underage girls had come forward with testimony of Epstein sexually assaulting them," and despite these allegations, Deutsche Bank remained "comfortable with things continuing."

*Howard v. Arconic et al.*, **No. 2:17-cv-01057 (W.D.Pa.)**

In August 2023, Pomerantz, as Co-Lead Counsel, achieved final approval of a $74 million settlement on behalf of defrauded investors in a securities class action against the American industrial company Arconic.

On June 14, 2017, a devastating fire broke out in the Grenfell Tower block of flats in London, United Kingdom, resulting in the deaths of 72 people and injuries to more than 70 other tenants. In the wake of the tragedy, numerous investigations were conducted, ultimately revealing that, while an electrical fault within the building instigated the blaze, Arconic's Reynobond PE panels, which covered the outside of the building, likely acted as an accelerant, contributing to the rapid spread of the flames to the floors above.

In August 2017, Pomerantz filed a securities class action against Arconic alleging that its stock price was artificially inflated during the Class Period by the company's misstatements about the safety of its Reynobond PE insulating panels. Following a partial dismissal, Pomerantz filed a second amended complaint, which cited numerous instances in which Arconic sold Reynobond PE panels for use in other high-rise towers in the UK and across the globe.

Notably, despite the United States' near universal ban of combustible Reynobond for buildings taller than twelve meters (40 feet), plaintiffs found that Arconic had sold these panels for use in the construction of numerous structures measuring twelve meters or higher throughout the country, including a terminal at the Dallas/Fort Worth airport and Ohio's Cleveland Browns stadium. The complaint also pointed to at least eighteen other instances in which deadly fires had spread through exterior wall assemblies, most of which involved high-rise buildings. The new allegations included in the second amended complaint convinced Chief U.S. District Judge Mark R. Hornak to not only change his mind on many of the claims he had previously dismissed, but also to make new law in plaintiffs favor on several significant issues, including the element of scienter, i.e., intent to deceive investors.

The $74 million settlement represents approximately 22% of recoverable damages for defrauded Arconic shareholders, an amount far exceeding the 1.8% median recovery for all securities class action settlements in 2022.

*Kaplan v. S.A.C. Capital Advisors, L.P*, **No. 12-cv-9350 (S.D.N.Y.)**

In May 2017, Pomerantz, as Co-Lead Counsel, achieved final approval of a $135 million recovery for the Class in this securities class action that stemmed from what has been called the most profitable insider trading scheme in U.S. history. After years of vigorous litigation, billionaire Steven A. Cohen's former hedge fund, S.A.C. Capital Advisors LP, agreed to settle the lawsuit by investors in the drug maker Elan Corp, who said they lost money because of insider trading by one of his portfolio managers.

*In re BP p.l.c. Securities Litigation*, **MDL No. 2185 (S.D. Tex.)**

Beginning in 2012, Pomerantz pursued ground-breaking individual lawsuits for institutional investors to recover losses in BP p.l.c.'s London-traded common stock and NYSE-traded American Depository Shares (ADSs) arising from its 2010 Gulf of Mexico oil spill. Over nine years, Pomerantz briefed and argued every significant dispute on behalf of 125+ institutional plaintiffs, successfully opposed three motions to dismiss, won other contested motions, oversaw e-discovery of 1.75 million party and non-party documents, led

the Individual Action Plaintiffs Steering Committee, served as sole Liaison with BP and the Court, and worked tirelessly with our clients' outside investment management firms to develop crucial case evidence.

A threshold challenge was how to litigate in U.S. court given the U.S. Supreme Court's decision in *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010), which barred recovery for losses in foreign-traded securities under the U.S. federal securities laws. In 2013 and 2014, Pomerantz won significant victories in defeating BP's *forum non conveniens* arguments, which sought to force dismissal of the English common law claims from U.S. courts for refiling in English courts, first as regards U.S. institutions and, later, foreign institutions. Pomerantz also defeated BP's attempt to extend the U.S. federal Securities Litigation Uniform Standards Act of 1998 to reach, and dismiss, these foreign law claims in deference to non-existent remedies under the U.S. federal securities laws. These rulings paved the way for 125+ global institutional investors to pursue their claims and marked the first time, post-*Morrison*, that U.S. and foreign investors, pursuing foreign claims seeking recovery for losses in a foreign company's foreign-traded securities, did so in a U.S. court. In 2017, Pomerantz earned an important victory that expanded investor rights under English law, permitting certain BP investors to pursue a "holder claim" theory seeking to recover losses in securities held, rather than purchased anew, in reliance on the alleged fraud—a theory barred under the U.S. federal securities laws since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975). This win was significant, given the dearth of precedent from anywhere recognizing the viability of a "holder claim" under any non-U.S. law and holding that a given plaintiff alleged facts sufficiently evidencing reliance and documenting the resulting retention of an identifiable amount of shares on a date certain.

In Q1 2021, Pomerantz secured confidential, favorable monetary settlements from BP for our nearly three dozen clients, including public and private pension funds, money management firms, partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.

### *In re Comverse Technology, Inc. Sec. Litig.,* No. 06-CV-1825 (E.D.N.Y.)

In June 2010, Judge Nicholas G. Garaufis of the U.S. District Court for the Eastern District of New York granted final approval of a $225 million settlement proposed by Pomerantz and Lead Plaintiff the Menora Group, with Comverse Technology and certain of Comverse's former officers and directors, after four years of highly contested litigation. The *Comverse* settlement is one of the largest securities class action settlements reached since the passage of the Private Securities Litigation Reform Act ("PSLRA").[1] It is the second-largest recovery in a securities litigation involving the backdating of options, as well as one of the largest recoveries—$60 million—from an individual officer-defendant, Comverse's founder and former CEO, Kobi Alexander.

## Other Significant Settlements

Even before the enactment of the PSLRA, Pomerantz represented state agencies in securities class actions, including the Treasurer of the Commonwealth of Pennsylvania (recovered $100 million) against a major investment bank. *In re Salomon Brothers Treasury Litig.*, No. 91-cv-5471 (S.D.N.Y.).

Pomerantz recovered $50 million for the Treasurer of the State of New Jersey and several New Jersey pension funds in an individual action. This was a substantially higher recovery than what our clients would

---

[1] Institutional Shareholder Services, *SCAS Top 100 Settlements Quarterly Report* (Sept. 30, 2010).

have obtained had they remained in a related federal class action. *Treasurer of State of New Jersey v. AOL Time Warner, Inc.* (N.J. Super. Ct. Law Div., Mercer Cty.).

Pomerantz has litigated numerous cases for the Louisiana School Employees' Retirement System. For example, as Lead Counsel, Pomerantz recovered $74.75 million in a securities fraud class action against Citigroup, its CEO Sanford Weill, and its now infamous telecommunications analyst Jack Grubman. *In re Salomon Analyst AT&T Litig.*, No. 02-cv-6801 (S.D.N.Y.) Also, the Firm played a major role in a complex antitrust and securities class action which settled for over $1 billion. *In re NASDAQ Market-Makers Antitrust Litig.*, MDL No. 1023 (S.D.N.Y.). Pomerantz was a member of the Executive Committee in *In re Transkaryotic Therapies, Inc. Securities Litigation*, C.A. No. 03-10165 (D. Mass.), helping to win a $50 million settlement for the class.

In 2008, together with Co-Counsel, Pomerantz identified a substantial opportunity for recovery of losses in Countrywide mortgage-backed securities ("MBS") for three large New Mexico funds (New Mexico State Investment Council, New Mexico Public Employees' Retirement Association, and New Mexico Educational Retirement Board), which had been overlooked by all of the firms then in their securities litigation pool. We then filed the first non-class lawsuit by a public institution with respect to Countrywide MBS. *See N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct.). In Fall 2010, we negotiated for our clients an extremely favorable but confidential settlement.

Over its long history, Pomerantz has achieved significant settlements in numerous cases, a sampling of which appears below:

- *In re Petrobras Sec. Litig.*, No. 14-cv-9662 (S.D.N.Y. 2018)
  $3 billion settlement of securities class action in which Pomerantz was Lead Counsel.
- *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y)
  $110 million settlement of securities class action in which Pomerantz was Lead Counsel
- *In re Yahoo!, Inc. Sec. Litig.,* No. 17-cv-00373 (N.D. Cal. 2018)
  $80 million settlement of securities class action in which Pomerantz was Co-Lead Counsel
- *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262
  $31 million partial settlement with three defendants in this multi-district litigation in which Pomerantz represents the Berkshire Bank and the Government Development Bank for Puerto Rico
- *Kaplan v. S.A.C. Capital Advisors, L.P.*, No. 12-cv-9350 (S.D.N.Y. 2017)
  $135 million settlement of class action in which Pomerantz was Co-Lead Counsel.
- *In re Groupon, Inc. Sec. Litig.*, No. 12-cv-02450 (N.D. Ill. 2015)
  $45 million settlement of class action in which Pomerantz was sole Lead Counsel.
- *In re Elan Corp. Sec. Litig.*, No. 05-cv-2860 (S.D.N.Y. 2005)
  $75 million settlement in class action arising out of alleged accounting manipulations.
- *In re Safety-Kleen Corp. Stockholders Litig.*, No. 00-cv-736-17 (D.S.C. 2004)
  $54.5 million in total settlements in class action alleging accounting manipulations by corporate officials and auditors; last settlement reached on eve of trial.
- *Duckworth v. Country Life Ins. Co.*, No. 1998-CH-01046 (Ill. Cir. Ct., Cook Cty. 2000)
  $45 million recovery.
- *Snyder v. Nationwide Ins. Co.*, No. 97/0633 (N.Y. Sup. Ct. Onondaga Cty. 1998)
  Settlement valued at $100 million in derivative case arising from injuries to consumers purchasing life insurance policies.

- *In re National Health Lab., Inc. Sec. Litig.*, No. CV 92-1949 (S.D. Cal. 1995)
  $64 million recovery.
- *In re First Executive Corp. Sec. Litig.*, No. 89-cv-07135 (C.D. Cal. 1994)
  $102 million recovery for the class, exposing a massive securities fraud arising out of the Michael Milken debacle.
- *In re Boardwalk Marketplace Sec. Litig.*, MDL No. 712 (D. Conn. 1994)
  Over $66 million benefit in securities fraud action.
- *In re Telerate, Inc. S'holders Litig.*, C.A. No. 1115 (Del. Ch. 1989)
  $95 million benefit in case alleging violation of fiduciary duty under state law.

Pomerantz has also obtained stellar results for private institutions and Taft-Hartley funds. Below are a few examples:

- *In re Charter Commc'ns, Inc. Sec. Litig*., No. 02-cv-1186 (E.D. Mo. 2005) (sole Lead Counsel for Lead Plaintiff StoneRidge Investment Partners LLC); $146.25 million class settlement, where Charter also agreed to enact substantive improvements in corporate governance.
- *In re Am. Italian Pasta Sec. Litig.*, No. 05-cv-865 (W.D. Mo. 2008) (sole Lead Counsel for Lead Plaintiff Ironworkers Locals 40, 361 and 417; $28.5 million aggregate settlements).
- *Richardson v. Gray*, No. 116880/1995 (N.Y. Sup. Ct. N.Y. Cty. 1999); and *In re Summit Metals*, No. 98-2870 (Bankr. D. Del. 2004) (two derivative actions where the Firm represented C.C. Partners Ltd. and obtained judgment of contempt against controlling shareholder for having made "extraordinary" payments to himself in violation of a preliminary injunction; persuaded the court to jail him for two years upon his refusal to pay; and, in a related action, won a $43 million judgment after trial and obtained turnover of stock of two companies).

## Shaping the Law

Not only has Pomerantz established a long track record of obtaining substantial monetary recoveries for our clients; whenever appropriate, we also pursue corporate governance reforms on their behalf. In *In re Chesapeake Shareholders Derivative Litig*ation, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. 2011), for example, the Firm served as Co-Lead Counsel, representing a public pension client in a derivative case arising from an excessive compensation package granted to Chesapeake's CEO and founder. This was a derivative action, not a class action. Yet it is illustrative of the results that can be obtained by an institutional investor in the corporate governance arena. There we obtained a settlement which called for the repayment of $12.1 million and other consideration by the CEO. The Wall Street Journal (Nov. 3, 2011) characterized the settlement as "a rare concession for the 52-year-old executive, who has run the company largely by his own rules since he co-founded it in 1989." The settlement also included comprehensive corporate governance reforms.

The Firm has won many landmark decisions that have enhanced shareholders' rights and improved corporate governance. These include decisions that established that:

- defendants seeking to rebut the *Basic* presumption of reliance on an efficient market must do so by a preponderance of the evidence. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);

---

- plaintiffs have no burden to show price impact at the class certification stage. *Waggoner v. Barclays PLC*, 875 F.3d 79 (2d Cir. 2017) (*Strougo v. Barclays PLC,* in the court below);
- the ascertainability doctrine requires only that a class be defined using objective criteria that establish a membership with definite boundaries. *Universities Superannuation Scheme Ltd. v. Petróleo Brasileiro S.A. Petrobras*, 862 F.3d 250 (2d Cir. 2017);
- companies cannot adopt bylaws to regulate the rights of former stockholders. *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015);
- a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure does not eviscerate an investor's claim for damages. *Acticon AG v. China Ne. Petroleum Holdings Ltd.,* 692 F.3d 34 (2d Cir. 2012);
- an MBS holder may bring claims if the MBS price declines even if all payments of principal and interest have been made. Transcript of Proceedings, *N.M. State Inv. Council v. Countrywide Fin. Corp.,* No. D-0101-CV-2008-02289 (N.M. 1st Dist. Ct. Mar. 25, 2009);
- when a court selects a Lead Plaintiff under the Private Securities Litigation Reform Act ("PSLRA"), the standard for calculating the "largest financial interest" must take into account sales as well as purchases. *In re Comverse Tech., Inc. Sec. Litig.*, No. 06-cv-1825, 2007 U.S. Dist. LEXIS 14878 (E.D.N.Y. Mar. 2, 2007);
- a managing underwriter can owe fiduciary duties of loyalty and care to an issuer in connection with a public offering of the issuer stock, even in the absence of any contractual agreement. Professor John C. Coffee, a renowned Columbia University securities law professor, commenting on the ruling, stated: "It's going to change the practice of all underwriting." *EBC I, Inc. v. Goldman Sachs & Co*., 5 N.Y. 3d 11 (2005);
- purchasers of options have standing to sue under federal securities laws. *In re Green Tree Fin. Corp. Options Litig.*, No. 97-2679, 2002 U.S. Dist. LEXIS 13986 (D. Minn. July 29, 2002);
- shareholders have a right to a jury trial in derivative actions. *Ross v. Bernhard*, 396 U.S. 531 (1970);
- a company may have the obligation to disclose to shareholders its Board's consideration of important corporate transactions, such as the possibility of a spin-off, even before any final decision has been made. *Kronfeld v. Trans World Airlines, Inc*., 832 F.2d 726 (2d Cir. 1987);
- specific standards for assessing whether mutual fund advisors breach fiduciary duties by charging excessive fees. *Gartenberg v. Merrill Lynch Asset Mgmt., Inc*., 740 F.2d 190 (2d Cir. 1984);
- investment advisors to mutual funds are fiduciaries who cannot sell their trustee positions for a profit. *Rosenfeld v. Black*, 445 F.2d 1337 (2d Cir. 1971); and
- management directors of mutual funds have a duty to make full disclosure to outside directors "in every area where there was even a possible conflict of interest." *Moses v. Burgin*, 445 F.2d 369 (1st Cir. 1971).

## Comments from the Courts

Throughout its history, courts time and again have acknowledged the Firm's ability to vigorously pursue and successfully litigate actions on behalf of investors.

U.S. District Judge Noel L. Hillman, in approving the *In re Toronto-Dominion Bank Securities Litigation* settlement in October 2019, stated:

> I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case . . . It's clear to me

that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement . . . This settlement appears to have been obtained through the hard work of the Pomerantz firm . . . It was through their efforts and not piggybacking on any other work that resulted in this settlement.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York wrote:

Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

In approving the $3 billion settlement in *In re Petrobras Securities Litigation* in June 2018, Judge Jed S. Rakoff of the Southern District of New York wrote:

[T]he Court finds that Class Counsel's performance was in many respects exceptional, with the result that, as noted, the class is poised to enjoy a substantially larger per share recovery [65%] than the recovery enjoyed by numerous large and sophisticated plaintiffs who separately settled their claims.

At the hearing for preliminary approval of the settlement in *In re Petrobras Securities Litigation* in February 2018, Judge Rakoff stated:

[T]he lawyers in this case [are] some of the best lawyers in the United States, if not in the world.

Two years earlier, in certifying two Classes in *In re Petrobras Securities Litigation* in February 2016, Judge Rakoff wrote:

[O]n the basis not only of USS's counsel's prior experience but also the Court's observation of its advocacy over the many months since it was appointed Lead Counsel, the Court concludes that Pomerantz, the proposed class counsel, is "qualified, experienced and able to conduct the litigation." . . . [T]he Pomerantz firm has both the skill and resources to represent the Classes adequately.

In approving the settlement in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880, 2016 U.S. Dist. LEXIS 144133 (S.D. Fla. Oct. 14, 2016) Judge Ursula Ungaro wrote:

Class Counsel has developed a reputation for zealous advocacy in securities class actions . . . The settlement amount of $24 million is an outstanding result.

At the May 2015 hearing wherein the court approved the settlement in *Courtney v. Avid Technology, Inc.*, No. 13-cv-10686 (D. Mass. May 12, 2015), following oral argument by Jeremy A. Lieberman, Judge William G. Young stated:

This has been very well litigated. It is always a privilege. I don't just say that as a matter of form. And I thank you for the vigorous litigation that I've been permitted to be a part of. [Tr. at 8-9.]

At the January 2012 hearing wherein the court approved the settlement in *In re Chesapeake Energy Corp. Shareholder Derivative Litigation*, No. CJ-2009-3983 (Okla. Dist. Ct., Okla. Cty. Jan. 30, 2012), following oral argument by Marc I. Gross, Judge Daniel L. Owens stated:

Counsel, it's a pleasure, and I mean this and rarely say it. I think I've said it two times in 25 years. It is an extreme pleasure to deal with counsel of such caliber. [Tr. at 48.])

In approving the $225 million settlement in *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.) in June 2010, Judge Nicholas G. Garaufis stated:

As outlined above, the recovery in this case is one of the highest ever achieved in this type of securities action . . . The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and . . . Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation.

In approving a $146.25 million settlement in *In re Charter Communications Securities Litigation*, No. 02-CV-1186, 2005 U.S. Dist. LEXIS 14772 (E.D. Mo. June 30, 2005), in which Pomerantz served as sole Lead Counsel, Judge Charles A. Shaw praised the Firm's efforts, citing "the vigor with which Lead Counsel . . . investigated claims, briefed the motions to dismiss, and negotiated the settlement." He further stated:

This Court believes Lead Plaintiff achieved an excellent result in a complex action, where the risk of obtaining a significantly smaller recovery, if any, was substantial.

In approving a $24 million settlement in *In re Force Protection, Inc.,* No. 08 CV 845 (D.S.C. 2011), Judge C. Weston Houk described the Firm as "attorneys of great ability and great reputation" and commended the Firm for having "done an excellent job."

In certifying a class in a securities fraud action against analysts in *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Judge Gerard D. Lynch stated that Pomerantz had "ably and zealously represented the interests of the class."

Numerous courts have made similar comments:

- Appointing Pomerantz Lead Counsel in *American Italian Pasta Co. Securities Litigation*, No 05-CV-0725 (W.D. Mo.), a class action that involved a massive fraud and restatements spanning several years, the District Court observed that the Firm "has significant experience (and has been extremely effective) litigating securities class actions, employs highly qualified attorneys, and possesses ample resources to effectively manage the class litigation and protect the class's interests."
- In approving the settlement in *In re Wiring Devices Antitrust Litigation*, MDL No. 331 (E.D.N.Y. Sept. 9, 1980), Chief Judge Jack B. Weinstein stated that "Counsel for the plaintiffs I think did an excellent job . . . They are outstanding and skillful. The litigation was and is extremely complex. They assumed

---

a great deal of responsibility. They recovered a very large amount given the possibility of no recovery here which was in my opinion substantial."

- In *Snyder v. Nationwide Insurance Co.*, No. 97/0633, (N.Y. Supreme Court, Onondaga Cty.), a case where Pomerantz served as Co-Lead Counsel, Judge Tormey stated, "It was a pleasure to work with you. This is a good result. You've got some great attorneys working on it."

- In *Steinberg v. Nationwide Mutual Insurance Co.* (E.D.N.Y. 2004), Judge Spatt, granting class certification and appointing the Firm as class counsel, observed: "The Pomerantz firm has a strong reputation as class counsel and has demonstrated its competence to serve as class counsel in this motion for class certification." (224 F.R.D. 67, 766.)

- In *Mercury Savings & Loan*, No. 90-cv-00087 LHM (C.D. Cal. 1993), Judge McLaughlin commended the Firm for the "absolutely extraordinary job in this litigation."

- In *Boardwalk Marketplace Securities Litigation*, MDL No. 712 (D. Conn.), Judge Eginton described the Firm's services as "exemplary," praised it for its "usual fine job of lawyering . . . [in] an extremely complex matter," and concluded that the case was "very well-handled and managed." (Tr. at 6, 5/20/92; Tr. at 10, 10/10/92.)

- In *Nodar v. Weksel*, No. 84 Civ. 3870 (S.D.N.Y.), Judge Broderick acknowledged "that the services rendered [by Pomerantz] were excellent services from the point of view of the class represented, [and] the result was an excellent result." (Tr. at 21-22, 12/27/90.)

- In *Klein v. A.G. Becker Paribas, Inc.*, No. 83 Civ 6456 (S.D.N.Y.), Judge Goettel complimented the Firm for providing "excellent . . . absolutely top-drawer representation for the class, particularly in light of the vigorous defense offered by the defense firm." (Tr. at 22, 3/6/87.)

- In *Digital Securities Litigation*, No. 83-3255 (D. Mass.), Judge Young lauded the Firm for its "[v]ery fine lawyering." (Tr. at 13, 9/18/86.)

- In *Shelter Realty Corp. v. Allied Maintenance Corp.*, 75 F.R.D. 34, 40 (S.D.N.Y. 1977), Judge Frankel, referring to Pomerantz, said: "Their experience in handling class actions of this nature is known to the court and certainly puts to rest any doubt that the absent class members will receive the quality of representation to which they are entitled."

- In *Rauch v. Bilzerian*, No. 88 Civ. 15624 (N.J. Sup. Ct.), the court, after trial, referred to Pomerantz partners as "exceptionally competent counsel," and as having provided "top drawer, topflight [representation], certainly as good as I've seen in my stay on this court."

# Corporate Governance Litigation

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. We strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. We vigorously pursue corporate governance reform, particularly in the area of excess compensation, where it can address the growing disparity between the salaries of executives and the workers of major corporations. We have successfully utilized litigation to bring about corporate governance reform in numerous cases, and always consider whether such reforms are appropriate before any case is settled.

Pomerantz's Corporate Governance Practice Group, led by Partner Gustavo F. Bruckner, enforces shareholder rights and prosecutes actions challenging corporate transactions that arise from an unfair process or result in an unfair price for shareholders.

In September 2017, New Jersey Superior Court Judge Julio Mendez, of Cape May County Chancery Division, approved Pomerantz's settlement in a litigation against Ocean Shore Holding Co. The settlement provided non-pecuniary benefits for a non-opt out class. In so doing, Judge Mendez became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). There has never before been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate. After conducting an analysis of each of the nine *Girsh* factors and holding that "class actions settlements involving non-monetary benefits to the class are subject to more exacting scrutiny," Judge Mendez held that the proposed settlement provided a material benefit to the shareholders.

In February 2018, the Maryland Circuit Court, Montgomery County, approved a $17.5 million settlement that plaintiffs achieved as additional consideration on behalf of a class of shareholders of American Capital, Ltd. *In re Am. Capital, Ltd. S'holder Litig.*, C.A. No. 422598-V (2018). The settlement resolved Plaintiffs' claims regarding a forced sale of American Capital.

Pomerantz filed an action challenging the sale of American Capital, a Delaware corporation with its headquarters in Maryland. Among other things, American Capital's board of directors (the "Board") agreed to sell the company at a price below what two other bidders were willing to offer. Worse, the merger price was even below the amount that shareholders would have received in the company's planned phased liquidation, which the company was considering under pressure from Elliott Management, an activist hedge fund and holder of approximate 15% of American Capital stock. Elliott was not originally named as a defendant, but after initial discovery showed the extent of its involvement in the Board's breaches of fiduciary duty, Elliott was added as a defendant in an amended complaint under the theory that Elliott exercised actual control over the Board's decision-making. Elliott moved to dismiss on jurisdictional grounds and additionally challenged its alleged status as a controller of American Capital. In June 2017, minutes before the hearing on defendants' motion to dismiss, a partial settlement was entered into with the members of the Board for $11.5 million. The motion to dismiss hearing proceeded despite the partial settlement, but only as to Elliott. In July 2017, the court denied the motion to dismiss, finding that Elliott, "by virtue solely of its own conduct, . . . has easily satisfied the transacting business prong of the Maryland long arm statute." The court also found that the "amended complaint in this case sufficiently pleads that Elliott was a controller with respect to" the sale, thus implicating a higher standard of review. Elliott subsequently settled the remaining claims for an additional $6 million. Pomerantz served as Co-Lead Counsel.

In May 2017, the Circuit Court of the State of Oregon approved the settlement achieved by Pomerantz and co-counsel of a derivative action brought by two shareholders of Lithia Motors, Inc. The lawsuit alleged breach of fiduciary duties by the board of directors in approving, without any meaningful review, the Transition Agreement between Lithia Motors and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, Bryan DeBoer, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

The *Lithia* settlement extracted corporate governance therapeutics that provide substantial benefits to Lithia and its shareholders and redress the wrongdoing alleged by plaintiffs. The board will now be

required to have at least five independent directors—as defined under the New York Stock Exchange rules—by 2020; a number of other new protocols will be in place to prevent self-dealing by board members. Further, the settlement calls for the Transition Agreement to be reviewed by an independent auditor who will determine whether the annual payments of $1,060,000 for life to Sidney DeBoer are reasonable. Lithia has agreed to accept whatever decision the auditor makes.

In January 2017, the Group received approval of the Delaware Chancery Court for a $5.6 million settlement it achieved on behalf of a class of shareholders of Physicians Formula Holdings, Inc. over an ignored merger offer in 2012. *In re Physicians Formula Holdings, Inc.*, C.A. No. 7794-VCL (Del. Ch.).

The Group obtained a landmark ruling in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch.), that fee-shifting bylaws adopted after a challenged transaction do not apply to shareholders affected by the transaction. They were also able to obtain a *25% price increase* for members of the class cashed out in the going private transaction.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Super. Ct.), the Group caused Implant Sciences to hold its first shareholder annual meeting in five years and put an important compensation grant up for a shareholder vote.

In *Smollar v. Potarazu*, C.A. No. 10287-VCN (Del. Ch.), the Group pursued a derivative action to bring about the appointment of two independent members to the board of directors, retention of an independent auditor, dissemination of financials to shareholders and the holding of first ever in-person annual meeting, among other corporate therapeutics.

In *Hallandale Beach Police Officers & Firefighters' Personnel Retirement Fund vs. Lululemon athletica, Inc.,* C.A. No. 8522-VCP (Del. Ch.), in an issue of first impression in Delaware, the Chancery Court ordered the production of the chairman's 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct.), the Group caused the Merger Agreement to be amended to provide a "majority of the minority" provision for the holders of North State Bancorp's common stock in connection with the shareholder vote on the merger. As a result of the Action, common shareholders could stop the merger if they did not wish it to go forward.

Pomerantz's commitment to advancing sound corporate governance principles is further demonstrated by the more than 26 years that we have co-sponsored the Abraham L. Pomerantz Lecture Series with Brooklyn Law School. These lectures focus on critical and emerging issues concerning shareholder rights and corporate governance and bring together top academics and litigators.

Our bi-monthly newsletter, *The Pomerantz Monitor*, provides institutional investors updates and insights on current issues in corporate governance.

# Strategic Consumer Litigation

Pomerantz's Strategic Consumer Litigation practice group, led by Partner Jordan Lurie, represents consumers in actions that seek to recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. The attorneys in this group have successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song Beverly Consumer Warranty Act and the Song Beverly Credit Card Act. They have resolved data breach privacy cases and cases involving unlawful recording, illegal background checks, unfair business practices, misleading advertising, and other consumer finance related actions. All of these actions also have resulted in significant changes to defendants' business practices.

Pomerantz currently represents consumers in a nationwide class action against Facebook for mistargeting ads. Plaintiff alleges that Facebook programmatically displays a material percentage of ads to users outside the defined target market and displays ads to "serial Likers" outside the defined target audience in order to boost Facebook's revenue. *IntegrityMessageBoards.com v. Facebook, Inc.* (N.D. Cal.) Case No. 4:18-cv-05286 PJH.

Pomerantz has pioneered litigation to establish claims for public injunctive relief under California's unfair business practices statute. For example, Pomerantz has filed cases seeking to prevent major auto manufacturers from unauthorized access to, and use of, drivers' vehicle data without compensation, and seeking to require the auto companies to share diagnostic data extracted from drivers' vehicles. The Strategic Consumer Litigation practice group is also prosecuting class cases against auto manufacturers for failing to properly identify high-priced parts that must be covered in California under extended emissions warranties.

Other consumer matters handled by Pomerantz's Strategic Consumer Litigation practice group include actions involving cryptocurrency, medical billing, price fixing, and false advertising of various consumer products and services.

# Antitrust Litigation

Pomerantz has earned a reputation for prosecuting complex antitrust and consumer class actions with vigor, innovation, and success. Pomerantz's Antitrust and Consumer Group has recovered billions of dollars for the Firm's business and individual clients and the classes that they represent. Time and again, Pomerantz has protected our free-market system from anticompetitive conduct such as price fixing, monopolization, exclusive territorial division, pernicious pharmaceutical conduct, and false advertising. Pomerantz's advocacy has spanned across diverse product markets, exhibiting the Antitrust and Consumer Group's versatility to prosecute class actions on any terrain.

Pomerantz has served and is currently serving in leadership or Co-Leadership roles in several high-profile multi-district litigation class actions. In December 2018, the Firm achieved a $31 billion partial settlement with three defendants on behalf of a class of U.S. lending institutions that originated, purchased or held loans paying interest rates tied to the U.S. Dollar London Interbank Offered Rate (USD LIBOR). It is alleged that the class suffered damages as a result of collusive manipulation by the LIBOR contributor panel banks that artificially suppressed the USD LIBOR rate during the class period, causing the class members to

receive lower interest payments than they would have otherwise received. *In re Libor Based Financial Instruments Antitrust Litig.,* 1:11-md-2262.

Pomerantz represented baseball and hockey fans in a game-changing antitrust class action against Major League Baseball and the National Hockey League, challenging the exclusive territorial division of live television broadcasts, internet streaming, and the resulting geographic blackouts. *See Laumann v. NHL* and *Garber v. MLB* (S.D.N.Y. 2012).

Pomerantz has spearheaded the effort to challenge harmful anticompetitive conduct by pharmaceutical companies—including Pay-for-Delay Agreements—that artificially inflates the price of prescription drugs by keeping generic versions off the market.

Even prior to the 2013 precedential U.S. Supreme Court decision in *Actavis*, Pomerantz litigated and successfully settled the following generic-drug-delay cases:

- *In re Flonase Antitrust Litig.* (E.D. Pa. 2008) ($35 million);
- *In re Toprol XL Antitrust Litig.* (D. Del. 2006) ($11 million); and
- *In re Wellbutrin SR Antitrust Litig.* (E.D. Pa. 2004) ($21.5 million).

Other exemplary victories include Pomerantz's prominent role in *In re NASDAQ Market-Makers Antitrust Litigation* (S.D.N.Y.), which resulted in a settlement in excess of $1 billion for class members, one of the largest antitrust settlements in history. Pomerantz also played prominent roles in *In re Sorbates Direct Purchaser Antitrust Litigation* (N.D. Cal.), which resulted in over an $82 million recovery, and in *In re Methionine Antitrust Litigation* (N.D. Cal.), which resulted in a $107 million recovery. These cases illustrate the resources, expertise, and commitment that Pomerantz's Antitrust Group devotes to prosecuting some of the most egregious anticompetitive conduct.

# A Global Advocate for Asset Managers and Public and Taft-Hartley Pension Funds

Pomerantz represents some of the largest pension funds, asset managers, and institutional investors around the globe, monitoring assets of over $9 trillion, and growing. Utilizing cutting-edge legal strategies and the latest proprietary techniques, Pomerantz protects, expands, and vindicates shareholder rights through our securities litigation services and portfolio monitoring program.

Pomerantz partners routinely advise foreign and domestic institutional investors on how best to evaluate losses to their investment portfolios attributable to financial misconduct and how best to maximize their potential recoveries worldwide. In particular, Pomerantz Partners Jeremy Lieberman and Jennifer Pafiti regularly travel throughout the U.S. and across the globe to meet with clients on these issues and are frequent speakers at investor conferences and educational forums in North America, Europe, and the Middle East.

Pomerantz was honored by European Pensions with its inaugural 2020 Thought Leadership award in recognition of significant contributions the Firm has made in the European pension environment.

# Institutional Investor Services

Pomerantz offers a variety of services to institutional investors. Through the Firm's proprietary system, PomTrack®, Pomerantz monitors client portfolios to identify and evaluate potential and pending securities fraud, ERISA and derivative claims, and class action settlements. Monthly customized PomTrack® reports are included with the service. PomTrack® currently monitors assets of over $9.4 trillion for some of the most influential institutional investors worldwide.

When a potential securities claim impacting a client is identified, Pomerantz offers to analyze the case's merits and provide a written analysis and recommendation. If litigation is warranted, a team of Pomerantz attorneys will provide efficient and effective legal representation. The experience and expertise of our attorneys—which have consistently been acknowledged by the courts—allow Pomerantz to vigorously pursue the claims of investors, taking complex cases to trial when warranted.

Pomerantz is committed to ensuring that companies adhere to responsible business practices and practice good corporate citizenship. The Firm strongly support policies and procedures designed to give shareholders the ability to oversee the activities of a corporation. Pomerantz has successfully utilized litigation to bring about corporate governance reform, and always considers whether such reforms are appropriate before any case is settled.

Pomerantz provides clients with insightful and timely commentary on matters essential to effective fund management in our bi-monthly newsletter, *The Pomerantz Monitor* and regularly sponsors conferences and roundtable events around the globe with speakers who are experts in securities litigation and corporate governance matters.

# Attorneys

### Partners

**Jeremy A. Lieberman**

Jeremy A. Lieberman is Pomerantz's Managing Partner. He became associated with the Firm in August 2004 and was elevated to Partner in January 2010. The Legal 500, in honoring Jeremy as a Leading Lawyer and Pomerantz as a 2021 and 2022 Tier 1 Plaintiffs Securities Law Firm, stated that "Jeremy Lieberman is super impressive—a formidable adversary for any defense firm." Among the client testimonials posted on The Legal 500's website: "Jeremy Lieberman led the case for us with remarkable and unrelenting energy and aggression. He made a number of excellent strategic decisions which boosted our recovery." Lawdragon has named Jeremy among the Leading 500 Plaintiff Financial Lawyers in the United States each year from 2019 to 2024. Super Lawyers® named him among the Top 100 Lawyers in the New York Metro area in 2021. In 2020, Jeremy won a Distinguished Leader award from the *New York Law Journal*. He was honored as Benchmark Litigation's 2019 Plaintiff Attorney of the Year. In 2018, Jeremy was honored as a Titan of the Plaintiffs Bar by Law360 and as a Benchmark Litigation Star. The Pomerantz team that Jeremy leads was named a 2018 Securities Practice Group of the Year.

Jeremy led the securities class action litigation *In re Petrobras Securities Litigation,* which arose from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A.–Petrobras, in which Pomerantz was sole Lead Counsel. The biggest instance of corruption in the history of Brazil ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. In January and February 2018, Jeremy achieved a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jeremy also secured a significant victory for Petrobras investors at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by the Third Circuit Courts of Appeals. The ruling will have a positive impact on plaintiffs in securities fraud litigation. Indeed, the *Petrobras* litigation was honored in 2019 as a National Impact Case by Benchmark Litigation.

Jeremy was Lead Counsel in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm achieved a $110 million settlement for the class. Plaintiff alleged that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provided the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

In November 2019, Jeremy achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange and found that it met the standards of market efficiency necessary allow for class certification.

Jeremy headed the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company, and the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In 2019, Jeremy achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investors about the manipulation of the banking giant's so-called "dark pool" trading systems

in order to provide a trading advantage to high-frequency traders over its institutional investor clients. This case turned on the duty of integrity owed by Barclays to its clients. In November 2017, Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production.

Jeremy led the Firm's securities class action litigation against Yahoo!, Inc., in which Pomerantz, as Lead Counsel, achieved an $80 million settlement for the Class in 2018. The case involved the biggest data breaches in U.S. history, in which over 3 billion Yahoo accounts were compromised. This was the first significant settlement to date of a securities fraud class action filed in response to a data breach.

In 2018 Jeremy achieved a $3.3 million settlement for the Class in the Firm's securities class action against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.* (C.D. Cal.).

Jeremy led the Firm's litigation team that in 2018 secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the London Interbank Offered Rate (LIBOR) rigging scandal.

In *In re China North East Petroleum Corp. Securities Litigation*, Jeremy achieved a significant victory for shareholders in the United States Court of Appeals for the Second Circuit, whereby the Appeals Court ruled that a temporary rise in share price above its purchase price in the aftermath of a corrective disclosure did not eviscerate an investor's claim for damages. The Second Circuit's decision was deemed "precedential" by the *New York Law Journal* and provides critical guidance for assessing damages in a § 10(b) action.

Jeremy had an integral role in *In re Comverse Technology, Inc. Securities Litigation*, in which he and his partners achieved a historic $225 million settlement on behalf of the Class, which was the second-largest options backdating settlement to date.

Jeremy regularly consults with Pomerantz's international institutional clients, including pension funds, regarding their rights under the U.S. securities laws. Jeremy is working with the Firm's international clients to craft a response to the Supreme Court's ruling in *Morrison v. National Australia Bank, Ltd.*, which limited the ability of foreign investors to seek redress under the federal securities laws.

Jeremy is a frequent lecturer worldwide regarding current corporate governance and securities litigation issues.

Jeremy graduated from Fordham University School of Law in 2002. While in law school, he served as a staff member of the *Fordham Urban Law Journal*. Upon graduation, he began his career at a major New York law firm as a litigation associate, where he specialized in complex commercial litigation.

Jeremy is admitted to practice in New York; United States District Courts for the Northern, Southern, Eastern, and Western Districts of New York, United States District Courts for the Northern and Southern Districts of Texas, the District of Colorado, the Eastern District of Michigan, the Eastern District of Wisconsin, and the Northern District of Illinois; United States Courts of Appeals for the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Ninth, Tenth, Eleventh, and D.C. Circuits; and the United States Supreme Court.

**Gustavo F. Bruckner**

Gustavo F. Bruckner heads Pomerantz's Corporate Governance practice group, which enforces shareholder rights and prosecutes litigation challenging corporate actions that harm shareholders. Under Gustavo's leadership, the Corporate Governance group has achieved numerous noteworthy litigation successes. He has been quoted on corporate governance issues by *The New York Times, The Wall Street Journal*, *Bloomberg*, *Law360*, and *Reuters*, and was honored from 2016 through 2021 by Super Lawyers® as a "Top-Rated Securities Litigation Attorney," a recognition bestowed on no more than 5% of eligible attorneys in the New York Metro area. In 2023, he was included on Lawdragon's list of the 500 Leading Plaintiff Financial Lawyers. Gustavo regularly appears in state and federal courts across the nation. Gustavo presented at the prestigious Institute for Law and Economic Policy conference.

Gustavo is a fierce advocate of aggressive corporate clawback policies that allow companies to recover damages from officers and directors for reputational and financial harm. Most recently, in *McIntosh vs Keizer*, *et al*., Docket No. 2018-0386 (Del. Ch.), Pomerantz filed a derivative suit on behalf of Hertz Global Holdings, Inc. shareholders, seeking to compel the Hertz board of directors to claw back millions of dollars in unearned and undeserved payments that the Company made to former officers and directors who significantly damaged Hertz through years of wrongdoing and misconduct. Under pressure from plaintiff's ligation efforts, the Hertz board of directors elected to take unprecedented action and mooted plaintiff's claims, initiating litigation to recover tens of millions of dollars in incentive compensation and more than $200 million in damages from culpable former Hertz executives.

Pomerantz, through initiation and prosecution of a shareholder derivative action, forced the Hertz board to seek clawback from former officers and directors of the company, unjustly enriched after causing the Company to file inaccurate and false financial statements leading to a $235 million restatement and $16 million fee to the SEC.

In September 2017, Gustavo's Corporate Governance team achieved a settlement in New Jersey Superior Court that provided non-pecuniary benefits for a non-opt out class. In approving the settlement, Judge Julio Mendez, of Cape May County Chancery Division, became the first New Jersey state court judge to formally adopt the Third Circuit's nine-part *Girsh* factors, *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975). Never before has there been a published New Jersey state court opinion setting out the factors a court must consider in evaluating whether a class action settlement should be determined to be fair and adequate.

Gustavo successfully argued *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. 2015), obtaining a landmark ruling in Delaware that bylaws adopted after shareholders are cashed out do not apply to shareholders affected by the transaction. In the process, Gustavo and the Corporate Governance team beat back a fee-shifting bylaw and were able to obtain a 25% price increase for members of the class cashed out in the

"going private" transaction. Shortly thereafter, the Delaware Legislature adopted legislation to ban fee-shifting bylaws.

In *Stein v. DeBoer* (Or. Cir. Ct. 2017), Gustavo and the Corporate Governance group achieved a settlement that provides significant corporate governance therapeutics on behalf of shareholders of Lithia Motors, Inc. The company's board had approved, without meaningful review, the Transition Agreement between the company and Sidney DeBoer, its founder, controlling shareholder, CEO, and Chairman, who was stepping down as CEO. DeBoer and his son, the current CEO, negotiated virtually all the material terms of the Agreement, by which the company agreed to pay the senior DeBoer $1,060,000 and a $42,000 car allowance annually for the rest of his life, plus other benefits, in addition to the $200,000 per year that he would receive for continuing to serve as Chairman.

In *Miller v. Bolduc*, No. SUCV 2015-00807 (Mass. Sup. Ct. 2015), Gustavo and the Corporate Governance group, by initiating litigation, caused Implant Sciences to hold its first shareholder annual meeting in 5 years and to place an important compensation grant up for a shareholder vote.

In *Strougo v. North State Bancorp*, No. 15 CVS 14696 (N.C. Super. Ct. 2015), Gustavo and the Corporate Governance team caused the North State Bancorp merger agreement to be amended to provide a "majority of the minority" provision for common shareholders in connection with the shareholder vote on the merger. As a result of the action, common shareholders had the ability to stop the merger if they did not wish it to go forward.

In *Hallandale Beach Police Officers and Firefighters' Personnel Retirement Fund vs. Lululemon Athletica, Inc.*, C.A. No. 8522-VCP (Del. Ch. 2014), in an issue of first impression in Delaware, Gustavo successfully argued for the production of the company chairman's Rule 10b5-1 stock trading plan. The court found that a stock trading plan established by the company's chairman, pursuant to which a broker, rather than the chairman himself, would liquidate a portion of the chairman's stock in the company, did not preclude potential liability for insider trading.

Gustavo was Co-Lead Counsel in *In re Great Wolf Resorts, Inc. Shareholders Litigation*, C.A. No. 7328-VCN (Del. Ch. 2012), obtaining the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders.

Gustavo received his law degree in 1992 from the Benjamin N. Cardozo School of Law, where he served as an editor of the Moot Court Board and on the Student Council. Upon graduation, he received the award for outstanding student service.

After graduating law school, Gustavo served as Chief-of-Staff to a New York City legislator.

Gustavo is a Mentor and Coach to the NYU Stern School of Business, Berkley Center for Entrepreneurial Studies, New Venture Competition. He was a University Scholar at NYU where he obtained a B.S. in Marketing and International Business in 1988 and an MBA in Finance and International Business in 1989. Gustavo is a Trustee and former Treasurer of the Beit Rabban Day School, and an arbitrator in the Civil Court of the City of New York.

Gustavo is admitted to practice in New York and New Jersey; the United States District Courts for the Eastern, Northern, and Southern Districts of New York and the District of New Jersey; the Eastern District of Wisconsin; the United States Courts of Appeals for the Second and Seventh Circuits; and the United States Supreme Court.

## Brian Calandra

Brian Calandra joined Pomerantz in June 2019 as Of Counsel and was elevated to Partner in January 2023. He has extensive experience in securities, antitrust, complex commercial, and white-collar matters in federal and state courts nationwide. Brian has represented issuers, underwriters, and individuals in securities class actions involving the financial, telecommunications, real estate, and pharmaceutical industries. He has also represented financial institutions in antitrust class actions concerning foreign exchange; supra-national, sub-sovereign and agency bonds; bonds issued by the government of Mexico; and credit card fees. In 2021, Brian was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney".

Brian has written multiple times on developments in securities law and other topics, including co-authoring an overview of insider trading law and enforcement for *Practical Compliance & Risk Management for the Securities Industry*, co-authoring an analysis of anti-corruption compliance risks posed by sovereign wealth funds for *Risk & Compliance*, and authoring an analysis of the effects of the 2005 Bankruptcy Abuse Prevention and Consumer Protection Act on women in bankruptcy for the *Women's Rights Law Reporter*.

Before joining Pomerantz, Brian was a litigation associate at Shearman & Sterling LLP. Brian graduated from Rutgers School of Law-Newark in 2009, *cum laude*, Order of the Coif. While at Rutgers, Brian was co-editor-in-chief of the *Women's Rights Law Reporter* and received the Justice Henry E. Ackerson Prize for Distinction in Legal Skills and the Carol Russ Memorial Prize for Distinction in Promoting Women's Rights.

Brian is admitted to practice in New York; the United States District Courts for the Northern, Southern and Eastern Districts of New York; the District of New Jersey, and the Eastern District of Wisconsin; the United States Courts of Appeals for the First, Second, Third, Fifth and Tenth Circuits; and the United States Supreme Court.

## Justin D. D'Aloia

Justin D. D'Aloia is a Partner in Pomerantz's New York office, where he specializes in securities class action litigation. He has extensive experience litigating high-profile securities cases in federal and state courts across the country. Justin has represented issuers, underwriters, and senior executives in matters involving a range of industries, including the financial services, life sciences, real estate, technology, and consumer retail sectors. His practice covers the full spectrum of proceedings from pre-suit demand through settlement.

Justin joined Pomerantz as a Partner in October 2022. Before joining Pomerantz, Justin was counsel at a large international law firm where he focused on securities litigation and other complex shareholder class action litigation. He previously served as a law clerk to Judge Mark Falk of the United States District Court for the District of New Jersey.

Justin received his J.D. from Fordham University School of Law, where he was Editor-in-Chief of the Fordham International Law Journal. He earned his undergraduate degree from Rutgers University with a concentration in Business and Economics.

Justin is admitted to practice in New York; United States District Courts for the Southern and Eastern Districts of New York and the District of Colorado; United States Courts of Appeals for the Second, Third, and Tenth Circuits.

**Emma Gilmore**

Emma Gilmore is a Partner at Pomerantz and is regularly involved in high-profile class-action litigation. In 2024, Benchmark Litigation selected her as "Plaintiff Litigator of the Year." In 2023, the *National Law Journal* named her a Plaintiffs' Attorney Trailblazer and Benchmark Litigation shortlisted her for Plaintiff Litigator of the Year. Emma was honored by Law360 in 2023 and in 2018 as an MVP in Securities Litigation, part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals." Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation. In 2018, Emma was the first woman plaintiff attorney to receive this outstanding award since it was initiated in 2011. In 2021, Emma was awarded a spot on *National Law Journal'*s prestigious Elite Women of the Plaintiffs Bar list. In 2021 and 2020, she was named by Benchmark Litigation as one of the Top 250 Women in Litigation—an honor bestowed on only seven plaintiffs' lawyers in the U.S. those years. The *National Law Journal* and the *New York Law Journal* honored her as a "Plaintiffs' Lawyer Trailblazer." Emma has been honored since 2018 as a Super Lawyer®. She has been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers.

Emma is regularly invited to speak about recent trends and developments in securities litigation. She serves on the New York City Bar Association's Securities Litigation Committee. Emma regularly counsels clients around the world on how to maximize recoveries on their investments.

Emma played a leading role in the Firm's class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm was sole Lead Counsel. In a significant victory for investors, Pomerantz achieved a historic $3 billion settlement with Petrobras. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a class action involving a foreign issuer, the fifth-largest class action settlement ever achieved in the United States, and the largest settlement achieved by a foreign lead plaintiff. The biggest instance of corruption in the history of Brazil had ensnared not only Petrobras' former executives but also Brazilian politicians, including former president Lula da Silva and one-third of the Brazilian Congress. Emma traveled to Brazil to uncover evidence of fraud and drafted the complaint. She deposed and defended numerous fact and expert witnesses, including deposing the former CEO of Petrobras, the whistleblower, and the chief accountant. She drafted the appellate brief, playing an instrumental role in securing a significant victory for investors in this case at the Second Circuit Court of Appeals, when the Court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts. She opposed defendants' petition for a writ of certiorari to the Supreme Court. Emma successfully obtained sanctions against a professional objector

challenging the integrity of the settlement, both in the District Court and in the Court of Appeals for the Second Circuit.

Emma organized a group of twenty-seven of the foremost U.S. scholars in the field of evidence and spearheaded the effort to submit an amicus brief to the U.S. Supreme Court on their behalf in a critical issue for investors. One of the two issues before the High Court in *Goldman Sachs Group, Inc. et al v. Arkansas Teachers Retirement System, et al.* (No. 20-222) squarely affected investors' ability to pursue claims collectively as a class: whether, in order to rebut the presumption of reliance originated by the Court in the landmark *Basic v. Levinson* decision, defendants bear the burden of persuasion, or whether they bear only the much lower burden of production. The scholars argued that defendants carry the higher burden of persuasion. In a 6-3 decision, the Supreme Court sided with Pomerantz and the scholars.

Emma led the Firm's class action litigation against Deutsche Bank and its executives, arising from the Bank's improper anti-money-laundering and know-your-customer procedures. Plaintiffs alleged that, despite the Bank's representations that it implemented a "robust and strict" Know Your Customer program with "special safeguards" for politically exposed persons (PEPs), defendants repeatedly exempted high-net-worth individuals and PEPs from any meaningful due diligence, enabling their criminal activities through the Bank's facilities. For example, Deutsche Bank continued "business as usual" with Jeffrey Epstein even after learning that 40 underage girls had come forward with testimony that he had sexually assaulted them. Deutsche Bank's former CEOs also onboarded, retained, and serviced Russian oligarchs and other clients reportedly engaged in criminal activities, with little or no due diligence. On October 20, 2022, Emma secured for investors nearly 50% of recoverable damages, which reflects a premium for the palpable misconduct and is exceptionally high for securities class action settlements. The Deutsche Bank litigation and settlement serve as important legal precedents aimed to deter financial institutions from enabling the wealthy and powerful to commit crimes in return for financial benefits to the institutions.

Emma played a leading role in *Strougo v. Barclays PLC*, a high-profile securities class action that alleged Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. She secured an important precedent-setting opinion from the Second Circuit. Emma organized a group of leading evidence experts who filed amicus briefs supporting plaintiffs' position in the Second Circuit.

Emma secured a unanimous decision by a panel of the Ninth Circuit Court of Appeals, benefiting defrauded investors in *Costa Brava Partnership III LP v. ChinaCast Education Corp*. In an issue of first impression, the Ninth Circuit held that imputation of the CEO's scienter to the company was warranted vis-a-vis innocent third parties, despite the fact that the executive acted for his own benefit and to the company's detriment.

She has also devoted a significant amount of time to pro bono matters. She played a critical role in securing a unanimous ruling by the Arkansas Supreme Court striking down as unconstitutional a state law banning cohabiting individuals from adopting children or serving as foster parents. The ruling was a relief for the 1,600-plus children in the state of Arkansas who needed a permanent family. The litigation generated significant publicity, including coverage by the *Arkansas Times, the Wall Street Journal, and the New York Times.*

She was Lead Counsel in the Firm's class action litigation against Arconic, in which she secured a $74 million settlement for the class. Arconic is the U.S. company that manufactured the highly flammable aluminum cladding allegedly responsible for the 2017 Grenfell Tower fire in London that eradicated a public housing block, killing 72 people and injuring 70 other tenants. Arconic repeatedly misrepresented to the market its safety protocols and the safety classification of its cladding products. When the truth about Arconic's unsafe practices emerged, investors lost over $1 billion in damages.

Before joining Pomerantz, Emma was a litigation associate with the firms of Skadden, Arps, Slate, Meagher and Flom, LLP, and Sullivan & Cromwell, LLP. She worked on the *WorldCom Securities Litigation,* which settled for $2 billion.

She also served as a law clerk to the Honorable Thomas C. Platt, former U.S. Chief Judge for the Eastern District of New York.

Emma graduated *cum laude* from Brooklyn Law School, where she served as a staff editor for the *Brooklyn Law Review*. She was the recipient of two CALI Excellence for the Future Awards, in the subjects of evidence and discovery. She graduated *summa cum laude* from Arizona State University, with a BA in French and a minor in Business.

She serves on the Firm's Anti-Harassment and Discrimination Committee.

## Michael Grunfeld

Michael Grunfeld is a Partner at Pomerantz LLP. He has extensive experience in securities, derivative, complex commercial, and white-collar matters in both federal and state courts nationwide.

He has played a leading role in some of the Firm's significant class action litigation, including its case against Yahoo!, Inc. arising out of the biggest data breaches in U.S. history, in which the Firm, as Lead Counsel, achieved an $80 million settlement on behalf of the Class. This settlement made history as the first substantial shareholder recovery in a securities fraud class action related to a cybersecurity breach. Michael also plays a leading role in many of the Firm's other ongoing class actions.

In 2020 and 2022, Michael was included on Benchmark Litigation's 40 & Under Hot List, an honor granted to a few of the "best and brightest law firm partners [under 40 years old] who stand out in their practices." In 2019, Law360 named him a Rising Star. Michael has been ranked by Super Lawyers® as a Top-Rated Securities Litigation Attorney from 2020 - 2024, and as a New York Metro Rising Star in 2018 and 2019.

Michael also leads Pomerantz's litigation on behalf of the Colorado Public Employees' Retirement System as an intervenor in *The Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson.* At issue is an activist investor's attempt to have Johnson & Johnson ("J&J") shareholders vote on a proxy proposal instituting a corporate bylaw that would require all securities fraud claims against the company to be pursued through mandatory arbitration, and that would waive shareholder's rights to bring securities class actions. In March 2022, the district court handed down an important victory for shareholders when it granted J&J's and the Intervenors' Motion to Dismiss the Third Amended Complaint.

Michael co-authored a chapter on damages in securities class actions for the LexisNexis treatise, *Litigating Securities Class Actions*.

His earlier career highlights include serving as a clerk for Judge Ronald Gilman of the Sixth Circuit Court of Appeals and as a foreign law clerk for Justice Asher Grunis of the Israeli Supreme Court. Before joining Pomerantz, he worked as a litigation associate at Shearman & Sterling LLP and Paul, Weiss, Rifkind, Wharton & Garrison LLP.

Michael graduated from Columbia Law School in 2008, where he was a Harlan Fiske Stone Scholar. He graduated from Harvard University with an A.B. in Government, *magna cum laude*, in 2004.

Michael is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, Eastern District of Michigan, and the District of Colorado; and the United States Courts of Appeal for the First, Second, Third, Fourth, Sixth, Ninth, and Tenth Circuits.

### J. Alexander Hood II

J. Alexander Hood II joined Pomerantz in June 2015 and was elevated to Of Counsel to the Firm in 2019. He was elevated to Partner in 2022. Alex leads the Firm's case origination team, identifying and investigating potential violations of the federal securities laws. In 2023, Alex was selected as a Rising Star in the *National Law Journal's* Elite Trial Lawyers awards competition. This award honors lawyers under 40 who represent the next generation of legal leaders. He has been named a Super Lawyers® Rising Star each year since 2019.

He has been named a Super Lawyers® Rising Star each year since 2019.FF

Alex played a key role in securing Pomerantz's appointment as Lead Counsel in actions against Meta Platforms, Inc., AT&T, Inc., Adobe, Inc., Hawaiian Electric Industries, Inc., Rite Aid Corporation, Yahoo!, Inc., Fiat Chrysler Automobiles N.V., Wynn Resorts Limited, Perrigo Company plc, among others.

Alex also oversees the firm's involvement on behalf of institutional investors in non-U.S. litigations, assisting Pomerantz clients with respect to evaluating and pursuing recovery in foreign jurisdictions, including matters in the Netherlands, Germany, the UK, Australia, Brazil, Denmark, and elsewhere.

Prior to joining Pomerantz, Alex practiced at nationally recognized law firms, where he was involved in commercial, financial services, corporate governance, and securities matters.

Alex graduated from Boston University School of Law (J.D.) and from the University of Oregon School of Law (LL.M.). During law school, he served as a member of the Boston University Review of Banking & Financial Law and participated in the Thomas Tang Moot Court Competition. In addition, Alex clerked for the American Civil Liberties Union of Tennessee and, as a legal extern, worked on the Center for Biological Diversity's Clean Water Act suit against BP in connection with the Deepwater Horizon oil spill.

Alex is admitted to practice in New York; the United States District Courts for the Southern, Eastern, Western and Northern Districts of New York; the District of Colorado; the Eastern District of Michigan; the

Eastern District of Wisconsin; the Northern District of Illinois; the Northern District of Indiana; the Southern District of Texas; and the United States Courts of Appeals for the Second Circuit.

**Omar Jafri**

Omar Jafri is a Partner at Pomerantz. He represents defrauded investors in individual and class action securities litigation. *Lawdragon* has named him one of the country's Leading Plaintiff Financial Lawyers, and Super Lawyers® has recognized him as a Top-Rated Securities Litigator. Previously, Omar was recognized by the *National Law Journal* as a Rising Star of the Plaintiffs' Bar. The *National Law Journal* selected lawyers who "demonstrated repeated success in cutting-edge work on behalf of plaintiffs over the last 18 months [and] possess a solid track record of client wins over the past three to five years." He was also recognized by Super Lawyers® as a Rising Star in Securities Litigation between 2021 and 2023.

Omar has played an integral role in numerous cases where the Firm achieved significant recoveries for defrauded shareholders as Lead, Co-Lead or Additional Counsel, including: *Roofer's Pension Fund v. Papa et al.* ($97 million recovery); *Glazer Capital Management, L.P. et al. v. Forescout Technologies, Inc. et al.* ($45 million recovery); *In re Chicago Bridge & Iron Co. N.V. Securities Litigation* ($44 million recovery); *In re Juno Therapeutics, Inc. Securities Litigation* ($24 million recovery); *In re Aveo Pharmaceuticals, Inc. Securities Litigation* ($18 million recovery, which was more than four times larger than the SEC's fair fund recovery in its parallel litigation); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Cooper v. Thoratec Corporation et al.* ($11.9 million settlement following a reversal in the United States Court of Appeals for the Ninth Circuit after the lower court repeatedly dismissed the case); *Felipe v. Playstudios, Inc. et al.* ($6.5 million settlement); *Thomas v. MagnaChip Semiconductor Corp. Securities Litigation* ($6.2 million settlement with majority shareholder, Avenue Capital); *Solomon v. Sprint Corporation et al.* ($3.75 million settlement); In re Paysign, Inc. Securities Litigation ($3.75 million settlement); *Schaeffer v. Nabriva Therapeutics plc et al.* ($3 million settlement); *In re Sequans Communications S.A. Securities Litigation* ($2.75 million settlement); Torres et al. v. Berry Corporation et al. ($2.5 million settlement); and Busic v. Orphazyme A/S et al. ($2.5 million settlement).

Through vigorous litigation, Omar has helped shape important precedents for all investors. *NantKwest* was the first case in the United States to recognize statistical proof of traceability. In *Roofer's Pension Fund v. Papa et al.*, the District Court independently analyzed the market of a security traded on a foreign exchange and found that it met the standards of market efficiency to allow for class certification for the first time since the U.S. Supreme Court decided *Morrison*. *Nabriva* was the first case in the Second Circuit to sustain a complaint based on the failure to disclose the FDA's serious criticisms identified in a Form 483 letter. In *Yan v. ReWalk Robotics et al.*, while the United States Court of Appeals for the First Circuit disagreed on the merits, the Circuit held that it is erroneous to dismiss a case for lack of standing when a named plaintiff can be substituted with another class member, shutting the door on such defense tactics in any future case filed in that Circuit. *In re Bed Bath & Beyond Corporation Securities Litigation* was one of the first decisions in the country to conclude that the dissemination of a misleading emoji can be an actionable misrepresentation under the federal securities laws. And in *Glazer Capital Management, L.P. et al. v. Forescout Technologies, Inc. et al.*, Omar won a rare reversal in a securities fraud class action in the United States Court of Appeals for the Ninth Circuit. In a published decision that reversed the dismissal in *Forescout*, the Ninth Circuit held that lower courts must not comingle the lower standard for falsity with the higher standard for scienter in analyzing the sufficiency of a securities fraud complaint, and repudiated

numerous arguments concerning the testimony of Confidential Witnesses that the defense bar had convinced many lower courts to erroneously endorse over the years.

Omar started his legal career at the height of the financial crisis in 2008 and has litigated major disputes on behalf of institutional investors arising out of the credit crisis, including disputes related to Collateralized Debt Obligations, Residential Mortgage-Backed Securities, Credit Default Swaps and other complex financial investments. Omar also represented the Examiner in the *Lehman Brothers* bankruptcy, the largest in history at the time, and helped draft a report that identified colorable claims against Lehman's senior executives for violating their fiduciary duties. He also has a robust *pro bono* criminal defense practice and has represented indigent defendants charged with crimes that range from simple battery to arson and murder.

Before joining Pomerantz, Omar was a law clerk to Judge William S. Duffey, Jr. of the United States District Court for the Northern District of Georgia, and an associate at an international law firm where he represented clients in a wide variety of matters, including securities litigation, complex commercial litigation, white collar criminal defense, and internal investigations.

Omar is a 2004 honors graduate of the University of Texas at Austin, and a 2008, *magna cum laude*, graduate of the University of Illinois College of Law, where he was inducted into the *Order of the Coif* and received the Rickert Award for Excellence in Advocacy. He is a fellow of the American Bar Foundation.

Omar is admitted to practice in Illinois; the United States District Courts for the Northern District of Illinois (Trial Bar) and the Northern District of Indiana; the United States Courts of Appeals for the First, Second, Fifth, Ninth and D.C. Circuits; and the United States Supreme Court.

## Jordan L. Lurie

Jordan L. Lurie joined Pomerantz as a partner in the Los Angeles office in December 2018. Jordan heads Pomerantz's Strategic Consumer Litigation practice. He was named a 2021 Southern California Super Lawyer®.

Jordan has litigated shareholder class and derivative actions, complex corporate securities and consumer litigation, and a wide range of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition, false advertising, and privacy rights. Among his notable representations, Jordan served as Lead Counsel in the prosecution and successful resolution of major nationwide class actions against Nissan, Ford, Volkswagen, BMW, Toyota, Chrysler and General Motors. He also successfully preserved a multi-million dollar nationwide automotive class action settlement by convincing the then Chief Judge of the Ninth Circuit and his wife, who were also class members and had filed objections to the settlement, to withdraw their objections and endorse the settlement.

Jordan has argued cases in the California Court of Appeals and in the Ninth Circuit that resulted in published opinions establishing class members' rights to intervene and clarifying the standing requirements for an objector to appeal. He also established a Ninth Circuit precedent for obtaining attorneys' fees in a catalyst fee action. Jordan has tried a federal securities fraud class action to verdict. He has been a featured speaker at California Mandatory Continuing Legal Education seminars and is a

trained ombudsman and mediator. In 2020, Jordan was recognized as a 2021 Southern California Super Lawyer.

Outside of his legal practice, Jordan is an active educator and community leader and has held executive positions in various organizations in the Los Angeles community. Jordan participated in the first Wexner Heritage Foundation leadership program in Los Angeles and the first national cohort of the Board Member Institute for Jewish Nonprofits at the Kellogg School of Management.

Prior to joining Pomerantz, Jordan was the Managing Partner of the Los Angeles office of Weiss & Lurie and Senior Litigator at Capstone Law APC.

Jordan graduated cum laude from Yale University in 1984 with a B.A in Political Science and received his law degree in 1987 from the University of Southern California Gould School of Law, where he served as Notes Editor of the *University of Southern California Law Review*.

Jordan is a member of the State Bar of California and has been admitted to practice before the United States District Courts for the Northern, Southern, Central and Eastern Districts of California, the Eastern and Western Districts of Michigan, and the District of Colorado.

## Jennifer Pafiti

Jennifer Pafiti became associated with the Firm in April 2014 and was elevated to Partner in December 2015. A dually qualified U.K. solicitor and U.S. attorney, she is the Firm's Head of Client Services and also takes an active role in complex securities litigation, representing clients in both class and non-class action securities litigation.

Jennifer received the Innovative Leader Award in Corporate Counsel's 2024 Women, Influence, and Power in Law Awards. She has been recognized with inclusion in the 2024 Lawdragon 500 Global Plaintiff Lawyers list and the 2024 Lawdragon 500 Leading Plaintiff Financial Leaders list. In 2023, Jennifer was one of only four individuals to be honored with the *New York Law Journal*'s Innovation Award, which recognizes "creative and inspiring approaches by forward-thinking firms and individuals." Jennifer was nominated as a 2023 Lawyer of Distinction. In 2022, *The Enterprise World* named Jennifer as *The Most Successful Business Leader to Watch.* In 2021, Jennifer was selected as one of the "Women, Influence and Power in Law" honorees by Corporate Counsel, in the Collaborative Leadership—Law Firm category. Lawdragon has named Jennifer among the Leading 500 Lawyers in the United States every year since 2021. In 2020 she was named a Southern California Rising Star by Super Lawyers® and was recognized by Benchmark Litigation as a Future Star. Lawdragon has recognized Jennifer as a Leading Plaintiff Financial Attorney from 2019 through 2021. In 2019, she was also honored by Super Lawyers® as a Southern California Rising Star in Securities Litigation, named to Benchmark Litigation's *40 & Under Hot List* of the best young attorneys in the United States, and recognized by *Los Angeles Magazine* as one of Southern California's Top Young Lawyers. In 2018, Jennifer was recognized as a Lawyer of Distinction. She was honored by Super Lawyers® in 2017 as both a Rising Star and one of the Top Women Attorneys in Southern California. In 2016, the *Daily Journal* selected Jennifer for its "Top 40 Under 40" list of the best young attorneys in California.

Jennifer was an integral member of the Firm's litigation team for *In re Petrobras Securities Litigation,* a case relating to a multi-billion-dollar kickback and bribery scheme at Brazil's largest oil company, Petróleo Brasileiro S.A.–Petrobras, in which the Firm was sole Lead Counsel. She helped secure a significant victory for investors in this case at the Second Circuit Court of Appeals, when the court rejected the heightened ascertainability requirement for obtaining class certification that had been imposed by other Circuit courts such as the Third and Sixth Circuit Courts of Appeals. Working closely with Lead Plaintiff, Universities Superannuation Scheme Limited, she was also instrumental in achieving the historic settlement of $3 billion for Petrobras investors. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Jennifer was involved, among other cases, in the securities class action against rare disease biopharmaceutical company, KaloBios, and certain of its officers, including CEO Martin Shkreli. In 2018, Pomerantz achieved a settlement of $3 million plus 300,000 shares for defrauded investors—an excellent recovery in light of the company's bankruptcy. *Isensee v. KaloBios*. Jennifer also helped achieve a $10 million recovery for the class in a securities litigation against the bankrupt Californian energy company, PG&E, which arose from allegedly false statements made by the company about its rolling power outages in the wake of the catastrophic wildfire incidents that occurred in California in 2015, 2017, and 2018. *Vataj v. Johnson, et al.*

Jennifer earned a Bachelor of Science degree in Psychology at Thames Valley University in England, prior to studying law. She earned her law degrees at Thames Valley University (G.D.L.) and the Inns of Court School of Law (L.P.C.) in the U.K.

Before studying law in England, Jennifer was a regulated financial advisor and senior mortgage underwriter at a major U.K. financial institution. She holds full CeFA and CeMAP qualifications. After qualifying as a solicitor, Jennifer specialized in private practice civil litigation, which included the representation of clients in high-profile cases in the Royal Courts of Justice. Prior to joining Pomerantz, Jennifer was an associate with Robbins Geller Rudman & Dowd LLP in their San Diego office.

Jennifer regularly travels throughout the U.S. and Europe to advise clients on how best to evaluate losses to their investment portfolios attributable to financial fraud or other misconduct, and how best to maximize their potential recoveries. Jennifer is also a regular speaker at events on securities litigation and fiduciary duty. In 2022, Thought Leaders 4 Disputes published Jennifer's article entitled "The Globalisation of Securities Litigation."

Jennifer served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls.

Jennifer is a member of the National Association of Pension Fund Attorneys and represents the Firm as a member of the California Association of Public Retirement Systems, the State Association of County Retirement Systems, the National Association of State Treasurers, the National Conference of Employee

Retirement Systems, the Texas Association of Public Employee Retirement Systems, and the U.K.'s National Association of Pension Funds.

Jennifer is admitted to practice in England and Wales; California; the United States District Courts for the Northern, Central and Southern Districts of California; and the United States Court of Appeals for the Ninth Circuit.

**Joshua B. Silverman**

Joshua B. Silverman is a partner in Pomerantz's Chicago office. He specializes in individual and class action securities litigation.

Josh was Lead Counsel in *In re Groupon, Inc. Securities Litigation,* achieving a $45 million settlement, one of the highest percentage recoveries in the Seventh Circuit. He was also Lead or Co-Lead Counsel in *In re MannKind Corp. Securities Litigation* ($23 million settlement); *In re AVEO Pharmaceuticals, Inc. Securities Litigation* ($18 million settlement, more than four times larger than the SEC's fair fund recovery in parallel litigation); *New Mexico State Investment Council v. Countrywide Financial Corp.* (very favorable confidential settlement); *New Mexico State Investment Council v. Cheslock Bakker & Associates* (summary judgment award in excess of $30 million); *Sudunagunta v. NantKwest, Inc.* ($12 million settlement); *Bruce v. Suntech Power Holdings Corp.* ($5 million settlement); *In re AgFeed, Inc. Securities Litigation* ($7 million settlement); and *In re Hemispherx BioPharma Securities Litigation* ($2.75 million settlement). Josh also played a key role in the Firm's representation of investors before the United States Supreme Court in *StoneRidge,* and prosecuted many of the Firm's other class cases, including *In re Sealed Air Corp. Securities Litigation* ($20 million settlement).

Josh, together with Managing Partner Jeremy Lieberman, achieved a critical victory for investors in the securities fraud class action against Perrigo Co. plc when Judge Arleo of the United States District Court for the District of New Jersey certified classes of investors that purchased Perrigo securities on both the New York Stock Exchange and the Tel Aviv Stock Exchange. Pomerantz represents a number of institutional investors that purchased Perrigo securities on both exchanges after an offer by Mylan N.V. to tender Perrigo shares. This is the first time since *Morrison* that a U.S. court has independently analyzed the market of a security traded on a non-U.S. exchange and found that it met the standards of market efficiency necessary allow for class certification.

Several of Josh's cases have set important precedent. For example, *In re MannKind* established that investors may support complaints with expert information. *New Mexico v. Countrywide* recognized that investors may show Section 11 damages for asset-backed securities even if there has been no interruption in payment or threat of default. More recently, *NantKwest* was the first Section 11 case in the nation to recognize statistical proof of traceability.

In addition to prosecuting cases, Josh regularly speaks at investor conferences and continuing legal education programs.

Before joining Pomerantz, Josh practiced at McGuireWoods LLP and its Chicago predecessor, Ross & Hardies, where he represented one of the largest independent futures commission merchants in

commodities fraud and civil RICO cases. He also spent two years as a securities trader, and continues to actively trade stocks, futures, and options for his own account.

Josh is a 1993 graduate of the University of Michigan, where he received Phi Beta Kappa honors, and a 1996 graduate of the University of Michigan Law School.

Josh is admitted to practice in Illinois; the United States District Court for the Northern District of Illinois; the United States Courts of Appeals for the First, Second, Third, Seventh, Eighth and Ninth Circuits; and the United States Supreme Court.

## Brenda Szydlo

Brenda Szydlo joined Pomerantz in January 2016 as Of Counsel and was elevated to Partner in 2022. She brings to the Firm extensive experience in complex civil litigation in federal and state court on behalf of plaintiffs and defendants, with a particular focus on securities and financial fraud litigation, litigation against pharmaceutical corporations, accountants' liability, and commercial litigation. In 2020-2024, Brenda was recognized by Super Lawyers® as a "Top-Rated Securities Litigation Attorney." She was included on the *Lawdragon 500 Leading Plaintiff Financial Lawyers* list in 2022–2025 and was named New York Metro Top Women 2024 for Securities Litigation.

Brenda played a leading role in the Firm's securities class action case in the Southern District of New York against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a precedent-setting legal ruling and a historic $3 billion settlement for the Class. This is not only the largest securities class action settlement in a decade but is the largest settlement ever in a securities class action involving a foreign issuer, the fifth-largest securities class action settlement ever achieved in the United States, the largest securities class action settlement achieved by a foreign Lead Plaintiff, and the largest securities class action settlement in history not involving a restatement of financial reports.

Brenda has represented investors in additional class and private actions that have resulted in significant recoveries, such as *In re Pfizer, Inc. Securities Litigation*, where the recovery was $486 million, and *In re Refco, Inc. Securities Litigation*, where the recovery was in excess of $407 million. She has also represented investors in opt-out securities actions, such as investors opting out of *In re Bank of America Corp. Securities, Derivative & ERISA Litigation* in order to pursue their own securities action.

Prior to joining Pomerantz, Brenda served as Senior Counsel in a prominent plaintiff advocacy firm, where she represented clients in securities and financial fraud litigation, and litigation against pharmaceutical corporations and accounting firms. Brenda also served as Counsel in the litigation department of one of the largest premier law firms in the world, where her practice focused on defending individuals and corporations in securities litigation and enforcement, accountants' liability actions, and commercial litigation.

Brenda is a graduate of St. John's University School of Law, where she was a St. Thomas More Scholar and member of the Law Review. She received a B.A. in economics from Binghamton University.

Brenda is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; the U.S. Courts of Appeals for the Second, Third, and Ninth Circuits; the United States District Court for the District of Colorado; and the United States Supreme Court.

**Matthew L. Tuccillo**

A Partner since 2013, Matthew L. Tuccillo joined Pomerantz in 2011.  With 25+ years of experience, he is recognized as a top national securities litigator.

Matt serves as the Firm's lead litigator on high-stakes securities class action litigation in courts nationwide. He closely advises his institutional clients, which are regularly appointed to serve as lead plaintiffs overseeing such lawsuits, which often have class-wide damages of $500 million - $1 billion+.  Matt's representative cases include:

- In *In re Emergent Biosolutions, Inc. Securities Litigation*, No. 8:21-cv-00955-PWG (D. Md.), arising from a company's COVID-19 vaccine manufacturing failures, Matt investigated and prepared a robust amended complaint, then succeeded in overcoming Defendants' motion to dismiss in September 2023, in securing class certification in June 2024, and in leading the case is through discovery.  Matt secured a $40 million class-wide settlement following a mediation and months of ensuring negotiations.  The court granted preliminary in October 2024.
- In *Edwards v. McDermott Int'l, Inc.*, No. 4:18-cv-4330-AB (S.D. Tex.), Matt successfully opposed a motion to dismiss a class action lawsuit alleging a years-long, multi-prong fraud by an engineering and construction company that did a risky merger, delayed massive write-downs, and declared bankruptcy.  Matt led the case through discovery, securing court orders that required defendants to review for production 1.25 million+ documents identified via plaintiff-authored search terms on plaintiff-selected custodians, as a prelude to production of 450,000+ defense and third party documents and 40 party and non-party fact depositions.  Matt secured an order partially certifying the class in June 2024, which both sides cross-appealed to the Fifth Circuit.
- In *Ramos v. Comerica, Inc.*, No. 2:23-cv-06843-SB-JPR (C.D. Cal.), securities class action claims arose from a bank's statements regarding certain government contract programs and related operating and financial metrics.  After multiple fact-driven amendments and hard-fought litigation of two motions to dismiss, the case appears for appellate litigation before the Ninth Circuit.
- In *In re Miniso Group Holding Limited Securities Litigation*, No. CV-22-5815 (MR Wx) (S.D.N.Y.), securities class action claims arose from a China-based retail company's U.S. IPO.  A further amended complaint will be filed after the court resolves a pending reconsideration motion regarding its dismiss rulings.
- In *Chun v. Fluor Corp., et al*., No. 3:18-cv-01338-S (N.D. Tex.), Matt served as co-lead counsel in hard-fought litigation concerning underperforming, large-scale, fixed-bid projects through two motions to dismiss.  A months-long mediation and negotiation process resulted in a court-approved $33 million settlement, which was a 37.5% recovery of the upheld claim value.
- In *Kendall v. Odonate Therapeutics, Inc., et al.*, No. 3:20-01828-H-LL (S.D. Cal.), Matt successfully opposed a motion to dismiss a securities lawsuit arising from a pharmaceuticals company's failure to advance its lead drug candidate to FDA approval.  Notably, the court held that defendants' scienter (intent) was sufficiently pled, even though they bought, rather than sold, company stock during the

period of alleged fraud.  A successful mediation resulted in a court-approved $12.75 million settlement.

- In *In re BP p.l.c. Securities Litigation*, No. 4:10-md-2185 (S.D. Tex.), where the court praised the "uniformly excellent" "quality of lawyering," Matt spearheaded lawsuits over BP's Gulf of Mexico oil spill by 125+ global institutional investors.  Over 9 years, he successfully opposed three motions to dismiss, oversaw e-discovery of 1.75 million documents, led the Plaintiffs Steering Committee, was the sole interface with BP and the Court, and secured some of the Firm's most ground-breaking rulings.  In a ruling of first impression, he successfully argued that investors asserted viable English law "holder claims" for losses due to retention of already-owned shares in reliance on a fraud, a theory barred under U.S. law since *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723 (1975).  He successfully argued against *forum non conveniens* (wrong forum) dismissal of 80+ global institutions' lawsuits - the first ruling after *Morrison v. Nat'l Australia Bank Ltd.*, 130 S. Ct. 2869 (2010), to permit foreign investors to pursue in U.S. court their foreign law claims for losses in a foreign company's securities traded on a foreign exchange.   He successfully argued that the U.S. Securities Litigation Uniform Standards Act of 1998 (SLUSA), which extinguishes U.S. state law claims in deference to the U.S. federal law, should not extend to the foreign law claims of U.S. and foreign investors, a ruling that saved those claims from dismissal where U.S. federal law afforded no remedy after *Morrison*.  In 2021, Matt achieved mediator-assisted, confidential, favorable monetary settlement for all 35 Firm clients including public and private pension funds, money management firms, partnerships, and trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia.  Notably, seven of these plaintiffs were Matt's institutional clients from the U.S., U.K., and Canada.
- In *In re Toronto-Dominion Bank Securities Litigation*, No. 1:17-cv-01735 (D.N.J.), Matt pled a multi-year fraud arising at one of Canada's largest banks, based on extensive statements by former employees detailing underlying retail banking misconduct.  Matt persuaded the court to reject a motion to dismiss in an order noteworthy because it validated the scienter (intent) pleading despite no witness speaking directly to the individual defendants' state of mind.  The court approved a $13.25 million class-wide settlement achieved after mediation.
- In *Perez v. Higher One Holdings, Inc., et al.*, No. 14-cv-00755-AWT (D. Conn.), Matt persuaded the court, after an initial dismissal, to uphold a second amended complaint asserting five threads of fraud by an education funding company and its founders and to approve a $7.5 million class-wide settlement.  Notably, the court held that the company's reported financial results violated SEC Regulation S-K, Item 303, for failure to disclose known trends and impacts from underlying misconduct – a rare ruling absent an accounting restatement.
- In *In re KaloBios Pharmaceuticals, Inc. Securities Litigation*, No. 15-cv-05841 (N.D. Cal.), a lawsuit against a bankrupt drug company and its jailed ex-CEO, Matt negotiated two class-wide settlements totaling $3.25+ million, including cash payments and stock from the company, that were approved by the bankruptcy and district courts.
- In *In re Silvercorp Metals, Inc. Securities Litigation*, No. 1:12-cv-09456 (S.D.N.Y.), Matt worked with mining, accounting, damages, and market efficiency experts to survive a motion to dismiss by a Canadian company with mining operations in China and NYSE-traded stock.  In approving the $14 million settlement achieved after two mediations, Judge Rakoff called the case "unusually complex," given the technical nature of mining metrics, the need to compare mining standards in Canada, China, and the U.S., and the volume of Chinese-language evidence.

Matt was also on the multi-firm team that represented commercial real estate investors against the Empire State Building's long-term lessees/operators regarding a consolidation, REIT formation, and IPO in *In re Empire State Realty Trust, Inc. Investor Litig.*, No. 650607/2012 (N.Y. Sup. Ct.), which was resolve for a $55 million cash/securities settlement fund, a $100 million tax benefit from restructured terms, remedial disclosures, and deal protections.

Matt regularly counsels institutional investors, foreign and domestic, regarding pending or potential complex litigation in the U.S.  He is skilled at identifying potential securities frauds early, regularly providing clients with the first opportunity to evaluate and pursue their claims, and he has worked extensively with outside investment management firms retained by clients to identify a winning set of supporting evidence.  When litigation is filed, he fully oversees its conduct and resolution, counseling clients throughout every step of the process, while handling all significant motions and courtroom arguments.  These skills have enabled him to sign numerous institutional clients for litigation and portfolio monitoring services, including public and private pension plans, investment management firms and sponsored investment vehicles, from both the U.S. and abroad.  Matt's clients have spearheaded the Firm's litigation efforts in the *BP*, *Fluor*, *McDermott*, *Emergent*, *Miniso*, and *Comerica* litigations discussed above.

Matt takes great pride in representing union clients.  He got his own union card as a teenager (United Food & Commercial Workers International Union, Local 371), following in the footsteps of his grandfather (International Brotherhood of Teamsters, Local 560).

Before joining Pomerantz, Matt worked at a large full-service firm then plaintiff-side boutique firms in Boston and Connecticut, litigating complex business disputes and securities, consumer, and employment class actions.  His pro bono work included securing Social Security benefits for a veteran with non-service-related disabilities.

Matt graduated from the Georgetown University Law Center in 1999, where he made the Dean's List.  He graduated from Wesleyan University in 1995, and among his various volunteer activities, he served as President of the Wesleyan Lawyers Association from 2017-2020.

His has been named a *Super Lawyers®* "Top-Rated Securities Litigation Attorney" (2016-present), *Lawdragon* Leading Plaintiff Financial Lawyer (2019-present), *Benchmark* Litigation Star (2021-2023), *Legal 500* Recommended Securities Litigator (2016, 2021), *American Lawyer* Top Rated Litigator (2023) and Northeast Trailblazer (2021), and a *Martindale-Hubbell* AV® Preeminent™ peer-rated attorney (2014-present).  His advocacy has been covered by Bloomberg, Law360, the *Houston Chronicle*, the *Hartford Business Journal*, and other outlets.

He is admitted to practice in the Supreme Court of the United States; the State of New York; the State of Connecticut; the Commonwealth of Massachusetts; the Second and Ninth Circuit Courts of Appeals; and the United States District Courts for the Southern and Eastern District of New York, Connecticut,

Massachusetts, the Northern District of Illinois, the Eastern District of Wisconsin, and the Southern District of Texas.  He is regularly admitted *pro hac vice* in state and federal courts nationwide.

**Austin P. Van**

Austin focuses his practice on securities class actions and other high-profile litigations.  Austin has repeatedly been recognized by Lawdragon as one of the top 500 Leading Plaintiff Financial Lawyers, and has been named as a Recommended Lawyer by The Legal 500. From 2018–2024, Austin has been honored as a Super Lawyers® Rising Star.  In 2020, Austin was named an MVP in Securities Litigation by Law360, as part of an "elite slate of attorneys [who] have distinguished themselves from their peers by securing hard-earned successes in high-stakes litigation, complex global matters and record-breaking deals."  Only up to six attorneys nationwide are selected each year as MVPs in Securities Litigation.  Austin was named to Benchmark Litigation's "40 and Under Hotlist" in 2020 and 2021.

Austin represents clients in some of the largest class actions in the country:
- Currently represents institutional investor lead plaintiffs in a shareholder securities class action against social media and technology behemoth Meta Platforms, Inc.  The complaint alleges that Meta misrepresented the impact of privacy changes in Apple's iOS operating system on Meta's core advertising business.  Seeks to recover damages amounting to hundreds of billions of dollars on behalf of global investors resulting from the 26% drop in Meta's share price following the revelation of the true impact of these privacy changes—in absolute terms, the largest one-day drop of a publicly traded company in U.S. history.  (N.D. Cal. 2024)
- Currently represents plaintiffs in a putative nationwide consumer class action against Apple, Inc., maker of the iPhone and other technology products.  The complaint alleges that Apple violated federal and state computer intrusion statutes and state consumer protection laws by tricking iPhone users to install updates to their older iPhone devices that effectively crippled them.  Successfully argued and defeated defendants 'motion to dismiss before District Judge Casey Pitts.  (N.D. Cal. 2024)
- Currently represents lead plaintiffs in a securities class action against Hawaiian Electric Company and its officers.  The complaint alleges that Hawaiian Electric misrepresented the actions it was taking to mitigate wildfire risk, and so concealed the extent of the unmitigated risk of wildfire from investors, who suffered billions of dollars in losses when this risk materialized in the 2023 Maui wildfire disaster in Lahaina.  (N.D. Cal. 2023)
- Currently represents lead plaintiffs in a securities class action against GSX Techedu, n/k/a Gaotu Techedu, a Chinese online education company.  Complaint alleges that GSX falsified half of its student enrollment and revenues and caused investors billions of dollars in losses when the truth became known.  Successfully defeated defendants 'motion to dismiss.  (D.N.J. 2023)
- Represented institutional investor as lead plaintiff in a securities class action against ATI Physical Therapy and its SPAC acquirer.  The complaint alleged that ATI misrepresented that its attrition rate was low, when in fact the rate was twice the industry average.  Successfully defeated defendants 'motion to dismiss and proceeded to discovery on all claims under Section 10(b), Section 14 and Section 20(a) of the Exchange Act to proceed.  Settled for $24.9 million.  (N.D. Ill. 2023)
- Represented lead plaintiffs in a securities class action against Citrix Systems, Inc. The complaint alleged that defendants violated Section 14 of the Exchange Act by soliciting votes to approve the sale of Citrix based on a proxy that concealed from shareholders accelerating SaaS ARR, a key business trend, so Citrix paid shareholders less for their shares than was fair.  Successfully argued and defeated

defendants 'motion to dismiss before District Judge Rodolfo Ruiz.  Settled case on favorable terms for $17.5 million.  (S.D. Fl. 2024)

- Represented certified class in a securities class action against TechnipFMC, a Fortune 500 oil and gas services company.  Plaintiffs alleged TechnipFMC overstated its net income in its initial registration statement due to its use of incorrect foreign exchange rates.  Successfully argued and defeated defendants 'motion to dismiss, argued and won lead plaintiffs' motion for class certification, and argued and defeated defendants 'motion for summary judgment, all before District Judge Alfred Bennett.  Led the class through complete preparations for trial.  The case settled for approximately $20 million.  (S.D. Tex. 2020)

- Represented lead plaintiffs in a securities class action against electric vehicle manufacturer Faraday Future Intelligent Electric, Inc. and its SPAC acquirer, Property Solutions Acquisition Corp.  The complaint alleged that defendants violated Sections 10(b) and 14(a) of the Exchange Act and Section 11 of the Securities Act by misrepresenting the level of committed reservations Faraday had for its flagship car in SEC filings, including in a proxy statement for the de-SPAC acquisition of Faraday.  Successfully argued and defeated defendants 'motion to dismiss before District Judge Christina Snyder and defeated defendants' motion for reconsideration.  Settled case on favorable terms for $7.5 million.  (C.D. Cal. 2021)

- Represented lead plaintiffs in a securities class action against Rockwell Medical, Inc.  Based on the strength of the complaint, at a pre-motion conference for defendants 'motion to dismiss, District Senior Judge Allyn R. Ross stated that" based on what I have reviewed, it is virtually inconceivable to me that the consolidated amended complaint could possibly be dismissed on a Rule 12(b)(6) motion or a Rule 9(b) motion" and that any proposed motion to dismiss "would be a complete waste of time and resources of counsel, of the clients 'money, and my time."  Defendants declined even to move to dismiss the complaint and settled the case $3.7 million—a highly favorable settlement for the class. (E.D.N.Y. 2019)

- Represented lead plaintiffs in a securities class action against Franklin Wireless Inc., a maker of wireless routers and communications devices.  Based on the strength of the complaint, defendants declined to move to dismiss.  Successfully obtained class certification and settled the matter on terms highly favorable for the class for $2.4 million. (S.D. Cal. 2021)

Austin received a J.D. from Yale Law School, where he was an editor of the Yale Law Journal and the Yale Journal of International Law. He has a B.A. from Yale University and an M.Sc. from the London School of Economics.  Prior to joining Pomerantz, Austin worked as an associate at Cravath, Swaine & Moore LLP.

Austin is admitted to practice law in New York and New Jersey, the United States District Courts for the Southern and Eastern Districts of New York, the District of New Jersey, the Northern District of Illinois, the Southern District of Texas, the United States Courts of Appeals for the First, Second, Seventh and Ninth Circuits, and the United States Supreme Court.

## Murielle Steven Walsh

Murielle Steven Walsh joined the Firm in 1998 and was elevated to Partner in 2007. In 2024 Murielle was named a Titan of the Plaintiffs Bar by *Law360*, and in 2022 she was selected to participate on the publication's Securities Editorial Board. She was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change" and was also honored as a 2020 Plaintiffs' Trailblazer by the *New York Law*

*Journal*. Murielle was honored in 2019, 2020 and 2021 as a Super Lawyers® "Top-Rated Securities Litigation Attorney," a recognition bestowed on 5% of eligible attorneys in the New York Metro area. Lawdragon named her a Top Plaintiffs' Financial Lawyer in 2019 and 2020.

During her career at Pomerantz, Murielle has prosecuted highly successful securities class action and corporate governance cases. She was one of the lead attorneys litigating *In re Livent Noteholders' Securities Litigation*, a securities class action in which she obtained a $36 million judgment against the company's top officers, a ruling which was upheld by the Second Circuit on appeal. Murielle was also part of the team litigating *EBC I v. Goldman Sachs*, where the Firm obtained a landmark ruling from the New York Court of Appeals, that underwriters may owe fiduciary duties to their issuer clients in the context of a firm-commitment underwriting of an initial public offering.

Murielle led Firm's high-profile securities class action against Wynn Resorts Ltd., where the Firm served as lead counsel. The litigation stemmed from the company's alleged cover-up of a prolonged pattern of sexual misconduct by its founder and former CEO, billionaire casino mogul Stephen Wynn. In January 2025, Murielle secured final approval of a $70 million settlement on behalf of defrauded investors. Wynn is widely regarded as the first high-profile executive whose misconduct was exposed by the #MeToo movement. *Ferris v. Wynn Resorts Ltd*., No. 18-cv-479 (D. Nev.)

In a securities class action against Ormat Technologies, Inc., Murielle achieved a $3.75 million settlement on behalf of defrauded investors in January 2021. Ormat's securities are dual-listed on the NYSE and the Tel Aviv Stock Exchange. Murielle persuaded the district court in exercise supplemental jurisdiction in order to apply U.S. securities law to the claims in the case, regardless of where investors purchased their securities.

Murielle led the Firm's ground-breaking litigation that arose from the popular Pokémon Go game, in which Pomerantz was lead counsel. Pokémon Go is an "augmented reality" game in which players use their smart phones to "catch" Pokémon in real-world surroundings. GPS coordinates provided by defendants to gamers included directing the public to private property without the owners' permission, amounting to an alleged mass nuisance. *In re Pokémon Go Nuisance*, No. 3:16-cv-04300 (N.D. Cal.)

Murielle was co-lead counsel in *Thorpe v. Walter Investment Management Corp.*, No. 14-cv-20880 (S.D. Fla.), a securities fraud class action challenging the defendants' representations that their lending activities were regulatory-compliant, when in fact the company's key subsidiary engaged in rampant violations of federal consumer financial protection laws, subjecting it to various government investigations and enforcement action by the CFPB and FTC. In 2016, the Firm obtained a $24 million settlement on behalf of the class. She was also co-lead counsel in *Robb v. Fitbit, Inc.*, No. 16-cv-00151 (N.D. Cal.), a securities class action alleging that the defendants misrepresented that their key product delivered "highly accurate" heart rate readings when in fact their technology did not consistently deliver accurate readings during exercise and its inaccuracy posed serious health risks to users of Fitbit's products. The Firm obtained a $33 million settlement on behalf of the investor class in this action.

In 2018 Murielle, along with then-Senior Partner Jeremy Lieberman, achieved a $3.3 million settlement for the Class in the Firm's case against Corinthian Colleges, one of the largest for-profit college systems in the country, for alleged misrepresentations about its job placement rates, compliance with applicable regulations, and enrollment statistics. Pomerantz prevailed in the motion to dismiss the proceedings, a

particularly noteworthy victory because Chief Judge George King of the Central District of California had dismissed two prior lawsuits against Corinthian with similar allegations. *Erickson v. Corinthian Colleges, Inc.*, No. 2:13-cv-07466 (C.D. Cal.).

Murielle serves as a member and on the Executive Committee of the Board of Trustees of the non-profit organization Court Appointed Special Advocates for Children ("CASA") of Monmouth County. She also served on the Honorary Steering Committee of Equal Rights Advocates ("ERA"), which focuses on and discusses specific issues that women face in the legal profession. ERA is an organization that protects and expands economic and educational access and opportunities for women and girls. In the past, Murielle served as a member of the editorial board for Class Action Reports, a Solicitor for the Legal Aid Associates Campaign, and has been involved in political asylum work with the Association of the Bar of the City of New York.

Murielle serves on the Firm's Anti-Harassment and Discrimination Committee.

Murielle graduated *cum laude* from New York Law School in 1996, where she was the recipient of the Irving Mariash Scholarship. During law school, Murielle interned with the Kings County District Attorney and worked within the mergers and acquisitions group of Sullivan & Cromwell.

Murielle is admitted to practice in New York; United States District Court for the Southern District of New York; United States Courts of Appeals for the Second, Sixth, and Ninth Circuits

**Tamar A. Weinrib**

Tamar A. Weinrib joined Pomerantz in 2008. She was Of Counsel to the Firm from 2014 through 2018 and was elevated to Partner in 2019. In 2020, The Legal 500 honored her as a Next Generation Partner. Tamar was named a 2018 Rising Star under 40 years of age by Law360, a prestigious honor awarded to a select few "top litigators and dealmakers practicing at a level usually seen from veteran attorneys." Tamar has been recognized by Super Lawyers® as a 2021 "Top-Rated Securities Litigation Attorney;" she was honored as a New York Metro Rising Star every year from 2014 to 2019.

In 2019, Tamar and Managing Partner Jeremy Lieberman achieved a $27 million settlement for the Class in *Strougo v. Barclays PLC*, a high-profile securities class action in which Pomerantz was Lead Counsel. Plaintiffs alleged that Barclays PLC misled institutional investor clients about the extent of the banking giant's use of so-called "dark pool" trading systems. This case turned on the duty of integrity owed by Barclays to its clients. In November 2016, Tamar and Jeremy achieved precedent-setting victories for investors, when the Second Circuit Court of Appeals held that direct evidence of price impact is not always necessary to demonstrate market efficiency to invoke the presumption of reliance, and that defendants seeking to rebut the presumption of reliance must do so by a preponderance of the evidence rather than merely meeting a burden of production. In 2018, Tamar successfully opposed Defendants' petition to the Supreme Court for a writ of certiorari.

In approving the settlement in *Strougo v. Barclays PLC* in June 2019, Judge Victor Marrero of the Southern District of New York stated:

> Let me thank counsel on both sides for the extraordinary work both sides did in bringing this matter to a reasonable conclusion. As the parties have indicated, the matter was intensely litigated, but it was done in the most extraordinary fashion with cooperation, collaboration, and high levels of professionalism on both sides, so I thank you.

Tamar headed the litigation of *In re Delcath Systems, Inc. Securities Litigation*, in which Pomerantz achieved a settlement of $8,500,000 for the class. She successfully argued before the Second Circuit in *In re China North East Petroleum Securities Litigation,* to reverse the district court's dismissal of the defendants on scienter grounds.

Among other securities fraud class actions that Tamar led to successful settlements are *KB Partners I, L.P. v. Pain Therapeutics, Inc.* ($8,500,000); *New Oriental Education & Technology Group, Inc.* ($3,150,000); and *Whiteley v. Zynerba Pharmaceuticals, Inc. et al.* ($4,000,000).

Before coming to Pomerantz, Tamar had over three years of experience as a litigation associate in the New York office of Clifford Chance US LLP, where she focused on complex commercial litigation. Tamar has successfully tried pro bono cases, including two criminal appeals and a housing dispute filed with the Human Rights Commission.

Tamar graduated from Fordham University School of Law in 2004 and while there, won awards for successfully competing in and coaching Moot Court competitions.

Tamar is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Courts of Appeals for the Second, Third, Fourth, and Ninth Circuits.

## Michael J. Wernke

Michael J. Wernke joined Pomerantz as Of Counsel in 2014 and was elevated to Partner in 2015. He was named a 2020 Plaintiffs' Lawyer Trailblazer by the *National Law Journal*, an award created to "honor a handful of individuals from each practice area that are truly agents of change."

Michael, along with Managing Partner Jeremy Lieberman, led the litigation in *Pirnik v. Fiat Chrysler Automobiles N.V. et al.*, No. 1:15-cv-07199-JMF (S.D.N.Y), in which the Firm, as Lead Counsel, achieved a $110 million settlement for the class. This high-profile securities class action alleges that Fiat Chrysler concealed from investors that it improperly outfitted its diesel vehicles with "defeat device" software designed to cheat NOx emissions regulations in the U.S. and Europe, and that regulators had accused Fiat Chrysler of violating the emissions regulations. The *Fiat Chrysler* recovery provides the class of investors with as much as 20% of recoverable damages—an excellent result when compared to historical statistics in class action settlements, where typical recoveries for cases of this size are between 1.6% and 3.3%.

Michael led the securities class action *Zwick Partners, LP v. Quorum Health Corp., et al.*, No. 3:16-cv-2475, achieving a settlement of $18 million for the class in June 2020. The settlement represented between 12.7% and 42.9% of estimated recoverable damages. Plaintiff alleged that defendants misrepresented to investors the poor prospects of hospitals that the parent company spun off into a stand-alone company. In defeating defendants' motions to dismiss the complaint, Michael successfully argued that the company

from which Quorum was spun off was a "maker" of the false statements even though all the alleged false statements concerned only Quorum's financials and the class involved only purchasers of Quorum's common stock. This was a tremendous victory for plaintiffs, as cases alleging false statements of goodwill notoriously struggle to survive motions to dismiss.

Along with Managing Partner Jeremy Lieberman, Michael leads the Firm's individual action against pharmaceutical giant Teva Pharmaceutical Industries Ltd. and Teva Pharmaceuticals USA, Inc. (together, "Teva"), and certain of Teva's current and former employees and officers, relating to alleged anticompetitive practices in Teva's sales of generic drugs. Teva is a dual-listed company; the Firm represents several Israeli institutional investors who purchased Teva shares on the Tel Aviv Stock Exchange. In early 2021, Pomerantz achieved a major victory for global investors when the district court agreed to exercise supplemental jurisdiction over the Israeli law claims. *Clal Insurance Company Ltd. v. Teva Pharmaceutical Industries Ltd.*

In December 2018, Michael, along with Pomerantz Managing Partner Jeremy A. Lieberman, secured a $31 million partial settlement with three defendants in *In re Libor Based Financial Instruments Antitrust Litigation*, a closely watched multi-district litigation, which concerns the LIBOR rigging scandal.

In October 2018, Michael secured a $15 million settlement in *In re Symbol Technologies, Inc. Securities Litigation*, No. 2:05-cv-03923-DRH-AKT (E.D.N.Y.), a securities class action that alleges that, following an accounting fraud by prior management, Symbol's management misled investors about the state of its internal controls and the Company's ability to forecast revenues.

He was Lead Counsel in *Thomas v. Magnachip Semiconductor Corp.*, in which he achieved a $23.5 million partial settlement with certain defendants, securing the settlement despite an ongoing investigation by the Securities and Exchange Commission and shareholder derivative actions. He played a leading role in *In re Lumber Liquidators, Inc. Securities Litigation*, in which Pomerantz, as Co-Lead Counsel, achieved a settlement of $26 million in cash and 1,000,000 shares of Lumber Liquidators common stock for the Class. Michael also secured a $7 million settlement (over 30% of the likely recoverable damages) in the securities class action *Todd v. STAAR Surgical Company, et al.*, No. 14-cv-05263-MWF-RZ (C.D. Cal.), which alleged that STAAR concealed from investors violations of FDA regulations that threatened the approval of STAAR's long awaited new product.

In the securities class action *In re Atossa Genetics, Inc. Securities Litigation*, No. 13-cv-01836-RSM (W.D. Wash.), Michael secured a decision by the Ninth Circuit Court of Appeals that reversed the district court's dismissal of the complaint. The Ninth Circuit held that the CEO's public statements that the company's flagship product had been approved by the FDA were misleading despite the fact that the company's previously filed registration statement stated that that the product did not, at that time, require FDA approval.

During the nine years prior to coming to Pomerantz, Michael was a litigator with Cahill Gordon & Reindel LLP, with his primary focus in the securities defense arena, where he represented multinational financial institutions and corporations, playing key roles in two of only a handful of securities class actions to go to jury verdict since the passage of the PSLRA.

In 2020 and 2021, Michael was honored as a *Super Lawyers®* "Top Rated Securities Litigation Attorney." In 2014 and 2015, he was recognized as a *Super Lawyers®* New York Metro Rising Star.

Michael received his J.D. from Harvard Law School in 2004. He also holds a B.S. in Mathematics and a B.A. in Political Science from Ohio State University, where he graduated *summa cum laude*.

He serves on the Firm's Anti-Harassment and Discrimination Committee.

Michael is admitted to practice in New York; the United States District Court for the Southern District of New York; and the United States Supreme Court.

## Senior Counsel

### Stanley M. Grossman

Stanley M. Grossman, Senior Counsel, is a former Managing Partner of Pomerantz. Widely recognized as a leader in the plaintiffs' securities bar, he was honored in 2020 with a Lifetime Achievement award by the *New York Law Journal*. Martindale Hubbell awarded Stan its 2021 AV Preeminent Rating®, "given to attorneys who are ranked at the highest level of professional excellence for their legal expertise, communication skills, and ethical standards by their peers." Stan was selected by *Super Lawyers®* as an outstanding attorney in the United States for the years 2006 through 2020 and was featured in the *New York Law Journal* article *Top Litigators in Securities Field—A Who's Who of City's Leading Courtroom Combatants*. Lawdragon named Stan a Leading Plaintiff Financial Lawyer in 2019 and 2020, and in 2021, he was inducted into the Lawdragon Hall of Fame. In 2013, Brooklyn Law School honored Stan as an Alumnus of the Year.

Stan has primarily represented plaintiffs in securities and antitrust class actions, including many of those listed in the Firm biography. *See, e.g., Ross v. Bernhard*, 396 U.S. 531 (1970); *Rosenfeld v. Black*, 445 F.2d 137 (2d Cir. 1971); *Wool v. Tandem Computers, Inc.*, 818 F.2d 1433 (9th Cir. 1987); and *In re Salomon Bros. Treasury Litig.*, 9 F.3d 230 (2d Cir. 1993). In 2008 he appeared before the United States Supreme Court to argue that scheme liability is actionable under Section 10(b) and Rule 10b-5(a) and (c). *See StoneRidge Inv. Partners, LLC v. Sci.-Atlanta, Inc.,* No. 06-43 (2008). Other cases where he was the Lead or Co-Lead Counsel include: *In re Salomon Brothers Treasury Litigation*, No. 91 Civ. 5471 (S.D.N.Y. 1994) ($100 million cash recovery); *In re First Executive Corporation Securities Litigation*, No. CV-89-7135 (C.D. Cal. 1994) ($100 million settlement); and *In re Sorbates Direct Purchaser Antitrust Litigation*, No. C98-4886 (N.D. Cal. 2000) (over $80 million settlement for the class).

In 1992, Senior Judge Milton Pollack of the Southern District of New York appointed Stan to the Executive Committee of counsel charged with allocating to claimants hundreds of millions of dollars obtained in settlements with Drexel Burnham & Co. and Michael Milken.

Many courts have acknowledged the high quality of legal representation provided to investors by Stan. In *Gartenberg v. Merrill Lynch Asset Management, Inc.*, No. 79 Civ. 3123 (S.D.N.Y.), where Stan was lead trial counsel for plaintiff, Judge Pollack noted at the completion of the trial:

> [I] can fairly say, having remained abreast of the law on the factual and legal matters that have been presented, that I know of no case that has been better presented so as to give the Court an opportunity to reach a determination, for which the court thanks you.

Stan was also the lead trial attorney in *Rauch v. Bilzerian* (N.J. Super. Ct.) (directors owed the same duty of loyalty to preferred shareholders as common shareholders in a corporate takeover), where the court described the Pomerantz team as "exceptionally competent counsel." He headed the six week trial on liability in *Walsh v. Northrop Grumman* (E.D.N.Y.) (a securities and ERISA class action arising from Northrop's takeover of Grumman), after which a substantial settlement was reached.

Stan frequently speaks at law schools and professional organizations. In 2010, he was a panelist on *Securities Law: Primary Liability for Secondary Actors*, sponsored by the Federal Bar Council, and he presented *Silence Is Golden—Until It Is Deadly: The Fiduciary's Duty to Disclose*, at the Institute of American and Talmudic Law. In 2009, Stan was a panelist on a Practicing Law Institute "Hot Topic Briefing" entitled StoneRidge—*Is There Scheme Liability or Not?*

Stan served on former New York State Comptroller Carl McCall's Advisory Committee for the NYSE Task Force on corporate governance. He is a former president of NASCAT. During his tenure at NASCAT, he represented the organization in meetings with the Chairman of the Securities and Exchange Commission and before members of Congress and of the Executive Branch concerning legislation that became the PSLRA.

Stan served for three years on the New York City Bar Association's Committee on Ethics, as well as on the Association's Judiciary Committee. He is actively involved in civic affairs. He headed a task force on behalf of the Association, which, after a wide-ranging investigation, made recommendations for the future of the City University of New York. He was formerly on the board of the Appleseed Foundation, a national public advocacy group.

Stan is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York, Central District of California, Eastern District of Wisconsin, District of Arizona, District of Colorado; the United States Courts of Appeals for the First, Second, Third, Ninth and Eleventh Circuits; and the United States Supreme Court.

## Marc I. Gross

Marc I. Gross is Senior Counsel at Pomerantz LLP, where he has litigated securities fraud class actions for over four decades, serving as its Managing Partner from 2009 to 2016. His major lawsuits include SAC Capital (Steven Cohen—insider trading); Chesapeake Energy (Aubrey McClendon—insider bail out); Citibank (analyst Jack Grubman—false AT&T stock recommendation); and Charter Communications (Paul Allen—accounting fraud). He also litigated market efficiency issues in the firm's landmark $3 billion recovery in *Petrobras*.

Marc has also served as President of the Institute of Law and Economic Policy ("ILEP"), which has organized symposiums each year where leading academics have presented papers on securities law and consumer protection issues. These papers have been cited in over 200 cases, including several in the United States Supreme Court. http://www.ilep.org.

Marc has addressed numerous forums in the United States on shareholder-related issues, including ILEP; Loyola-Chicago School of Law's Institute for Investor Protection Conference; the National Conference on Public Employee Retirement Systems' ("NCPERS") Legislative Conferences; PLI conferences on Current Trends in Securities Law; a panel entitled *Enhancing Consistency and Predictability in Applying Fraud-on-the-Market Theory*, sponsored by the Duke Law School Center for Judicial Studies, as well as securities law students at NYU and Georgetown Law schools.

Among other articles, Marc authored *Cooking Books? The Valuation Treadmill*, 50 Sec. Reg. L. Jrl. 363 (2022); *Reputation and Securities Litigation*, 47 Sec. Reg. l Jrl. 99 (2019) *Back to Basic(s): Common Sense Trumps Econometrics*, N.Y.L.J. (Jan. 8, 2018) (with Jeremy Lieberman); and *Class Certification in a Post-Halliburton II World*, 46 Loyola-Chicago L.J. 485 (2015).

Marc was honored in 2022 by T'ruah, the Rabbinic Call to Human Rights, for his pro bono work in support of the Coalition of Immokalee Workers in Florida in their battle for recognition by Wendy's Restaurants, and recently joined the Board of Mainchance, a homeless drop-in shelter operating in Manhattan.

Marc is a graduate of NYU Law '76 and Columbia College '73.

## Patrick V. Dahlstrom

Patrick Dahlstrom joined Pomerantz as an associate in 1991 and was elevated to Partner in January 1996. He served as Co-Managing Partner with Jeremy Lieberman in 2017 and 2018 and is now Senior Counsel. Patrick heads the Firm's Chicago office. He was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney" from 2018–2021 in both Securities Litigation and Appellate matters. In 2021, Patrick was inducted into the Lawdragon Hall of Fame.

Patrick, a member of the Firm's Institutional Investor Practice and New Case Groups, has extensive experience litigating cases under the PSLRA. He led *In re Comverse Technology, Inc. Securities Litigation*, No. 06-CV-1825 (E.D.N.Y.), in which the Firm, as Lead Counsel, recovered a $225 million settlement for the Class—the second-highest ever for a case involving back-dating options, and one of the largest recoveries ever from an individual officer-defendant, the company's founder and former CEO. In *Comverse*, the Firm obtained an important clarification of how courts calculate the "largest financial interest" in connection with the selection of a Lead Plaintiff, in a manner consistent with *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Judge Garaufis, in approving the settlement, lauded Pomerantz: "The court also notes that, throughout this litigation, it has been impressed by Lead Counsel's acumen and diligence. The briefing has been thorough, clear, and convincing, and . . . Lead Counsel has not taken short cuts or relaxed its efforts at any stage of the litigation."

In *DeMarco v. Robertson Stephens, Inc.*, 228 F.R.D. 468 (S.D.N.Y. 2005), Patrick obtained the first class certification in a federal securities case involving fraud by analysts.

Patrick's extensive experience in litigation under the PSLRA has made him an expert not only at making compelling arguments on behalf of Pomerantz's clients for Lead Plaintiff status, but also in discerning weaknesses of competing candidates. *In re American Italian Pasta Co. Securities Litigation* and *Comverse*

are the most recent examples of his success in getting our clients appointed sole Lead Plaintiff despite competing motions by numerous impressive institutional clients.

Patrick was a member of the trial team in *In re ICN/Viratek Securities Litigation* (S.D.N.Y. 1997), which, after trial, settled for $14.5 million. Judge Wood praised the trial team: "[P]laintiffs counsel did a superb job here on behalf of the class . . . This was a very hard fought case. You had very able, superb opponents, and they put you to your task . . . The trial work was beautifully done and I believe very efficiently done."

Patrick's speaking engagements include interviews by NBC and the CBC regarding securities class actions, and among others, a presentation at the November 2009 State Association of County Retirement Systems Fall Conference as the featured speaker at the Board Chair/Vice Chair Session entitled: "Cleaning Up After the 100 Year Storm. How trustees can protect assets and recover losses following the burst of the housing and financial bubbles."

Patrick is a 1987 graduate of the Washington College of Law at American University in Washington, D.C., where he was a Dean's Fellow, Editor in Chief of the *Administrative Law Journal*, a member of the Moot Court Board representing Washington College of Law in the New York County Bar Association's Antitrust Moot Court Competition, and a member of the Vietnam Veterans of America Legal Services/Public Interest Law Clinic. Upon graduating, Patrick served as the Pro Se Staff Attorney for the United States District Court for the Eastern District of New York and was a law clerk to the Honorable Joan M. Azrack, United States Magistrate Judge.

Patrick is admitted to practice in New York and Illinois; the United States District Courts for the Southern and Eastern Districts of New York, Northern District of Illinois, Northern District of Indiana, Eastern District of Wisconsin, District of Colorado, and Western District of Pennsylvania; the United States Courts of Appeals for the First, Fourth, Sixth, Seventh, Eighth, and Ninth Circuits; and the United States Supreme Court.

## Of Counsel

### Samuel J. Adams

Samuel J. Adams became an Associate at Pomerantz in January 2012 and was elevated to Of Counsel to the Firm in 2021. He has been recognized as a Super Lawyers® "Rising Star" every year from 2015 through 2021.

Sam focuses his practice on corporate governance litigation and has served as a member of the litigation team in numerous actions that concluded in successful resolutions for stockholders. He was an integral member of the litigation team that secured a $5.6 million settlement on behalf of a class of shareholders of Physicians Formula Holdings, Inc. following an ignored merger offer. *In re Physicians Formula Holdings, Inc. S'holder Litig.*, C.A. No. 7794-VCL (Del. Ch. Ct.). Sam was also instrumental in achieving a settlement in *Strougo v. Hollander*, C.A. No. 9770-CB (Del. Ch. Ct.) which provided for a 25% price increase for members of the class cashed out in the going-private transaction and established that fee-shifting bylaws adopted after a challenged transaction do not apply to stockholders affected by the transaction. Additionally, he was on the team of Pomerantz attorneys who obtained the elimination of stand-still provisions that allowed third parties to bid for Great Wolf Resorts, Inc., resulting in the emergence of a

third-party bidder and approximately $94 million (57%) in additional merger consideration for Great Wolf shareholders. *In re Great Wolf Resorts, Inc. S'holder Litig.*, C.A. No. 7328-VCN (Del. Ch.).

Sam is a 2009 graduate of the University of Louisville Louis D. Brandeis School of Law. While in law school, he was a member of the National Health Law Moot Court Team. He also participated in the Louis D. Brandeis American Inn of Court.

Sam is admitted to practice in New York; the United States District Courts for the Southern, Northern, and Eastern Districts of New York and the Eastern District of Wisconsin; and the United States Court of Appeals for the Fifth Circuit.

## Ari Y. Basser

Ari Y. Basser joined Pomerantz as an associate in April 2019 and was elevated to Of Counsel in January 2022. He focuses his practice on strategic consumer litigation by representing consumers in unfair competition, fraud, false advertising, and auto defect actions that recover monetary and injunctive relief on behalf of class members while also advocating for important consumer rights. Ari has successfully prosecuted claims involving California's Unfair Competition Law, California's Consumers Legal Remedies Act, the Song-Beverly Consumer Warranty Act, and the Magnusson-Moss Warranty Act.

Prior to joining Pomerantz, Ari was an associate at major litigation law firms in Los Angeles. Ari also worked as a Law Clerk in the Economic Crimes Unit of the Santa Clara County Office of the District Attorney. Ari has litigated antitrust violations, product defect matters, and a variety of fraud and misrepresentation cases brought under state and federal consumer protection statutes involving unfair competition and false advertising. He has also been deputized in private attorneys general enforcement actions to recover civil penalties from corporations, on behalf of the State of California, for violations of the Labor Code.

Ari is a contributing author to the *Competition Law Journal*, the official publication of the Antitrust, UCL, and Privacy Section of the State Bar of California, where he has examined trends in antitrust litigation and the regulatory authority of the Federal Trade Commission.

Ari received dual degrees in Economics and Psychology from the University of California, San Diego in 2004. He earned his Juris Doctor in 2010 from Santa Clara University School of Law.

## Rupita Chakraborty

Rupita Chakraborty is an experienced commercial and criminal trial lawyer and litigator. Her practice involves representing aggrieved shareholders in securities litigation to recover losses across a number of industries, including technology and mining.

Prior to joining Pomerantz, Rupita was an associate at Friedman, Kaplan, Seiler, Adelman & Robbins, where she was a member of the criminal trial team representing the CFO of Archegos Capital Management in a nine-week federal jury trial involving charges of racketeering conspiracy, securities fraud, and wire fraud. She has previously defended individuals and corporations in various white-collar criminal and regulatory matters, including allegations of unlawful pharmaceutical price increases, improper lobbying, and discriminatory hiring. Rupita has also handled a wide range of complex civil matters, including

securities litigation, civil racketeering allegations, employment matters, and general commercial disputes.

Rupita enjoys a robust pro bono practice. She has represented federally incarcerated individuals in both Section 1983 and compassionate release claims, in addition to previously representing a victim-witness in a sensitive racketeering and sex trafficking trial in the Southern District of New York.

Rupita earned a J.D. from the New York University School of Law, where she was clinically trained at the Federal Defenders of New York and the Office of the Appellate Defender.

Rupita is a Fulbright scholar, having served as an English Teaching Assistant in East Kalimantan, Indonesia from August 2011 to June 2012.

## Samantha Daniels

Samantha brings years of commercial litigation experience to the Pomerantz team, joining the Firm as Of Counsel in 2024. Her practice involves representing aggrieved shareholders in securities litigation to recover losses across a number of industries, including pharma, technology, and entertainment.

Prior to joining Pomerantz, Samantha was an associate at Gibson, Dunn & Crutcher LLP, primarily in the firm's renowned appellate practice, representing highly visible clients in a range of issues from securities litigation, consumer deception, and labor and employment, to constitutional crises. Her former matters include resolving first impression questions of employment status for gig workers for Uber and Postmates, securing victory for Apple against allegations of consumer fraud regarding FaceTime, and helping win NML shareholders 2.1 billion in due Argentine bonds.

Samantha earned her law degree from the University of Chicago Law School where she published her student comment on consumer protection. Before that, Samantha studied at Cornell University in Ithaca, New York, earning degrees in Political Science and History.

## Jonathan D. Park

Jonathan D. Park joined Pomerantz as Of Counsel in April 2022. Prior to joining Pomerantz, he was associated with a prominent plaintiff-side litigation firm, where he represented clients in securities and investment litigation. He is regularly recognized as a Super Lawyers® Rising Star.

Jonathan focuses his practice on securities litigation. He is currently pursuing claims against Twitter concerning its cybersecurity practices and user metrics. Jonathan was a key member of the litigation teams that obtained settlements in *Poirier v. Bakkt Holdings, Inc.* (E.D.N.Y.) and *Lako v. loanDepot, Inc.* (C.D. Cal.). Prior to joining Pomerantz, he was a member of the litigation team that obtained $19 million for the class in *In re Synchronoss Technologies, Inc. Securities Litigation*, and he represented investors in *In re JPMorgan Chase & Co. Securities Litigation*, which arose from the "London Whale" scandal and was settled for $150 million. He has also represented investors in opt-out securities actions against pharmaceutical manufacturers and other companies.

Jonathan also has experience representing investors in breach of contract actions. He was the primary associate representing institutional investors injured by the early redemption of bonds issued by CoBank, ACB and AgriBank, FCB. In the litigation against CoBank, the plaintiffs secured a summary judgment ruling on liability, and in the litigation against AgriBank, the plaintiffs defeated a motion to dismiss, permitting the claims to proceed though the plaintiffs were beneficial owners and not record holders of the bonds at issue. Both cases were resolved on confidential terms.

At the New York City Bar Association, Jonathan has served on the Task Force on Puerto Rico, the New Lawyers Council, and the International Human Rights Committee. He also served on the board of his non-profit running club, the Dashing Whippets Running Team.

Jonathan earned his J.D. in 2013 from Fordham University School of Law, where he served on the school's Moot Court Board as the Editor of the Jessup International Law Competition Team. During law school, he was a Crowley Scholar in International Human Rights, received the Archibald R. Murray Public Service Award, and interned with a refugee law project in Cairo, Egypt. He received a B.A. in 2006 from Vassar College, where he majored in Africana Studies.

## Brian P. O'Connell

Brian P. O'Connell joined Pomerantz as an associate in August 2021 and was elevated to Of Counsel in August 2024. Brian focuses his practice on securities and financial services litigation.

Brian leads some of the Firm's most important securities class actions, winning decisions that expand investor rights. Among these is a case against Ginkgo Bioworks ("Ginkgo"), a synthetic biology company that merged with a special purpose acquisition company ("SPAC"). The case alleges that Ginkgo made false and misleading statements about its revenue, customers and value before the merger. Brian recently reached a settlement agreement with Ginkgo defendants for $17.75 million, representing favorable recovery for the class of investors.

In March 2024, Brian survived a motion to dismiss another de-SPAC case against Grab Holdings, Inc., known as the Uber of Southeast Asia, giving the oral argument that sustained Section 11 of the Securities Act and Section 14(a) of the Securities Exchange Act claims. Brian also played an integral role in the litigation and settlement of three Pomerantz cases that recently reached final approval of settlement: telecommunications giant Sprint Corporation ($3.75 million), biopharmaceutical company Orphazyme A/S ($2.5 million), and energy and oil company Berry Corporation ($2.5 million).

Prior to joining Pomerantz in its Chicago office, Brian was an associate at Cafferty Clobes Meriwether & Sprengel LLP, where he specialized in antitrust and commodity futures litigation. Brian has successfully litigated complex class actions involving securities, as well as manipulation of futures and options contracts. Brian also previously worked at the Financial Regulatory Authority (FINRA) as a contractor focusing on options trading regulation. Following law school, Brian was a legal fellow at the chambers of Judge Marvin E. Aspen in the United States District Court for the Northern District of Illinois.

Brian is passionate about finance and securities law, having previously interned for the Chicago Board Options Exchange and for Susquehanna International Group. Brian has served as a Vice Chair of the

Chicago Bar Association Securities Law Committee. Brian was recently recognized as a Super Lawyers® Rising Star for 2024.

Brian earned his Juris Doctor from Northwestern University Pritzker School of Law. During his time there, he had the opportunity to work at the Center on Wrongful Convictions, where he argued in court on behalf of a client serving a life sentence and was later exonerated. Brian also served as Executive Articles Editor for the Journal of International Human Rights Law and as a teaching assistant for the Northwestern Center on Negotiation and Mediation.

A graduate of Stanford University, Brian majored in Political Science and minored in Economics. During his senior year, he was Editor-in-Chief of The Stanford Review, where he had previously been a Features Editor and a staff writer.

Brian is admitted to practice in Illinois and California, the United States District Courts for the Northern District of Illinois, the Northern and Central Districts of California, and the United States Court of Appeals for the Ninth Circuit.

**Jennifer Banner Sobers**

Jennifer Banner Sobers is Of Counsel to the Firm.

In 2021, Jennifer was honored as a Super Lawyers® "Top-Rated Securities Litigation Attorney". She was also named a 2020 Rising Star by Super Lawyers®, Law360, and the *New York Law Journal*, all separate and highly competitive awards that honor attorneys under 40 whose legal accomplishments transcend their age. After a rigorous nomination and vetting process, Jennifer was honored in 2019 and 2020 as a member of the National Black Lawyers Top 100, an elite network of the top 100 African American attorneys from each state.

Jennifer played an integral role on the team litigating *In re Petrobras Securities Litigation,* in the Southern District of New York*,* a securities class action arising from a multi-billion-dollar kickback and bribery scheme involving Brazil's largest oil company, Petróleo Brasileiro S.A.–Petrobras. The Firm, as sole Lead Counsel, achieved a historic $3 billion settlement on behalf of investors in Petrobras securities. Among Jennifer' contributions to the team's success were: managing the entire third-party discovery in the United States, which resulted in the discovery of key documents and witnesses; deposing several underwriter bank witnesses; drafting portions of Plaintiffs' amended complaints that withstood motions to dismiss the claims and Plaintiffs' successful opposition to Defendants' appeal in the Second Circuit, which resulted in precedential rulings, including the Court rejecting the heightened ascertainability requirement for obtaining class certification that had been imposed by other circuit courts; and second chaired argument in the Second Circuit that successfully led to the Court upholding the award of sanctions against a professional objector challenging the integrity of the settlement.

Jennifer played a leading role in *In re Toronto-Dominion Bank Securities Litigation*, an action in the District of New Jersey alleging a multi-year fraud arising from underlying retail banking misconduct by one of Canada's largest banks that was revealed by investigative news reports. Jennifer undertook significant work drafting the briefing to oppose Defendants' motion to dismiss the claims, which the Court denied. She oversaw the discovery in the action, which included, among other things, heading the complicated

process of obtaining documents in Canada and being a principal drafter of the motion to partially lift the PSLRA stay in order to obtain discovery. Jennifer successfully presented oral argument which led to the Court approval of a $13.25 million class-wide settlement.

U.S. District Judge Noel L. Hillman, in approving the *Toronto-Dominion Bank* settlement, stated, "I commend counsel on both sides for their hard work, their very comprehensive and thoughtful submissions during the motion practice aspect of this case. I paused on it because it was a hard case. I paused on it because the lawyering was so good. So, I appreciate from both sides your efforts." He added, "It's clear to me that this was comprehensive, extensive, thoughtful, meaningful litigation leading up to the settlement." Singling out Pomerantz's role as lead counsel, the judge also said, "This settlement appears to have been obtained through the hard work of the Pomerantz firm . . . It was through their efforts and not piggybacking on any other work that resulted in this settlement."

Jennifer was a key member of the team litigating individual securities actions against BP p.l.c. in the Northern District of Texas on behalf of institutional investors in BP p.l.c. to recover losses in BP's common stock (which trades on the London Stock Exchange), arising from BP's 2010 Gulf oil spill. The actions were resolved in 2021 in a confidential, favorable monetary settlement for all 35 Firm clients.

Jennifer was a lead litigator in *Crutchfield v. Match Group, Inc*. Jennifer was also a key member of the litigation teams of other nationwide securities class action cases, including: *In re Ubiquiti Networks, Inc. Sec. Litig.*, an action in the Southern District of New York, for which Jennifer was one of the principal drafters of the amended complaint—the strength of which led the Court to deny permission to the defendants to file a formal motion to dismiss it—which secured a court-approved $15 million class-wide settlement; *In re KaloBios Pharmaceuticals, Inc. Securities Litigation,* an action in the Northern District of California, which successfully secured settlements from the bankrupt company and its jailed CEO worth over $3.25 million for the Class that were approved by the Court as well as the bankruptcy court; *Perez v. Higher One Holdings, Inc.,* an action in the District of Connecticut, for which Jennifer was one of the principal drafters of the successful opposition to Defendants' motion to dismiss, and which secured a court-approved $7.5 million class-wide settlement; *Edwards v. McDermott Int'l, Inc.*; *Chun v. Fluor Corp.*; and *Kendall v. Odonate Therapeutics, Inc*.

Prior to joining Pomerantz, Jennifer was an associate with a prominent law firm in New York where her practice focused on complex commercial litigation, including securities law and accountants' liability. An advocate of pro bono representation, Jennifer earned the Empire State Counsel honorary designation from the New York State Bar Association and received an award from New York Lawyers for the Public Interest for her pro bono work.

Jennifer received her B.A. from Harvard University (with honors), where she was on the Dean's List, a Ron Brown Scholar, and a recipient of the Harvard College Scholarship. She received her J.D. from University of Virginia School of Law where she was a participant in the Lile Moot Court Competition and was recognized for her pro bono service.

She is a member of the Securities Litigation and Public Service Committees of the Federal Bar Council, and the New York City Bar Association.

Jennifer is admitted to practice in New York; United States District Court for the Southern and Eastern Districts of New York; United States Courts of Appeals for the Second and Ninth Circuits.

## Nicolas Tatin

French lawyer Nicolas Tatin joined Pomerantz in April 2017 as Of Counsel. He heads the Firm's Paris office and serves as its Director-Business Development Consultant for France, Benelux, Monaco and Switzerland. Nicolas advises institutional investors in the European Union on how best to evaluate losses to their investment portfolios attributable to financial misconduct, and how best to maximize their potential recoveries in U.S. and international securities litigations.

Nicolas was previously a financial lawyer at ERAFP, France's €24bn pension and retirement fund for civil servants, where he provided legal advice on the selection of management companies and the implementation of mandates entrusted to them by ERAFP.

Nicolas began his career at Natixis Asset Management, before joining BNP Paribas Investment Partners, where he developed expertise in the legal structuring of investment funds and acquired a global and cross-functional approach to the asset management industry.

Nicolas graduated in international law and received an MBA from IAE Paris, the Sorbonne Graduate Business School.

## Christopher Tourek

Christopher Tourek is Of Counsel in Pomerantz's Chicago office and focuses his practice on securities litigation. He has a proven track record of successfully litigating cases involving securities fraud, antitrust violations, and consumer protection violations in both state and federal courts. His expertise has earned him recognition as a *Super Lawyers®* Rising Star in Mass Torts Litigation from 2016-2021 and in Securities Litigation from 2022-2026.

Christopher is a member of the team pursuing claims in *In re FTX Cryptocurrency Exchange Collapse Litigation (S.D. Fla.)*. Christopher also represents investors in securities actions against home robotics manufacturers, pharmaceutical manufacturers, and other companies. In addition to bringing standard securities litigation claims before the court, Christopher has also litigated innovative securities class action claims, including a novel pump-and-dump scheme involving emojis and Twitter in *In re Bed Bath & Beyond Corporation Securities Litigation (D.D.C.)* that succeeded at the motion to dismiss stage before settling.

Before joining Pomerantz, Christopher was an Associate at a prominent complex litigation firm and specialized in consumer protection, antitrust, and securities litigation.

Christopher graduated *cum laude* in 2013 from the University of Illinois College of Law, where he obtained his pro bono notation, honors in legal research, and was a member of the Federal Civil Rights Clinic, in

which he first chaired the case of *Powers v. Coleman* in the United States District Court for the Central District of Illinois. He earned his bachelor's degree in Government & Law, with a minor in Anthropology & Sociology, from Lafayette College in 2010.

Christopher is admitted to practice in Illinois and the United States District Courts for the District of Columbia, the Northern and Southern Districts of Illinois, and the Eastern District of Michigan.

## Associates

### Jeremy Allen-Arney

Jeremy Allen-Arney focuses his practice on securities litigation.

Jeremy is a member of the Firm's Case Originations team, identifying and investigating potential violations of the federal securities laws.

Before joining Pomerantz, Jeremy was an associate at Paul, Weiss, Rifkind, Wharton & Garrison LLP, where he focused his practice on securities litigation, internal investigations, and complex commercial disputes.

Jeremy earned his law degree from The George Washington Law School, where he served as the first Black Editor-in-Chief of The George Washington Law Review. Jeremy graduated with high honors, received the ALI CLE Law Scholarship and Leadership Award, and was elected to membership in the Order of the Coif. During law school, Jeremy interned with the Special Litigation Section of the U.S. Department of Justice's Civil Rights Division, the Lawyers' Committee for Civil Rights Under Law, and the Legal Aid Society's Housing Help Program. Jeremy earned his Bachelor of Arts from Columbia University, where he majored in Philosophy.

### Genc Arifi

Genc Arifi focuses his practice on securities litigation. Prior to joining Pomerantz's Chicago office, Genc was an associate at a prominent Chicago law firm, where he represented an expansive range of businesses in employment law matters as well as complex commercial litigation in both state and federal courts.

Genc's experience includes handling complex civil matters, such as cases arising from the Racketeer Influenced and Corrupt Organizations Act (RICO), shareholder derivative lawsuits, and employment law matters. He has also advised technology start-up clients, as well as established financial institutions, on risk assessment and litigation strategies.

Genc earned his J.D. from DePaul University College of Law and his B.S. from Western Illinois University, *summa cum laude*. He demonstrated strong academic credentials throughout law school; most notably when he achieved the highest grade in Business Organizations, which earned him the CALI Excellence for the Future Award. Genc was a recipient of the Dean's Certificate of Service awarded to law

students who provided 100 hours of community service. Genc participated in a criminal appeals clinic and successfully reduced an indigent client's prison sentence.

Genc is co-author of "Valuation," Chapter 6 in "Disputes Involving Closely Held Companies 2020 Edition." Published by the Illinois Institute for Continuing Legal Education in Feb. 2020, it is the essential guide for Illinois attorneys who represent closely held corporations, partnerships, or LLCs.

Genc currently serves as the Secretary and board member of the Albanian-American Community of Illinois, a 501(c)(3) non-profit whose mission is to preserve and promote Albanian culture, history, and tradition through civic engagement and educational initiatives.

Genc is admitted to practice in Illinois and the United States District Court for the Northern District of Illinois.

### Brandon M. Cordovi

Brandon M. Cordovi focuses his practice on securities litigation.

Prior to joining Pomerantz, Brandon was an associate at a law firm in New York that specializes in the defense of insurance claims. Brandon's practice focused on the defense of transportation, premises, and construction liability matters.

Brandon earned his J.D. in 2018 from Fordham University School of Law, where he served on the Moot Court Board and was the recipient of a merit-based scholarship. While at Fordham Law, Brandon participated in the Securities Litigation and Arbitration Clinic, where he prepared for the negotiation and arbitration of claims brought on behalf of clients with limited resources. During his second summer of law school, Brandon was a summer associate at a major plaintiff's securities firm.

Brandon earned his B.S. from the University of Delaware where he double majored in Sport Management and Marketing.

Brandon is admitted to practice in New York, New Jersey, and the United States District Courts for the Southern and Eastern Districts of New York.

### Jessica N. Dell

Jessica Dell focuses her practice on securities litigation.

She has worked on dozens of cases at Pomerantz, including the Firm's securities fraud lawsuits arising from BP's 2010 Gulf oil spill. Jessica has expertise in managing discovery and a nose for investigating complex fraud across many sectors, including pharmaceuticals, medical devices, and data security. True to her roots in public interest law, she has also worked in complex pro bono class action litigation at Pomerantz.

Jessica graduated from CUNY School of Law in 2005. She was the recipient of an Everett fellowship for her work at Human Rights Watch. She also interned at the Urban Justice Center and National Advocates for

Pregnant Women. While in the CUNY clinical program, she represented survivors of domestic violence facing deportation and successfully petitioned under the Violence Against Women Act. She also successfully petitioned for the release of survivors incarcerated as drug mules in Central America. After Hurricane Katrina, Jessica traveled to Louisiana to aid emergency efforts to reunite families and restore legal process for persons lost in the prison system weeks after the flood.

Jessica is a member of the New York City and State Bar Associations and the National Lawyers Guild.

## Zachary Denver

Zachary Denver focuses his practice on securities litigation.

Prior to joining Pomerantz, Zachary worked at prominent New York firms where he litigated a variety of complex commercial matters, specializing in financial markets, securities, and bankruptcy.

Zachary graduated from New York University School of Law in 2013 and was a staff editor at the NYU Journal of Law and Liberty and a board member for the Suspension Representation Project. He earned a double bachelor's degree from the University of Massachusetts in Political Science and Communications. After undergrad, Zachary served as a Teach for America corps member in New York City and earned a master's degree in classroom teaching from PACE University.

Zachary also serves as a board member for the Legal Alliance of Pheonjong, a non-profit organization that provides legal services to Tibetan asylum seekers in New York City, and he has served as lead counsel on several applications including two successful trials in immigration court.

Zachary is admitted to practice in New York, the United States District Courts for the Southern and Eastern Districts of New York and the Courts of Appeals for the Second, Fifth, and Ninth Circuits.

## Dean P. Ferrogari

Dean P. Ferrogari focuses his practice on securities litigation. He was recognized in the 2024, 2025 and 2026 editions of the Best Lawyers: Ones to Watch® in America publication for his work in securities litigation. He was also recognized as a Super Lawyers® Rising Star (2024-2025).

Dean earned his Juris Doctor in 2020 from Brooklyn Law School, where he served as an Associate Managing Editor for the Brooklyn Law Review. While in law school, Dean was initiated into the International Legal Honor Society of Phi Delta Phi and was an extern for the Brooklyn Volunteer Lawyers Project. He was recognized by the New York State Unified Court System's Office for Justice Initiatives for his distinguished service in assisting disadvantaged civil litigants in obtaining due process in consumer credit actions. Dean also authored the publication "The Dark Web: A Symbol of Freedom Not Cybercrime," New York County Lawyers Association CLE Institute, *Security in a Cyber World: Whistle Blowers, Cyber Threats, Domestic Terrorism, Financial Fraud, Policy by Twitter . . . and the Evolving Role of the Attorney and Firm*, Oct. 4, 2019, at 321.

Dean earned his B.A. from the University of Maryland, where he majored in Economics and was awarded the President's Transfer Scholarship.

He is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; the United States District Court for the District of Colorado; and the United States Court of Appeals for the Third Circuit.

**Emily C. Finestone**

Emily C. Finestone focuses her practice on securities litigation.

Prior to joining Pomerantz, Emily was an associate at a boutique litigation firm in New York where she successfully litigated matters pertaining to sports and entertainment law, copyright infringement, and employment law. Emily previously worked at a prominent complex litigation firm specializing in consumer protection, antitrust, whistleblower, and securities litigation. She also gained appellate experience as a temporary law clerk and Staff Attorney at the Supreme Court of Virginia.

In 2022 – 2024, Emily was recognized as a Super Lawyers® Rising Star.

Emily graduated from Boston University School of Law in 2015 and was a member of *the Review of Banking & Financial Law*. She received her B.A. from the University of Virginia in 2012, where she double majored in English and Spanish, and minored in Government.

Emily is admitted to practice in New York, Massachusetts, Pennsylvania, and Virginia, as well as the United States District Courts for the Southern District of New York, Eastern District of New York, District of Connecticut, District of Massachusetts, and Eastern District of Pennsylvania.

**Jianan (Adam) Jiang**

Jianan (Adam) Jiang focuses his practice on securities litigation.

Prior to joining Pomerantz, Adam was a litigation associate at a full service Chicago law firm, where he litigated commercial and construction cases in state and federal courts.

Adam earned his J.D., cum laude, from Washington University in St. Louis School of Law. During his time there, he served as a Staff Editor for the Washington University Global Studies Law Review. Adam also participated in the Low Income Taxpayer Clinic, where he represented indigent taxpayers to resolve tax disputes with the Internal Revenue Service.

Adam received his Bachelor of Engineering with Honors Class One (equivalent to summa cum laude) and the University Medal from the University of New South Wales in Sydney, Australia. Adam majored in Civil Engineering and worked as a geotechnical engineer before law school.

Adam speaks Mandarin and went to high school in Beijing, China.

Adam is admitted to practice in New York and Illinois, and the United States District Court for the Northern District of Illinois.

**James M. LoPiano**

James M. LoPiano focuses his practice on securities litigation. He is part of the Firm's case origination team, identifying and investigating potential violations of the federal securities laws.

James has been named a Super Lawyers® Rising Star each year since 2021.

Prior to joining Pomerantz, James served as a Fellow at Lincoln Square Legal Services, Inc., a non-profit law firm run by faculty of Fordham University School of Law.

James earned his J.D. in 2018 from Fordham University School of Law, where he was awarded the Archibald R. Murray Public Service Award, cum laude, and merit-based scholarship.  While in law school, James served as a judicial intern to the Honorable Stephen A. Bucaria of the Nassau County Supreme Court, Commercial Division, of the State of New York.  He also served as Senior Notes and Articles Editor of the Fordham Intellectual Property, Media and Entertainment Law Journal, and authored the publication "Public Fora Purpose: Analyzing Viewpoint Discrimination on the President's Twitter Account," Note, 28 Fordham Intell. Prop. Media & Ent. L.J. 511 (2018).  In addition, James completed legal internships at the Authors Guild and Fordham University School of Law's Intellectual Property and Information Law Clinic, where he counseled clients and worked on matters related to Freedom of Information Act litigation, trademarks, and copyrights.

James earned his B.A. from Stony Brook University, where he double majored in English and Cinema and Cultural Studies, completed the English Honors Program, was inducted into the Stony Brook University chapter of the International English Honors Society, and was awarded the university's Thomas Rogers Award for best analytical paper in an English course by an undergraduate.

James is admitted to practice in New York and the United States District Courts for the Southern and Eastern Districts of New York.

**Jaime Nolasco**

Jaime Nolasco focuses his practice on securities litigation.

Prior to Pomerantz, Jaime first clerked for Judge Matthew M. Scoble of the United States District Court for the District of Alaska. From there, Jaime was an associate at a boutique litigation firm in Chicago, where he defended government entities pertaining to employment law, federal discrimination, federal government investigations, and complex civil rights litigation. Jaime further worked at a Chicago litigation firm focusing on class actions, multi-district litigation, employment discrimination, and mass product liability claims.

Additionally, Jaime interned for both Judge Virginia M. Kendall of the United States District Court for the Northern District of Illinois, and then-Chief Justice Anne M. Burke of the Illinois Supreme Court. Jaime also interned at the Illinois Federal Defender Program, where he was awarded the Judge William J. Campbell Intern-At-Law Award, in recognition of Jaime's work in criminal federal litigation.

Jaime graduated from the University of Illinois at Urbana-Champaign and then Loyola University Chicago School of Law. During law school, Jaime served as a legal writing tutor and student clinician for a legislative & policy clinic.

Jaime is barred in Illinois and admitted to practice in the United States District Courts for the Northern District of Illinois and the Central District of Illinois.

**Ankita Sangwan**

Ankita Sangwan focuses her practice on corporate governance matters.

She graduated in 2022 from the LL.M. program at Columbia Law School as a Harlan Fiske Stone Scholar. Prior to attending Columbia Law School, Ankita worked for four years in the Commercial Litigation Team of a prominent law firm in Bombay, India, at which she focused her practice on complex commercial and civil disputes. Ankita assisted in arguments before various courts in India, including the Supreme Court.

In 2017, Ankita graduated with Honors from the B.A. LL.B. program at Jindal Global Law School, India. She was a member of the university's Moot Court Society, which finished as semi-finalists at the World Rounds of the International Investment Moot Court Competition, held in Frankfurt, Germany (2016). Ankita's moot court experience was recognized by her university; she was awarded the "Outstanding Contribution to Moot Court" prize upon graduation.

Ankita is admitted to practice in the State of New York.

**Villi Shteyn**

Villi Shteyn focuses his practice on securities litigation.

Villi has been recognized as a Super Lawyers® Rising Star from 2021 through 2025.

Villi worked on individual securities lawsuits concerning BP's 2010 Gulf of Mexico oil spill, which proceeded in *In re BP p.l.c. Secs. Litig., No. 4:10-md-2185 (S.D. Tex.)* and were resolved in 2021 in a confidential, favorable monetary settlement for all 35 Firm clients, including public and private pension funds, money management firms, partnerships, and investment trusts from the U.S., Canada, the U.K., France, the Netherlands, and Australia. He also worked on a successful 2021 settlement for investors in a case against the Chinese company ChinaCache.

Villi also pursued claims leading to successful settlements against Deutsche Bank for its lending activities to disgraced financier Jeffrey Epstein, against Arconic, arising from the deadliest U.K. fire in more than a century, against Recro Pharma in relation to their non-opioid pain-relief product IV Meloxicam, and against online education company 2U. Villi also worked on a consumer class action against Apple, Inc. in relation to alleged slowdowns of the iPhone product.

Villi is also involved in the Firm's class action litigation against Royal Philips, relating to defective breathing devices, and against InMode, relating to aesthetic medical devices. He also represents investors in lawsuits

against Alphabet, involving advertising technology practices and against Amazon, involving online marketplace practices.

Prior to joining Pomerantz, Villi was employed by a boutique patent firm, where he worked on patent validity issues in the wake of the landmark Alice decision. During his tenure, he helped develop international patent maintenance tools for clients and assisted in pursuing injunctive relief for a patent-holding client against a large tech company.

Villi graduated from The University of Chicago Law School (J.D., 2017). In 2014, he graduated summa cum laude from Baruch College with a Bachelor of Science in Public Affairs.

**Stephanie Weaver**

Stephanie Weaver focuses her practice on securities litigation. Prior to joining Pomerantz, Stephanie was an associate at a boutique securities litigation firm, focused on securities litigation, antitrust and bankruptcy matters.

Stephanie graduated from St. John's University School of Law *cum laude* in 2021. While in law school, she served as Managing Director of the Moot Court Honor Society and won the Best Brief Award at the 2020 Elaine Jackson Stack Moot Court Competition. She was also a member of the school's New York International Law Review. She was also honored as a New York State Court of Appeals Fellow in 2019. She earned her bachelor's degree *summa cum laude* from St. John's University in 2018.

Stephanie is admitted to practice in the State of New York.

**Guy Yedwab**

Guy Yedwab focuses his practice on securities litigation.

Guy graduated from Rutgers Law School *summa cum laude* in 2023, while also receiving a Master's Degree in Public Affairs and Policy from the Rutgers University Bloustein School of Planning and Public Policy. While in law school, he won awards with the National Appellate Advocacy Team and was an editor at the *Journal of Law and Public Policy*, in which he published a note on constitutional law. He was honored with the Marsha Wenk Fellowship at the A.C.L.U. of New Jersey, and the Eagleton Institute's Henry J. Raimondo Legislative Fellowship.

Guy serves as a board member for the League of Independent Theater, a 501(c)(6) trade association for small-sized cultural institutions in New York City. As such, he consults with policymakers on fostering small business in the city.

Guy is admitted to practice in New York State's First Appellate Department.

## Staff Attorneys

**Jay Douglas Dean**

Jay Dean focuses on class action securities litigation. He has been a commercial litigator for more than 30 years.

Jay has been practicing with Pomerantz since 2008, including as an associate from 2009–2014, interrupted by a year of private practice in 2014–2015. More recently, he was part of the Pomerantz teams prosecuting the successful *Petrobras* and *Yahoo* actions. Prior to joining Pomerantz, he served as an Assistant Corporation Counsel in the Office of the Corporation Counsel of the City of New York, most recently in its Pensions Division. While at Pomerantz, in the Corporation Counsel's office and previously in large New York City firms, Jay has taken leading roles in trials, motions and appeals.

Jay graduated in 1988 from Yale Law School, where he was Senior Editor of the *Yale Journal of International Law*.

Jay is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit. Jay has also earned the right to use the Chartered Financial Analyst designation.

**Timor Lahav**

Timor Lahav focuses his practice on securities litigation.

Timor participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings. Timor also participated in the firm's landmark litigation against Yahoo!, Inc., for the massive security breach that compromised 1.5 billion users' personal information.

Timor received his LL.B. from Tel Aviv University School of Law in Israel, following which he clerked at one of Israel's largest law firms. He was an associate at a law firm in Jerusalem, where, among other responsibilities, he drafted motions and appeals, including to the Israeli Supreme Court, on various civil matters.

He received his LL.M. from Benjamin N. Cardozo School of Law in New York. There, Timor received the Uriel Caroline Bauer Scholarship, awarded to exceptional Israeli law graduates.

Timor brings to Pomerantz several years' experience as an attorney in New York, including examining local SOX anti-corruption compliance policies in correlation with the Foreign Corrupt Practices Act; and analysis of transactions in connection with DOJ litigation and SEC enforcement actions.

Timor was a Captain in the Israeli Defense Forces. He is a native Hebrew speaker and is fluent in Russian.

He is admitted to practice in New York and Israel.

**Laura M. Perrone**

Laura M. Perrone focuses on class action securities litigation.

Prior to joining Pomerantz, Laura worked on securities class action cases at Labaton Sucharow. Preceding that experience, she represented plaintiffs at her own securities law firm, the Law Offices of Laura M. Perrone, PLLC.

At Pomerantz, Laura participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Laura has also represented bondholders against Citigroup for its disastrous investments in residential mortgage-backed securities, shareholders against Barclays PLC for misrepresentations about its dark pool trading system known as Barclays LX, and shareholders against Fiat Chrysler Automobiles for misrepresentations about its recalls and its diesel emissions defeat devices.

Laura graduated from the Benjamin N. Cardozo School of Law, where she was on the editorial staff of Cardozo's Arts and Entertainment Law Journal and was the recipient of the Jacob Burns Merit Scholarship.

Laura is admitted to practice in New York; the United States District Courts for the Southern and Eastern Districts of New York; and the United States Court of Appeals for the Second Circuit.

**Allison Tierney**

Allison Tierney focuses her practice on securities litigation.

Allison brings 10 years of expertise in large-scale securities class action litigation to Pomerantz. She participated in the Firm's securities class action case against Brazil's largest oil company, Petrobras, arising from a multi-billion-dollar kickback and bribery scheme, in which the Firm, as sole Lead Counsel, achieved a historic $3 billion settlement for the Class, as well as precedent-setting legal rulings.

Prior to joining Pomerantz, Allison worked on securities class action cases at several top New York law firms, representing institutional investors. She has represented plaintiffs in disputes related to antitrust violations, corporate financial malfeasance, and residential mortgage-backed securities fraud.

Allison earned her law degree from Hofstra University School of Law, where she served as notes and comments editor for the *Cyberlaw Journal*. She received her B.A. in Psychology from Boston University, where she graduated m*agna cum laude*.

Allison is conversant in Spanish and is studying to become fluent.

Allison is admitted to practice in New York.
4909-4399-7830, v. 3

---

# Exhibit C

# LEVI&KORSINSKY
## Shareholder Advocates

## Firm Resume

# Representation.
# Where & When you need it.

**New York**

33 Whitehall Street
27th Floor
New York, NY 10004
Tel : 212-363-7500
Fax : 212-363-7171

**Washington, D.C.**

1101 Vermont Ave., NW
Suite 800
Washington, DC 20005
Tel: 202-524-4290
Fax: 202-333-2121

**Connecticut**

1111 Summer Street,
Suite 403
Stamford, CT 06905
Tel : 203-992-4523

**Los Angeles**

515 South Flowers Street
18th and 19th Floors
Los Angeles, CA 90071
Tel: 213-985-7290

**San Francisco**

1160 Battery Street East,
Suite 100 - #3425
San Francisco, CA 94111
Tel: 415-373-1671
Fax: 415-484-1294



Levi & Korsinsky, LLP

Merger Alerts

www.ZLK.com

# Contents

## About the Firm

## Practice Areas

Securities Fraud Class Actions

Derivative, Corporate Governance & Executive Compensation

Mergers & Acquisitions

Consumer Litigation

## Our Attorneys

### Managing Partners
- EDUARD KORSINSKY
- JOSEPH E. LEVI

### Partners
- ADAM M. APTON
- DONALD J. ENRIGHT
- SHANNON L. HOPKINS
- GREGORY M. NESPOLE
- NICHOLAS I. PORRITT
- GREGORY M. POTREPKA
- MARK S. REICH
- DANIEL TEPPER
- ELIZABETH K. TRIPODI

### Counsel
- ANDREW E. LENCYK
- BRIAN STEWART

### Senior Associates
- JORDAN A. CAFRITZ
- MORGAN EMBLETON
- DAVID C. JAYNES
- CORREY A. SUK

### Associates
- CHRISTOPHER DEVIVO
- AMANDA FOLEY
- NOAH GEMMA
- DEVYN R. GLASS
- GARY ISHIMOTO
- TRAVIS JOHNSON
- JOSHUA KLUGER
- ALEXANDER KROT
- TYLER LITKE
- MELISSA MEYER
- JENNIFER MITTASCH
- CINAR ONEY
- AARON PARNAS
- MICHAEL POLLACK
- P. COLE VON RICHTHOFEN
- MAX WEISS
- TRENTON B. WEIS
- TYLER WINTERICH
- AZLYNE ZHENG

### Staff Attorneys
- PHILIP AHWESH
- KATHY AMES-VALDIVIESO
- KAROLINA CAMPBELL
- LEAH FARRAR
- CHRISTINA FUHRMAN
- RUBEN MARQUEZ
- LEEANN MONTEVERDE
- CATHERINE SOO


LEVI&KORSINSKY
Shareholder Advocates

# About the Firm

Levi & Korsinsky, LLP is a national law firm with decades of combined experience litigating complex securities, class, and consumer actions in state and federal courts throughout the country. Our main office is located in New York City and we also maintain offices in Connecticut, California, and Washington, D.C.

We represent the interests of aggrieved shareholders in class action and derivative litigation through the vigorous prosecution of corporations that have committed securities fraud and boards of directors who have breached their fiduciary duties. We have served as Lead and Co-Lead Counsel in many precedent–setting litigations, recovered hundreds of millions of dollars for shareholders via securities fraud lawsuits, and obtained fair value, multi-billion dollar settlements in merger transactions.

We also represent clients in high-stakes consumer class actions against some of the largest corporations in America. Our legal team has a long and successful track record of litigating high-stakes, resource-intensive cases and consistently achieving results for our clients.

Our attorneys are highly skilled and experienced in the field of securities class action litigation. They bring a vast breadth of knowledge and skill to the table and, as a result, are frequently appointed Lead Counsel in complex shareholder and consumer litigations in various jurisdictions. We are able to allocate substantial resources to each case, reviewing public documents, interviewing witnesses, and consulting with experts concerning issues particular to each case. Our attorneys are supported by exceptionally qualified professionals including financial experts, investigators, and administrative staff, as well as cutting-edge technology and e-discovery systems. Consequently, we are able to quickly mobilize and produce excellent litigation results. Our ability to try cases, and win them, results in substantially better recoveries than our peers.

We do not shy away from uphill battles – indeed, we routinely take on complex and challenging cases, and we prosecute them with integrity, determination, and professionalism.











**3**



**LEVI&KORSINSKY**
Shareholder Advocates

# Practice Areas

- **Securities Fraud Class Actions**

- **Derivative, Corporate Governance & Executive Compensation**

- **Mergers & Acquisitions**

- **Consumer Litigation**

**4**

**Practice Areas**

 # Securities Class Action

Over the last several years, Levi & Korsinsky has been lead or co-lead counsel in more than 50 securities class actions that have resulted in over $200 million in recoveries for investors. Currently, the Firm is actively litigating numerous securities class actions, as either sole or co-lead counsel, claiming billions of dollars in damages suffered by injured investors. Since 2020, Levi & Korsinsky has consistently ranked in the Top 10 in terms of number of settlements achieved for shareholders each year, according to reports published by ISS. Levi & Korsinsky was also ranked as one of the Top 5 Securities Firms for the period from 2018 to 2020 in Lex Machina's Securities Litigation Report. Law360 dubbed Levi & Korsinsky one of the "busiest securities firms" in what is "on track to be one of the busiest years for federal securities litigation" in 2018. Since 2019, Lawdragon Magazine has ranked multiple members of Levi & Korsinsky among the 500 Leading Plaintiff Financial Lawyers in America.

Some of the Firm's recent settlements include:

In **In re Grab Holdings Securities Litigation**, No. 1:22-cv-02189-JLR (S.D.N.Y.), the Firm served as co-Lead Counsel and obtained a $80 million recovery on behalf of investors. There, co-Lead Plaintiffs alleged that Defendants made false and misleading statements concerning Grab's driver supply and incentive spending during its public debut. Co-Lead Counsel achieved this excellent result after prevailing against Defendants' Motion to Dismiss and while in the midst of discovery. On January 13, 2025, the U.S. District Court for the Southern District of New York granted preliminary approval of the settlement. The hearing on the Motion for Final Approval is scheduled for May 15, 2025.

In **In re QuantumScape Securities Clas Action**, No. 3:21-cv-00058-WHO (N.D. Cal.), the Firm attained a $47.5 million recovery on behalf of a class of investors who sustained damages in connection with claims alleging that QuantumScape misled the public about its prototype battery during its December 8, 2020 Solid-State Battery Showcase and in subsequent public statements. This significant recovery was achieved after over three years of vigorous litigation during which counsel defeated Defendants' motion to dismiss and obtained class certification. The Court granted final approval on January 22, 2025.





## Practice Areas



# 📑 Securities Class Action

In **In re U.S. Steel Consolidated Cases**, No. 2:17-579-CB (W.D. Pa.), the Firm obtained a $40 million recovery on behalf of a certified class of U.S. Steel investors who sustained damages in connection with false and materially misleading statements about its Carnegie Way initiative. The settlement followed years of hard-fought discovery and class certification litigation.

In **Kohl v. Loma Negra Industrial Argentina Sociedad Argentina, Index**, No. 653114/2018 (Sup. Ct., N.Y. Cty.), the Firm secured a $24.6 million recovery on behalf of a class of investors who sustained damages in connection with materially false, misleading and incomplete statements made during Loma Negra's November 2017 IPO concerning:  (i) bribery and other corruption-related wrongdoing by Loma's parent company and its construction subsidiary; and (ii) the Argentine government's cutbacks of funding for public works, from which Loma derived substantial revenues. This hard-won result was achieved after Plaintiff prevailed against Defendants' motion to dismiss, survived Defendant's appeal of the motion to dismiss order, defeated Defendant's motion for summary judgment, obtained class certification, and overcame appeals of both the motion for summary judgment and class certification orders.

> **"I find the firm to be well-qualified to serve as Lead Counsel."**
>
> The Honorable Andrew L. Carter, Jr. In *Snyder v. Baozun Inc.*, No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

In **Rougier v. Applied Optoelectronics, Inc.**, No. 4:17-cv-2399-GHC-CAB (S.D. Tex.), the Firm served as sole Lead Counsel, prevailed against Defendants' Motion to Dismiss, and achieved class certification before the Parties reached a settlement. The Court granted final approval of a $15.5 million settlement on November 24, 2020. In Martin v. Altisource Residential Corp., No. 15- cv-00024 (AET) (GWC) (D.V.I.) the Firm acted as sole Lead Counsel and successfully defeated multiple motions to dismiss directed at the amended class complaints alleging that Defendants misrepresented aspects of its relationship with mortgage servicer Ocwen Financial Corp. After engaging in substantial discovery, the Firm obtained a $15.5 million recovery for the class of Altisource Residential investors.

> **"lead counsel achieved a very good result in this case"**
>
> The Honorable Lewis J. Liman in *In re AppHarvest Securities Litigation,* No. 1:21-cv-7985 (S.D.N.Y July 11, 2024)



LEVI&KORSINSKY
Shareholder Advocates

**Practice Areas**



## Securities Class Action

In **Ferraro Family Foundation, Inc. et al. v. Corcept Therapeutics Incorporated, et al**., No. 3:19-cv-01378-JD (N.D. Cal.), the Firm served as sole Lead Counsel and obtained a $14 million recovery on behalf of a class investors who suffered damages in connection with false and misleading statements related to Corcept's marketing of its prescription medicine, Korlym. The settlement followed years of hard-fought litigation and extensive discovery.

In **Pratyush v. Full Truck Alliance Co. Ltd., at el**., No. 1:21-cv-03903-LDH-MMH (E.D.N.Y.), the Firm obtained a $10.25 million settlement that globally resolved both the above-cited federal action and the state action, In re Full Truck Alliance Co. Ltd. Sec. Litig., No. 654232/2021 (Sup. Ct. N.Y. Cnty.). Both actions concerned false and misleading statements relating to Full Truck's compliance with orders by Chinese government regulators to modify its business practices, which were made in connection with the company's public debut. This settlement was reached at a time when motions to dismiss filed by the Defendants were still pending in both actions and as such, posed a risk to the classes.

> "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan in *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-cv-02399-GHC-CAB (S.D. Tex. Nov. 13, 2019)

In **In re Nano-X Securities Litigation**, No. 1:21-cv-05517-RPK-PK (E.D.N.Y.), the Firm obtained a $8 million recovery to globally resolve federal securities claims alleged against Nano-X Imaging Ltd. in the above-referenced In re Nano-X action and in White v. Nano-X Imaging Ltd., No. 1-20-cv-04355-WFK-MMH (E.D.N.Y.). The In re Nano-X action concerned false and misleading statements relating to Nano-X's claims that its imaging system could be manufactured at costs far lower than current systems and claims that such technology would work at least as well as existing technologies. This global settlement was reached at a time when a motion to dismiss filed by the Defendants were still pending in the In re Nano-X action and as such, posed a risk of dismissal.


**LEVI&KORSINSKY**
Shareholder Advocates

 **Practice Areas**

## 📑 Securities Class Action

Levi & Korsinsky has been appointed lead or co-lead counsel in the following securities actions:

• **Morand v. Tesla, Inc., et al.,**
No. 1:25-cv-01213-RP (W.D. Tex. December 9, 2025)

• **Omar Abdul-Hameed v. Snap Inc., et al,**
No. 2:25-cv-07844-RGK-RAO (C.D. Cal. December 5, 2025)

• **Bhagavan v. Nutex health Inc., et al.,**
No. 4:25-cv-03999 (S.D. Tex. November 19, 2025).

• **Kalera v. ModivCare, Inc., et al.,**
No. 1:25-cv-00306-GPG-KAS (D. Colo. October 27, 2025)

• **Leong v. Capricor Therapeutics, Inc., et al.,**
No. 3:25-cv-01815-GPC-AHG (S.D. Cal. October 14, 2025)

• **Savant v. iRobot Corporation, et al.,**
No. 1:25-0cv-05563 (S.D.N.Y. October 3, 2025)

• **Cesar Torres v. Vestis Corporation, et al.,**
No. 1:25-cv-04844 (S.D.N.Y. August 25, 2025)

• **Jeremy Lin v. Civitas Res., Inc.,**
No. 25-cv-03791-ES-JRA (D.N.J. August 18, 2025).

• **Franciso Barnes v. Perpetua Resources Corp. et al.,**
No. 1:25-cv-00160-DKG (D. Idaho June 16, 2025)

• **Drew Cohen v. Quantum Computing Inc. et al,**
No. 2:25-cv-01457-MEF-JSA (D.N.J. June 13, 2025)

• **In Re Geron Corp. Securities Lit.,**
No. 3:25-cv-02507-CRB (N.D. Cal., May 29, 2025)

• **Macaria Meza v. Constellation Brands, Inc., et al,**
No. 6:25-cv-06107-EAW (W.D.N.Y. May 28, 2025)

• **Marcos Gonzalez v. Intellia Therapeutics, Inc., et al.,**
No. 1:25-cv-10353-DJC (D. Mass. May 26, 2025)


**In appointing the Firm Lead Counsel, the Honorable Analisa Torres noted our "extensive experience" in securities litigation.**
*White Pine Invs. v. CVR Ref.,* LP, No. 1:20-CV-2863-AT (S.D.N.Y. Jan. 5, 2021)

• **In re Transocean Ltd. Securities Litigation,**
No. 1:24-cv-00964-AT (S.D.N.Y. April 23, 2025)

• **Sarria v. Telus International (CDA) Inc., et al.,**
No. 1:25-cv-00889-DM (S.D.N.Y April 11, 2025)

• **Shim v. DZS Inc., et al.,**
No. 4:23-CV-549-SDJ (E.D. Tex. February 26, 2025)

• **Walker v. Chidambaran et al.,**
No. 8:24-cv-02900-DKC (D. Md. February 27, 2025)

• **Wilson v. Xerox Holdings Corp.,**
No. 1:24-cv-08809-DH (S.D.N.Y., February 18, 2025)

• **Khajerian v. Seastar Med. Holding Corp., et al,**
No. 1:24-cv-01873-RMR (D. Colo. December 27, 2024)

• **Holzer v. Bumble Inc., et al.,**
No. 1:24-cv-01131-RP (W.D. Tex. December 19, 2024)

• **In re New Fortress Energy Inc. Securities Litigation,**
No. 1:24-cv-07032-JGK (S.D.N.Y. December 17, 2024)

• **Stary v. Teladoc, Inc. et al.,**
No. 7:24-cv-03849-KMK (S.D.N.Y. December 10, 2024)

• **Hoare V. Oddity Tech Ltd. et al.,**
No. 1:24-cv-06571-MMG (S.D.N.Y. December 5, 2024)

• **In re American Airlines Group Inc. Securities Litigation**
No. 4:24-cv-00673-O (N.D. Tex. November 22, 2024)

 LEVI&KORSINSKY
Shareholder Advocates

# Practice Areas

## Securities Class Action

· **Beaumont v. Paucek, et al.,**
No. 8:24-cv-01723-DLB (D. Md. September 13, 2024)

· **Li V. Roblox Corp. et al.,**
No. 3:24-cv-03484-MMC (N.D. Cal. August 27, 2024)

· **Edward M. Doller v. Hertz Global Holdings, Inc. et al.,**
No. 2:24-cv-00513-JLB-KCD (M.D. Fla. August 14, 2024)

· **Targgart V. Next Bridge Hydrocarbons, Inc. et al.,**
No. 1:24-cv-01927-FB-JAM (E.D.N.Y. August 3, 2024)

· **Stephens v. Maplebear Inc., et al.,**
No. 5:24-cv-00465-EJD (N.D. Cal. July 1, 2024)

· **Blum v. Anavex Life Sciences Corporation et al.,**
No. 1:24-cv-01910-CM (S.D.N.Y. June 13, 2024)

· **Lucid Alternative Fund, LP v. Innoviz Technologies Ltd., et al.,**
No. 1:24-cv-01971-AT (S.D.N.Y. June 4, 2024)

· **Neilsen v. Lantronix, Inc., et al.,**
No. 8:24-cv-00385-FWS-JDE (C.D. Cal. May 7, 2024)

· **Ventrillo et al v. Paycom Software Inc et al,**
No. 5:23-cv-01019 (W.D. Okla. April 23, 2024)

· **Shih v. Amylyx Pharmaceuticals, Inc. et al,**
No. 1:24-cv-00988-AS (S.D.N.Y. April 17, 2024)

· **Olmstead v. Biovie, Inc. et al,**
No. 3:24-cv-00035-LRH-CSD (D. Nev. April 15, 2024)

· **Wilhite v. Expensify, Inc., et al.,**
No. 3:23-cv-01784-JR (D. Or. February 29, 2024)

· **Walling v. Generac Holdings, Inc., et al.,**
No. 3:23-cv-0808 (W.D. Wis. February 7, 2024)

 **"I find the firm to be well-qualified to serve as Lead Counsel."**

The Honorable Andrew L. Carter, Jr. In *Snyder v. Baozun Inc.*, No. 1:19-CV-11290 (S.D.N.Y. Sept. 8, 2020)

· **Hubacek v. ON Semiconductor Corporation et al.,**
No. 1:23-cv-01429-GBW (D. Del. February 29, 2024)

· **Ragan v. Farfetch Limited, et al.,**
No. 8:23-cv-2857-MJM (D. Md. January 19, 2024)

· **Gurevitch v. KeyCorp et al.,**
No. 1:23-cv-01520-DCN (N.D. Ohio December 26, 2023)

· **Lowe v. Tandem Diabetes Care, Inc. et al.,**
No. 3:23-cv-01657-H-BLM (S.D. Cal. December 5, 2023)

· **Perez v. Target Corporation et al.,**
No. 0:23-cv-00769-PJS-TNL (D. Minn. November 13, 2023)

· **Thant v. Rain Oncology Inc. et al.,**
No. 5:23-cv-03518-EJD (N.D. Cal. November 1, 2023)

· **Villanueva v. Proterra Inc. et al.,**
No. 5:23-cv-03519-BLF (N.D. Cal. October 23, 2023)

· **Martin v. BioXcel Therapeutics, Inc. et al.,**
No. 3:23-cv-00915-SVN (D. Conn. October 4, 2023)

· **Scott Petersen v. Stem, Inc., et al.,**
No. 3:23-cv-02329-MMC (N.D. Cal. August 22, 2023)

· **Solomon v. Peloton Interactive, Inc. et al.,**
No. 1:23-cv-04279-MKB-JRC (E.D.N.Y. September 7, 2023)

· **Thant v. Veru, Inc., et al.,**


LEVI&KORSINSKY
Shareholder Advocates

# Practice Areas

## 📄 Securities Class Action

No. 1:22-cv-23960-KMW (S.D. Fla. July 27, 2023)

• **Zhang V. Gaotu Techedu Inc., et al.,**
No. 1:22-cv-07966-PKC-CLP (E.D.N.Y. July 16, 2023)

• **Jaramillo v. Dish Network Corporation, et al.,**
No. 1:23-cv-00734-GPG-SKC (D. Colo. July 16, 2023)

• **Howard M. Rensin, Trustee Of The Rensin Joint Trust v. United States Cellular Corporation, et al.,**
No. 1:23-cv-02764-MMR (N.D. Ill. July 11, 2023)

• **Holland v. Rite Aid Corporation, et al.,**
No. 1:23-cv-00589-JG (N.D. Ohio June 22, 2023)

• **Baylor v. Honda Motor Co., Ltd., et al.,**
No. 2:23-cv-00794-GW-AGR (C.D. Cal. May 8, 2023)

• **Olsson v. PLDT Inc. et al.,**
No. 2:23-cv-00885-CJC-MAA (C.D. Cal. April 26, 2023)

• **Ryan v. FIGS, Inc. et al.,**
No. 2:22-cv-07939-ODW (C.D. Cal. February 14, 2023)

• **Schoen v. Eiger Biopharmaceuticals, Inc., et al.,**
No. 3:22-cv-6985-RS (N.D. Cal. February 3, 2023)

• **Fernandes v. Centessa Pharmaceuticals plc, et al.,**
No. 1:22-cv-08805-GHW-SLC (S.D.N.Y. December 12, 2022)

• **Gilbert v. Azure Power Global Limited, et al.,**
No. 1:22-cv-07432-GHW (S.D.N.Y. December 8, 2022

• **Pugley v. Fulgent Genetics, Inc. et al.,**
No. 2:22-cv-06764-CAS-KLS (C.D. Cal. November 30, 2022)

• **Michalski v. Weber Inc., et al.,**
No. 1:22-cv-03966-EEB (N.D. Ill. November 29, 2022)

 **"Class Counsel have demonstrated that they are skilled in this area of the law and therefore adequate to represent the Settlement Class as**

The Honorable Barry Ted Moskowitz in I*n re Regulus Therapeutics Inc. Sec. Litig.*, No. 3:17-CV-182-BTM-RBB (S.D. Cal. Oct. 30, 2020)

• **Edge v. Tupperware Brands Corporation, et al.,**
No. 6:22-cv-1518-RBD-LHP (M.D. Fla. September 16, 2022)

• **Carpenter v. Oscar Health, Inc., et al.,**
No. 1:22-cv-03885-VSB-VF (S.D.N.Y. September 27, 2022)

• **In re Nano-X Imagining Ltd. Securities Litigation,**
No. 1:20-cv-04355-WFK-MMH (E.D.N.Y. August 30, 2022)

• **Patterson v. Cabaletto Bio, Inc., et al.,**
No. 2:22-cv-00737-JMY (E.D. Pa. August 10, 2022)

• **Rose v. Butterfly Network, Inc., et al.,**
No. 2:22-cv-00854-MEF-JBC (D.N.J. August 8, 2022)

• **Winter v. Stronghold Digital Mining, Inc., et al.,**
No. 1:22-cv-03088-RA (S.D.N.Y. August 4, 2022)

• **Poirer v. Bakkt Holdings, Inc.,**
No. 1:22-cv-02283-EK-PK (E.D.N.Y. August 3, 2022)

• **In re Meta Materials Inc. Securities Litigation,**
No. 1:21-cv-07203-CBA-JRC (E.D.N.Y. July 15, 2022)

• **Deputy v. Akebia Therapeutics, Inc. et al.,**
No. 1:22-cv-01411-AMD-VMS (E.D.N.Y. June 28, 2022)

• **In re Grab Holdings Limited Securities Litigation,**
No. 1:22-cv-02189-JLR (S.D.N.Y. June 7, 2022)

• **In re AppHarvest Securities Litigation,**
No. 1:21-cv-07985-LJL (S.D.N.Y. December 13, 2021)



# Practice Areas

## Securities Class Action

• **In re Coinbase Global, Inc. Securities Litigation,**
No. 3:21-cv-05634-TLT (N.D. Cal. November 5, 2021)

• **Miller v. Rekor Systems, Inc. et al.,**
No. 1:21-cv-01604-GLR (D. Md. September 16, 2021)

• **Zaker v. Ebang International Holdings Inc. et al.,**
No. 1:21-cv-03060-KPF (S.D.N.Y. July 21, 2021)

• **Valdes v. Kandi Technologies Group, Inc. et al.,**
No. 2:20-cv-06042-LDH-AYS (E.D.N.Y. April 20, 2021)

• **John P. Norton, On Behalf Of The Norton Family Living Trust UAD 11/15/2002 V. Nutanix, Inc. Et Al,**
No. 3:21-cv-04080-WHO (N.D. Cal. September 8, 2021)

• **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp., et al.,**
No. 1:20-cv-08062-JMF (D. Nev. Jan. 5, 2021)

• **In re QuantumScape Securities Class Action Litigation,**
No. 3:21-cv-00058-WHO (N.D. Cal. April 20, 2021)

• **In re Minerva Neurosciences, Inc. Sec. Litig.,**
No. 1:20-cv-12176-GAO (D. Mass. March 5, 2021)

• **White Pine Investments v. CVR Refining, LP, et al.,**
No. 1:20-cv-02863-AT (S.D.N.Y Jan. 5, 2021)

• **Yaroni v. Pintec Technology Holdings Limited, et al.,**
No. 1:20-cv-08062-JMF (S.D.N.Y. Dec. 15, 2020)

• **Nickerson v. American Electric Power Company, Inc., et al.,**
No. 2:20-cv-04243-SDM-EPD (S.D. Ohio Nov. 24, 2020)

• **Ellison v. Tufin Software Technologies Ltd., et al.,**
No. 1:20-cv-05646-GHW (S.D.N.Y. Oct. 19, 2020)

 The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."

Vice Chancellor Lori W. Will in *Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.,* Case No. C.A. No. 2021-0899-LWW (Delaware Chancery)

• **Hartel v. The GEO Group, Inc., et al.,**
No. 9:20-cv-81063-RS-SMM (S.D. Fla. Oct. 1, 2020)

• **Posey v. Brookdale Senior Living, Inc., et al.,**
No. 3:20-cv-00543-AAT (M.D. Tenn. Sept. 14, 2020)

• **Snyder v. Baozun Inc.,**
No. 1:19-cv-11290-ALC-KNF (S.D.N.Y. Sept. 8, 2020)

• **In re Dropbox Sec. Litig.,**
No. 5:19-cv-06348-BLF-SVK (N.D. Cal. Jan. 16, 2020)

• **Zhang v. Valaris plc,**
No. 1:19-cv-7816-NRB (S.D.N.Y. Dec. 23, 2019)

• **In re Sundial Growers Inc. Sec. Litig.,**
No. 1:19-cv-08913-ALC-SN (S.D.N.Y. Dec. 20, 2019)

• **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated,**
No. 5:19-cv-1372-LHK-SVK (N.D. Cal. Oct. 7, 2019)

• **Roberts v. Bloom Energy Corp.,**
No. 4:19-cv-02935-HSG (N.D. Cal. Sept. 3, 2019)

• **Luo v. Sogou Inc.,**
No. 1:19-cv-00230-LJL (S.D.N.Y. Apr. 2, 2019)

• **In re Aphria Inc. Sec. Litig.,**
No. 1:18-cv-11376-GBD-JEW (S.D.N.Y. Mar. 27, 2019)

• **Chew v. MoneyGram International, Inc.,**
No. 1:18-cv-07537-MMP (N.D. Ill. Feb. 12, 2019)

 LEVI&KORSINSKY
Shareholder Advocates



# Derivative, Corporate Governance & Executive Compensation

As a leader in achieving important corporate governance reforms for the benefit of shareholders, the Firm protects shareholders by enforcing the obligations of corporate fiduciaries. Our efforts include the prosecution of derivative actions in courts around the country, making pre-litigation demands on corporate boards to investigate misconduct, and taking remedial action for the benefit of shareholders. In situations where a company's board responds to a demand by commencing its own  investigation, we frequently work with the board's counsel to assist with and monitor the investigation, ensuring that the investigation is thorough and conducted in an appropriate manner.

We have also successfully prosecuted derivative and class action cases to hold corporate executives and board members accountable for various abuses and to help preserve corporate assets through longlasting and meaningful corporate governance changes, thus ensuring that prior misconduct does not reoccur. We have extensive experience challenging executive compensation and recapturing assets for the benefit of companies and their shareholders. We have secured corporate governance changes to ensure that executive compensation is consistent with shareholder-approved compensation plans, company performance, and federal securities laws.

In **Franchi v. Barabe**, No. 2020-0648-KSJM (Del. Ch.), the Firm secured $6.7 million in economic benefits for Selecta Biosciences, Inc. in connection with insiders' participation in a private placement while in possession of material non-public information as well as the adoption of significant governance reforms designed to prevent a recurrence of the alleged misconduct.

The Firm was lead counsel in the derivative action styled **Police & Retirement System of the City of Detroit et al. v. Robert Greenberg et al., C.A No. 2019-0578-MTZ (Del. Ch.). The action resulted in a settlement where Skechers Inc. cancelled approximately $20 million in equity awards issued to Skechers' founder Robert** Greenberg and two top officers in 2019 and 2020. Also, under the settlement. Skechers' board of directors must retain a consultant to advise on compensation decisions going forward.


LEVI&KORSINSKY
Shareholder Advocates



# Practice Areas

## Derivative, Corporate Governance & Executive Compensation

In **In re Google Inc. Class C Shareholder Litigation**, C.A. No. 7469-CS (Del. Ch.), we challenged a stock recapitalization transaction to create a new class of nonvoting shares and strengthen the corporate control of the Google founders. We helped achieve an agreement that provided an adjustment payment to existing shareholders harmed by the transaction as well as providing enhanced board scrutiny of the Google founders' ability to transfer stock. Ultimately, Google's shareholders received payments of $522 million.

In **In re Activision, Inc. Shareholder Derivative Litigation**, No. 06-cv-04771-MRP-JTL (C.D. Cal.), we were Co-Lead Counsel and challenged executive compensation related to the dating of options. This effort resulted in the recovery of more than $24 million in excessive compensation and expenses, as well as the implementation of substantial corporate governance changes.

 **"...a model for how [the] great legal profession should conduct itself."**

Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

In **Pfeiffer v. Toll** (Toll Brothers Derivative Litigation), No. 4140-VCL (Del. Ch.), we prevailed in defeating defendants' motion to dismiss in a case seeking disgorgement of profits that company insiders reaped through a pattern of insider-trading. After extensive discovery, we secured a settlement returning $16.25 million in cash to the company, including a significant contribution from the individuals who traded on inside information.

In **Rux v. Meyer**, No. 11577-CB (Del. Ch.), we challenged the re-purchase by Sirius XM of its stock from its controlling stockholder, Liberty Media, at an inflated, above-market price. After defeating a motion to dismiss and discovery, we obtained a settlement where SiriusXM recovered $8.25 million, a substantial percentage of its over-payment.

In **In re EZCorp Inc. Consulting Agreement Derivative Litig.,** C.A. No. 9962-VCL (Del. Ch.), we challenged lucrative consulting agreements between EZCorp and its controlling stockholders. After surviving multiple motions to dismiss. We obtained a settlement where EZCorp was repaid $6.45 million it had paid in consulting fees, or approximately 33% of the total at issue and the consulting agreements were discontinued.



## Practice Areas



# Derivative, Corporate Governance & Executive Compensation

In **Scherer v. Lu** (Diodes Incorporated), No. 13-358-GMS (D. Del.), we secured the cancellation of $4.9 million worth of stock options granted to the company's CEO in violation of a shareholder-approved plan, and obtained additional disclosures to enable shareholders to cast a fullyinformed vote on the adoption of a new compensation plan at the company's annual meeting.

In **MacCormack v. Groupon, Inc.,** No. 13-940-GMS (D. Del.), we caused the cancellation of $2.3 million worth of restricted stock units granted to a company executive in violation of a shareholder-approved plan, as well as the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan; we also obtained additional material disclosures to shareholders in connection with a shareholder vote on amendments to the plan.

In **Edwards v. Benson** (Headwaters Incorporated), No. 13-cv-330 (D. Utah), we caused the cancellation of $3.2 million worth of stock appreciation rights granted to the company's CEO in violation of a shareholder-approved plan and the adoption of enhanced corporate governance procedures designed to ensure that the board of directors complies with the terms of the plan.

In **Pfeiffer v. Begley** (DeVry, Inc.), No. 12-CH-5105 (Ill. Cir. Ct. DuPage Cty.), we secured the cancellation of $2.1 million worth of stock options granted to the company's CEO in 2008-2012 in violation of a shareholder-approved incentive plan.

In **Basch v. Healy** (EnerNOC), No. 13-cv-766 (D. Del.), we obtained a cash payment to the company to compensate for equity awards issued to officers in violation of the company's compensation plan and caused significant changes in the company's compensation policies and procedures designed to ensure that future compensation decisions are made consistent with the company's plans, charters and policies. We also impacted the board's creation of a new compensation plan and obtained additional disclosures to stockholders concerning the board's administration of the company's plan and the excess compensation.

In **Kleba v. Dees,** No. 3-1-13 (Tenn. Cir. Ct. Knox Cty.), we recovered approximately $9 million in excess compensation given to insiders and the cancellation of millions of shares of stock options issued in violation of a shareholder-approved compensation plan. In addition, we obtained the adoption of formal corporate governance procedures designed to ensure that future compensation decisions are made independently and consistent with the plan.



LEVI&KORSINSKY
Shareholder Advocates

# Practice Areas



## Derivative, Corporate Governance & Executive Compensation

In **Lopez v. Nudelman** (CTI BioPharma Corp.), No. 14-2-18941-9 SEA (Wash. Super. Ct. King Cty.), we recovered approximately $3.5 million in excess compensation given to directors and obtained the adoption of a cap on director compensation, as well as other formal corporate governance procedures designed to implement best practices with regard to director and executive compensation.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **In re Corinthian Colleges, Inc. Shareholder Derivative Litigation**, No. 06-cv-777-AHS (C.D. Cal.), we were Co-Lead Counsel and achieved a $2 million benefit for the company, resulting in the re-pricing of executive stock options and the establishment of extensive corporate governance changes.

In **Pfeiffer v. Alpert (Beazer Homes Derivative Litigation)**, No. 10-cv-1063-PD (D. Del.), we successfully challenged certain aspects of the company's executive compensation structure, ultimately forcing the company to improve its compensation practices.

In **In re Cincinnati Bell, Inc., Derivative Litigation**, No. A1105305 (Ohio, Hamilton Cty. C.P.), we achieved significant corporate governance changes and enhancements related to the company's compensation policies and practices in order to better align executive compensation with company performance. Reforms included the formation of an entirely independent compensation committee with staggered terms and term limits for service.

In **Woodford v. Mizel** (M.D.C. Holdings, Inc.), No. 1:11-cv-879 (D. Del.), we challenged excessive executive compensation, ultimately obtaining millions of dollars in reductions of that compensation, as well as corporate governance enhancements designed to implement best practices with regard to executive compensation and increased shareholder input.



LEVI&KORSINSKY
Shareholder Advocates



# Practice Areas

## 🤝 Mergers & Acquisitions

Levi & Korsinsky has achieved an impressive record in winning multi-million dollar recoveries and injunctions in merger-related litigation. We are one of the premier law firms engaged in this field, consistently striving to maximize stockholder value. In these cases, we fight to enforce stockholder rights and increase their consideration in connection with the underlying transactions.

We have served in lead roles in landmark cases that have altered the landscape of mergers & acquisitions law, and have won numerous injunctions and recovered hundreds of millions of dollars for aggrieved stockholders. Some examples include:

In **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Del. Ch.), we served as lead counsel for the class of former minority stockholders of Alloy Steel, and recovered a $9.5 million common fund – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.  The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."

> Vice Chancellor Sam Glasscock, III said "it's always a pleasure to have counsel who are articulate and exuberant…" and referred to our approach to merger litigation as "wholesome" and "a model of… plaintiffs' litigation in the merger arena."
>
> *Ocieczanek v. Thomas Properties Group*, C.A. No. 9029-VCG (Del. Ch. May 15, 2014)

In **In re Schuff International, Inc. Stockholders Litigation**, No. 10323-VCZ (Del. Ch.), we served as Co-Lead Counsel for the plaintiff class in achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a 114% increase from $31.50 to $67.45 in total consideration per share for tendering stockholders.

In **In re Bluegreen Corp. Shareholder Litigation**, No. 502011CA018111 (Cir. Ct. for Palm Beach Cty., FL), as Co-Lead Counsel, we achieved a common fund recovery of $36.5 million for minority shareholders in connection with a management-led buyout, increasing gross consideration to shareholders in connection with the transaction by 25% after three years of intense litigation.



# Practice Areas

## 🤝 Mergers & Acquisitions

In **Reith v. Lichtenstein, et al.**, Case NO. 2018-0277-MTZ (Del. Ch.), we served as lead counsel on behalf of the class and derivatively on behalf of Steel Connect, Inc. and recovered a $6 million fund to be distributed to common stockholders of Steel Connect, the majority of which going to the minority stockholders.  In granting approval on December 13, 2024, the Court of Chancery called the result an "excellent settlement."

In **Robinson v. Fortress Acquisition Sponsor II, et al., LLC**, C.A. No. 2023-0142-NAC (Del. Ch.), we served as plaintiff's counsel and achieved a $6 million recovery for a class of ATI Physical Therapy, Inc. stockholders in connection with the company's June 2021 de-SPAC merger.

In **Makris v. Ionis Pharmaceuticals, Inc.**, C.A. No. 2021-0681-LWW (Del. Ch.), we served as Co-Lead Counsel and achieved a $12.5 million common fund settlement for a class of Akcea Therapeutics, Inc. stockholders in connection with its October 2020 acquisition by Ionis.

> **"I think you've done a superb job and I really appreciate the way this case was handled."**
>
> Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)

> **"Mr. Enright, the way you laid out your argument … is extraordinarily helpful to a Court, and it's a textbook of how oral arguments should be done. "**
>
> Vice Chancellor Sam Glasscock in *Adam Turnbull v. Adam Klein, C.A. No. 1125-SG (Del. Ch. 2024)*

In **In re CNX Gas Corp. Shareholder Litigation**, No. 5377-VCL (Del. Ch.), as Plaintiffs' Executive Committee Counsel, we obtained a landmark ruling from the Delaware Chancery Court that set forth a unified standard for assessing the rights of shareholders in the context of freeze-out transactions and ultimately led to a common fund recovery of over $42.7 million for the company's shareholders.

In **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.), we represented shareholders in challenging the merger between Occam Networks, Inc. and Calix, Inc., obtaining a preliminary injunction against the merger after showing that the proxy statement by which the shareholders were solicited to vote for the merger was materially false and misleading. Post-closing, we took the case to trial and recovered an additional $35 million for the shareholders.



LEVI&KORSINSKY
Shareholder Advocates

## Practice Areas

## 🤝 Mergers & Acquisitions

In **In re Sauer-Danfoss Stockholder Litig.**, No. 8396 (Del. Ch.), as one of plaintiffs' co-lead counsel, we recovered a $10 million common fund settlement in connection with a controlling stockholder merger transaction.

In **In re Yongye International, Inc. Shareholders' Litigation**, No. A-12-670468-B (District Court, Clark County, Nevada), as one of plaintiffs' co-lead counsel, we recovered a $6 million common fund settlement in connection with a management-led buyout of minority stockholders in a China-based company incorporated under Nevada law.

In **In re Great Wolf Resorts, Inc. Shareholder Litigation**, No. 7328-VCN (Del. Ch.), we achieved tremendous results for shareholders, including partial responsibility for a $93 million (57%) increase in merger consideration and the waiver of several "don't-ask-don't-waive" standstill agreements that were restricting certain potential bidders from making a topping bid for the company.

In **In re Talecris Biotherapeutics Holdings Shareholder Litigation**, C.A. No. 5614-VCL (Del. Ch.), we served as counsel for one of the Lead Plaintiffs, achieving a settlement that increased the merger consideration to Talecris shareholders by an additional 500,000 shares of the acquiring company's stock and providing shareholders with appraisal rights.

In **In re Minerva Group LP v. Mod-Pac Corp.**, Index No. 800621/2013 (N.Y. Sup. Ct. Erie Cty.), we obtained a settlement in which defendants increased the price of an insider buyout from $8.40 to $9.25 per share, representing a recovery of $2.4 million for shareholders.

In **Stephen J. Dannis v. J.D. Nichols**, No. 13-CI-00452 (Ky. Cir. Ct. Jefferson Cty.), as Co-Lead Counsel, we obtained a 23% increase in the merger consideration (from $7.50 to $9.25 per unit) for shareholders of NTS Realty Holdings Limited Partnership. The total benefit of $7.4 million was achieved after two years of hard-fought litigation.

Additionally, we have a successful track record of winning injunctions in connection with shareholder M&A litigation, including:

· **In re Portec Rail Products, Inc. S'holder Litig.**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)

· **In re Craftmade International, Inc. S'holder Litig.**, C.A. No. 6950-VCL (Del. Ch. 2011)

· **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch. 2012)

· **In re Complete Genomics, Inc. S'holder Litig**., C.A. No. 7888-VCL (Del. Ch. 2012)

· **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



## Practice Areas

 # Consumer Litigation

Levi & Korsinsky works hard to protect consumers by holding corporations accountable for defective products, false and misleading advertising, unfair or deceptive business practices, antitrust violations, and privacy right violations.

Our litigation and class action expertise combined with our in-depth understanding of federal and state laws enable us to fight for consumers who have been aggrieved by deceptive and unfair business practices and who purchased defective products, including automobiles, appliances, electronic goods, and other consumer products. The Firm also represents consumers in cases involving data breaches and privacy right violations. The Firm's attorneys have received a number of leadership appointments in consumer class action cases, including multidistrict litigation ("MDL"). Recently, Law.com identified the Firm as one of the top firms with MDL leadership appointments in the article titled, "There Are New Faces Leading MDLs. And They Aren't All Men" (July 6, 2020). Representative settled cases include:

**Doe v. Roblox Corporation**, Case No. 3:21-cv-03943 (N.D. Cal.): Represented individuals who experienced moderation and removal of content on the Roblox platform without compensation, resulting in $10 million settlement.

**Lash Boost Cases**, JCCP No. 4981 (Cal. Super. Ct., S.F. Cty.): Represented consumers who purchased Rodan + Fields' Lash Boost product which plaintiffs alleged failed to disclose material information relating to potential adverse reactions, resulting in $38 million settlement.

**Goldstein v. Henkel Corporation et al.**, Case No. 3:22-cv-00164 (D. Conn.): Represented purchasers of aerosol and spray antiperspirant products sold under the Right Guard brand which contain or risk containing benzene, resulting in $1.95 million settlement.

**Kholyusev et al. v. Welfare & Pension Administration Service, Inc.** Case No. 22-2-04152 (Wash. Sup. Ct.): Co-lead counsel in data breach class action resulting in a settlement valued up to $1,750,000.

**Goldstein v. Henkel Corporation et al.**, Case No. 3:22-cv-00164 (D. Conn.): Represented purchasers of aerosol and spray antiperspirant products sold under the Right Guard brand which contain or risk containing benzene, resulting in $1.95 million settlement.



**Practice Areas**

##  Consumer Litigation

**NV Security, Inc. v. Fluke Networks, No. CV05-4217 GW (SSx) (C.D. Cal. 2005):** Negotiated a settlement on behalf of purchasers of Test Set telephones in an action alleging that the Test Sets contained a defective 3-volt battery. We benefited the consumer class by obtaining the following relief: free repair of the 3-volt battery, reimbursement for certain prior repair, an advisory concerning the 3-volt battery on the outside of packages of new Test Sets, an agreement that defendants would cease to market and/or sell certain Test Sets, and a 42-month warranty on the 3-volt battery contained in certain devices sold in the future.

**Sung, et al. v. Schurman Retail Group**, No. 3:17-cv-02760- LB (N.D. Cal.): Co-Lead Class Counsel in nationwide class action that alleged unauthorized disclosure of employee financial information; obtained final approval of nationwide class action settlement providing credit monitoring and identity theft restoration services through 2022 and cash payments of up to $400.

**In re: Apple Inc. Device Performance Litig., No. 5:18-md-02827-EJD (N.D. Cal.):** Plaintiffs' Executive Committee member in class action lawsuit alleging that Apple purposefully throttled iPhone resulting in a $310 million non-reversionary settlement fund.

**In re: EpiPen (Epinephrine Injection, USP) Marketing, Sales Practices and Antitrust Litig.**, No. 2:17-MD-02785 (D. Kan.): Plaintiffs' Executive Committee in action that alleged that Mylan and Pfizer violated antitrust laws and committed other violations relating to the sale of EpiPens which resulted in $609 million in total recovery.

**Scott, et al. v. JPMorgan Chase Bank, N.A.**, No. 1:17-cv- 00249-APM (D.D.C.): Co-Lead Class Counsel in nationwide class action settlement of claims alleging improper fees deducted from payments awarded to jurors; 100% direct refund of improper fees collected.

**In re: Citrix Data Breach Litig.**, No. 19-cv-61350-RKA-PMH (S.D. Fla.): Interim Class Counsel in action alleging company failed to implement reasonable security measures to protect employee financial information; resulted in common fund settlement of $2,275,000.

**Bustos v. Vonage America, Inc.**, No. 2:06-cv-2308-HAA-ES (D.N.J.): Common fund settlement of $1.75 million on behalf of class members who purchased Vonage Fax Service in an action alleging that Vonage made false and misleading statements in the marketing, advertising, and sale of Vonage Fax Service by failing to inform consumers that the protocol defendant used for the Vonage Fax Service was unreliable and unsuitable for facsimile communications.

**Masterson v. Canon U.S.A.**, No. BC340740 (Cal. Super. Ct. L.A. Cty.): Settlement providing refunds to Canon SD camera purchasers for certain broken LCD repair charges and important changes to the product warranty.





# Our Attorneys

## Managing Partners

- **EDUARD KORSINSKY**

- **JOSEPH E. LEVI**

21

## Our Attorneys — Managing Partners

# EDUARD KORSINSKY
## Managing Partner



Eduard Korsinsky is the Managing Partner and Co-Founder of Levi & Korsinsky, LLP, a national securities firm that has recovered billions of dollars for investors since its formation in 2003. For more than 24 years Mr. Korsinsky has represented investors and institutional shareholders in complex securities matters. He has achieved significant recoveries for stockholders, including a $79 million recovery for investors of E-Trade Financial Corporation and a payment ladder indemnifying investors of Google, Inc. up to $8 billion in losses on a ground-breaking corporate governance case. His firm serves as lead counsel in some of the largest securities matters involving Tesla, US Steel, Kraft Heinz and others. He has been named a New York "Super Lawyer" by Thomson Reuters and is recognized as one of the country's leading practitioners in class action and derivative matters.

Mr. Korsinsky is also a co- founder of CORE Monitoring Systems LLC, a technology platform designed to assist institutional clients more effectively monitor their investment portfolios and maximize recoveries on securities litigation.

**Cases he has litigated include:**

• **E-Trade Financial Corp. Sec. Litig.**, No. 07-cv-8538 (S.D.N.Y. 2007), $79 million recovery
• **In re Activision, Inc. S'holder Derivative Litig.**, No. 06-cv-04771-MRP (JTLX)(C.D. Cal. 2006), recovered $24 million in excess compensation
• **Corinthian Colleges, Inc., S'holder Derivative Litig.**, No. SACV-06-0777-AHS (C.D. Cal. 2009), obtained repricing of executive stock options providing more than $2 million in benefits to the company

• **Pfeiffer v. Toll**, No. 4140-VCL (Del. Ch. 2010), $16.25 million in insider trading profits recovered
• **In re Net2Phone, Inc. S'holder Litig.**, No. 1467-N (Del. Ch. 2005), obtained increase in tender offer price from $1.70 per share to $2.05 per share
• **In re Pamrapo Bancorp S'holder Litig.**, No. C-89-09 (N.J. Ch. Hudson Cty. 2011) & No. HUD-L-3608-12 (N.J. Law Div. Hudson Cty. 2015), obtained supplemental disclosures following the filing of a motion for preliminary injunction, pursued case post-closing, secured key rulings on issues of first impression in New Jersey and defeated motion for summary judgment



LEVI&KORSINSKY
Shareholder Advocates

# EDUARD KORSINSKY
## Managing Partner

**Cases he has litigated include:**

· **In re Google Inc. Class C S'holder Litig.**, No. 19786 (Del. Ch. 2012), obtained payment ladder indemnifying investors up to $8 billion in losses stemming from trading discounts expected to affect the new stock
· **Woodford v. M.D.C. Holdings, Inc.**, No. 1:2011cv00879 (D. Del. 2012), one of a few successful challenges to say on pay voting, recovered millions of dollars in reductions to compensation

· **Pfeiffer v. Alpert (Beazer Homes)**, No. 10-cv-1063-PD (D. Del. 2011), obtained substantial revisions to an unlawful executive compensation structure
· **In re NCS Healthcare, Inc. Sec. Litig.**, No. CA 19786, (Del. Ch. 2002), case settled for approximately $100 million
· **Paraschos v. YBM Magnex Int'l, Inc.**, No. 98-CV-6444 (E.D. Pa.), United States and Canadian cases settled for $85 million Canadian

**PUBLICATIONS**

· "Board Diversity: The Time for Change is Now, Will Shareholders Step Up?," National Council on Teacher Retirement. FYI Newsletter May 2021
· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", The Texas Association of Public Employee Retirement Systems (TEXPERS) Investment Insights April-May Edition (2021)
· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter (2021)
· "The Dangers of Relying on Custodians to Collect Class Action Settlements.", Florida Public Pension Trustees Association (FPPTA) (2021)
·"NY Securities Rulings Don't Constitute Cyan Backlash", Law360 (March 8, 2021)
· "Best Practices for Monitoring Your Securities Portfolio in 2021.", Building Trades News Newsletter (2020-2021)

· "Best Practices for Monitoring Your Securities Portfolio in 2021.", The Texas Association of Public Employee Retirement Systems (TEXPERS) Monitor (2021)
· "Best Practices for Monitoring Your Securities Portfolio in 2021.", Michigan Association of Public Employee Retirement Systems (MAPERS) Newsletter (2021)
· "Best Practices for Monitoring Your Securities Portfolio in 2021.", Florida Public Pension Trustees Association (FPPTA) (2021)
· Delaware Court Dismisses Compensation Case Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
· SDNY Questions SEC Settlement Practices in Citigroup Settlement, ABA Section of Securities Litigation News & Developments (Nov. 7, 2011)
· New York Court Dismisses Shareholder Suit Against Goldman Sachs, ABA Section of Securities Litigation News & Developments (Oct. 31, 2011)


LEVI&KORSINSKY
Shareholder Advocates

# EDUARD KORSINSKY

## Managing Partner

**EDUCATION**

• New York University School of Law, LL.M. Master of Law(s) Taxation (1997)
• Brooklyn Law School, J.D. (1995)
• Brooklyn College, B.S., Accounting, summa cum laude (1992)

**AWARDS**

  

  

**ADMISSIONS**

• New York (1996)
• New Jersey (1996)
• United States District Court for the Southern District of New York (1998)
• United States District Court for the Eastern District of New York (1998)
• United States Court of Appeals for the Second Circuit (2006)
• United States Court of Appeals for the Third Circuit (2010)
• United States District Court for the Northern District of New York (2011)
• United States District Court of New Jersey (2012)
• United States Court of Appeals for the Sixth Circuit (2013)
• Arizona (2024)
• Michigan (2024)



**Our Attorneys**    Managing Partners

# JOSEPH E. LEVI
## Managing Partner



Joseph E. Levi is a central figure in shaping and managing the Firm's securities litigation practice. Mr. Levi has been lead or co-lead in dozens of cases involving the enforcement of shareholder rights in the context of mergers & acquisitions and securities fraud. In addition to his involvement in class action litigation, he has represented numerous patent holders in enforcing their patent rights in areas including computer hardware, software, communications, and information processing, and has been instrumental in obtaining substantial awards and settlements.

Mr. Levi and the Firm achieved success on behalf of the former shareholders of Occam Networks in litigation challenging the Company's merger with Calix, Inc., obtaining a preliminary injunction against the merger due to material representations and omissions in the proxy solicitation. **Chen v. Howard-Anderson**, No. 5878-VCL (Del. Ch.). Vigorous litigation efforts continued to trial, resulting in a $35 million recovery for shareholders.

Mr. Levi and the Firm served as lead counsel in **Weigard v. Hicks**, No. 5732-VCS (Del. Ch.), which challenged the acquisition of Health Grades by affiliates of Vestar Capital Partners. Mr. Levi successfully demonstrated to the Court of Chancery that the defendants had likely breached their fiduciary duties to Health Grades' shareholders by failing to maximize shareholder value. This ruling was used to reach a favorable settlement where defendants agreed to a host of measures designed to increase the likelihood of superior bid. Vice Chancellor Strine "applaud[ed]" the litigation team for their preparation and the extraordinary high-quality of the briefing.

 **"[The court] appreciated very much the quality of the argument..., the obvious preparation that went into it, and the ability of counsel..."**
Justice Timothy S. Driscoll in *Grossman v. State Bancorp, Inc.*, Index No. 600469/2011 (N.Y. Sup. Ct. Nassau Cnty. Nov. 29, 2011)


LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**        **Managing Partners**

# JOSEPH E. LEVI
## Managing Partner

**EDUCATION**

• Polytechnic University, B.S., Electrical Engineering, summa cum laude (1984); M.S. Systems Engineering (1986)
• Brooklyn Law School, J.D., magna cum laude (1995)

**AWARDS**

  



**ADMISSIONS**

• New York (1996)
• New Jersey (1996)
• United States Patent and Trademark Office (1997)
• United States District Court for the Southern District of New York (1997)
• United States District Court for the Eastern District of New York (1997)

LEVI&KORSINSKY
Shareholder Advocates

26



## Our Attorneys

### Partners

- **ADAM M. APTON**
- **DONALD J. ENRIGHT**
- **SHANNON L. HOPKINS**
- **GREGORY M. NESPOLE**
- **NICHOLAS I. PORRITT**
- **GREGORY M. POTREPKA**
- **MARK S. REICH**
- **DANIEL TEPPER**
- **ELIZABETH K. TRIPODI**

27

# Our Attorneys    Partners

## ADAM M. APTON
## Partner



Adam M. Apton focuses his practice on investor protection. He represents institutional investors and high net worth individuals in securities fraud, corporate governance, and shareholder rights litigation. Prior to joining the firm, Mr. Apton defended corporate clients against complex mass tort, commercial, and products liability lawsuits. Thomson Reuters has selected Mr. Apton to the Super Lawyers "Rising Stars" list every year since 2016, a distinction given to only the top 2.5% of lawyers. He has also been awarded membership to the prestigious Lawyers of Distinction for his excellence in the practice of law and named to the "Lawdragon 500 X" list out of thousands of candidates in recognition of his place at the forefront of the legal profession.

Mr. Apton's past representations and successes include:

• **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (trial counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

• **In re Navient Corp. Securities Litigation**, No. 17-8373 (RBK/AMD) (D.N.J.) (lead counsel in class action against leading provider of student loans for alleged false and misleading statements about compliance with consumer protection laws)
• **In re Prothena Corporation Plc Securities Litigation**, No. 1:18-cv-06425-ALC (S.D.N.Y.) ($15.75 million settlement fund against international drug company for false statements about development of lead biopharmaceutical product)
• **Martin v. Altisource Residential Corporation**, et al., No. 15-00024 (AET) (GWC) (D.V.I.) ($15. 5 million settlement fund against residential mortgage company for false statements about compliance with consumer regulations and corporate governance protocols)
• **Levin v. Resource Capital Corp., et al.**, No. 1:15-cv-07081-LLS (S.D.N.Y.) ($9.5 million settlement in class action over fraudulent statements about toxic mezzanine loan assets)



# ADAM M. APTON

## Partner

· **Rux v. Meyer (Sirius XM Holdings Inc.)**, No. 11577 (Del. Ch.) (recovery of $8.25 million against SiriusXM's Board of Directors for engaging in harmful related-party transactions with controlling stockholder, John. C. Malone and Liberty Media Corp.)

**PUBLICATIONS**

· "Pleading Section 11 Liability for Secondary Offerings" American Bar Association: Practice Points (Jan. 4, 2017)
· "Second Circuit Rules in Indiana Public Retirement System v. SAIC, Inc." American Bar Association: Practice Points (Apr. 4, 2016)
· "Second Circuit Applies Omnicare to Statements of Opinion in Sanofi" American Bar Association: Practice Points (Mar. 30, 2016)
· "Second Circuit Rules in Action AG v. China North" American Bar Association: Practice Points (Sept. 14, 2015)

**EDUCATION**

· New York Law School, J.D., cum laude (2009), where he served as Articles Editor of the New York Law School Law Review and interned for the New York State Supreme Court, Commercial Division
· University of Minnesota, B.A., Entrepreneurial Management & Psychology, With Distinction (2006)

**AWARDS**

**ADMISSIONS**

· New York (2010)
· United States District Court for the Southern District of New York (2010)
· United States District Court for the Eastern District of New York (2010)
· United States Court of Appeals for the Ninth Circuit (2015)
· United States Court of Appeals for the Second Circuit (2016)
· United States Court of Appeals for the Third Circuit (2016)
· California (2017)
· United States District Court for the Northern District of California (2017)
· United States District Court for the Central District of California (2017)
· United States District Court for the Southern District of California (2017)
· New Jersey (2020)
· United States District Court for the District of New Jersey (2020)







# DONALD J. ENRIGHT
## Partner



During his 28 years as a litigator and trial lawyer, Mr. Enright has handled matters in the fields of securities, commodities, consumer fraud and commercial litigation, with a particular emphasis on shareholder class action litigation. He has been named as one of the leading financial litigators in the nation by Lawdragon, as a Washington, DC "Super Lawyer" by Thomson Reuters, and as one of the city's "Top Lawyers" by Washingtonian magazine. One jurist on the Delaware Court of Chancery recently remarked that Don's advocacy skills were "a textbook of how oral arguments should be done."

Mr. Enright has shown a track record of achieving victories in federal trials and appeals, including:

· **Nathenson v. Zonagen, Inc.**, 267 F. 3d 400, 413 (5th Cir. 2001)
· **SEC v. Butler**, 2005 U.S. Dist. LEXIS 7194 (W.D. Pa. April 18, 2005)
· **Belizan v. Hershon**, 434 F. 3d 579 (D.C. Cir. 2006)
· **Rensel v. Centra Tech Inc.**, 2 F. 4th 1359 (11th Cir. 2021)

Over the course of his career, Mr. Enright has recovered hundreds of millions of dollars for investors. Most recently, in **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Delaware Chancery), Mr. Enright was lead counsel for the class, and recovered a $9.5 million common fund for the minority stockholders in connection with a controller buyout – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.  The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."

Similarly, in **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, Mr. Enright served as Co-Lead Counsel for the plaintiff class in achieving an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders. This was one of the largest recoveries as a percentage of the underlying merger consideration in the history of Delaware M&A litigation.


LEVI&KORSINSKY
Shareholder Advocates

# DONALD J. ENRIGHT
## Partner

As Co-Lead Counsel in **In re Bluegreen Corp. Shareholder Litigation**, Case No. 502011CA018111 (Cir. Ct. for Palm Beach Cnty., Fla.), Mr. Enright achieved a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders.

Mr. Enright has played a leadership role in numerous other shareholder class actions from inception to conclusion, producing multi-million-dollar recoveries involving such companies as:

| | |
|---|---|
| • Allied Irish Banks PLC | • UTStarcom, Inc. |
| • Iridium World Communications, Ltd. | • Manugistics Group, Inc. |
| • En Pointe Technologies, Inc. | • Yongye International, Inc. |
| • PriceSmart, Inc. | • CNX Gas Corp. |
| • Polk Audio, Inc. | • Sauer-Danfoss, Inc. |
| • Meade Instruments Corp. | • The Parking REIT, Inc. |
| • Xicor, Inc. | • Akcea Therapeutics, Inc. |
| • Streamlogic Corp. | • Babcock & Wilcox Enterprises, Inc. |
| • Interbank Funding Corp. | • ATI Physical Therapy, Inc. |
| • Riggs National Corp. | |

Mr. Enright also has a successful track record of obtaining injunctive relief in connection with shareholder M&A litigation, having won injunctions in the cases of:

• **In re Portec Rail Products, Inc. S'holder Litig.**, G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
• **In re Craftmade International, Inc. S'holder Litig**., C.A. No. 6950-VCL (Del. Ch. 2011)
• **Dias v. Purches**, C.A. No. 7199-VCG (Del. Ch. 2012)
• **In re Complete Genomics, Inc. S'holder Litig.**, C.A. No. 7888-VCL (Del. Ch. 2012)
• **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, Lead Case No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



LEVI&KORSINSKY
Shareholder Advocates

# DONALD J. ENRIGHT
## Partner

Mr. Enright has also demonstrated considerable success in obtaining deal price increases for shareholders in M&A litigation. As Co-Lead Counsel in the matter of **In re Great Wolf Resorts, Inc. Shareholder Litigation**, C.A. No. 7328-VCN (Del. Ch. 2012), Mr. Enright was partially responsible for a $93 million (57%) increase in merger consideration and waiver of several "don't-ask-don't-waive" standstill agreements. Similarly, Mr. Enright served as Co-Lead Counsel in the case of **Berger v. Life Sciences Research, Inc.**, No. SOM-C-12006-09 (NJ Sup. Ct. 2009), which caused a significant increase in the transaction price from $7.50 to $8.50 per share, representing additional consideration for shareholders of approximately $11.5 million. Mr. Enright also served as Co-Lead Counsel in **Minerva Group, LP v. Keane**, Index No. 800621/2013 (NY Sup. Ct. of Erie Cnty.) and obtained an increased buyout price from $8.40 to $9.25 per share.

The courts have frequently recognized and praised the quality of Mr. Enright's work:

- In **In re Interbank Funding Corp. Securities Litigation**, (D.D.C. 02-1490), Judge Bates of the United States District Court for the District of Columbia observed that Mr. Enright had "...skillfully, efficiently, and zealously represented the class, and... worked relentlessly throughout the course of the case."
- In **Freeland v. Iridium World Communications, LTD**, (D.D.C. 99-1002), Judge Nanette Laughrey stated that Mr. Enright and his co-counsel had done "an outstanding job" in connection with the recovery of $43.1 million for the shareholder class.
- In the matter of **Osieczanek v. Thomas Properties Group**, C.A. No. 9029-VCG (Del. Ch. 2013), Vice Chancellor Sam Glasscock of the Delaware Court of Chancery observed that "it's always a pleasure to have counsel [like Mr. Enright] who are articulate and exuberant in presenting their position," and that Mr. Enright's prosecution of a merger case was "wholesome" and served as "a model of . . . plaintiffs' litigation in the merger arena."
- In the matter of **Adam Turnbull v. Adam Klein**, C.A. No. 1125-SG (Del. Ch. 2024), Vice Chancellor Sam Glasscock of the Delaware Court of Chancery stated in a hearing, "Mr. Enright, the way you laid out your argument … is extraordinarily helpful to a Court, and it's a textbook of how oral arguments should be done. That's not taking anything away from what the defendants did. But that was, I thought, classic, and I'm glad my clerks and interns and Supreme Court clerks got to hear it."



# DONALD J. ENRIGHT
## Partner

**PUBLICATIONS**

• "SEC Enforcement Actions and Investigations in Private and Public Offerings," Securities: Public and Private Offerings, Second Edition, West Publishing 2007
• "Dura Pharmaceuticals: Loss Causation Redefined or Merely Clarified?" J.Tax'n & Reg. Fin. Inst. September/October 2007, Page 5

**EDUCATION**

• George Washington University School of Law, J.D. (1996), Member Editor of The George Washington University Journal of International Law and Economics
• Drew University, B.A. cum laude, Political Science and Economics (1993)

**AWARDS**

**ADMISSIONS**

• Maryland (1996)
• New Jersey (1996)
• District of Maryland (1997)
• District of New Jersey (1997)
• Washington, DC (1999)
• Fourth Circuit (1999)
• Fifth Circuit (1999)
• United States District Court for the District of Columbia (1999)
• United States Court of Appeals for the District of Columbia (2004)
• Second Circuit (2005)
• Third Circuit (2006)

   

   



33

# SHANNON L. HOPKINS

## Partner



Shannon L. Hopkins manages the Firm's Connecticut office. She was selected in 2013 as a New York "Super Lawyer" by Thomson Reuters. For more than two decades Ms. Hopkins has been prosecuting a wide range of complex class action matters in securities fraud, mergers and acquisitions, and consumer fraud litigation on behalf of individuals and large institutional clients. Ms. Hopkins has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multimillion-dollar settlements on behalf of shareholders, including:

- **Lokman v. Azure Power Global Ltd., et. al.,** No. 1:22-cv-7432-GHW (S.D.N.Y. 2025), $23 million recovery for the shareholder class
- **In Re Grab Holdings Limited Sec. Litig.,** No. 1:22-cv-02189-JLR (S.D.N.Y.), $80 million recovery for shareholder class
- **E-Trade Financial Corp. S'holder Litig.,** No. 07-CV-8538 (S. D.N.Y. 2007), $79 million recovery for the shareholder class
- **In re U.S. Steel Consolidated Cases,** No. 17-559-CB (W.D. Pa.), $40 million recovery for shareholder class
- **In re Nutanix, Inc. Securities Litigation,** No. 3:19-cv-01651-WHO (the "Stock Case"). $71 million for shareholder class
- **Rougier v. Applied Optoelectronics, Inc.,** No. 17-CV-2399 (S.D. Tex.), $15.5 million recovery for shareholder class
- **In Stein v. U.S. Xpress Enterprises, Inc.,** et al., No. 1:19-CV-98-TRM-CHS (E.D. Tenn.), $14.3 million shareholder recover



**Our Attorneys**   Partners

# SHANNON L. HOPKINS

## Partner

> "Plaintiffs' selected Class Counsel, the law firm of Levi & Korsinsky, LLP, has demonstrated the zeal and competence required to adequately represent the interests of the Class. The attorneys at Levi & Korsinsky have experience in securities and class actions issues and have been appointed lead counsel in a significant number of securities class actions across the country."

The Honorable Christina Bryan in *Rougier v. Applied Optoelectronics, Inc.*, No. 4:17-CV-02399 (S.D. Tex. Nov. 13, 2019)

In addition to her legal practice, Ms. Hopkins is a Certified Public Accountant (1998 Massachusetts). Prior to becoming an attorney, Ms. Hopkins was a senior auditor with PricewaterhouseCoopers LLP, where she led audit engagements for large publicly held companies in a variety of industries.

> In appointing the Firm Lead Counsel, the Honorable Gary Allen Feess noted our "significant prior experience in securities litigation and complex class actions."

*Zaghian v. THQ, Inc.*, No. 2:12-cv-05227-GAF-JEM (C.D. Cal. Sept. 14, 2012)



# SHANNON L. HOPKINS
## Partner

**PUBLICATIONS**

• "Cybercrime Convention: A Positive Beginning to a Long Road Ahead," 2 J. High Tech. L. 101 (2003)

**EDUCATION**

• Suffolk University Law School, J.D., magna cum laude (2003), where she served on the Journal for High Technology and as Vice Magister of the Phi Delta Phi International Honors Fraternity
• Bryant University, B.S.B.A., Accounting and Finance, cum laude (1995), where she was elected to the Beta Gamma Sigma Honor Society

**AWARDS**

 

**ADMISSIONS**

• Massachusetts (2003)
• United States District Court for the District of Massachusetts (2004)
• New York (2004)
• United States District Court for the Southern District of New York (2004)
• United States District Court for the Eastern District of New York (2004)
• United States District Court for the District of Colorado (2004)
• United States Court of Appeals for the First Circuit (2008)
• United States Court of Appeals for the Third Circuit (2010)
• Connecticut (2013)
• United States Court of Appeals for the Ninth Circuit (2023)
• United States Court of Appeals for the Tenth Circuit (2025)



## Our Attorneys    Partners

# GREGORY M. NESPOLE
## Partner



Gregory Mark Nespole is a Partner of the Firm, having been previously a member of the management committee of one of the oldest firms in New York, as well as chair of that firm's investor protection practice. He specializes in complex class actions, derivative actions, and transactional litigation representing institutional investors such as public and labor pension funds, labor health and welfare benefit funds, and private institutions. Prior to practicing law, Mr. Nespole was a strategist on an arbitrage desk and an associate in a major international investment bank where he worked on structuring private placements and conducting transactional due diligence.

For over twenty years, Mr. Nespole has played a lead role in numerous shareholder securities fraud and merger and acquisition matters and has been involved in recovering multi-million-dollar settlements on behalf of shareholders, including:

• Served as co-chair of a Madoff Related Litigation Task Force that recovered over several hundred million dollars for wronged investors;
• Obtained a $90 million award on behalf of a publicly listed company against a global bank arising out of fraudulently marketed auction rated securities;
• Successfully obtained multi-million-dollar securities litigation recoveries and/or corporate governance reforms from Cablevision, JP Morgan, American Pharmaceutical Partners, Sepracor, and MBIA, among many others.

Mr. Nespole holds membership in the Federal Bar Council and its Securities Litigation Committee, the New York City Bar Association and its Securities Litigation Committee, as well as the Federalist Society. He is also a member of the New York Athletic Club. Additionally, Mr. Nespole has been recognized by his peers as a "Super Lawyer" in the class action field annually since 2009, along with other notable awards.



# GREGORY M. NESPOLE

## Partner

**EDUCATION**

• Brooklyn Law School, J.D. (1993)
• Bates College, B.A. (1989)

**AWARDS**

  

**ADMISSIONS**

• New York (1994)
• United States District Court for the Southern District of New York (1994)
• United States District Court for the Eastern District of New York (1994)
• United States Court of Appeals for the Second Circuit (1994)
• United States Court of Appeals for the Fourth Circuit (1994)
• United States Court of Appeals for the Fifth Circuit (1994)
• United States District Court for the Northern District of New York (2016)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2020)



Our Attorneys  Partners

# NICHOLAS I. PORRITT
## Partner



Nicholas Porritt prosecutes securities class actions, shareholder class actions, derivative actions, and mergers and acquisitions litigation. He has extensive experience representing plaintiffs and defendants in a wide variety of complex commercial litigation, including civil fraud, breach of contract, and professional malpractice, as well as defending SEC investigations and enforcement actions. Mr. Porritt has helped recover hundreds of millions of dollars on behalf of shareholders. He was one of the Lead Counsel in In re Google Inc. Class C Shareholder Litigation, No. 7469-CS (Del. Ch.), which resulted in a payment of $522 million to shareholders and overall benefit of over $3 billion to Google's minority shareholders. He is one of the very few attorneys to have tried a securities class action to a jury, acting as lead trial counsel in In re Tesla, Inc. Securities Litigation, No. 3:18-cv-04865-EMC (N.D. Cal.), which went to trial in January 2023. He is currently acting in In re QuantumScape Securities Class Action Litigation, No. 3:21-cv-00058-WHO (N.D. Cal) representing QuantumScape Corp. investors who were harmed by misrepresentations by management regarding its battery technology as well as lead counsel in Ford v. TD Ameritrade Holding Corp., No. 14-cv-396 (D. Neb.), representing TD Ameritrade customers harmed by its improper routing of their orders. Both cases involve over $1 billion in estimated damages.

Mr. Porritt speaks frequently on current topics relating to securities laws and derivative actions, including presentations on behalf of the Council for Institutional Investors, Nasdaq, and the Practising Law Institute. and has served as an expert in the areas of securities and derivative litigation.



40

# NICHOLAS I. PORRITT
## Partner

**CASES PORRITT HAS WORKED ON:**

- **Set Capital LLC v. Credit Suisse Group AG,** 2023 WL 2535175 (S.D.N.Y. 2023)
- **Voulgaris, v. Array Biopharma Inc.,** 60 F.4th 1259 (10th Cir. 2023)
- **In re Tesla, Inc. Sec. Litig.,** 2022 WL 7374936 (N.D. Cal. 2022)
- **Klein v. TD Ameritrade Holding Corp.,** 342 F.R.D. 252 (D. Neb. 2022)
- **In re Aphria, Inc. Sec. Litig.,** 342 F.R.D. 199 (S.D.N.Y. 2022)
- **In re Tesla, Inc. Sec. Litig.,** 2022 WL 1497559 (N.D. Cal. 2022)
- **In re QuantumScape Sec. Class Action Litig.,** 580 F. Supp. 3d 714 (N.D. Cal. 2022)
- **Set Capital LLC v. Credit Suisse Group AG,** 996 F.3d 64 (2d Cir. 2021)
- **In re Tesla, Inc. Sec. Litig.,** 477 F. Supp. 3d 903 (N.D. Cal.2020)
- **Voulgaris, v. Array Biopharma Inc.,** No. 17CV02789KLMCONSOLID, 2020 WL 8367829 (D. Colo.2020)
- **In Re Aphria, Inc. Sec. Litig.,** No. 18 CIV. 11376 (GBD), 2020 WL 5819548 (S.D.N.Y. 2020)
- **In re Clovis Oncology, Inc. Deriv. Litig.,** 2019 WL 4850188 (Del. Ch. 2019)
- **Martin v. Altisource Residential Corp.,** 2019 WL 2762923 (D.V.I. 2019)
- **In re Navient Corp. Sec. Litig.,** 2019 WL 7288881 (D.N.J.2019)
- **In re Bridgestone Inv. Corp.,** 789 Fed. App'x 13 (9th Cir. 2019)
- **Klein v. TD Ameritrade Holding Corp.,** 327 F.R.D. 283 (D. Neb. 2018)
- **Beezley v. Fenix Parts, Inc.,** 2018 WL 3454490 (N.D. Ill. 2018)
- **In re Illumina, Inc. Sec. Litig.,** 2018 WL 500990 (S.D. Cal. 2018)
- **In re PTC Therapeutics Sec. Litig.,** 2017 WL 3705801 (D.N.J. 2017)
- **Zaghian v. Farrell,** 675 Fed. Appx. 718, (9th Cir. 2017)
- **In re PTC Therapeutics Sec. Litig.,** 2017 WL 3705801 (D.N.J. Aug. 28, 2017)

- **Martin v. Altisource Residential Corp.,** 2017 WL 1068208 (D.V.I. 2017)
- **Gormley magicJack VocalTec Ltd.,** 220 F. Supp. 3d 510 (S.D.N.Y. 2016)
- **Carlton v. Cannon,** 184 F. Supp. 3d 428 (S.D. Tex. 2016)
- **Zola v. TD Ameritrade, Inc.,** 172 F. Supp. 3d 1055 (D. Neb. 2016)
- **In re Energy Recovery Sec. Litig.,** 2016 WL 324150 (N.D. Cal. Jan. 27, 2016)
- **In re EZCorp Inc. Consulting Agreement Deriv. Litig.,** 2016 WL 301245 (Del. Ch. Jan. 25, 2016)
- **In re Violin Memory Sec. Litig.,** 2014 WL 5525946 (N.D. Cal. Oct. 31, 2014)
- **Garnitschnig v. Horovitz,** 48 F. Supp. 3d 820 (D. Md. 2014)
- **SEC v. Cuban,** 620 F.3d 551 (5th Cir. 2010)
- **Cozzarelli v. Inspire Pharmaceuticals, Inc.,** 549 F.3d 618 (4th Cir. 2008)
- **Teachers' Retirement System of Louisiana v. Hunter,** 477 F.3d 162 (4th Cir. 2007)


LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**  **Partners**

# NICHOLAS I. PORRITT
## Partner

**PUBLICATIONS**

• "Current Trends in Securities Litigation: How Companies and Counsel Should Respond," Inside the Minds. Recent Developments in Securities Law (Aspatore Press 2010)

**EDUCATION**

• University of Chicago Law School, J.D., With Honors (1996)
• University of Chicago Law School, LL.M. (1993)
• Victoria University of Wellington, LL.B. (Hons.), With First Class Honors, Senior Scholarship (1990)

**AWARDS**

  

**ADMISSIONS**

• New York (1997)
• District of Columbia (1998)
• United States District Court for the District of Columbia (1999)
• United States District Court for the Southern District of New York (2004)
• United States Court of Appeals for the Fourth Circuit (2004)
• United States Court of Appeals for the District of Columbia Circuit (2006)
• United States Supreme Court (2006)
• United States District Court for the District of Maryland (2007)
• United States District Court for the Eastern District of New York (2012)
• United States Court of Appeals for the Second Circuit (2014)
• United States Court of Appeals for the Ninth Circuit (2015)
• United States District Court for the District of Colorado (2015) • United States Court of Appeals for the Tenth Circuit (2016)
• United States Court of Appeals for the Eleventh Circuit (2017)
• United States Court of Appeals for the Eighth Circuit (2019)
• United States Court of Appeals for the Third Circuit (2019)



**Our Attorneys** **Partners**

# GREGORY POTREPKA

## Partner



Gregory M. Potrepka is a partner of the Firm in its Connecticut office. Mr. Potrepka's practice specializes in vindicating investor rights, including the interests of shareholders of publicly traded companies. Specifically, Mr. Potrepka has considerable experience prosecuting complex class actions, securities fraud matters, and similar commercial litigation. Mr. Potrepka's role in the Firm's securities litigation practice has significantly contributed to many of the Firm's successes, including the following representative matters:

· **In Re Grab Holdings Limited Sec. Litig.**, No. 1:22-cv-02189-JLR (S.D.N.Y.), $80 million recovery for shareholder class
· **In re Nutanix, Inc. Sec. Litig.**, No. 3:19-01651-WHO (N.D. Cal.); **Norton v. Nutanix, Inc.,** 3:21-cv-04080-WHO (N.D. Cal.) ($71 million recovery)
· **In re U.S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.) ($40 million recovery)
· **Rougier v. Applied Optoelectronics, Inc.**, No. 4:17-cv-2399 (S.D. Tex.) ($15.5 million recovery)
· **In re Helios and Matheson Analytics, Inc. Securities Litigation**, No. 1:18-cv-06965 (S.D.N.Y.) ($8.25 million recovery)
· **In re Aqua Metals Securities Litigation**, No. 17-cv-07142-HSG (N.D. Cal.) ($7 million recovery)



# GREGORY POTREPKA
## Partner

**EDUCATION**

• University of Connecticut School of Law, J.D. (2015)
• University of Connecticut Department of Public Policy, M.P.A. (2015)
• University of Connecticut, B.A., Political Science (2010)

**AWARDS**



**ADMISSIONS**

• Connecticut (2015)
• Mashantucket Pequot Tribal Court (2015)
• United States District Court for the District of Connecticut (2016)
• United States District Court for the Southern District of New York (2018)
• United States District Court for the Eastern District of New York (2018)
• United States Court of Appeals for the Third Circuit (2020)
• New York (2023)
• United States District of Colorado (2023)
• United States District Court for the District of Colorado (2023)
• United States Court of Appeals for the Ninth Circuit (2025)
• United States Court of Appeals for the Tenth Circuit (2025)



## Our Attorneys    Partners

# MARK S. REICH

## Partner



Mark Samuel Reich is a Partner of the Firm. Mark's practice focuses on consumer class actions, including cases involving privacy and data breach issues, deceptive and unfair trade practices, advertising injury, product defect, and antitrust violations. Mark, who has experience and success outside the consumer arena, also supports the Firm's securities and derivative practices.

Mark is attentive to clients' interests and fosters their activism on behalf of class members. Clients he has worked with consistently and enthusiastically endorse Mark's work:

> **Mark attentively guided me through each stage of the litigation, prepared me for my deposition, and ensured that I and other wronged consumers were compensated and that purchasers in the future could not be duped by the appliance manufacturer's misleading marketing tactics."**
>
> Katherine Danielkiewicz, Michigan (S.D. Tex. Nov. 13, 2019)

> **After my experience working with Mark and his colleague, any hesitancy I may have had in the past about leading or participating in a class action has gone away. Mark expertly countered every roadblock that the corporate defendant tried using to dismiss our case and we ultimately reached a resolution that exceeded my expectations"**
>
> Barry Garfinkle, Pennsylvania



# MARK S. REICH

## Partner

Before joining Levi & Korsinsky, Mark practiced at the largest class action firm in the country for more than 15 years, including 8 years as a Partner. Prior to becoming a consumer and shareholder advocate, Mark practiced commercial litigation with an international law firm based in New York, where he defended litigations on behalf of a variety of corporate clients.

Mark has represented investors in securities litigation, devoted to protecting the rights of institutional and individual investors who were harmed by corporate misconduct. His case work involved **State Street Yield Plus Fund Litig.** ($6.25 million recovery); **In re Doral Fin. Corp. Sec. Litig.**, SDNY ($129 million recovery); **Lockheed Martin Corp. Sec. Litig.** ($19.5 million recovery); **Tile Shop Holdings, Inc.** ($9.5 million settlement); **Curran v. Freshpet Inc.** ($10.1 million settlement); **In re Jakks Pacific, Inc.** ($3,925,000 settlement); **Fidelity Ultra Short Bond Fund Litig.** ($7.5 million recovery); and **Cha v. Kinross Gold Corp.** ($33 million settlement).

> **Never having been involved in a class action, I was uninformed and apprehensive. Mark and his colleagues not only explained the complexities, but maintained extensive ongoing, communications, involved us fully in all phases of the process; provided appropriate professional counsel and guidance to each participant, and achieved results that satisfied the original goals of the litigation"**
>
> Fred Sharp, New York

> **It was a pleasure being represented by Mark. Above all he was patient throughout the tedious process of litigation. He is a good listener and a good communicator, which enhanced my participation and understanding of the process. He also provided excellent follow up throughout, making the process feel more like a team effort."**
>
> Louise Miljenovic, New Jersey



**LEVI&KORSINSKY**
Shareholder Advocates

**Our Attorneys**    Partners

# MARK S. REICH

## Partner

At his prior firm, Mark achieved notable success challenging unfair mergers and acquisitions in courts throughout the country. Among the M&A litigation that Mark handled or participated in, his notable cases include: **In re Aramark Corp. S'holders Litig.**, where he attained a $222 million increase in consideration paid to shareholders of Aramark and a substantial reduction to management's voting power – from 37% to 3.5% – in connection with the approval of the going-private transaction; **In re Delphi Fin. Grp. S'holders Litig.**, resulting in a $49 million post-merger settlement for Class A Delphi shareholders; **In re TD Banknorth S'holders Litig.**, where Mark played a significant role in raising the inadequacy of the $3 million initial settlement, which the court rejected as wholly inadequate, and later resulted in a vastly increased $50 million recovery. Mark has also been part of ERISA litigation teams that led to meaningful results, including **In re Gen. Elec. Co. ERISA Litig.**, which resulting in structural changes to company's 401(k) plan valued at over $100 million, benefiting current and future plan participants.

> **We contacted Mark about our concerns about our oven's failure to perform as advertised. He worked with us to formulate a strategy that ultimately led to a settlement that achieved our and others' goals and specific needs."**
>
> Candace Oliarny, Idaho

> **My wife and I never having been involved with a law firm or Class Action had no idea what to expect. Within the first few phone meetings with Mark, we became assured as Mark explained in detail how the process worked, Mark is a great communicator. Mr. Reich is a true professional, his integrity through the years he worked with us was impeccable. Working with Mark was a truly positive experience, and have no reservations if we ever had to call on his services again."**
>
> Louise Miljenovic, New Jersey



# MARK S. REICH

## Partner

Before joining the Firm, Mark graduated with a Bachelor of Arts degree from Queens College in New York. He earned his Juris Doctor degree from Brooklyn Law School, where he served on the Moot Court Honor Society and The Journal of Law and Policy.

Mark regularly practices in federal and state courts throughout the country and is a member of the bar in New York. He has been recognized for his legal work by being named a New York Metro Super Lawyer by Super Lawyers Magazine every year since 2013. Mark is active in his local community and has been distinguished for his neighborhood support with a Certificate of Recognition by the Town of Hempstead.

### EDUCATION

• Brooklyn Law School, J.D. (2000)
• Queens College, B.A., Psychology and Journalism (1997)

### AWARDS





### ADMISSIONS

• New York (2001)
• United States District Court for the Southern District of New York (2001)
• United States District Court for the Eastern District of New York (2001)
• United States District Court for the Northern District of New York (2005)
• United States District Court for the Eastern District of Michigan (2017)



# DANIEL TEPPER
## Partner



Daniel Tepper is a Partner of the Firm with extensive experience in shareholder derivative suits, class actions and complex commercial litigation. Before he joined Levi & Korsinsky, Mr. Tepper was a partner in one of the oldest law firms in New York. He is an active member of the CPLR Committee of the New York State Bar Association and was an early member of its Electronic Discovery Committee. Mr. Tepper has been selected as a New York "Super Lawyer" in 2016 – 2023.

Some of the notable matters where Mr. Tepper had a leading role include:

• **Siegmund v. Bian**, No. 16-62506 (S.D. Fla.), achieving an estimated recovery of $29.93 per share on behalf of a class of public shareholders of Linkwell Corp. who were forced to sell their stock at $0.88 per share.
• **In re Platinum-Beechwood Litigation**, No. 18-06658 (S.D.N.Y.), achieved dismissal on behalf of an individual investor in Platinum Partners-affiliated investment fund.
• **Lakatamia Shipping Co. Ltd. v. Nobu Su**, Index No. 654860/2016 (Sup. Ct., N.Y. Co. 2016), achieved dismissal on suit attempting to domesticate a $40 million UK judgment in New York State.
• **Zelouf Int'l Corp. v. Zelouf**, No. 45 Misc.3d 1205(A) (Sup.Ct. N.Y. Co., 2014), representing the plaintiff in an appraisal proceeding triggered by freeze-out merger of closely-held corporation. Achieved a $10 million verdict after eleven day trial, with the Court rejecting a discount for lack of marketability.
• **Sacher v. Beacon Assocs. Mgmt. Corp.**, No. 114 A.D.3d 655 (2d Dep't 2014), affirming denial of defendants' motion to dismiss shareholder derivative suit by Madoff feeder fund against fund's auditor for accounting malpractice.
• **In re Belzberg**, No. 95 A.D.3d 713 (1st Dep't 2012), compelling a non-signatory to arbitrate brokerage agreement dispute arising under doctrine of direct benefits estoppel.
• **Estate of DeLeo**, No. 353758/A (Surrog. Ct., Nassau Co. 2011), achieving a full plaintiff's verdict after a seven day trial which restored a multi-million dollar family business to its rightful owner.



# DANIEL TEPPER

## Partner

· **CMIA Partners Equity Ltd. v. O'Neill**, No. 2010 NY Slip Op 52068(U) (Sup. Ct. N.Y. Co., 2010). Representing the independent directors of a Cayman Islands investment fund, won a dismissal on the pleadings in the first New York State case examining shareholder derivative suits under Cayman Islands law.

· **Hecht v. Andover Assocs. Mgmt. Corp.**, No. 27 Misc 3d 1202(A) (Sup. Ct. Nassau Co., 2010), aff'd, 114 A.D.3d 638 (2d Dep't 2014). Participated in a $213 million global settlement in the first Madoff related lawsuit in the country to defeat a motion to dismiss.

**EDUCATION**

· New York University School of Law, J.D. (2000)
· The University of Texas at Austin, B.A. with Honors (1997), National Merit Scholar

**AWARDS**

  

**ADMISSIONS**

· Massachusetts (2001)
· New York (2002)
· United States District Court for the Eastern District of New York (2004)
· United States District Court for the Southern District of New York (2010)
· United States District Court for the Western District of New York (2019)

# ELIZABETH K. TRIPODI

## Partner



Elizabeth K. Tripodi focuses her practice on shareholder protection, representing investors in litigation involving mergers, acquisitions, tender offers, and change-in-control transactions, securities fraud litigation, and corporate derivative litigation. Ms. Tripodi has been named as a Washington, D.C. "Super Lawyer" in the securities field and was selected as a "Rising Star" by Thomson Reuters for several consecutive years.

Ms. Tripodi's trial experience includes:

• **In re Tesla, Inc. Securities Litigation**, No. 3:18-cv-04865-EMC (N.D. Cal.) (lead counsel in class action representing Tesla investors who were harmed by Elon Musk's "funding secured" tweet from August 7, 2018)

Ms. Tripodi has played a lead role in obtaining monetary recoveries for shareholders in M&A litigation:

• In **Reith v. Lichtenstein, et al.**, Case NO. 2018-0277-MTZ, on behalf of the class and derivatively on behalf of Steel Connect, Inc. recovering a $6 million fund to be distributed to common stockholders of Steel Connect, the majority of which going to the minority stockholders.  The Court of Chancery approved the settlement on December 13, 2024, called the result an "excellent settlement."

• In **Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al.**, Case No. C.A. No. 2021-0899-LWW (Delaware Chancery), on behalf of the class of former minority stockholders of Alloy Steel, and recovered a $9.5 million common fund – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.  The Court of Chancery approved the settlement on April 4, 2024, and remarked that it was "strong" and a "great settlement."



# ELIZABETH K. TRIPODI

## Partner

· **In re Schuff International, Inc. Stockholders Litigation**, Case No. 10323-VCZ, achieving the largest recovery as a percentage of the underlying transaction consideration in Delaware Chancery Court merger class action history, obtaining an aggregate recovery of more than $22 million -- a gross increase from $31.50 to $67.45 in total consideration per share (a 114% increase) for tendering stockholders.

· **In re Bluegreen Corp. S'holder Litig.**, Case No. 502011CA018111 (Circuit Ct. for Palm Beach Cty., FL), creation of a $36.5 million common fund settlement in the wake of a majority shareholder buyout, representing a 25% increase in total consideration to the minority stockholders

· **In re Cybex International S'holder Litig.**, Index No. 653794/2012 (N.Y. Sup. Ct. 2014), recovery of $1.8 million common fund, which represented an 8% increase in stockholder consideration in connection with management-led cash-out merger

· **In re Great Wolf Resorts, Inc. S'holder Litig.**, C.A. No. 7328-VCN (Del. Ch. 2012), where there was a $93 million (57%) increase in merger consideration

· **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share· **Minerva Group, LP v. Keane**, Index No. 800621/2013 (N.Y. Sup. Ct. 2013), settlement in which Defendants increased the price of an insider buyout from $8.40 to $9.25 per share

Ms. Tripodi has played a key role in obtaining injunctive relief while representing shareholders in connection with M&A litigation, including obtaining preliminary injunctions or other injunctive relief in the following actions:

· **In re Portec Rail Products, Inc. S'holder Litig**, No. G.D. 10-3547 (Ct. Com. Pleas Pa. 2010)
· **In re Craftmade International, Inc. S'holder Litig**, No. 6950-VCL (Del. Ch. 2011) · Dias v. Purches, et al., No. 7199-VCG (Del. Ch. 2012)
· **In re Complete Genomics, Inc. S'holder Litig**, No. 7888-VCL (Del. Ch. 2012)
· **In re Integrated Silicon Solution, Inc. Stockholder Litig.**, No. 115CV279142 (Sup. Ct. Santa Clara, CA 2015)



# ELIZABETH K. TRIPODI
## Partner

Prior to joining Levi & Korsinsky, Ms. Tripodi was a member of the litigation team that served as Lead Counsel in, and was responsible for, the successful prosecution of numerous class actions, including: **Rudolph v. UTStarcom** (stock option backdating litigation obtaining a $9.5 million settlement); **Grecian v. Meade Instruments** (stock option backdating litigation obtaining a $3.5 million settlement).

**EDUCATION**

• American University Washington College of Law, cum laude (2006), where she served as Co-Editor in Chief of the Business Law Journal (f/k/a Business Law Brief), was a member of the National Environmental Moot Court team, and interned for Environmental Enforcement Section at the Department of Justice
• Davidson College, B.A., Art History (2000)

**ADMISSIONS**

• Virginia (2006)
• United States District Court for the Eastern District of Virginia (2006)
• District of Columbia (2008)
• United States District Court for the District of Columbia (2010)
• United States Court of Appeals for the Seventh Circuit (2018)

**AWARDS**








**Our Attorneys**

Counsel

- **ANDREW E. LENCYK**

- **BRIAN STEWART**

54

## Our Attorneys    Counsel

# ANDREW E. LENCYK
## Counsel



Andrew E. Lencyk is Counsel to the Firm. Prior to joining the Firm, Mr. Lencyk was a partner in an established boutique firm in New York specializing in securities litigation. He was graduated magna cum laude from Fordham College, New York, with a B.A. in Economics and History, where he was a member of the College's Honors Program, and was elected to Phi Beta Kappa. Mr. Lencyk received his J.D. from Fordham University School of Law, where he was a member of the Fordham Urban Law Journal. He was named to the 2013, 2014, 2015, 2016, 2017, 2018 and 2019 Super Lawyers®, New York Metro Edition.

Mr. Lencyk has co-authored the following articles for the Practicing Law Institute's Accountants' Liability Handbooks:

- *Liability in Forecast and Projection Engagements: Impact of Luce v. Edelstein*
- *An Accountant's Duty to Disclose Internal Control Weaknesses*
- *Whistle-blowing: An Accountants' Duty to Disclose A Client's Illegal Acts*
- *Pleading Motions under the Private Securities Litigation Reform Act of 1995*
- *Discovery Issues in Cases Involving Auditors (co-authored and appeared in the 2002 PLI Handbook on Accountants' Liability After Enron.)*

In addition, he co-authored the following article for the Association of the Bar of the City of New York, Corporate & Securities Law Updates:

• Safe Harbor Provisions for Forward-Looking Statements (co-authored and published by the Association of the Bar of the City of New York, Corporate & Securities Law Updates, Vol. II, May 12, 2000)


LEVI&KORSINSKY
Shareholder Advocates

# ANDREW E. LENCYK

## Counsel

Cases in which Mr. Lencyk actively represented plaintiffs include:

- **Kirkland et al. v. WideOpenWest, Inc.**, No. 653248/2018 (Sup. Ct, NY County) (substantially denying defendants' motion to dismiss Section 11 and 12(a)(2) claims)
- **In re Community Psychiatric Centers Securities Litigation**, No. SA CV-91-533-AHS (Eex) (C.D. Cal.) and McGann v. Ernst & Young, SA CV-93-0814-AHS (Eex) (C.D. Cal.)(recovery of $54.5 million against company and its outside auditors)
- **In re Danskin Securities Litigation**, Master File No. 92 CIV. 8753 (JSM) (S.D.N.Y.);
- **In re JWP Securities Litigation**, Master File No. 92 Civ. 5815 (WCC) (S.D.N.Y.) (class recovery of approximately $36 million)
- **In re Porta Systems Securities Litigation**, Master File No. 93 Civ. 1453 (TCP) (E.D.N.Y.);
- **In re Leslie Fay Cos. Securities Litigation**, No. 92 Civ. 8036 (S.D.N.Y.)($35 million recovery)
- **Berke v. Presstek, Inc.**, No. 96-347-M (MDL Docket No. 1140) (D.N.H.) ($22 million recovery)
- **In re Micro Focus Securities Litigation**, No. C-01-01352-SBA-WDB (N.D. Cal.)
- **Dusek v. Mattel, Inc.**, et al., No. CV99-10864 MRP (C.D. Cal.) ($122 million global settlement)
- **In re Sonus Networks, Inc. Securities Litigation-II**, No. 06-CV-10040 (MLW) (D. Mass.)
- **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y.) ($24.2 million recovery)
- **In re Mutual Funds Investment Litigation**, MDL No. 1586 (D. Md.)
- In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md.)
- **In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter**, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md.)
- **In re AIG ERISA Litigation II**, No. 08 Civ. 5722 (LTS) (S.D.N.Y.) ($40 million recovery); and
- **Flynn v. Sientra, Inc.**, No. CV-15-07548 SJO (RAOx) (C.D. Cal.) ($10.9 million recovery) (co-lead counsel) Court decisions in which Mr. Lencyk played an active role on behalf of plaintiffs include:
- **Pub. Empls' Ret. Sys. of Miss. v. TreeHouse Foods**, No. 2018 U.S. Dist. LEXIS 22717 (N.D. Ill. Feb. 12, 2018) (denying defendants' motion to dismiss in its entirety)



**Our Attorneys** | Counsel

## ANDREW E. LENCYK
### Counsel

• **Flynn v. Sientra, Inc.**, No. 2016 U.S. Dist. LEXIS 83409 (C.D. Cal. June 9, 2016) (denying in substantial part defendants' motions to dismiss Section 10(b), Section 11 and 12(b)(2) claims), motion for reconsideration denied, slip op. (C.D. Cal. Aug 12, 2016)

• **In re Principal U.S. Property Account ERISA Litigation**, No. 274 F.R.D. 649 (S.D. Iowa 2011) (denying defendants' motion to dismiss)

• **In re AIG ERISA Litigation II**, No. 08 Civ. 5722(LTS), 2011 U.S. Dist. LEXIS 35717 (S.D.N.Y. May 31, 2011) (denying in substantial part defendants' motions to dismiss), renewed motion to dismiss denied, slip op. (S.D.N.Y. June 26, 2014)

• **In re Mutual Funds Investment Litigation**, No. 384 F. Supp. 2d 845 (D. Md. 2005) (denying in substantial part defendants' motions to dismiss), In re Alger, Columbia, Janus, MFS, One Group, Putnam, Allianz Dresdner, MDL No. 15863-JFM - Allianz Dresdner subtrack (D. Md. Nov. 3, 2005) (denying in substantial part defendants' motions to dismiss), and In re Alliance, Franklin/Templeton, Bank of America/Nations Funds and Pilgrim Baxter, MDL No. 15862-AMD – Franklin/Templeton subtrack (D. Md. June 27, 2008) (same)

• **In re AIG ERISA Litigation**, No. 04 Civ. 9387 (JES) (S.D.N.Y. Dec. 12, 2006) (denying defendants' motions to dismiss in their entirety)

• **Dusek v. Mattel, Inc.**, et al., No. CV99-10864 MRP (C.D. Cal. Dec. 17, 2001) (denying defendants' motions to dismiss Section 14(a) complaint in their entirety)

• **In re Micro Focus Sec. Litig.**, Case No. C-00-20055 SW (N.D. Cal. Dec. 20, 2000) (denying motion to dismiss Section 11 complaint);

• **Zuckerman v. FoxMeyer Health Corp.**, No. 4 F. Supp.2d 618 (N.D. Tex. 1998) (denying defendants' motion to dismiss in its entirety in one of the first cases decided in the Fifth Circuit under the Private Securities Litigation Reform Act of 1995)

• **In re U.S. Liquids Securities Litigation**, Master File No. H-99-2785 (S.D. Tex. Jan. 23, 2001) (denying motion to dismiss Section 11 claims)

• **Sands Point Partners, L.P., et al. v. Pediatrix Medical Group, Inc.**, et al., No. 99-6181-CIV-Zloch (S.D. Fla. June 6, 2000) (denying defendants' motion to dismiss in its entirety)

• **Berke v. Presstek, Inc.**, No. 96-347-M (MDL Docket No. 1140) (D.N.H. Mar. 30, 1999) (denying defendants' motion to dismiss)



**LEVI&KORSINSKY**
Shareholder Advocates

57

**Our Attorneys**     Counsel

# ANDREW E. LENCYK
## Counsel

· **Chalverus v. Pegasystems, Inc.**, No. 59 F. Supp. 2d 226 (D. Mass. 1999) (denying defendants' motion to dismiss);
· **Danis v. USN Communications, Inc.**, No. 73 F. Supp. 2d 923 (N.D. Ill. 1999) (denying defendants' motion to

**EDUCATION**

· Fordham University School of Law, J.D. (1992)
· Fordham College, B.A. magna cum laude, 1988)

**AWARDS**

 

**ADMISSIONS**

· Connecticut (1992)
· New York (1993)
· United States District Court for the Southern District of New York (2004)
· United States District Court for the Eastern District of New York (2004)
· United States Court of Appeals for the Second Circuit (2015)



58

# BRIAN STEWART
## Counsel



Brian Stewart is Counsel to the Firm practicing in the Washington, D.C. office. Prior to joining the firm, Mr. Stewart was an associate at a small litigation firm in Washington D.C. and a regulatory analyst at the Financial Industry Regulatory Authority (FINRA). During law school, he interned for the Enforcement Divisions of the SEC and CFPB.

**EDUCATION**

• American University Washington College of Law, J.D. (2012)
• University of Washington, B.S., Economics and Mathematics (2008)

**ADMISSIONS**

• Maryland (2012)
• District of Columbia (2014)
• United States District Court for the District of Maryland (2017)
• United States District Court for the District of Colorado (2017)


LEVI&KORSINSKY
Shareholder Advocates

59



**Our Attorneys**

Senior Associates

- **JORDAN A. CAFRITZ**
- **MORGAN EMBLETON**
- **DAVID C. JAYNES**
- **CORREY A. SUK**

# JORDAN A. CAFRITZ
## Senior Associate



Jordan Cafritz is a Senior Associate with the Firm's Washington, D.C. office. While attending law school at American University he was an active member of the American University Business Law Review and worked as a Rule 16 attorney in the Criminal Justice Defense Clinic. After graduating from law school, Mr. Cafritz clerked for the Honorable Paul W. Grimm in the U.S. District Court for the District of Maryland.

Notable cases Mr. Cafritz has litigated include:

In Karsan Value Fund v. Kostecki Brokerage Pty, Ltd. et al., C.A. No. 2021-0899-LWW (Delaware Chancery), Mr. Cafritz played a lead role in securing a $9.5 million common fund for the minority stockholders in connection with a controller buyout – a $1.90 per share (75%) increase on top of the original merger consideration of $2.55 per share.

In Jacobs v. Meghji, et al., C.A. No. 2019-1022-MTZ (Delaware Chancery), Mr. Cafritz played a lead role in challenging a series of unfair equity transactions imposed on Infrastructure Energy Alternatives Inc. The resulting settlement led to the issuance of new preferred stock that fundamentally revised the capital structure of the company and paved the way for a $1.1bn acquisition of the company.

**EDUCATION**

• American University Washington College of Law, J.D. (2014)
• University of Wisconsin-Madison, B.A., Economics & History (2010)

**ADMISSIONS**

• Maryland (2014)
• District of Columbia (2018)


LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys     Senior Associates

# MORGAN EMBLETON
## Senior Associate



Morgan M. Embleton is a senior associate in the Firm's Connecticut office. Since 2018, Ms. Embleton has focused her practice on federal securities class actions and protecting the interests of shareholders of publicly traded companies.

Prior to that, Ms. Embleton litigated matters arising under the False Claims Act, Jones Act, Longshore Harbor Workers' Compensation Act, Louisiana Whistleblower Act, and Louisiana Environmental Whistleblower Act, as well as pharmaceutical mass torts and products liability claims. Ms. Embleton has extensive experience prosecuting securities fraud matters, complex class actions, and multidistrict litigations.

Ms. Embleton received her J.D. and Environmental Law Certificate from Tulane University Law School in 2014. During her time in law school, Ms. Embleton was a student attorney in the Tulane Environmental Law Clinic, a member of the Journal of Technology and Intellectual Property, and the Assistant Director of Research and Development for the Durationator.

**EDUCATION**

• Tulane University Law School, J.D. and Environmental Law Certificate (2014)
• University of Colorado at Boulder, B.A., cum laude, Sociology (2010)

**ADMISSIONS**

• Louisiana (2014)
• United States District Court for the Eastern District of Louisiana (2015)
• United States District Court for the Middle District of Louisiana (2016)
• United States District Court for the Western District of Louisiana (2016)
• United States Court of Federal Claims (2016)
• United States Court of Appeals for the Fifth Circuit (2016)
• United States Court of Appeals for the Ninth Circuit (2017)
• United States District Court for the Eastern District of Michigan (2020)
• United States District Court for the District of Colorado (2025)


LEVI&KORSINSKY
Shareholder Advocates

# Our Attorneys  Senior Associates

## DAVID C. JAYNES
### Senior Associate



David C. Jaynes focuses his practice on investor protection and securities fraud litigation. In addition to his law degree, Mr. Jaynes has graduate degrees in business administration and finance. Prior to joining the firm, David worked in the Enforcement Division of the U.S. Securities and Exchange Commission in the Salt Lake Regional Office as part of the Student Honors Program. Mr. Jaynes began his career as a prosecutor and has significant trial experience.

While at Levi & Korsinsky, Mr. Jaynes has actively represented plaintiffs in the following securities class actions:

• **In re U. S. Steel Consolidated Cases**, No. 17-579 (W.D. Pa.)
• **Stein v. U.S. Xpress Enterprises, Inc.**, et al., No. 1:19-cv-98-TRM-CHS (E.D. Tenn.)
• **John P. Norton, On Behalf Of The Norton Family Living Trust** UAD 11/15/2002 v. Nutanix, Inc. et al, No. 3:21-cv-04080 (N.D. Cal.)

Mr. Jaynes has also had a role in litigating the following securities actions:
• **Ferraro Family Foundation, Inc. v. Corcept Therapeutics Incorporated**, No.5:19-cv-1372-LHK (N.D. Cal.)
• **The Daniels Family 2001 Revocable Trust v. Las Vegas Sands Corp.**, et al., No. 1:20-cv-08062-JMF (D. Nev.)
• **Dan Kohl v. Loma Negra Compania Industrial Argentina Sociedad Anonima**, et al., Index No. 653114/2018 (Sup. Ct., County of New York)



# DAVID C. JAYNES
## Senior Associate

**EDUCATION**

• University of Utah, M.S., Finance (2020)
• University of Utah, M.B.A (2020)
• The George Washington University Law School, J.D. (2015)
• Brigham Young University, B.A., Middle East Studies and Arabic (2009)

**ADMISSIONS**

• Maryland (2015)
• Utah (2016)
• United States District Court for the District of Utah (2016)
• California (2021)
• United States District Court for the Northern District of California (2022)
• United States District Court for the Central District of California (2023)
• District of Colorado (2023)
• United States Court of Appeals for the Ninth Circuit (2025)
• United States Court of Appeals for the Tenth Circuit (2025)


LEVI&KORSINSKY
Shareholder Advocates

64

# CORREY A. SUK
## Senior Associates



Correy A. Suk is an experienced litigator with a focus on shareholder derivative suits, class actions, and complex commercial litigation. Correy began her career with the Investor Protection Bureau of the Office of the New York State Attorney General and spent four years prosecuting shareholder derivative actions and securities fraud litigation at one of the oldest firms in the country. Prior to joining Levi & Korsinsky, Correy represented both individuals and corporations in complex business disputes at a New York litigation boutique. Correy's unflappable disposition and composure reflect a pragmatic approach to both litigation and negotiation. She thrives under pressure and serves as an aggressive advocate for her clients in the most high-stakes situations. Correy has been recognized as a Super Lawyers Rising Star every year since 2017.

### PUBLICATIONS

• "Unsafe Sexting: The Dangerous New Trend and the Need for Comprehensive Legal Reform," 9 Ohio St. J. Crim. L. 405 (2011)

### EDUCATION

• The Ohio State University Moritz College of Law, J.D. (2011)
• Georgetown University, B.S.B.A. (2008)

### AWARDS




### ADMISSIONS

• New Jersey (2011)
• New York (2012)
• United States District Court for the Southern District of New York (2015)
• United States District Court for the Eastern District of New York (2015)
• United States District Court for the District of New Jersey (2016)





# Our Attorneys

## Associates

- **CHRISTOPHER DEVIVO**
- **AMANDA FOLEY**
- **NOAH GEMMA**
- **DEVYN R. GLASS**
- **GARY ISHIMOTO**
- **TRAVIS JOHNSON**
- **JOSHUA KLUGER**
- **ALEXANDER KROT**
- **TYLER LITKE**
- **MELISSA MEYER**
- **JENNIFER MITTASCH**
- **CINAR ONEY**
- **AARON PARNAS**
- **MICHAEL POLLACK**
- **P. COLE VON RICHTHOFEN**
- **MAX WEISS**
- **TRENTON B. WEIS**
- **TYLER WINTERICH**
- **AZLYNE ZHENG**

## Our Attorneys | Associates

# CHRISTOPHER DEVIVO
## Associate



Christopher DeVivo is an Associate in the firm's New York office, specializing in consumer protection and data privacy matters. With a robust background in both law and business, Christopher offers a unique, well-rounded perspective on the complex legal challenges faced by consumers in the rapidly evolving technology landscape.

Prior to joining the firm, Mr. DeVivo was an Associate at a New York law firm where he represented plaintiffs in complex class actions involving violations of state and federal privacy and antitrust laws.

Christopher's unique perspective is further informed by his prior experience at American Express, where he held various roles in risk management, corporate governance, and financial planning.

While in law school, Christopher was a judicial intern to both the Honorable Lori S. Sattler of the New York County Supreme Court and the Honorable Linda S. Jamieson of the Westchester County Supreme Court.

**EDUCATION**

• New York Law (2021)
• New York University (2008)

**ADMISSIONS**

• New York (2022)
• United States District Court for the Southern District of New York (2023)

LEVI&KORSINSKY
Shareholder Advocates

68

# Our Attorneys    Associates

## AMANDA FOLEY
### Associate



Amanda Foley is an Associate in Levi & Korsinsky's Stamford office where she focuses her practice on federal securities litigation.
Prior to joining Levi & Korsinsky, Amanda gained substantial experience at a boutique Boston firm where she was trained in securities and business litigation.

Amanda received her Juris Doctorate degree from Suffolk University Law School with an International Law concentration with Distinction and was selected to join the International Legal Honor Society of Phi Delta Phi. While in law school, Amanda focused her legal education on securities law & regulation, international investment law & arbitration, and business law.

**EDUCATION**

• Suffolk University Law School, J.D. (2021)
• Colorado State University, B.S. (2011)

**ADMISSIONS**

• Massachusetts (2021)
• United States District Court for the District of Massachusetts (2022)


LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys    Associates

# NOAH GEMMA
## Associate



Noah R. Gemma, Esq. is an associate for Levi & Korsinsky LLP's Washington, D.C. office.

Noah specializes in securities litigation, and his cases are often high-profile matters attracting national commentary. He has helped Levi & Korsinsky LLP return millions of dollars to wronged investors.  Noah has experience with pre-case investigations, courtroom advocacy, discovery management, and depositions for complex actions. He also has assisted with the preparation of memoranda for civil bench trials, criminal forfeiture proceedings, and state and federal appeals.

Prior to joining Levi & Korsinsky in 2021, he worked as a summer associate at a boutique commercial litigation firm. There, Noah helped the firm win multiple motions to dismiss on behalf of a national bank and a national bonding company in federal court cases involving alleged fraud and other alleged improprieties. He also represented a national hauling company in a federal bankruptcy proceeding and helped the firm secure a favorable decision on behalf of a national bonding company before the state supreme court.

During law school, Noah served as a judicial intern at both the federal trial and appellate levels. He was an intern for the Honorable Judge Bruce M. Selya in the United States Court of Appeals for the First Circuit and for the Honorable Judge Virginia M. Hernandez Covington in the United States District Court for the Middle District of Florida.

**EDUCATION**

• Georgetown University Law Center, J.D., Editor for The Georgetown Law Journal (2021)
• Providence College, B.A., *summa cum laude,* President for the Debate Society (2018)

**ADMISSIONS**

• Rhode Island (2021)
• District of Columbia (2022)



## Our Attorneys    Associates

# DEVYN R. GLASS
## Associate



Devyn R. Glass currently focuses her practice on representing investors in federal securities fraud litigation.

Prior to joining the firm, Ms. Glass gained substantial experience at a national boutique firm specializing in complex litigation across a variety of practice areas representing both plaintiffs and defendants. Since 2017, Ms. Glass has focused her practice on consumer and shareholder protection, litigating numerous class action lawsuits across the country that involved data privacy and data breach, deceptive and unfair trade practices, and securities fraud.

At her prior firms, Ms. Glass played a pivotal role in obtaining monetary recoveries and/or injunctive relief on behalf of shareholders and consumers. Notable cases include: Lowry v. RTI Surgical Holdings, Inc. et al., (D. Ill.) (obtaining $10.5 million on behalf of a shareholder class alleging violations of the federal securities laws); In re Google Plus Profile Litigation, (N.D. Cal.) (obtaining $7.5 million on behalf of a consumer class exposed to a years-long data breach); and Barrett v. Pioneer Natural Resources USA, Inc., (D. Colo.) (obtaining $500,000 on behalf of more than 8,000 current and former 401(k) plan participants alleging violations of the Employee Retirement Income Security Act).

**EDUCATION**

• Loyola University College of Law, New Orleans, J.D., cum laude (2016), where she received a Certificate of Concentration in Law, Technology and Entrepreneurship, served as a member of the Loyola Journal of Public Interest Law, and interned for the Louisiana Second Circuit Court of Appeals
• Louisiana Tech University, B.A., cum laude (2013), Political Science, minor in English

**ADMISSIONS**

• New York (2017)
• District of Columbia (2017)
• United States District Court District of Columbia (2018)
• United States District Court District of Colorado (2018)
• United States Court of Appeals for the Ninth Circuit (2022)



# Our Attorneys     Associates

## GARY ISHIMOTO
### Associate



Gary Ishimoto is an Associate working remotely with Levi and Korsinsky's Consumer Litigation Team. During law school, he worked at the Small Business Law Clinic helping to draft incorporation papers, non-compete clauses, IP assignments, board consent, and stock purchase agreements for start-up businesses. He also interned for the Rossi Law Group.

**EDUCATION**

• Pepperdine School of Law, J.D. (2020)
• California State University, Northridge, B.S. (2013)

**ADMISSIONS**

• Massachusetts (2021)
• United States District Court for the District of Massachusetts (2022)
• United States Court of Appeals for the Ninth Circuit (2024)



**Our Attorneys**   Associates

# TRAVIS JOHNSON
## Associate



Travis Johnson is an Associate in the firm's Washington D.C. office. Prior to joining Levi & Korsinsky, Travis worked at a small firm specializing in bad-faith insurance litigation. Travis served as a law clerk for the Honorable Milton C. Lee, Jr. in District of Columbia Superior Court. While in law school, Travis was a student attorney in the Barton Child Law and Policy Center where he worked on research-backed policy proposals submitted to the Georgia Legislature to protect the legal rights and interests of children involved with the justice system. Travis also competed and coached in the Kaufman Memorial Securities Law Moot Court Competition.

**EDUCATION**

• Emory University Law School (2022)
• Utah State University, B.A., Political Science and Constitutional Studies, with Honors (2015)

**ADMISSIONS**

• Georgia (2022)
• District of Columbia (pending)*

*Pending admission to the D.C. bar, practicing under the supervision of a D.C. licensed attorney

**LEVI&KORSINSKY**
Shareholder Advocates

**73**

# Our Attorneys        Associates

## JOSHUA KLUGER

### Associate



Joshua Kluger is an Associate in Levi & Korsinsky's Connecticut office, where he focuses his practice on federal securities litigation and investor protection. Joshua previously interned with the honorable Judge Amy Berman Jackson of the United States District Court for the District of Columbia, the United States Department of Labor's Division of Plan Benefit Security, and the Financial Industry Regulatory Authority (FINRA). While attending law school, Joshua served on the Business & Finance Law Review and the Moot Court Board. He also served as a Dean's Fellow and earned an award for his oral advocacy skills in the 75th Van Vleck Moot Court competition. Joshua graduated from The George Washington University Law School with a concentration in business & finance law.

**EDUCATION**

• The George Washington University Law School (2025)
• The College of William & Mary (2019)

**ADMISSIONS**

• New Jersey (2025)

# ALEXANDER KROT
## Associate



**EDUCATION**

• American University, Kogod School of Business, M.B.A. (2012)
• Georgetown University Law Center, LL.M., Securities and Financial Regulation, With Distinction (2011)
• American University Washington College of Law, J.D. (2010)
• The George Washington University, B.B.A., concentrations in Finance and International Business (2003)

**ADMISSIONS**

• Maryland (2011)
• District of Columbia (2014)
• United States District Court for the District of Colorado (2015)
• United States Court of Appeals for the Tenth Circuit (2016)
• United States District Court for the Eastern District of Wisconsin (2017)
• United States Court of Appeals for the Third Circuit (2018)
• United States Court of Appeals for the Ninth Circuit (2020)



**Our Attorneys**    Associates

# TYLER LITKE
## Associate



Tyler Litke is an Associate in the Consumer Protection Group at Levi & Korsinsky, LLP, where he represents consumers in class actions and mass arbitrations for claims involving data breaches, false advertising, deceptive marketing, product defects, and unfair business practices.

Mr. Litke represents individuals who are willing to stand up against powerful corporations and institutions, not only for themselves but on behalf of others, to protect consumer rights and promote fair business practices.

Prior to joining Levi & Korsinsky, Mr. Litke represented both plaintiffs and defendants at national law firms in complex litigation and class action matters, including product liability, securities fraud, environmental and toxic torts, and consumer protection cases. He has handled all phases of litigation from inception through trial in state and federal courts. This experience on both sides of the courtroom provides him with strategic insight into defense tactics and enables him to develop effective litigation strategies for his clients.

Mr. Litke received his J.D. from Loyola University Chicago School of Law and his B.A. from the University of Texas at Austin. He is licensed to practice in New York and Illinois.

**EDUCATION**

• Loyola University Chicago School of Law, J.D., 2018
• University of Texas at Austin, B.A., 2014

**ADMISSIONS**

• Illinois (2018)
• New York (2019)
• U.S. District Court for the Northern District of Illinois (2020)
• U.S. District Court for the Southern District of Illinois (2020)
• U.S. District Court for the Eastern District of Michigan (2021)
• U.S. District Court for the Central District of Illinois (2022)
• U.S. District Court for the Western District of New York (2022)
• U.S. District Court for the Southern District of New York (2023)



LEVI&KORSINSKY
Shareholder Advocates

**Our Attorneys**    Associates

# MELISSA MEYER
## Associate



Melissa Meyer is an Associate in Levi & Korsinsky's New York Office for the Consumer Litigation and Mass Arbitration Practice Group. Her practice is currently focused on protecting consumer rights in complex class actions with a focus on data privacy and products liability.

Prior to Melissa joining Levi & Korsinsky's Consumer Litigation Team, Melissa specialized in client services and retention for the firm's securities fraud litigation practice groups.

During law school, Melissa gained substantial experience in all aspects of complex class action litigation while being employed as a paralegal and law clerk in Levi & Korsinsky's New York office, working with each of the Firm's practice groups.

**EDUCATION**

• New York Law School, J.D., Dean's Scholar Award, member of the Dean's Leadership Council (2018)
• John Jay College of Criminal Justice, B.A. (2013), *magna cum laude*

**ADMISSIONS**

• New York (2019)
• United States District Court for the Southern District of New York (2020)
• United States District Court for the Eastern District of New York (2025)



LEVI&KORSINSKY
Shareholder Advocates

78

**Our Attorneys** Associates

# JENNIFER MITTASCH
## Associate



Jennifer Mittasch is an Associate in Levi & Korsinsky's New York Office for the Consumer Litigation and Mass Arbitration Practice Group. Her practice is currently focused on protecting consumer rights in complex class actions with a focus on data privacy.

Prior to joining Levi & Korsinsky's Consumer Litigation Team, Jennifer worked for the NYC Administration for Children's Services, where she worked to protect children in neglectful and abusive environments.

**EDUCATION**

• New York Law School, J.D. (2019)
• University of South Florida, B.A. (2014)

**ADMISSIONS**

• New York (2019)

LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys    Associates

# CINAR ONEY
## Associate



Cinar Oney is an Associate in Levi & Korsinsky's New York office. His practice focuses on investigation and analysis of various forms of corporate misconduct, including excessive compensation, insider trading, unfair self-dealing, and corporate waste. He develops litigation strategies through which shareholders can pursue recoveries.

Prior to joining Levi & Korsinsky, Mr. Oney practiced with top firms in Turkey, where he represented shareholders, corporations, and governmental entities in commercial disputes and transactional matters.

**PUBLICATIONS**

• *FinTech Industrial Banks and Beyond: How Banking Innovations Affect the Federal Safety Net*, 23 FORDHAM J. CORP. & FIN. L. 541 (2018)

**EDUCATION**

• Fordham University School of Law, J.D. (2019)
• International University College of Turin, LL.M. (2014)
• Istanbul University Faculty of Law, Undergraduate Degree in Law (2011)

**ADMISSIONS**

• New York (2020)



## Our Attorneys        Associates

# AARON PARNAS
## Associate



Aaron Parnas is an Associate in the firm's Washington, D.C. office. Prior to joining Levi & Korsinsky, Aaron served as a law clerk for the Honorable Sheri Polster Chappell in the United States District Court for the Middle District of Florida. While in law school, Aaron was a student attorney for the Criminal Appeals and Post-Conviction Series Clinic along with the Vaccine Injury Litigation Clinic, where he litigated matters in front of the Maryland Court of Special Appeals and the Court of Federal Claims. respectively. As a result of his successes, Aaron was named the top advocate in his graduating class and received the Graduation Award for Excellence in Pre-Trial and Trial Advocacy.

**EDUCATION**

•The George Washington University Law School, with Honors (2020), where he served as the Managing Editor, Vol. 52 of The George Washington International Law Review
• Florida Atlantic University, BA, Political Science and Criminal Justice, with Honors (2017)

**ADMISSIONS**

• Florida (2020)
• United States District Court for the Southern District of Florida (2021)
• District of Columbia (pending)*

*Pending admission to the D.C. bar, practicing under the supervision of a D.C. licensed attorney

## Our Attorneys    Associates

# MICHAEL POLLACK
## Associate



Michael Neal Pollack is an Associate in Levi & Korsinsky's New York Office in the Consumer Litigation and Mass Arbitration Practice Group. His practice focuses on protecting consumer privacy rights as well as prosecuting false advertising claims.

Michael served as a judicial extern in the Chambers of the Honorable Gerald Lebovits of the Supreme Court of the State of New York. Michael has experience in plaintiff side Employment litigation and in Trust and Estates litigation. He also worked to protect tenants facing evictions and in the New Jersey Attorney General's office doing appellate work in family law.

### EDUCATION

• Fordham University School of Law, J.D. (2024), Online Editor of *Fordham Environmental Law Review,* Archibald R. Murray Public Service Award (*magna cum laude*), Francis J. Mulderig Award
• University of Maryland, College Park, B.A., (2020) Honors in Philosophy

### ADMISSIONS

• New York (2025)
• United States District Court for the Southern District of New York (2025 )
• United States District Court for the Eastern District of New York (2025)


LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys — Associates

# P. COLE VON RICHTHOFEN
## Associate



P. Cole von Richthofen is an Associate in Levi & Korsinsky's Connecticut office. As a law student, he interned with the honorable Judge Thomas Farrish in the District of Connecticut's Hartford courthouse with an emphasis on settlements. He has also interned with the Office of the Attorney General for the State of Connecticut in the Employment Rights Division. While attending law school, Cole served as an Executive Editor of the Connecticut Public Interest Law Journal and as a member of the Connecticut Moot Court Board.

**EDUCATION**

• University of Connecticut School of Law, J.D. (2022)
• University of Connecticut, B.S., Business & Marketing (2015)

**ADMISSIONS**

• Connecticut (2022)
• United States District Court for the District of Connecticut (2024)
• United States District Court for the Southern District of New York (2025)


LEVI&KORSINSKY
Shareholder Advocates

# Our Attorneys    Associates

# MAX WEISS

## Associate



Max Weiss focuses his practice on investor protection and securities fraud litigation. Max's efforts have helped result in the recovery of millions for investors, with notable cases such as **In re QuantumScape Securities Clas Action**, No. 3:21-cv-00058-WHO (N.D. Cal.), where he played a leading role on the team that attained a $47.5 million recovery on behalf of a class of investors who sustained damages in connection with claims alleging that QuantumScape misled the public about its prototype battery during its December 8, 2020 Solid-State Battery Showcase and in subsequent public statements.

Max has substantial experience in all aspects of litigation, including investigating and drafting class-action complaints, briefing dispositive and other motions, managing discovery efforts, working closely with experts, and trial.

While in law school, Max gained experience helping *pro se* debtors prepare and file Chapter 7 and Chapter 13 petitions with the New York Legal Assistance Group (**NYLAG**) Bankruptcy Project and served as an intern to the Honorable Sean Lane of the Southern District of New York Bankruptcy Court.

**EDUCATION**

• St. John's School of Law, J.D. (2018), where he served as the Senior Executive Editor of the Journal of Civil Rights & Economic Development
• Colgate University, B.A., Political Science (2011)

**ADMISSIONS**

• New York (2019)
• United States District Court for the Southern District of New York (2019)
• United States District Court for the Eastern District of New York (2019)


LEVI&KORSINSKY
Shareholder Advocates

86

## Our Attorneys    Associates

# TRENTON B. WEISS
## Associate



Trenton B. Weis is an Associate in the firm's New York Office in the Consumer Litigation and Mass Arbitration Practice Group. His practice is currently focused on consumer protection and data privacy matters with particular attention to the procedural and practical complexities involved in mass arbitrations.

Prior to joining Levi & Korsinsky, Trent worked with small business clients to design and manage entity structures, compliance protocols, and governance documents. While in law school, Trent was a student attorney in the Entrepreneurship & Nonprofit Clinic where he advised local and underprivileged businesses on an array of issues, including entity formation, contracts, and licensing agreements. Trent also served as a judicial intern for the Honorable L. Scott Coogler of the U.S. District Court for the Northern District of Alabama.

**EDUCATION**

• The University of Alabama School of Law, J.D. (2021), Associate Editor of the *Alabama Civil Rights and Civil Liberties Law Review*, President of Law & Economics Society
• Sewanee: The University of the South, B.A. in Economics (2017)

**ADMISSIONS**

• New York (2024)



LEVI&KORSINSKY
Shareholder Advocates

## Our Attorneys    Associates

# TYLER WINTERICH
## Associate



Tyler Winterich is an Associate in the Firm's Connecticut office.

Before working at the Firm, Mr. Winterich was an Attorney Advisor at the Department of Labor's Office of Administrative Law Judges where he drafted decisions and orders and performed legal research for matters pending before Administrative Law Judges Steven D. Bell and Jason A. Golden. Matters included benefits under the Black Lung Benefits Act, protections under various whistleblower statutes, as well as H-2A and H-2B visa applications arising under the Immigration and Nationality Act.

During law school, Mr. Winterich was the Executive Note Editor of the Review of Banking & Financial Law and participated in the Environmental Law Practicum. He also was a summer law clerk at the Institute for Policy Integrity at NYU School of Law and a summer associate at the Legal Aid Society of Cleveland.

Mr. Winterich also has experience in public accounting. He was a senior associate at PricewaterhouseCoopers LLP, where he drafted disclosures and assessed preliminary compliance for emerging sustainability disclosure frameworks. At Ernst & Young LLP, he was an associate in internal audit functions for publicly held companies across several industries.

**EDUCATION**

• Boston University School of Law, J.D. (2022)
• Boston University Fredrick S. Pardee School of Global Studies, M.A. in International Relations (2022)
• University of Michigan, B.B.A. with High Distinction (2017)

**ADMISSIONS**

• Ohio (2022)



**Our Attorneys**    Associates

# AZLYNE ZHENG
## Associate



Azlyne Zheng currently focuses her practice on representing investors in federal securities litigation.

Prior to joining the firm, Azlyne specialized in commercial litigation, representing both plaintiffs and defendants in New York and New Jersey. While in law school, she served as the Finance and Marketing Editor of The George Washington International Law Review and interned for the Honorable Vera M. Scanlon of the U.S. District Court for the Eastern District of New York. In that role, she gained experience across a broad range of legal areas, including commercial real estate, trusts and estates, intellectual property, and federal labor disputes.

**EDUCATION**

• The George Washington University Law School, JD (2023)
• St. Lawrence University, BS. (2020)

**ADMISSIONS**

• New York (2024)
• New Jersey (2024)

