UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BHAPINDERPAL S. BHANGAL, et al., | Case No. 3:23-cv-04332-JSC |
| Plaintiffs, | |
| v. | **ORDER RE: MOTION FOR PRELIMINARY APPROVAL** |
| HAWAIIAN ELECTRIC INDUSTRIES, INC., et al., | Re: Dkt. No. 118 |
| Defendants. | |

Plaintiffs in this federal securities class action allege Hawaiian Electric Industries, Inc. ("HEI") and its top officials misled investors to believe the utility was taking appropriate action to mitigate wildfire risk.  The Court previously dismissed the action with leave to amend.  (Dkt. No. 92.[1])  Following amendment, Defendants again moved to dismiss and the parties reached a class action settlement while that motion was pending.  (Dkt. Nos. 93, 106, 116.)  Plaintiffs' unopposed motion for preliminary approval of the class action settlement is now pending before the Court. (Dkt. No. 118.)   Having considered the briefing, including the supplemental briefing, and having had the benefit of oral argument on February 26, 2026, the Court GRANTS the motion for preliminary approval.

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background and incorporates its prior discussion by reference. (Dkt. No. 92 at 1-8.)

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

**THE SETTLEMENT AGREEMENT**

### A.    The Settlement Class

The Agreement defines the Settlement Class as "all persons and entities other than defendants who purchased or otherwise acquired HEI securities between February 28, 2019 and September 4, 2023, both dates inclusive, and were damaged thereby." (Dkt. No. 119-1, Settlement Agreement at ¶ 1(ww).) The Settlement Class excludes (1) Defendants; (2) current and former HEI officers and directors; (3) Individual Defendants' immediate family; (4) all subsidiaries and affiliates of the Company and the subsidiary directors and officers; (5) any persons, firms, trusts, corporations, officers, directors, and entity in which any defendant has a controlling interest; (6) the legal representative of any excluded party; and (7) anyone who properly excludes themselves by filing a valid and timely request for exclusion. (*Id*.)

### B.    Payment Terms

Under the Settlement Agreement, Defendants will pay $47,750,000 ("Settlement Fund"). (Dkt. No. 119-1, Settlement Agreement at ¶ 1(vv).)  The following amounts may be deducted from the Settlement Fund:

1. Notice and Administration Costs: $335,585.31 (*Id*. at ¶ 8; Dkt. No. 118 at 31);

2. Litigation Expenses: up to $500,000 (Dkt. No. 119-1 at ¶ 8; Dkt. No. 118 at 30);

3. Attorneys' Fees: 33% of the Settlement Fund: ($15,666,750); (Dkt. No. 119-1 at ¶ 8; Dkt. No. 118 at 29-30);

4. Compensatory Award for the Lead Plaintiff under 15 U.S.C. § 78u-4(a)(4) of up to $10,000 (Dkt. No. 121 at 4-5); and

5. Taxes which includes "(i) all federal, state and/or local taxes of any kind (including any interest or penalties thereon) on any income earned by the Settlement Fund; (ii) the expenses and costs incurred by Plaintiffs' Counsel in connection with determining the amount of, and paying." (Dkt. No. 119-1 at ¶ 1(bb).)

The remaining amount, the "Net Settlement Amount" will be divided in pro rata share among authorized claimants pursuant to a specified plan of allocation. (*Id*. at ¶ 19.)

United States District Court
Northern District of California

United States District Court
Northern District of California

**C.    Scope of Release**

Any settlement class member who does not submit a timely request for exclusion releases:

> all claims, actions, causes of action, demands, losses, rights, duties, obligations, debts, sums of money, suits, contracts, agreements, judgments, matters, issues, promises, damages and liabilities of every nature and description, whether known or unknown, known claims or Unknown Claims, whether arising under federal, state, common or foreign law, that Plaintiffs, any other member of the Settlement Class, or any other of Releasing Plaintiffs' Parties: (i) asserted in any complaint in this Action or (ii) could have asserted in any forum that arise out of, are based on, or relate in any way to, directly or indirectly, any of the allegations, acts, transactions, facts, events, matters, occurrences, representations or omissions involved, set forth, alleged or referred to, in the Action, or which could have been alleged in the Action, or which arise out of, are based upon, or relate in any way, directly or indirectly, to the purchase, acquisition, transfer, holding, ownership, disposition or sale of HEI securities by any members of the Settlement Class, and/or any disclosures, public filings, registration statements, or other statements by any Defendant during the Class Period, whether arising under federal, state, common or foreign law.

(*Id*. at ¶ 1(pp).)

**D.    Notice**

Plaintiffs selected Verita as the Claims Administrator following a competitive bidding process. (Dkt. No. 118 at 30.)   Verita intends to provide "direct mail notification to every investor who is a member of the Class and who can be identified with reasonable effort" as well as "direct email notification [] to hundreds of financial institutions that regularly monitor proposed securities class action settlements."  (Dkt. No. 119-2, Cavallo Decl. at ¶ 5.) Notice will also be made by publication on GlobeNewswire and by publication with the Depository Trust Corporation ("DTC") on the DTC Legal Notice System ("LENS").  (*Id*.at ¶¶ 13-14.)

According to Verita, there are two primary sources for identifying class members: (1) through an issuer's stock transfer agent, and (2) through nominees (the brokers, banks, and institutions) that actually hold the securities for their clients' benefit. (Dkt. No. 119-2 at ¶¶ 6-7.). The vast majority of investors hold their securities through a nominee.  (*Id*. at ¶ 6.)  Verita will thus send the Notice Packet to each entity included on its proprietary list of approximately 255 Nominee Holders, as well as to each financial institution registered with the U.S. Securities and Exchange Commission ("SEC") as a potential Nominee Holder.  (*Id*. at ¶¶ 8-9.)  For those

3

investors identified by the nominees, Verita will provide direct mail notice. (*Id*. at ¶ 11.) Verita estimates "the proposed notice program will provide notice to more than 95% of the investors that are potential Settlement Class Members." (*Id*. at ¶ 18.)

Verita will also create a website for posting downloadable copies of the notice packet, claim form, and other information about the Settlement, and maintain a toll-free telephone number for questions. (*Id*. at ¶¶ 16-17.)

### E.    Objections and Requests for Exclusion

Settlement Class Members can opt-out of the settlement by timely submitting a letter to the Settlement Administrator requesting exclusion from the settlement. (Dkt. No. 119-1 at ¶ 1(ww).) Settlement Class Members can also file a written objection to any part of the settlement and/or the request for attorneys' fees and costs. (Dkt. No. 121-1 at ¶ 73.)

### DISCUSSION

The approval of a settlement is a multi-step process. At the preliminary approval stage, the court should grant such approval only if it is justified by the parties' showing that the court will likely be able to (1) "certify the class for purposes of judgment on the proposal" and (2) "approve the proposal under Rule 23(e)(2)." Fed. R. Civ P. 23(e)(B). If the court preliminarily certifies the class and finds the settlement appropriate after "a preliminary fairness evaluation," then the class will be notified, and a final fairness hearing scheduled to determine if the settlement is fair, adequate, and reasonable pursuant to Rule 23. *Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *5 (N.D. Cal. Nov. 21, 2012).

### I.    CLASS CERTIFICATION

A court may preliminarily certify a settlement class if the prerequisites of Federal Rule of Civil Procedure 23(a) have been met, and at least one of the requirements for Rule 23(b) have also been met. *See* Fed. R. Civ. P. 23.

Class actions must meet the following requirements for certification:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests

United States District Court
Northern District of California

of the class.

Fed. R. Civ. P. 23(a). In addition to meeting the requirements of Rule 23(a), a putative class action must also meet one of the conditions outlined in Rule 23(b).

### A.    Rule 23(a)

The Rule 23(a) factors are satisfied.

First, the class is sufficiently numerous based on Plaintiffs' experts' estimate that approximately 83.2 million shares were affected by Defendants' conduct.  (Dkt. No. 121-1, Nye Decl. at ¶ 12.)  *See Malriat v. QuantumScape Corp.*, No. 3:21-CV-00058-WHO, 2022 WL 17974629, at \*3 (N.D. Cal. Dec. 19, 2022) ("[C]ourts may infer that, when a corporation has millions of shares trading on a national exchange, the numerosity requirement is met.").

Second, the typicality requirement is satisfied. "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *A. B. v. Hawaii State Dep't of Educ.*, 30 F.4th 828, 839 (9th Cir. 2022) (cleaned up). Here, the claims of both Plaintiffs and Settlement Class Members arise from the same set of circumstances—whether Defendants misled investors to believe the utility was taking appropriate action to mitigate wildfire risk.  Plaintiffs' claims are therefore predicated on the same or similar legal theories as those of the other Settlement Class Members.

Third, the commonality requirement is satisfied because there are common questions of law and fact arising out of Defendants' alleged representations. "The commonality requirement of Rule 23(a)(2) requires plaintiffs seeking class certification to show that their claims depend upon a common contention that is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *A. B.*, 30 F.4th at 839 (cleaned up). Finally, adequacy exists because there is no evidence Lead Plaintiff and Plaintiffs' counsel have any conflicts of interest with the proposed class, or Lead Plaintiff and Plaintiffs' counsel will not vigorously prosecute the case on behalf of the class.

Lead Plaintiff Daniel Warren, the proposed class representative, and class counsel appear to be adequate representatives of the class.  Warren purchased, owned, or held HEI during the

class period and his interests in demonstrating Defendants' liability and maximizing possible recovery are aligned with the absent class members.  (Dkt. No. 58 at 3.) The Court previously found class counsel, Pomerantz LLP, would fairly and adequately represent the class given their significant experience in litigating securities class actions. (Dkt. No. 58.) The Court has no reason to alter this view now when considering the Rule 23(g)(1)(A) factors.

The Court also concludes, at the preliminary approval stage, the Rule 23(b)(3) requirement is satisfied. Under Rule 23(b)(3), the Court must find that "the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Here, the Court finds predominance is satisfied because Plaintiffs' claims arise from the same representations. Further, the Court finds superiority is satisfied because the alternative method to a class action likely involves "individual claims for a small amount of ... damages," resulting in most cases involving "litigation costs [that] dwarf potential recovery." *Hanlon*, 150 F.3d at 1023.

* * *

Accordingly, the Court concludes that conditional certification of the class for settlement purposes is proper.

## II.     PRELIMINARY APPROVAL OF THE SETTLEMENT AGREEMENT

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled ... only with the court's approval." Fed. R. Civ. P. 23(e). "The purpose of Rule 23(e) is to protect the unnamed members of the class from unjust or unfair settlements affecting their rights." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1100 (9th Cir. 2008). So, before a district court approves a class action settlement, it must conclude the settlement is "fundamentally fair, adequate and reasonable." *In re Heritage Bond Litig.*, 546 F.3d 667, 674–75 (9th Cir. 2008).

In determining whether a class action settlement agreement meets this standard, the court may consider some or all of the following factors:

(1) the strength of the plaintiff's case; (2) the risk, expense,

United States District Court
Northern District of California

complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1048 (9th Cir. 2019) (cleaned up). Whether a settlement agreement has been negotiated before a class has been certified or after, the court must also undertake an additional search for more "subtle signs that class counsel have allowed pursuit of their own self-interests and that of certain class members to infect the negotiations." *Briseño v. Henderson*, 998 F.3d 1014, 1023 (9th Cir. 2021). The Ninth Circuit has identified three such signs:

1) when counsel receive a disproportionate distribution of the settlement, or when the class receives no monetary distribution but class counsel are amply rewarded;

2) when the parties negotiate a "clear sailing" arrangement providing for the payment of attorneys' fees separate and apart from class funds, which carries the potential of enabling a defendant to pay class counsel excessive fees and costs in exchange for counsel accepting an unfair settlement on behalf of the class; and

3) when the parties arrange for fees not awarded to revert to defendants rather than be added to the class fund.

*In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 947 (9th Cir. 2011) (internal quotation marks and citations omitted).

Courts may preliminarily approve a settlement and notice plan to the class if the proposed settlement: (1) appears to be the product of serious, informed, non-collusive negotiations; (2) does not grant improper preferential treatment to class representatives or other segments of the class; (3) falls within the range of possible approval; and (4) has no obvious deficiencies. *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2018 WL 6099948, at *7 (N.D. Cal. Nov. 21, 2018) (citation omitted).

### A.    Whether the Settlement is Fair, Adequate, and Reasonable

#### 1.    Settlement Process

The first factor concerns "the means by which the parties arrived at settlement." *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011). To approve a proposed settlement, a court must be satisfied the parties "have engaged in sufficient

United States District Court
Northern District of California

investigation of the facts to enable the court to intelligently make ... an appraisal of the settlement." *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007). Courts thus have "an obligation to evaluate the scope and effectiveness of the investigation plaintiffs' counsel conducted prior to reaching an agreement." *Id*. The settlement here was reached after extensive investigation and following intensive negotiations at three full-day mediation sessions with an experienced mediator. (Dkt. No. 121-2, Van Decl. at ¶¶ 7-9.)

This factor thus weighs in favor of preliminary approval.

### 2.    Lack of Preferential Treatment

The Court next considers whether the Settlement Agreement provides preferential treatment to any class member. The Ninth Circuit has instructed district courts to be "particularly vigilant" for signs counsel have allowed the "self-interests" of "certain class members to infect negotiations." *In re Bluetooth*, 654 F.3d at 947.

The only preferential treatment is Plaintiffs' request for up to $10,000 in compensatory awards for Lead Plaintiff Mr. Warren under 15 U.S.C. § 78u-4(a)(4).  (Dkt. No. 123 at ¶ 3.[2]) Under this section, representative plaintiffs may recover "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *See* 15 U.S.C. § 78u-4(a)(4).  The Court will defer ruling on the appropriateness of this award until final approval. At this stage, there is no indication the award in general constitutes "preferential treatment" such that it would defeat preliminary approval.

### 3.    Range of Possible Approval

The third factor the Court considers is whether the settlement is within the range of possible approval. To evaluate whether the settlement amount is adequate, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Lenovo*, 2018 WL 6099948, at *8. This requires the Court to evaluate the strength of Plaintiffs' case. The Settlement Agreement provides for a Settlement Fund of $47,750,000.  (Dkt. No. 119-1,

---

[2] While Plaintiffs indicated at the hearing they intended to seek the award on behalf of all the named Plaintiffs, Mr. Van's supplemental declaration clarifies they only intend to seek it for Mr. Warren.  (Dkt. No. 123 at ¶ 3.)

Settlement Agreement at ¶ 1(vv).)  Plaintiffs' supplemental briefing includes a declaration from their expert, Zachary Nye, who estimates total possible damages of $1.716 billion based on 83.2 million shares having been affected by Defendants' conduct. (Dkt. No. 121-1, Nye Decl. at ¶ 12.) The Settlement Agreement thus provides a recovery of approximately 2.8% of estimated damages. (Dkt. No. 121-2, Van Decl. at ¶ 18.)  Plaintiffs' counsel attests this amount is "well within the range of reasonableness, and substantially exceeds the median settlement amount in securities class actions settling in 2024." (*Id*. at ¶ 18 (citing Dkt. No. 121-2 at, Ex. A (Edward Flores and Svetlana Starykh, Recent Trends in Securities Class Action Litigation: 2024 Full-Year Review, at 27 (Fig. 24) (NERA Jan. 22, 2025) ("NERA Report") (indicating (median recovery in securities class actions in 2024 was approximately 1.2% of estimated damages)).)  Plaintiffs' counsel also attests this result is "more than double the 1.3% median settlement value for settlements where losses were in comparable damage estimate category ($1 billion-$4.999 billion)."  (Dkt. No. 121-2, Van Decl. at ¶ 18 (citing Ex. A at 26 (Fig. 23)).)

Given the risks of continued litigation and the uncertain viability of Plaintiffs' legal claims given the settlement was reached while the motion to dismiss was pending, the Court concludes this factor also weighs in favor of preliminary approval.

### 4.    Fairness of Supplemental Agreement

The Court must also review the fairness of the parties' confidential Supplemental Agreement. (Dkt. No. 119-1 at ¶ 35.) The existence of a termination option triggered by the number of class members who opt out of the settlement does not by itself render the Settlement unfair. *See, e.g.*, *Hefler v. Wells Fargo & Co*., No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018).  At the Court's request, the parties submitted the confidential Supplemental Agreement under seal. And having reviewed it, the Court finds the termination provision does not impact the fundamental fairness of the Settlement Agreement.

### 5.    Obvious Deficiencies

Finally, the Court considers whether there exist any obvious deficiencies in the settlement agreement. *Harris*, 2011 WL 1627973, at *8. Here, while the Court initially highlighted some concerns regarding the Settlement Agreement, Plaintiffs' supplemental submissions address these

concerns such that the Court finds no obvious deficiencies that would preclude preliminary approval. (Dkt. Nos. 121, 123.)

* * *

Having weighed the relevant factors, the Court preliminarily finds the settlement agreement is fair, reasonable, and adequate, and GRANTS preliminary approval.

## III.　PROPOSED PLAN OF ALLOCATION

The Court also must preliminarily approve the Plan of Allocation. The court's review of the distribution plan is governed by the same legal standards that apply to the approval of a settlement: the plan must be fair, reasonable, and adequate. *See, e.g.*, *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001). "A settlement in a securities class action case can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Hampton v. Aqua Metals, Inc.*, No. 17-CV-07142-HSG, 2021 WL 4553578, at *10 (N.D. Cal. Oct. 5, 2021) (internal quotation omitted). "[C]ourts recognize that an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.*

The plan of allocation provides the damages will be distributed in pro rata shares among the Settlement Class Members on a per share basis. (Dkt. No. 119-1 at ¶¶ 8, 19; Dkt. No. 121-1, Nye Decl. at ¶ 14 (stating the plan of allocation "calculates each Claimant's Recognized Loss for each HEI share purchased or otherwise acquired during the Settlement Class Period, as well as their pro rata share of the Net Settlement Fund.").) Mr. Nye attests "the average recovery per affected share [a]s approximately $0.57, before accounting for fees and expenses." (Dkt. No. 121-1, Nye Decl. at ¶ 13.) If the Court approves all of Plaintiffs' proposed deductions for fees, costs, and the service award for the Class Representative, this would reduce the price per share by $0.20. (*Id.*)

The Court concludes the Plan of Allocation treats the class members fairly and preliminarily approves it.

## IV.    CLASS NOTICE PLAN

For any class certified under Rule 23(b)(3), class members must be afforded "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Such notice must clearly state the following:

> (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3).

Fed. R. Civ. P. 23(c)(2)(B). "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) (cleaned up).

In response to the Court's concerns, Plaintiffs submitted a second revised long-form notice and revised short-form notice. (Dkt. No. 123-4; Dkt. No. 123-6.)  The revised notices comply with the notice requirements under Rule 23(c).  The long-from notice describes the allegations and claims in plain language, defines the Settlement Class, includes contact information for Class Counsel and the Settlement Administrator, and summarizes the settlement amount.  (Dkt. No. 123-4.)  The revised long-form notice also describes the Plan of Allocation and the options available to class members, including instructions for requesting exclusion from the settlement and filing an objection. The revised long-form notice also informs class members that receiving a share of the class settlement will release certain claims against certain parties and informs class members they may appear at the final fairness hearing in person or through an attorney.  It directs class members to a website with more information. Finally, the revised notice adequately advises Settlement Class Members about how they can review Class Counsel's motion for attorneys' fees and costs prior to the final approval hearing and that Lead Plaintiff Mr. Warren will seek up to a $10,000 compensatory award under 15 U.S.C. § 78u-4(a)(4). *See In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 995 (9th Cir. 2010) (holding class members must "have an opportunity to

oppose class counsel's fee motion").

In sum, these procedures appear sufficient to ensure that Settlement Class Members receive adequate notice of the settlement and an opportunity to opt-out or object. Accordingly, the Revised Notices and notice plan support preliminary approval.

## V.    ATTORNEYS' FEES AND COSTS

Rule 23(h) provides for an award of attorneys' fees and costs in a certified class action where it is "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). However, "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941. Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method to determine whether the requested fees are reasonable. *In re Mercury*, 618 F.3d at 992. The Ninth Circuit has established a benchmark of 25 percent of the common fund for attorneys' fees calculations under the latter method. *See Powers v. Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000) ("We have ... established twenty-five percent of the recovery as a 'benchmark' for attorneys' fees calculations under the percentage-of-recovery approach."). Although "[a] district court may depart from the benchmark ..., it must be made clear by the district court how it arrives at the figure ultimately awarded." *Id*. at 1256-57.

"The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Bluetooth*, 654 F.3d at 941. The resulting figure may be adjusted upward or downward to account for several factors, "including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id*. at 941-42 (internal quotation marks and citation omitted). The party requesting fees bears the burden "of submitting billing records to establish that the number of hours it requested are reasonable," *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013), as well as "produc[ing] satisfactory evidence—in addition to the attorneys' own affidavits—that the requested rates are in line with those prevailing in the community for

similar services by lawyers of reasonably comparable skill, experience and reputation," *Camancho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 980 (9th Cir. 2008) (internal quotation marks and citation omitted). The Ninth Circuit recommends that whether the lodestar or percentage-of-recovery method is used, the district court perform a cross-check using the other method to confirm the reasonableness of the fee (e.g., if the percentage-of-recovery method is applied, a cross-check with the lodestar method will reveal if the amount requested is unreasonable in light of the hours reasonably expended). *See Bluetooth*, 654 F.3d at 944-45.

The Settlement Agreement provides Class Counsel will file a motion for attorneys' fees and costs, but is silent as to the amount. (Dkt. No. 119-1 at ¶ 14.) In their motion for preliminary approval, Plaintiffs state they intend to seek an award of attorneys' fees of up to 33.33% of the Settlement Fund ($15,915,075). (Dkt. No. 118 at 30.) The motion does not state counsel's lodestar but explains if this amount were "granted in full, such an award would result in a lodestar multiplier of between approximately 3.5 and 4.5." (*Id.*) The motion also indicates Plaintiffs intend to "seek reimbursement of up to $500,000 for their reasonable litigation expenses." (*Id.*)

Plaintiffs shall submit a motion for attorneys' fees, including declarations and detailed billing records, so the Court may determine an appropriate lodestar figure, and to allow Settlement Class Members the opportunity to object to the requested fees. *See In re Mercury*, 618 F.3d at 995 (holding that class members must "have an opportunity to oppose class counsel's fee motion" before the deadline for filing objections set forth in the class notice). Counsel shall also submit detailed information in support of their request for $500,000 in litigation expenses so the Court can determine whether such costs are reasonable expenses incurred for the benefit of the class.

## VI.    CLASS REPRESENTATIVE AWARDS

Finally, Plaintiffs intend to seek up to $10,000 for Lead Plaintiff Mr. Warren under 5 U.S.C. § 78u-4(a)(4). (Dkt. No. 123 at ¶ 3.) As the Court noted in its request for supplemental briefing, Section § 78u-4(a)(4) awards allow a representative to recover "reasonable costs and expenses (including lost wages) directly relating to the representation of the class." *See* 15 U.S.C. § 78u-4(a)(4). Thus, any request for compensation must be supported by declarations or other evidence supporting the lost wages and any other costs as expenses.

13

**CONCLUSION**

For the reasons stated above, the Court GRANTS preliminary approval of the class action settlement as follows:

1. This action is provisionally certified as a class action, for settlement purposes only, pursuant to Federal Rule of Civil Procedure 23. The Court preliminarily certifies the following Settlement Class:

> all persons and entities other than defendants who purchased or otherwise acquired HEI securities between February 28, 2019 and September 4, 2023, both dates inclusive, and were damaged thereby.

2. The Court preliminarily appoints Pomerantz LLP as Class Counsel for the Settlement Class.

3. The Court preliminarily appoints Lead Plaintiff Daniel Warren as Class Representative for the Settlement Class.

4. The Court approves the appointment of Huntington National Bank as the Escrow Agent to manage the Settlement Fund for the benefit of the Settlement Class.

5. The Court approves and appoints Verita as the Settlement Administrator to supervise and administer the notice procedure and the processing of claims, and approves the payment of reasonable administration costs to the Settlement Administrator from the proceeds of the Settlement, not to exceed $500,000 without further Court order prior to the Effective Date.

6. Within 20 days of entry of this Order, the Settlement Administrator shall:

    a. Mail potential Settlement Class Members at the addresses set forth in the shareholder transfer records provided by the Company, or who otherwise may be identified through further reasonable effort, (i) the Notice, and (ii) Proof of Claim.

    b. Post the Notice and Proof of Claim on the Settlement Administrator's website.

    c. Publish the Summary Notice in *GlobeNewswire*.

    d. Provide notice to the nominees as set forth in the Cavallo Declaration (Dkt. No. 119-2.).

7. Plaintiffs shall file a copy of the Notice and Claim Form within 10 days of dissemination of notice.

8. Class Counsel shall file a motion for attorneys' fees and costs by May 21, 2026.

9. The deadline for class members to submit a Claim Form shall be June 25, 2026.

10. The deadline for class members to submit a Request for Exclusion shall be June 25, 2026.

11. The deadline for class members to object to the Settlement Agreement and/or Class Counsel's motion for attorneys' fees and costs shall June 25, 2026.

12. Plaintiffs shall file their Motion for Final Approval by July 30, 2026. The motion for final approval shall address the final approval guidelines in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, in the order the guidelines are presented on the website. As reflected in the Guidance, the Court will require a post-distribution accounting within 21 days after the distribution of settlement funds.

13. The parties shall appear before this Court for a final approval hearing on August 13, 2026 at 9:00 a.m. via Zoom video.

**IT IS SO ORDERED.**

Dated: March 3, 2026

_____
JACQUELINE SCOTT CORLEY
United States District Judge